## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CANDY M. SOUSA, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE, and GERARD T. FEENEY, <br><br> Defendants. | Civil Action No. 3:04-CV-30022 (MAP) |
| YOSEF STREICHER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE, and GERARD T. FEENEY, <br><br> Defendants. | Civil Action No. 3:04-CV-30026 (MAP) |

[Captions continued on next page]

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE BRUMBAUGH PLAINTIFF GROUP TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL, AND IN FURTHER OPPOSITION TO COMPETING MOTIONS**

| | |
|---|---|
| RAFAT DAWOD, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:04-CV-30029 (MAP) |
| WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE, and GERARD T. FEENEY, ) ) ) ) | |
| Defendants. ) | |
| ALVIN CHESS, individually and on behalf all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:04-CV-30037 (MAP) |
| WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE, and GERARD T. FEENEY, ) ) ) ) | |
| Defendants. ) | |
| MICHAEL VICKER, on behalf of himself and all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 3:04-CV-30040 (MAP) |
| WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE, and GERARD T. FEENEY, ) ) ) ) | |
| Defendants. ) | |

[Captions continued on next page]

| | |
|---|---|
| H. MARTIN BOHMAN, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE, and GERARD T. FEENEY, )<br>)<br>)<br>Defendants. ) | Civil Action No.  3:04-CV-30041 (MAP) |
| JIMMY SUO, on behalf of himself and all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE, and GERARD T. FEENEY, )<br>)<br>)<br>Defendants. ) | Civil Action No.  3:04-CV-30042 (MAP) |
| JACK SCHULMAN, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE, and GERARD T. FEENEY, )<br>)<br>)<br>Defendants. ) | Civil Action No.  3:04-CV-30043 (MAP) |

Wave Systems Corporation ("Wave Systems") investors Anne Brumbaugh, Gary Harmon and Randy Griffin (collectively, the "Brumbaugh Plaintiff Group") respectfully submit this reply memorandum of law in further support of their motion to consolidate the related actions, appoint lead plaintiff and approve lead plaintiff's selection of lead counsel and liaison counsel, and in further opposition to competing motions.[1]

I.      **PRELIMINARY STATEMENT**

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a), is neither "overly complex nor ambiguous" in providing a "**clear path** that district courts **must follow** in appointing a lead plaintiff." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (emphasis added). First, the court must determine which of the competing movants has the largest financial interest in the litigation. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa); *see also In re Lernout & Hauspie Securities Litigation*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001). Here, the Brumbaugh Plaintiff Group, having suffered a market loss of approximately $112,380 as a result of its class period investments in Wave Systems, has by far the largest financial interest in this litigation.

---

[1]     As expressly prescribed in the PSLRA, and as confirmed by Courts in this District, only plaintiffs (not defendants) have standing to speak to the appointment of a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (PSLRA limits rebuttal of the presumption to "proof <u>by a member of the purported plaintiff class</u>"); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996) (defendant lacked standing to challenge lead plaintiff designation); *In re Carematrix Sec. Litig.*, C.A. No. 99-12318-MLW, slip op. at 12, fn.2 (D. Mass. 2000) (same) (attached as Exhibit "A" to Declaration of Peter A. Lagorio ("Lagorio Dec.")). Nevertheless, defendants have filed a "response" raising numerous issues which purportedly speak to various movants' inability to properly serve as lead plaintiff. Despite the fact that defendants' arguments are wholly improper at this stage of the litigation, and lack any supporting legal precedent, the Brumbaugh Plaintiff Group will respond to those arguments which were likewise raised by other competing plaintiffs – the only parties properly authorized to challenge a lead plaintiff's appointment.

Now, and only after the filing of all initial lead plaintiff applications, the Rogers Group rather transparently reverses course from the position it advocated in its initial lead plaintiff application – that this Court should appoint its Group's members as lead plaintiff because they suffered the largest financial losses and therefore have the "largest financial interest" in the outcome of this litigation.  *See* Memorandum In Support Of Lead Plaintiff for Rogers Group ("Rogers Group Memo") at 2 ("combined actual losses of ... over $79,000, ... which Movant believes constitutes the largest financial interest").[2]  Because the initial lead plaintiff applications clearly reveal that the Brumbaugh Plaintiff Group suffered the largest financial losses, by far, the Rogers Group asks this Court to recognize *it* as having the largest financial interest based on a new methodology or, alternatively, because their group includes the individual (remarkably) with the *single largest market loss*.  However, neither approach has been endorsed by courts in this District and should likewise be rejected here.  *See* § II(A)(1) *infra*.

