IN THE UNITED STATES DISTRICT COURT

CENTRAL DIVISION, DISTRICT OF UTAH

| | |
|---|---|
| RICHARD MEYER, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:03-CV-448 TC |
| Plaintiff, | ORDER REGARDING PLAINTIFFS' RESPECTIVE COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFFS AND LEAD COUNSEL |
| vs. | |
| PARADIGM MEDICAL INDUSTRIES, THOMAS MOTTER, MARK MIEHLE, and JOHN HEMMER | JUDGE TENA CAMPBELL |
| Defendants. | MAGISTRATE JUDGE BROOKE C. WELLS |

This matter came before Magistrate Brooke Wells from a referral by District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(A). The Court heard argument on Plaintiffs' motions to consolidate cases and their respective motions for appointment of lead Plaintiff(s) and appointment of lead counsel on November 18, 2003. The Court granted the motions to consolidate cases 2:03cv513 and 2:03cv617 with this case 2:03-cv-448.



EXHIBIT A

Now before the Court are the remaining motions of five competing Plaintiff groups for appointment as lead Plaintiff(s) and for approval of lead counsel. These groups are the Butler Group, Imperial Group, Pacino Group, Rock Solid Group and finally a group consisting of both the Imperial and Butler Groups (Imperial-Butler Group).[1] Following the hearing, the parties filed additional memoranda with the Court. The Court having heard oral argument, having read the parties memoranda, and having considered pertinent case law enters the following Order.

## BACKGROUND

This is a securities fraud action brought on behalf of a class of Plaintiffs who acquired the common stock of Paradigm Medical Industries (Paradigm) during the class period. Plaintiffs allege violations of the securities laws and bring this action pursuant to the Securities Exchange Act of 1934 and under the Private Securities Litigation Reform Act of 1995

---

[1] The Court refers to all competing Plaintiffs as groups although the Imperial Group consists of one entity Imperial Trading Corporation. On the date of the hearing, the Butler Group and Imperial Group filed a "Joint Supplemental Submission" in which they argued that "if the Court determines that it is appropriate to appoint a group of proposed lead plaintiffs" the Court should choose the Imperial-Butler Group because they would be the most adequate plaintiff under the Private Securities Litigation Reform Act. Joint Supp. Submission p. 1. The Imperial-Butler Group therefore becomes the last group seeking certification as lead Plaintiff. If appointed, they in essence would become "co-lead plaintiffs." Id. at 2.

2

(PSLRA). Allegedly Paradigm made false representations in filings with the SEC and in public releases that artificially inflated their stock price. These false representations included statements that a medical device developed by Paradigm received a Common Procedure Terminology (CPT) code used by doctors for billing and reimbursement. According to Plaintiffs, however, Paradigm never received a CPT code.

## DISCUSSION

I. Lead Plaintiff

In selecting the most adequate plaintiff the PSLRA states in relevant part:

> the court shall adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that-- (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (a)(i); (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. § 78u-4(a)(3)(B)(iii)(I) (1997). This presumption "may be rebutted only upon proof . . . that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses

3

that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II). Accordingly, "[a]ll else equal, the PSLRA requires that a court appoint as lead plaintiff the 'person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class.'" In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 350 (S.D. Cal. 1998) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) (alteration in original).

The Court notes at the outset that under the PSLRA the plaintiff who files the initial action must publish notice to the class within 20 days of filing the action. See 15 U.S.C. § 78u-4(a)(3)(A)(i). This was done by Plaintiff Richard Meyer when notice was published on the Market Wire on May 14, 2003. Following publication, any person or group of persons who are members of the proposed class can within 60 days of publication "move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Butler Group, Imperial Group, Pacino Group, Rock Solid Group and Imperial-Butler Group have all met this requirement by moving the Court for lead plaintiff status within the 60 day time frame.[2]

When there is more than one group of plaintiffs asserting

---

[2] Lidia Milian, Plaintiff in case 2:03cv617, failed to move the court for selection as lead Plaintiff by the required date. Accordingly, she cannot serve as lead Plaintiff in this action.

4

essentially the same claims under the PSLRA, as in the instant case, a court should first consolidate the actions. See 15 U.S.C. § 78u-4(a)(3)(A)(i). This was done previously by the Court at the hearing on November 18, 2003. Next, a court should "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C § 78u-4(a)(3)(B)(i). In its determination of lead plaintiff a court is to consider Rule 23(a). See In re Ribozyme Pharmaceuticals Sec. Litig., 192 F.R.D. 656, 658 (D. Colo. 2000).

