NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| GERALD E. VANGSGARD, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARIBA, INC., et al.,<br><br>Defendants. | Case Number C-03-00277 JF<br><br>ORDER[1] CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL |
| AND RELATED ACTIONS | |

On May 12, 2003, the Court heard argument regarding motions for consolidation of the related actions, appointment of lead plaintiff, and approval of lead plaintiff's counsel. The Court has read and considered the briefing submitted by the parties. For the reasons set forth below, the Court will consolidate the related actions, appoint Aletti Gestielle SGR, s.p.a. as lead plaintiff, and approve the law firm of Schiffrin & Barroway, LLP as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel.

---

[1] This disposition is not designated for publication.

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

## I. BACKGROUND

Before the Court are twelve related class action lawsuits, including the above-entitled action, asserting claims against Defendant Ariba, Inc. ("Ariba") and certain of its directors and officers for securities fraud pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.* ("the Exchange Act"), and Rule 10b-5 promulgated thereunder. The lawsuits at issue were filed on behalf of a class of investors who purchased or otherwise acquired securities of Ariba during the period from January 11, 2000 to January 15, 2003, inclusive. The plaintiffs in each of these lawsuits allege that beginning on January 11, 2000 and continuing through at least late 2001, Defendants made false and misleading statements about Ariba's revenues, business prospects and financial condition which had the effect of artificially inflating the price of Ariba securities.

Several plaintiffs have moved for consolidation of the related actions. In addition, six plaintiffs or groups of plaintiffs timely filed motions seeking appointment as lead plaintiff and approval of lead plaintiff's counsel; four of those plaintiffs or groups of plaintiffs subsequently withdrew their motions.[2] The only two applicants for appointment as lead plaintiff who remain are Aletti Gestielle SGR, s.p.a., and a group of three carpenters' pension funds. The Court will address the pending motions as follows.

## II. DISCUSSION

**A. Legal Standard**

The Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67 ("PSLRA"), establishes a two-step process for resolving motions to consolidate and motions for appointment of lead plaintiff when multiple actions on behalf of a putative class assert substantially the same claims under the Exchange Act. To wit, the Court must resolve any motions to consolidate prior to considering the issue of appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). "[A]s soon as practicable" after the Court decides whether to consolidate the actions, it then "shall appoint the most adequate plaintiff as

---

[2] Motions seeking appointment as lead plaintiff and approval of lead plaintiff's counsel filed by Edward R. Taddia and Ellen G. Taddia, Sam Haddad, the McKuin Plaintiffs, and Herschel Potts and Clifford Ardito were withdrawn prior to the May 12, 2003 hearing.

2

lead plaintiff" for the litigation. *Id*. The party chosen as lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

**B. Consolidation**

Federal Rule of Civil Procedure 42(a) permits consolidation of "actions involving a common question of law or fact." FED. R. CIV. P. 42(a). "The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. United States Dist. Ct.*, 877 F.2d 777, 777 (9th Cir. 1989).

The moving parties seek consolidation of the twelve related actions before the Court.[3] Defendants support consolidation and no other party to these proceedings has objected to such consolidation. The actions present the same or substantially similar factual and legal issues and assert the same claims against common defendants. Under these circumstances, the Court concludes that consolidation will promote judicial efficiency and avoid unnecessary duplication and expense. Accordingly, the Court will consolidate the twelve related actions for all purposes, including trial.

The Court has approved a modified version of the proposed Order Granting Plaintiff Aletti Gestielle SGR, S.P.A.'s Motion to Consolidate All Related Actions for All Purposes, which is being issued in conjunction with this Order. This proposed order lists all the lawsuits to be consolidated and

---

[3] The eleven actions related to the above-entitled action are: *Monzo, et al. v. Ariba, Inc., et al*, No. C-03-00335 JF; *Lapin v. Ariba, Inc., et al.*, No. C-03-00340 JF, *Azvalinsky v. Ariba, Inc, et al.*, No. C-03-00350 JF; *Dabrowski v. Ariba, Inc., et al.*, No. C-03-00386 JF; *Stagliano, et al. v. Ariba, Inc., et al.*, No. C-03-00404 JF; *Kim v. Ariba, Inc., et al.*, No. C-03-00417 JF; *Meisel v. Ariba, Inc., et al.*, No. C-03-00441 JF; *Gross v. Ariba, Inc., et al.*, No. C-03-00451 JF; *LNCY Park Rite, Inc. v. Ariba, Inc., et al.*, No. C-03-00454 JF; *Kraus v. Ariba, Inc., et al.*, No. C-03-00560 JF; and *Becht v. Ariba, Inc., et al.*, No. C-03-00616 JF.