Next, after the court determines which movant has the largest financial interest, the court must then focus its attention on *that* movant and determine whether that movant has met its *prima facie* burden under Rule 23.  *Cavanaugh*, 306 F.3d at 730.  While the Brumbaugh Plaintiff Group's members have met their statutory obligation by providing sworn certifications attesting to their losses in Wave Systems securities as well as their desire to represent the Class, they also have provided a declaration emphasizing their understanding of the responsibilities of serving as

---

[2]   Similarly, the Rogers Group argued, initially, that persons can come together and combine losses to constitute largest financial interest. *See* Rogers Group Memo at 7 ("a member or members of the class or a person or group of persons may combine to constitute the largest financial interest and thereby jointly serve as the most adequate plaintiff") (citation omitted).  *See also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Lernout*, 138 F. Supp. 2d at 44-45; *Greebel*, 939 F. Supp. at 64-65.

a lead plaintiff and that they plan to work together as a cohesive group. *See* Joint Declaration In Support Of The Brumbaugh Plaintiff Group's Motion To Consolidate Actions, To Be Appointed Lead Plaintiffs And For Approval Of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Joint Declaration") at ¶¶ 2, 4 (attached as Exhibit D to Declaration of David Pastor in Support of Motion of the Brumbaugh Plaintiff Group to Consolidate Actions, To Be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Pastor Declaration")).[3]

Based on these submissions, there is no question that the Brumbaugh Plaintiff Group has met its *prima facie* burden of demonstrating its adequacy and typicality under Rule 23, and the Court should designate it as the presumptive most adequate plaintiff.[4] *See Lernout,* 138 F. Supp. 2d at 42.

Once the Court designates a movant as the presumptive most adequate plaintiff, other competing movants (and not defendants) have the opportunity to present *proof* to rebut the presumption. *Id.* Here, competing movants seize upon the trading of one member of the Brumbaugh Plaintiff Group, and claim that his trading is atypical and/or renders him in conflict with other class members. However, this far-reaching argument directly contradicts longstanding

---

[3]  Curiously, the Rogers Group has questioned whether the members of the Brumbaugh Plaintiff Group "plan on having regular discussion about the case." Rogers Group Memorandum In Opposition To Competing Motions ("Rogers Group Opp.") at 7. This very concern, however, was specifically addressed in the Joint Declaration (filed in support of the Brumbaugh Plaintiff Group's initial lead plaintiff application). *See* Joint Declaration at ¶ 4.

[4]  Based on the the Brumbaugh Plaintiff Group's submissions, the Court should disregard in its entirety the arguments raised by the Gabriele Group that the Brumbaugh Plaintiff Group's members may not be committed to this litigation. Gabriele Group Memorandum In Opposition To Competing Motions ("Gabriele Opp.") at 2-3. By contrast, the Gabriele Group has not submitted ***anything*** from its ***seven*** members evidencing an ability to work together cohesively.

precedent in this District and throughout the country that refuse to reject representative plaintiffs based on factual trading differences. *See* § II(B)(1-2) *infra*.

Accordingly, because competing movants (and defendants) have failed to offer *proof* to rebut the presumption properly afforded the Brumbaugh Plaintiff Group, it should be appointed lead plaintiff to represent the Class and this Court should approve its selection of lead counsel. *Lernout*, 138 F. Supp. 2d at 46-47.