Under Rule 23(a) a plaintiff may sue as a class representative if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed R. Civ. P. 23(a). For the purposes of a motion for appointment of lead plaintiff under Rule 23, it is proper to limit a court's inquiry into the final two prongs of Rule 23(a), typicality and adequacy. See In re Ribozyme, 192 F.R.D. at 658-59. After the selected lead plaintiff moves for class certification, then a court is to engage in a more thorough

5

analysis of the other requirements for class certification. See id.

Typicality exists where the "injury and the conduct are sufficiently similar." Adamson v. Bowne, 855 F.2d 668, 676 (10th Cir. 1988). Furthermore, a difference in the factual situations of class members per se, does not defeat typicality under Rule 23(a)(3). See id. This is true as long as the claims of class representatives and other class members are based on the same legal or remedial theory. See id. All purported lead Plaintiff groups satisfy this requirement because, just like the other class members, they (1) purchased Paradigm stock during the relevant period; (2) at prices they allege were inflated due to Paradigm's misrepresentations; and (3) they all allegedly suffered damages. See In re Ribozyme, 192 F.R.D. at 658. The claims made by the competing groups are typical of those in the rest of the class. Therefore, the Court finds that all the Plaintiff groups have met the requirement of Rule 23(a)(3).

Under Rule 23(a)(4) "the representative parties [must] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The PSLRA directs courts to limit [their] inquiry regarding adequacy to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class." In re Ribozyme, 192 F.R.D. at 659. This standard under Rule 23(a)(4) is met by fulfilling two

6

requirements. First, there must be an absence of potential conflict between the named plaintiffs and other class members. See id. Second, the counsel chosen by the representative party must be "qualified, experienced and able to vigorously conduct the proposed litigation." Id. Based on the Court's reading of the memoranda and the case record, all Plaintiff groups are adequate representatives of the class. There is no evidence of a conflict between the groups and other class members and all groups have retained experienced counsel that will "vigorously conduct the litigation." Id. Therefore, the Court finds that all the Plaintiff groups have met the requirement of Rule 23(a)(4).

A. Aggregation

The central issue in this case concerns whether "a group of persons may combine their losses to create 'the largest financial interest' for purposes of the PSLRA." In re Ribozyme, 192 F.R.D. at 659 (quoting In re Advanced Tissue, 184 F.R.D. at 350). "[T]he majority of courts confronted with this issue have permitted plaintiffs to aggregate their losses for purposes of the lead plaintiff determination." In re Advanced Tissue, 184 F.R.D. at 350. However, "[c]ourts have ruled that counsel may not aggregate large groups of class members in order to form a group with the largest financial interest." In re Ribozyme, 192 F.R.D. at 659; see e.g., Yousefi v. Lockheed Martin Crop., 70 F.

Supp. 2d 1061, 1068 (C.D. Cal. 1999) (finding that aggregating a class of members consisting of "three named plaintiffs and 134 unrelated class members" improper under PSLRA); In re BAAN Co. Sec. Litig., 186 F.R.D. 214, 217 (D.D.C. 1999) ("The Lead Plaintiff decision should be made under a rule of reason but in most cases there should be the initial target, with five or six the upper limit."). In most cases "when courts appoint multiple class members as lead plaintiffs, they typically appoint less than ten plaintiffs." Id.; see, e.g., In re Advanced Tissue, 184 F.R.D. at 353 (allowing the aggregation of six plaintiffs); In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 45-48 (S.D.N.Y. 1998) (appointing three plaintiffs as lead plaintiffs); Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 409 (D. Minn. 1998) (aggregating six plaintiffs).

Based on the foregoing, the Court finds that it is appropriate for Plaintiffs to aggregate losses in this case. Such a finding appears consistent with the majority of courts and the most relevant 10th Circuit case law. See Martin v. Atchison Casting Corp., 200 F.R.D. 453, 456 (D. Kan. 2001) (stating that "[a] majority of courts . . . have allowed the appointment of a group of plaintiffs as lead plaintiffs"); In re Ribozyme, 192 F.R.D. at 659 (stating that "a group of persons may combine their losses to create 'the largest financial interest' for purposes of the PSLRA") (citation omitted).