In addition, two derivative actions (*Bernhardt v. Krach, et al.*, No. C-03-02172 JF, and *Cypcar v. Krach, et al.*, No. C-03-02399 JF) that are related to this action have been consolidated as *In re Ariba, Inc. Derivative Litigation*, No. C-03-2172 JF. This order does not affect the derivative litigation.

3

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

1  provides for the handling of any later-filed cases.[4]

2

3  **C. Appointment of Lead Plaintiff**

4  The PSLRA requires that the Court "appoint as lead plaintiff the member or members of the

5  purported plaintiff class that the court determines to be most capable of adequately representing the

6  interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). "In making this determination, the court is

7  to apply a rebuttable presumption that the most adequate plaintiff is the applicant who has the largest

8  financial interest in the relief sought and otherwise meets the requirements of Rule 23 of the Federal

9  Rules of Civil Procedure." *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215,

10 1217-18 (9th Cir. 2000). This presumption may be rebutted by evidence that the applicant: (1) will not

11 fairly and adequately protect the interests of the class; or (2) is subject to unique defenses. *Id.* (citing

12 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

13 Six plaintiffs or groups of plaintiffs have filed motions seeking appointment as lead plaintiff in this

14 litigation, four of whom subsequently withdrew their motions. The only two applicants for appointment

15 as lead plaintiff who remain are an Italian investment fund, Aletti Gestielle SGR, s.p.a. ("Aletti"), and a

16 group of three carpenters' pension funds comprised of the Massachusetts State Carpenters Pension

17 Fund, the Massachusetts State Guaranteed Annuity Fund, and the United Brotherhood of Carpenters

18 Pension Fund (collectively "the Carpenters Group").

19 **1. Appropriateness of Group Plaintiff**

20 The PSLRA provides explicitly that a "member or members" of the putative class or a "person

21 or group of persons" may be the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(I), (B)(iii)(I).

22 The Court first must determine whether the Carpenters Group, which claims combined losses of more

23 ---

24 [4] The moving parties request that the Court order the preservation of documents related to this
25 litigation. Defendants object on the ground that such an order is unnecessary and inappropriate in light of the parties' obligations under the law. The Court agrees with the moving parties that counsel for the
26 parties should notify their clients of their document preservation obligations pursuant to the federal
27 securities laws and the local rules. In all other respects, however, the Court denies the moving parties' request.

28

4

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

than $2.3 million, is the type of group that is appropriate for appointment as lead plaintiff under the PSLRA.  In other words, can the losses of the individual plaintiffs that comprise the Carpenters Group be aggregated into group losses to create a lead plaintiff group?  Despite the Carpenters Group's assertions to the contrary, Aletti contends that the Carpenters Group is an unrelated group of investors that was assembled solely for this litigation.

Several courts in this district have considered what type of group is appropriate for appointment as lead plaintiff under the PSLRA.  In *Aronson v. McKesson HBOC, Inc*., 79 F.Supp.2d 1146 (N.D. Cal. 1999), the court adopted a narrow view of the term "group" that forbids aggregation of unrelated plaintiffs.  *Id*. at 1153.  Under that definition, an acceptable group "has a meaningful relationship preceding the litigation, and is unified by more than the mere happenstance of having bought the same securities."  *Id*.  In *In re Network Associates, Inc. Sec. Litig*., 76 F.Supp.2d 1017 (N.D. Cal. 1999), the court adopted a similarly narrow view of the term "group."  *Id*. at 1023-27.  And in *In re Critical Path, Inc. Sec. Litig*., 156 F.Supp.2d 1102 (N.D. Cal. 2001), the court held that a group is unacceptable "unless its members have a relationship that predates the litigation."  *Id*. at 1111.