## II.  ARGUMENT

### A.  The Brumbaugh Plaintiff Group Is The Presumptive Most Adequate Lead Plaintiff

#### 1.  The Brumbaugh Plaintiff Group Has The Largest Financial Interest In This Litigation

With $112,380 in financial losses, the Brumbaugh Plaintiff Group has the largest financial interest in this litigation. Rather than acknowledge this fact, the Rogers Group, which prevoiusly requested that the Court appoint it based **solely** on its financial losses, now conveniently abandons this position and requests that the Court examine other, alternative criteria for determining financial interest.[5] Rogers Group Opp. at 3-5. Should the Court entertain accepting this "new" approach, the process by which virtually every court in the country uses to compare plaintiffs' respective financial interests would be undermined..[6] *See Lernout,*

---

[5]   Indeed, all competing movants requested in their initial lead plaintiff applications that the Court consider only their respective financial losses for purposes of determining largest financial interest.

[6]   The Rogers Groups citations supposedly endorsing the net seller approach actually support the Brumbaugh Plaintiff Group's position. *See In re Critical Path Sec. Litig.*, 156 F. Supp. 2d 102 (N.D. Cal. 2001) (while the court considered the number of net shares purchased, the court held that this method "should be supplemented with in/out losses, *i.e.*, losses suffered by selling shares during the class period. Such losses are recoverable, and because the PSLRA

138 F. Supp. 2d at 43 (court determined lead plaintiff group had largest financial interest based exclusively on approximate market losses); *In re Carematrix Sec. Litig.*, slip op. at 13, 17 (same).[7]

In combination with requesting that the Court abandon overwhelming legal precedent for determining financial interest, the Rogers Group also argues in self-serving fashion that because their group includes the individual movant with the single largest loss, that their *group* has the largest financial interest. Rogers Group Opp. at 3; *but see* Rogers Group Memo at 7 ( "a member or members of the class or a person or group of persons may combine to constitute the largest financial interest and thereby jointly serve as the most adequate plaintiff").[8] Pursuant to the

---

defines financial interest in terms of 'recovery sought,' they should be included.") (citation omitted); *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 996 (N.D. Cal. 1999) (court found "the net shares inquiry...unrevealing" and instead found "one's interest in a litigation is rather directly tied to what one might recover.").

[7]   *See also Chill v. Green Tree Financial Corp.,* 181 F.R.D., at 411 (court determined lead plaintiff had largest financial interest based exclusively on approximate losses); *In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000) (same); *In re Universal Access, Inc.,* 209 F.R.D. 379 (E.D. Tex. 2002) (same); *Gluck v. Cellstar Corporation,* 976 F. Supp. 542 (N.D. Tex. 1997) (same); *In re Advanced Tissue Sciences Sec. Litig.,* 184 F.R.D. 346 (S.D. Cal. 1998) (same); *Steiner v. National Auto Credit, Inc.,* No. 1:98 cv 0264, 1998 U.S. Dist. LEXIS 21804 (N.D. Ohio. 1998) (same); *Takeda v. Turbodyne Technologies, Inc.,* 67 F. Supp. 2d 1129 (C.D. Cal. 1999) (same); *Vincelli v. National Home Healthcare Corporation,* 112 F. Supp. 2d 1309 (M.D. Fla. 2000) (same)*; The Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435 (W.D. Pa. 2001) (same); *Local 144 Nursing Home Pension Fund v. Honeywell International, Inc.,* No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712 (D.N.J. 2000) (same); *Holley v. Kitty Hawk, Inc.*, 200 F.R.D. 275 (N.D. Tex. 2001) (same); *In re Cell Pathways, Inc. Sec. Litig. II*, 203 F.R.D. 189 (E.D. Pa. 2001) (same).

[8]   The Rogers Group's lone citation to *In re Enron Corp. Sec.* Litig., 206 F.R.D. 427 (S.D. Tex. 2002) as support is misplaced. In *Enron,* the court rejected all groups of unrelated plaintiffs – a concept repeatedly *embraced* in this District. *See Lernout,* 138 F. Supp. 2d at 47*, Greebel*, 939 F. Supp. at 64, and *Nager v. Websecure, Inc.*, No. 97-10662-GAO, 1997 U.S. Dist. LEXIS 19601, at *3 (D. Mass. 1997).