8

The Court further finds it proper to "consider legislative intent in deciding who to appoint as lead plaintiff." Martin, 200 F.R.D. at 456. Congress noted that one of the reasons for enacting the PSLRA was to help prevent lawyer controlled litigation. See Senate Report No 104-98, 104th Congress, reprinted in 1995 U.S.C.C.A.N. 679, 687-90. Congress believed that lawyers were often filing frivolous actions on behalf of nominally interested plaintiffs in hopes of obtaining a quick settlement. See id. To help prevent lawyers from doing this Congress sought to "empower investors so that they, not their lawyers, control securities litigation." Id. at 685. This was done by transferring "primary control of private securities litigation from lawyers [back] to investors." Id. A court, therefore, should be careful to not allow "[a]ggregation solely for the purpose of creating a group that would have the 'largest financial interest in the relief sought by the class' [as that] would seem to contravene the PSLRA's purpose of shifting control of the litigation from the lawyers to the investors." Wenderhold v. Cylink Corp., 188 F.R.D. 577, 586 (N.D. Cal. 1999).

In the instant case, the Imperial Group and Butler Group filed a Joint Supplemental Submission on November 18, 2003, the date of the Court's hearing. Rock Solid argues in its memorandum filed pursuant to the Court's directive that the Joint Supplemental Submission is untimely and contrary to local Rule 5-

9

1(b).[3]  Therefore, it should be rejected.  See Rock Solid's Memorandum Filed Pursuant to the Court's Directive p. 4.  The Court disagrees.  The Joint Supplemental Submission was accepted by the Court and Rock Solid was given an opportunity to respond.  Contrary to Rock Solid's assertions there was no prejudice to any party because all parties were given an opportunity to fully respond to the new positions taken by Imperial and Butler in their Joint Supplemental Submission.  Accordingly, the Court rejects Rock Solid's arguments and considers the Joint Supplemental Submission in its decision.

The PSLRA directs that a "court shall adopt a presumption that the most adequate plaintiff . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Pacino Group has losses of $235,864.  See Pacino Group's Mem. In Support p. 9-10.  This amount is less than the other competing groups.  Therefore, the Court finds that the Pacino Group should not be appointed lead Plaintiff.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In similar fashion, the Court also rejects the appointment of the Butler Group because they have $262,822 in alleged losses.

---

[3] Utah local rule of practice 5-1(b) states that "[u]nless otherwise directed by the court, all documents pertaining to a court proceeding must be filed with the clerk a minimum of two (2) business days before the scheduled proceeding."  Id. (emphasis omitted).

See Butler Group's Mem. In Support p. 8. This amount is less than some of the other competing groups. Accordingly, the Court finds that the Butler group should not be appointed lead Plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In their Joint Supplemental Submission, Butler argues that Imperial "is the most adequate plaintiff [because] [w]ith estimated losses of over $360,000, Imperial appears to be the individual proposed lead plaintiff with by far the largest estimated losses." Joint Supp. Submission p. 1. While the Court agrees that Imperial appears to be the single party with the largest losses, Imperial's losses alone are not more than Rock Solid's losses. Therefore, based on the appropriateness of aggregation, see supra, the Court rejects Imperial as lead Plaintiff.

In their supplemental submission, Imperial and Butler further argue that they should be appointed co-lead plaintiffs if the "Court determines that it is appropriate to appoint a group of proposed lead plaintiffs." Joint Supp. Submission p. 1. Combined, the newly formed Imperial-Butler group has "aggregate losses of over $584,000," which is more than Rock Solid's losses of $490,000. Separately, however, Imperial and Butler have losses less than Rock Solid with the Imperial Group suffering $360,833 in losses and the Butler Group alleging $262,822 in

11

losses.[4]

Although the Imperial-Butler Group has the largest alleged losses, the Court finds that the formation of this group was an eleventh-hour attempt by unrelated parties to aggregate solely for the purpose of creating a group that would have the largest financial interest in the litigation. See Wenderhold, 188 F.R.D. at 586. Allowing the aggregation of this group "would . . . contravene the PSLRA's purpose of shifting control of the litigation from the lawyers to the investors," id., and is against the Congressional intent behind the enactment of the PSLRA. See Senate Report No 104-98, 104th Congress, reprinted in 1995 U.S.C.C.A.N. 679, 687-90.

Many courts have relied on the Congressional intent behind the PSLRA in rejecting groups created solely for the purpose of creating a group with the largest financial losses. For example, the court in In re Donnkenny, Inc. Sec. Litg., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) rejected a proposal to appoint as lead plaintiffs two unrelated institutional investors and four other individual class members. See id. at 157. The court held that aggregation would defeat the purposes of the PSLRA because it would "allow and encourage lawyers to direct the litigation."

---

[4] The figures used by the Court are taken from the respective parties memoranda. See Joint Supp. Submission p. 1; Rock Solid's Mem. In Support p. 7; Imperial's Mem. In Support p. 7; Butler Group's Mem. In Support p. 8.