The undersigned considered the same issue in *Bowman v. Legato*, 195 F.R.D. 655 (N.D. Cal. 2000), where a group of investors sought appointment as lead plaintiff.  This Court agreed with the holdings of *McKesson* and *Network Associates* that "the phrases 'members' and 'group of persons' must be read in the context of the overall scheme and purpose of the [PSLRA]," and noted that "[i]t is beyond dispute that one of the [PSLRA's] primary purposes was to eradicate lawyer-driven securities-fraud class actions."  *Id*. at 658.  The Court found that the group proposed as lead plaintiff, which was comprised of two institutional investors and four individuals, was not an appropriate group within the meaning of the PSLRA because its members had no meaningful pre-existing relationship and it "was solicited and created by the Milberg [Weiss] firm solely for the purpose of obtaining appointment as lead plaintiff."  *Id*.

The Carpenters Group notes that in *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001), the court adopted a less strict definition of "group."  In *Versata*, the court held that "[r]equiring a pre-litigation relationship, though appealing in its simplicity, is

5

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

too rigid" and that "under appropriate circumstances small groups, whether or not they have any pre-litigation relationship" may aggregate their financial losses. *Id*. at *5. The Carpenters Group relies on *Steiner v. Aurora Foods, Inc*., No. 00-CV-602, 2000 WL 33911305 (N.D. Cal. June 5, 2000), where the court appointed as lead plaintiff a group of four investors that included three institutional investors. *Id*. at *1, *3. However, it is unclear from that decision whether there was a pre-litigation relationship between the members of the group appointed as lead plaintiff. The Carpenters Group also relies on an unpublished decision in *Weisz v. Calpine Corp*., No C-02-1200 SBA (N.D. Cal. Aug. 19, 2002), Ex. A to Declaration of Dennis J. Herman in support of the Carpenter Group's reply, in which the court appointed as co-lead plaintiffs an institutional investor and an individual investor. In that case, however, both of the plaintiffs had requested appointment as sole lead plaintiff; the court appointed co-lead plaintiffs because it found none of the lead plaintiff applicants to be satisfactory. *Id*. at 8-13.

As it did in *Bowman*, this Court adopts the narrower view of the term "group" as articulated in *McKesson* and *Network Associates*: a group is unacceptable unless its members had a meaningful relationship preceding the litigation. Here, the Carpenters Group is comprised of the Massachusetts State Carpenters Pension Fund, the Massachusetts State Guaranteed Annuity Fund, and the United Brotherhood of Carpenters Pension Fund. The two Massachusetts funds manage pension and annuity funds for the benefit of carpenter union members in New England; the United Brotherhood of Carpenters Fund is a national fund that was established for the benefit of the officers and representatives of the union and its affiliates. The two Massachusetts funds are managed by the same board of trustees, which includes nine representatives who are beneficiaries of the national fund. Carpenter union members are eligible to participate in both Massachusetts funds and may transfer their retirement assets between the two funds. In addition, the Massachusetts funds and the national fund had a pre-existing relationship with the international carpenters union. It is clear that the two Massachusetts funds had a substantial pre-existing relationship and they have, in fact, previously sought to serve as lead plaintiff in other securities fraud class action litigation. The relationship between the two Massachusetts funds and the national fund is more attenuated. Nonetheless, the Court finds and

6

concludes that the Carpenters Group is a small, cohesive group of related institutional investors and that its members had a sufficiently well-established pre-litigation relationship. It thus is an appropriate group for appointment as lead plaintiff within the meaning of the PSLRA.

**2. Calculation of Largest Financial Interest**

Aletti and the Carpenters Group dispute the appropriate methodology to use in calculating financial losses. In its moving papers, Aletti claimed losses in the amount of $4,782,768.00. Aletti's original loss calculation, however, erroneously included one purchase transaction of 20,000 shares on January 4, 2000 that occurred before the start of the class period. *See* Ariba, Inc. Estimated Losses, Ex. C to Declaration of Sean M. Handler in support of Aletti's motion. In its reply brief, Aletti revised its loss calculation by excluding the transaction at issue, amending its claimed losses to $4,914,294.01, an increase of more than $130,000.00. Aletti arrived at this revised figure by eliminating from its loss calculation the January 4, 2000 purchase transaction, for which it claimed a cost of $3,770,032.00, as well as its first two class period sales transactions. *See* Amended Ariba, Inc. Estimated Losses, Ex. A to Declaration of Sean M. Handler in support of Aletti's reply. Those sales transactions, which occurred on March 31, 2000 and April 3, 2000, resulted in sales of 15,000 shares for $2,966,526.15 and 10,000 shares for $935,031.80, respectively. *Id*. Although Aletti's papers do not make clear what methodology it used to calculate its losses, it clarified at oral argument that it used the first-in, first-out ("FIFO") methodology to cancel the effect of the January 4, 2000 purchase transaction with its first two class period sales transactions. Aletti claims such accounting, which results in estimated losses of more than $4.9 million, is appropriate because it held no shares before January 4, 2000.