plain language of the PSLRA, as well as persuasive legal precedent, this argument fails. *See Reiger v. Altris Software, Inc.*, No. 98cv0528J (JFS), 1998 U.S. Dist. LEXIS 14705, at *13-14 (S.D. Cal. Sept. 11, 1998) ("Court rejects the [] argument that because their group includes the party with the single largest loss, they should be appointed lead plaintiff. The statutory presumption applies to "the person or group of persons" with the greatest financial interest in the relief sought."); *Meyer v. Paradigm Medical Industries*, No. 2:03-CV-448 TC, Order at 11 (D. Utah Feb. 27, 2004) (court rejected argument that group that included the investor with the single largest loss had a larger financial interest than competing group with the larger aggregate losses) (attached as Exhibit B to Lagorio Dec.). In sum, the Rogers Group inconsistent and legally bare arguments that it has the largest financial interest in the outcome of this litigation should be rejected entirely.

### 2. The Brumbaugh Plaintiff Group Has Made A *Prima Facie* Showing of Typicality and Adequacy Under Rule 23

In order to satisfy its burden under Rule 23, the Brumbaugh Plaintiff Group need only make a *prima facie* showing of typicality and adequacy under Rule 23. *See Cavanaugh,* 306 F.3d at 732. This next step in the lead plaintiff analysis is non-adversarial in nature, with the court relying on the presumptive lead plaintiff's initial filings and sworn certifications. *Id.* Here, not only has each member of the Brumbaugh Plaintiff Group submitted a sworn certification – the only prerequisite for lead plaintiff appointment[9] – but they have also submitted a sworn

---

[9] The Gabriele Group attacks the Brumbaugh Plaintiff Group members' certifications on the basis that, despite being statutorily compliant, they are inadequate. Gabriele Opp. at 2-3. However, the certifications filed by each member of the Brumbaugh Plaintiff Group contain the precise language contained in the PSLRA, and therefore cannot be deemed inadequate or insufficient. *See Sofran v. Labranche & Co.*, No. 03 Civ. 8201 (RWS), 2004 U.S. Dist. LEXIS 4501, at *13 (S.D.N.Y. March 25, 2004) (court recently rejected identical attack and found that

declaration attesting to their knowledge of a lead plaintiff's duties and expressing their commitment to work as a cohesive group. Joint Declaration at ¶¶ 2, 4. Thus, the Brumbaugh Plaintiff Group has sufficiently met its threshold burden under Rule 23 and should be designated as the presumptive most adequate plaintiff.

### B. The Presumption That The Brumbaugh Plaintiff Group Is The Most Adequate Plaintiff Has Not Been Rebutted By Any Movant

Once the court designates a movant as the presumptive lead plaintiff, other movants have the opportunity to present *proof* that the presumptive lead plaintiff cannot meet the typicality and adequacy requirements of Rule 23. *Lernout,* 138 F. Supp. 2d at 42. Here, no competing movant (or defendants) has effectively rebutted the presumption favoring the Brumbaugh Plaintiff Group and consequently, the Brumbaugh Plaintiff Group should be appointed lead plaintiff.

#### 1. The Brumbaugh Plaintiff Group Is Typical

As recognized by the Rogers Group, the standard for demonstrating typicality in this District, especially at this preliminary stage, is "not very substantial." Rogers Group Memo at 9 (*citing Abelson v. Strong*, No. 85-0592, MDL No. 584, 1987 U.S. Dist. LEXIS 7515, at *8 (D. Mass. July 30, 1987). Rather, the plaintiffs' burden in proving typicality requires that "the named plaintiffs claims arise from the same events or course of conduct and involve the same legal theory as do the claims of the rest of the class." *Lernout*, 138 F. Supp. 2d at 46. As described in its initial lead plaintiff application, the Brumbaugh Plaintiff Group (1) purchased or acquired Wave Systems securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3)

---

because the certifications contained the precise language under the PSLRA, they were sufficient).

suffered damages thereby.  Memorandum In Support Of Brumbaugh Plaintiff Group at 9.  Moreover, all of the above-captioned actions are based on the same underlying conduct and allege the same legal theories.  Thus, the Brumbaugh Plaintiff Group is a typical lead plaintiff.