12

Id. at 158. Although the Donnkenny court appears to have wholeheartedly rejected aggregation, see id, the court's reliance on the intent behind the PSLRA as a basis for its decision is consistent with other courts. See In re Razorfish Inc. Sec. Litig., 143 F. Supp.2d 304, 308-09 (S.D.N.Y. 2001) (rejecting a group of unrelated investors because appointing them would be against the intent of the PSLRA); In re Century Bus. Servs. Sec. Litig., 202 F.R.D. 532, 541 (D. Ohio 2001) (rejecting the appointment of a co-lead plaintiff structure that thwarted the goals of the PSLRA); In re Advanced Tissue, 184 F.R.D. at 352 (finding that the approval of a large group of unrelated investors "would subvert the legislative intent behind the PSLRA"); Ravens v. Iftikar, 174 F.R.D. 651, 654 (N.D. Cal. 1997) (explaining that the intent of Congress was "to eliminate figurehead plaintiffs who exercise no meaningful supervision of the litigation").

In the instant case, one institutional investor, Imperial, and four individual investors, the Butler Group, sought to form a new group on the eve of the Court's hearing. These parties are not related and have shown no real indications of cooperation such as conference calls or shared strategies about how to pursue the litigation prior to their last minute decision to combine. Appointing the Imperial-Butler Group as lead Plaintiffs after their last minute formation would defeat the purposes of the

13

PSLRA. See Wenderhold, 188 F.R.D. at 586; see also In re Oxford Health Plans, Inc. Sec. Litg., 182 F.R.D. at 49 ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case."). Allowing the appointment of the Imperial-Butler Group may also encourage other groups to combine on the eve of a court's decision simply for the purposes of becoming the group with the largest estimated losses. Such a situation should be avoided because Congress intended that the lead plaintiff should seek the lawyers, rather than having the lawyers seek a lead plaintiff, especially at the eleventh-hour. See H.R. Conf. Rep. No. 104-369, at 31-35 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 730-34.

In contrast, although the Rock Solid Group contains some unrelated parties, they have sought to work together and pursue the litigation as a team long before the hearing date. Such a course of action in demonstrating cooperation before the eleventh-hour appears much more consistent with the intent of the PSLRA. See id. Because the Rock Solid Group has the largest amount of losses, the Court finds that the Rock Solid Group should be given the presumption as the most adequate plaintiff. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

14

B.   **Unique Defenses**

The presumption of the most adequate plaintiff can be rebutted by "proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff -- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

At the hearing, Imperial argued that Rock Solid was inadequate because Brito & Brito and Rock Solid Investments, both members of the Rock Solid Group, are "inactive" and therefore subject to unique defenses. After a reading of the record, the Court finds this argument to be unsubstantiated. None of the competing groups offer "proof" to rebut the presumption the Court gives under the PSLRA to the Rock Solid Group. Therefore, the Court finds that the Rock Solid Group does not lose its presumption as lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

C.   **Selection of Lead Counsel**

Finally, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the group appointed as lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class. See id. The Rock Solid Group has selected Milberg Weiss and Rabin

15

Murray & Frank to serve as Lead Counsel and Anderson & Karrenberg to serve as Liaison Counsel. See Rock Solid's Mem. in Support p. 10. These firms have expertise in the prosecution of shareholder and securities class actions and are adequate to serve the interests of the class. The Court, however, is somewhat concerned by the possibility of double billings and the duplication of efforts by co-lead counsel. As other courts have recognized, the approval of co-lead counsel raises the specter of "duplicative services and a concomitant increase in attorneys' fees" charged to the plaintiff class." In re Milestone Scientific Secs. Lit., 183 F.R.D. 404, 418 (D.N.J. 1998).

The PSLRA expressly limits the payment of attorneys' fees and expenses to no more than "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 78u-4(a)(6) (1997). Milberg Weiss, Rabin Murray & Frank, and Anderson & Karrenberg are hereby placed on notice that the Court will not approve any fees and expenses that reflect duplication, inefficiency, or costs incurred from failing to coordinate efforts in pursuit of this litigation. The firms are to closely coordinate their efforts and will be subject to further review by the Court if necessary to prevent any inappropriate billing of the Plaintiff class.

16

## CONCLUSION

For the foregoing reasons:

The motion by the Rock Solid Group to be appointed lead Plaintiff is GRANTED. The motions of the Butler Group, Imperial Group, Pacino Group and Imperial-Butler Group are HEREBY DENIED. The motion by the Rock Solid Group for the appointment of counsel is GRANTED. The other group's respective motions for appointment of counsel are DENIED.

DATED this 27th day of February, 2004.

BY THE COURT:

BROOKE C. WELLS
United States Magistrate Judge

17