FIFO methodology, which chronologically matches specific purchases of stock with specific sales of stock, is an accepted accounting approach for calculating losses. *See Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998); *In re Chipcom Corp.*, 1997 WL 1102329, *24 (D. Mass. June 26, 1997). Aletti asserts that FIFO methodology is the most accurate means of estimating losses based on damages shares because it held a significant number of shares before the start of the class period.

Although the Carpenters Group does not dispute the accuracy of Aletti's revised loss

7

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

1. calculation using FIFO methodology, it contends that Aletti did not use such methodology properly when it prepared its original loss calculation, and that the Court should not consider Aletti's revised loss calculation. The Carpenters Group contends that Aletti's estimated losses should be determined by calculating the number of net shares purchased during the class period. In *Network Associates*, the court held that the best approximation of each lead plaintiff applicant's financial interest in the relief sought was the number of net shares purchased during the class period, i.e., the number of shares sold during class period subtracted from the number of shares purchased during class period. 76 F.Supp.2d at 1027. Aletti does not dispute that if this net share methodology is applied, its claimed losses are only $1,109,536.00.[5] This appears to be the same methodology used by the Carpenters Group to estimate its losses. *See* Movants' Purchases and Losses and Certification of Named Plaintiffs, Exs. A and B to Declaration of Dennis J. Herman in support of the Carpenters Group's motion. The losses sustained by the Carpenters Group calculated using the net share methodology – $2,383,256.00 – is the sum of the losses of the three funds: Massachusetts State Carpenters Pension Fund $975,479.00; Massachusetts State Guaranteed Annuity Fund $474,472.00; and United Brotherhood of Carpenters Pension Fund $933,305.00.

After consideration of the circumstances and the class period trading activity of the lead plaintiff applicants, the Court concludes that FIFO methodology is the best approximation of estimated losses here. As discussed above, Aletti held 20,000 shares before the start of the class period. FIFO methodology dictates that the proceeds from the first 20,000 shares sold by Aletti during the class period be excluded from the loss calculation to cancel the effect of the January 4, 2000 purchase transaction. In its amended loss calculation, Aletti has in fact excluded the first *25,000* shares sold rather than the first 20,000 shares. This error does not prejudice the Carpenters Group, however, as it only decreases the amount of losses sustained by Aletti. The Court concludes that the best approximation of Aletti's claimed losses is $4,914,294.01.

---

[5] This amount is calculated by subtracting the cost of the January 4, 2000 purchase transaction ($3,770,032.00) from Aletti's original loss calculation ($4,782,768.00).

8

It appears from the information submitted by the Carpenters Group that only the national fund held any shares before the start of the class period. Because it held 1,000 shares before the start of the class period, FIFO methodology dictates that the proceeds from the first 1,000 shares sold by the national fund during the class period be excluded from the loss calculation. The national fund's only class period activity was one purchase transaction of 7,300 shares on July 20, 2000 and one sales transaction of 7,300 shares on April 11, 2001. Exclusion of 1,000 shares sold on April 11, 2001 increases the national fund's estimated losses by $5,800.00. The Court thus concludes that the best approximation of the Carpenter Group's claimed losses is $2,389,056.00. Because it has the largest financial interest in the relief sought and otherwise satisfies the requirements of Federal Rule of Civil Procedure 23, Aletti is presumptively the most adequate lead plaintiff.[6] The Court next considers whether the evidence before it is sufficient to rebut this presumption.

**3. Rebuttal of Most Adequate Lead Plaintiff Presumption**

The Carpenters Group argues that Aletti's alleged failure to demonstrate its independence from counsel renders it inadequate to represent the class. Aletti proposes the law firm of Schiffrin & Barroway, LLP as lead counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as liaison counsel. Kaplan also was proposed as liaison counsel for Herschel Potts and Clifford Ardito, which subsequently withdrew its application for lead plaintiff. The Carpenters Group claims that Kaplan has a conflict of interest because it submitted separate briefs in which it took conflicting positions that the Potts and Ardito group and Aletti each has the greatest financial stake and should be appointed lead plaintiff, and that Aletti is an inadequate lead plaintiff because it failed to prevent such behavior by its counsel. The Carpenters Group relies on two unpublished decisions in *In re S1 Corp. Sec. Litig.*, No. 1:00-CV-1156-BBM (N.D. Ga. Oct. 3, 2000, Oct. 26, 2000), Ex. A to Declaration of Dennis J. Herman in support of the Carpenters Group's combined opposition, in which the court disqualified a law firm that sought appointment as co-lead counsel for one lead plaintiff applicant and also sought