Despite this low threshold for satisfying typicality, competing movants seize upon the trading from one member of the Brumbaugh Plaintiff Group in the hopes of declaring the entire group atypical.  Gabriele Opp. at 4-6; Trebitsch Group Memorandum In Opposition To Competing Motions ("Trebitsch Opp.") at [3].  Specifically, competing movants allege that Randy Griffin is a day trader and therefore will not be able to adequately prove reliance.  *Id.*  However, as courts within this Circuit have repeatedly held, such slight factual differences in plaintiff's trading are insufficient to defeat typicality.  *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 778 (D. Mass 1988) (day trader adequate class representative); *Schaffer, et al. v. The Timberland Co., et al.*, Civil No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372, at *16 (D.N.H. 1996) (court rejected atypicality attack on day trader holding "[t]he fact that a named plaintiff employs an investment strategy different from those of the class does not render him atypical because it is of no consequence that the putative plaintiffs devised different investment strategies as a consequence of their reliance on the market.") (citations omitted).

As Judge Harrington stated in *Computervision* in rejecting an identical argument:

> [I]t is not whether the plaintiffs' investments strategy is similar to that of the class, it is not the time at which one purchased their security or how long they held the security and it is not the type of security in which an investor trades.  It is not the manner in which plaintiffs relied that is the issue, but whether they *in fact* relied on the integrity of the market.  There are difference types of reliance in almost every securities class action and to deny certification where a factual difference arises would render the class action device nugatory in securities fraud cases.

*Id.* at 778-79 (citations omitted).[10]

Therefore, in light of the low typicality threshold and based on this compelling precedent, this Court should not render the Brumbaugh Plaintiff Group atypical.

### 2.    The Brumbaugh Plaintiff Group Is Adequate

As the court in *Lernout*, stated:

> To meet the adequacy requirement plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation.

*Id.* at 46.

In an attempt to demonstrate the Brumbaugh Plaintiff Group's inadequacy, competing movants have seized upon a fringe opinion in a different jurisdiction - *In re Party City Sec. Litig.*, 189 F.R.D. 91 (D.N.J. 1999) - to manufacture a conflict between members of the Brumbaugh Plaintiff Group and the Class.[11] However, this so-called retention/seller conflict between

---

[10]    The Gabriele Group's citations in support of its atypicality argument are easily distinguishable and nevertheless contrary to *Computervision* and *Schaffer*. *See Koeing v. Benson,* 117 F.R.D. 330, 336 (E.D.N.Y. 1987) (involved extensive day trading after disclosure of the fraud even after issuer went into bankruptcy); *In re Bank One Shareholder Class Action*, 96 F. Supp. 2d 780 (N.D. Ill. 2000) (short seller rejected as lead plaintiff).

[11]    Confusingly, the Rogers Group also cites *Epstein v. American Reserve Corp.*, No. 79 C 4767, 1988 WL 40500 (N.D. Ill. Apr. 21, 1988) and *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000)  as support for the equity conflict.  However, these cases involved allegedly atypical trading and are nevertheless wholly distinguishable from the trading involved here. *See Epstein*, 1988 WL 40500, at *5 (plaintiffs purchased stock, through their short seller broker who may have relied on inside information, after initial complaints had been filed and SEC consent order made public); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d at 436-37 (after two evidentiary hearings court rejected an options trader for a multitude of other reasons, including the submission of  a "conclusory affidavit and a collection of indecipherable financial statements that purported to support the affidavits conclusion," and with virtually no discussion of the movant's trading behavior).