---

[6] Aletti contends that the Carpenters Group is subject to unique defenses and thus is not fit for appointment as lead plaintiff. In light of the Court's disposition of the pending motions, it need not address this issue.

9

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

appointment as local counsel for a different lead plaintiff applicant. Aletti argues that because the Potts and Ardito group withdrew its motion seeking appointment as lead plaintiff, Kaplan has no conflict of interest. Aletti also emphasizes that Kaplan is proposed liaison counsel, not lead counsel, and thus any conflict is immaterial. Aletti relies on *Singer v. Nicor*, No. 02 C 5168, 2002 WL 31356419 (N.D. Ill. Oct. 17, 2002), in which the court concluded that a lead plaintiff applicant's selection of local counsel who also served as local counsel for another lead plaintiff applicant did not disqualify the first lead plaintiff applicant. The situation here is more analogous to *Singer* because Kaplan originally was proposed as liaison counsel for two different lead plaintiff applicants. The Court finds that although Kaplan submitted briefs as liaison counsel on behalf of two separate lead plaintiff applicants, its conduct does not prevent Aletti from adequately representing the interests of the class.

The Carpenters Group also attacks Aletti as inadequate to represent the class as lead plaintiff because it is a foreign entity that does not have an office located in the United States, and because it is not part of a lead plaintiff applicant group that includes a domestic investor. The Carpenters Group contends that it will be difficult for Aletti to effectively coordinate and oversee this litigation. However, "[i]n light of today's travel and communication methods, the geographical location of [foreign lead plaintiff applicants] are irrelevant." *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) (rejecting challenge to lead plaintiff group applicant that included foreign investors). Aletti relies on *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D. N.Y. 2002), in which the court appointed as sole lead plaintiff a foreign institutional investor.[7] While the Court is aware that foreign investors typically have been appointed as lead plaintiffs as part of groups that include at least one domestic investor or when they have a significant domestic presence, there is no indication in the PSLRA that the mere fact that a foreign lead plaintiff applicant has no domestic presence renders it an

---

[7] Several other cases relied on by Aletti are distinguishable. In *Versata*, the court appointed as lead plaintiff a group of investors comprised of a Swiss investment firm, a Mexican investment firm with a California branch office, and an individual investor from California. Unlike Aletti, that group of investors had substantial domestic ties. In *Newman*, the court appointed as lead plaintiff a group that included two European banks. However, that group also included three individuals who appear to have been American investors.

10

inadequate lead plaintiff. The Court concludes that the Carpenters Group has failed to rebut the presumption that Aletti is the most adequate lead plaintiff. Accordingly, the Court will appoint Aletti as sole lead plaintiff in this consolidated action.

**D. Approval of Lead Plaintiffs' Counsel**

Aletti proposes the law firm of Schiffrin & Barroway, LLP as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel. Based upon the evidence in the record, the Court is satisfied that Aletti's choice of counsel is well qualified to represent the plaintiff class. Accordingly, Court will approve the law firm of Schiffrin & Barroway, LLP as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP as lead plaintiff's liaison counsel.

11

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

**V. DISPOSITION**

Good cause therefore appearing, IT IS HEREBY ORDERED that:

(1) The related actions[8] are consolidated into Case No. 03-00277 JF for all purposes, including trial. The docket in Case No. 03-00277 JF shall constitute the Master Docket for this litigation. The file in Case No. 03-00277 JF shall constitute the Master File for every action in the consolidated action and all documents shall be filed in Case No. 03-00277 JF;

(2) Aletti Gestielle SGR, S.P.A. is appointed lead plaintiff; and

(3) Lead plaintiff's choice of lead counsel and liaison counsel is approved. The law firm of Schiffrin & Barroway, LLP shall serve as lead plaintiff's counsel and the law firm of Kaplan Fox & Kilsheimer, LLP shall serve as lead plaintiff's liaison counsel. Lead counsel shall have the authority to speak for, and enter into agreements on behalf of, plaintiffs on all matters regarding this litigation including, but not limited to, pre-trial proceedings, discovery, and settlement negotiations. Lead counsel shall manage the prosecution of this litigation to avoid duplicative or unproductive activities. Lead counsel shall be responsible for coordination of all activities and appearances on behalf of plaintiffs and for dissemination of notices and orders. Lead counsel shall be responsible for communications with the Court. Defendants' counsel may rely upon agreements made with lead counsel and such agreements shall be binding on all plaintiffs.