plaintiffs who hold shares (retention plaintiffs) and those that have since sold them (sellers) has been almost universally discredited by courts (even in its own district) who find differences related to damages insufficient to find a plaintiff inadequate. *See Hilda Herbst v. International Telephone and Telegraph Corporation*, 495 F. 2d 1308, 1314 (2d. Cir. 1974) ("[w]e do not perceive any conflict of interest between those who have retained their ITT shares and those who have since sold them. The personal interest of those who still hold ITT stock in gaining more from the exchange than they did far outweighs their concern that any award could damage the company."); *In re Gaming Lottery Securities Litigation*, 58 F. Supp. 2d 62, 70 (S.D.N.Y. 1999) (finding no conflict with in and out purchaser serving as representative for entire class); *Tracinda Corp. v. Daimler Chrysler AG*, 216 F.R.D. 291, 297 (D. Del. 2003) ("As for Defendants' argument that there is a conflict between equity plaintiffs and selling plaintiffs and retention plaintiffs and in/out plaintiffs, the Court concludes that such alleged conflicts are insufficient to preclude class certification. Defendants' argument that these conflicts are fatal to class certification is premised upon the decision of the Northern District of California in *In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341 (N.D. Cal. 1994). However, the rationale of the *Seagate* decision has been repeatedly rejected by courts in this Circuit.") (citations omitted).[12] Similarly, this Court should reject the retention/seller conflict as a basis to render a plaintiff inadequate.

---

[12] *See also In re Honeywell International Securities Litigation*, 211 F.R.D. 255, 261 (D.N.J. 2002) ("The Seagate II approach has been rejected by an overwhelming majority of courts") (citations omitted); *In re Gemstar-TV Guide International Litigation, Inc. Securities Litigation*, 209 F.R.D. 447, 453 (C.D. Cal. 2002) (rejecting argument that proposed lead plaintiff was atypical because it only held shares).

### C. The Brumbaugh Plaintiff Group's Selection of Counsel Should Be Approved

According to the PSLRA, lead plaintiff selects lead counsel subject to court approval. 15 U.S.C.§ 78u-4(a)(3)(B)(v). Here, the Brumbaugh Plaintiff Group has selected Schiffrin & Barroway, LLP to serve as lead counsel, a firm with tremendous experience prosecuting securities class actions, and Gilman and Pastor, LLP as liaison counsel to represent it and the Class. These firms are both well-qualified to fulfill counsel's responsibilities on behalf of the Class.[13]

### III. CONCLUSION

For the reasons stated herein, as well as in its initial submissions to the Court, the Brumbaugh Plaintiff Group respectfully requests that this Court: (i) consolidate the above-captioned, and all subsequently-filed, related actions; (ii) appoint the Brumbaugh Plaintiff Group as Lead Plaintiff in this action; (iii) approve Schiffrin & Barroway, LLP as Lead Counsel to represent the Class; and (iv) approve Gilman and Pastor, LLP as Liaison Counsel for the Class.

---

[13] Defendants claim (without citation) that Gilman and Pastor, LLP is disqualified from serving as liaison counsel because they filed lead counsel motions on behalf of three separate movant groups. Yet, courts have repeatedly rejected this argument under identical circumstances. *Singer v. Nicor*, No. 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at *12 (N.D. Ill. 2002) ("the mere fact that two candidates for lead plaintiff used the same local counsel is insufficient to warrant a finding of a conflict of interest"); *Vangsgard v. Ariba, Inc., et al.,* No. C-03-00277 JF (N.D. Cal. 2003), slip op. at 10 (same) (attached as Exhibit C to the Lagorio Dec.). Nevertheless, the Gabriele Group has secured new liaison counsel and the Rapp Group (who did not file an opposition brief) has indicated to counsel for the Brumbaugh Plaintiff Group that they will secure new liaison counsel if the Court so desires.

Dated: April 28, 2004

        Respectfully submitted,

        **GILMAN AND PASTOR, LLP**

        By:    /s/Peter A. Lagorio
               David Pastor (BBO # 391000)
               Peter A. Lagorio (BBO # 567379)
               Stonehill Corporate Center
               999 Broadway, Suite 500
               Saugus, MA 01906
               Telephone:   (781) 231-7850
               Facsimile:     (781) 231-7840

        **[Proposed] Liaison Counsel**

        **SCHIFFRIN & BARROWAY, LLP**
        Andrew L. Barroway
        Stuart L. Berman
        Darren J. Check
        Sean M. Handler
        Three Bala Plaza East, Suite 400
        Bala Cynwyd, PA  19004
        Telephone:   (610) 667-7706
        Facsimile:     (610) 667-7056

        **[Proposed] Lead Counsel**