As provided for in the Order Granting Plaintiff Aletti Gestielle SGR, S.P.A.'s Motion to Consolidate Related Actions, issued in conjunction with this order, lead plaintiff shall file and serve upon Defendants a single amended consolidated class action complaint within sixty (60) days of the date of this order. Defendants shall answer, move to dismiss, or otherwise respond to the amended

---

[8] The twelve related actions are: *Vangsgard v. Ariba, Inc., et al.*, No. C-03-00277 JF, *Monzo, et al. v. Ariba, Inc., et al*, No. C-03-00335 JF; *Lapin v. Ariba, Inc., et al.*, No. C-03-00340 JF, *Azvalinsky v. Ariba, Inc, et al.*, No. C-03-00350 JF; *Dabrowski v. Ariba, Inc., et al.*, No. C-03-00386 JF; *Stagliano, et al. v. Ariba, Inc., et al.*, No. C-03-00404 JF; *Kim v. Ariba, Inc., et al.*, No. C-03-00417 JF; *Meisel v. Ariba, Inc., et al.*, No. C-03-00441 JF; *Gross v. Ariba, Inc., et al.*, No. C-03-00451 JF; *LNCY Park Rite, Inc. v. Ariba, Inc., et al.*, No. C-03-00454 JF; *Kraus v. Ariba, Inc., et al.*, No. C-03-00560 JF; and *Becht v. Ariba, Inc., et al.*, No. C-03-00616 JF.

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

1  consolidated class action complaint within sixty (60) days after receipt of such complaint. Lead Plaintiff
2  shall file any opposition to a motion to dismiss filed by Defendants within sixty (60) days after such
3  motion is filed, and Defendants shall file any reply within forty-five (45) days after any opposition is
4  filed.

7  DATED: July 11, 2003

(electronic signature authorized)
_____
JEREMY FOGEL
United States District Judge

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD
PLAINTIFF'S COUNSEL
(JFLC3)

Copies of this Order have been served upon the following persons:

Randi D. Bandman
randib@mwbhl.com

Patrice L. Bishop
service@secfraud.com

Michael D. Braun
service@secfraud.com

Lionel Z. Glancy
info@glancylaw.com

Michael M. Goldberg
info@glancylaw.com

Robert S. Green
rsg@classcounsel.com CAND.USCOURTS@CLASSCOUNSEL.COM

Francis M. Gregorek
gregorek@whafh.com

Marc S. Henzel
mhenzel182@aol.com

Dennis J. Herman
dennish@mwbhl.com

Shirley H. Huang
shirleyh@mwbhl.com

Robert A. Jigarjian
raj@classcounsel.com CAND.USCOURTS@CLASSCOUNSEL.COM

Raymond A. Just
rjust@sherman.com cflood@shearman.com

Reed R. Kathrein
reedk@mwbhl.com

Bruce B. Kelson
bkelson@shearman.com cflood@shearman.com

Laurence D. King
lking@kaplanfox.com

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)

William S. Lerach
billl@mwbhl.com regank@mwbhl.com susannah@mwbhl.com

Betsy C. Manifold
manifold@whafh.com

Azra Z. Mehdi
azram@mwbhl.com azram@mwbhl.com

Behram V. Parekh
service@wyca.com

Darren J. Robbins
DRobbins@mwbhl.com

Glen W. Schofield
gschofield@rubyschofield.com bug@rubyschofield.com

David R. Scott
drscott@scott-scott.com

Kevin J. Yourman
service@wyca.com

Counsel for Lead Plaintiff are responsible for distributing copies of this Order to counsel of record who have not registered for electronic filing under the Court's Electronic Case File (ECF) program.

Case No. C-03-00277 JF
ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING LEAD PLAINTIFF, AND APPROVING LEAD PLAINTIFF'S COUNSEL
(JFLC3)