UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CANDY M. SOUSA, On Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WAVE SYSTEMS CORPORATION, et al.,<br><br>Defendants. | No. 04-30022-MAP<br><br><u>CLASS ACTION</u><br><br>RON ROGERS AND STEVE ALVAREZ'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFF |

Five groups have applied for appointment as lead plaintiff in this case:[1] Only the Trebitsch Group, the Brumbaugh Group, the Gabriele Group and defendants have filed opposition briefs to Rogers and Alvarez's motion. This reply brief is submitted to rebut these opposition briefs.

## I.    INTRODUCTION

The Trebitsch Group argues that Rogers and Alvarez's application is untimely because the application was made more than 60 days after the Trebitsch Group's initial case notice in *Barron's*. While it is true that pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), applicants have 60 days after publication of a widely circulated notice advising members of the class how and when to apply for the position of lead plaintiff, the Trebitsch Group's advertisement in *Barron's* was not effective notice. In particular, for a notice to be effective under the PSLRA, it must be "***widely-circulated***." Publications are not considered to be "widely circulated" where the notice is limited in circulation and not otherwise freely available. The tactic used here, avoiding national newswires in favor of a subscription-based publication, is improper and was just rejected last month where Judge Chasanow held that publication in *The New York Times* was insufficient to meet these requirements. *Haung v. Acterna Corp.*, Civil Action No. DKC 2003-1131, 2004 U.S. Dist. LEXIS 4309, at **8-9 (D. Md. March 18, 2004) ("*Acterna*") ("[T]he court is not satisfied that *The New York Times* meets the standards of the PSLRA.").

The Trebitsch Group had easy and inexpensive access to court-approved publications such as *Business Wire,* which would have provided nearly universal notice to potential applicants. *See also*

---

[1]    These groups are as follows: (1) Ron Rogers and Steve Alvarez (collectively, "Rogers and Alvarez"); (2) Anne Brumbaugh, Gary L. Harmon and Randy K. Griffin (collectively, the "Brumbaugh Group"); (3) Barry B. Stoddard and Victor Rapp (collectively, the "Stoddard Group"); (4) Marcello Trebitsch, Shala S. Naeini, Steven R. Clayton and Oldrich Dostalek (collectively, the "Trebitsch Group"); and (5) Martin H. Bohman, Seong Chen, Ernest Freiler, John Gabriele, Kan Lu, Abdel Kader Tahraoui and Bob Xiong (collectively, the "Gabriele Group").

*In re Cendant Corp. Litig.*, 264 F.3d 201, 261 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002) (finding that the PSLRA was designed "to ensure that institutional investors found out about pending class actions [through] meaningful notices ... sent out soon after the filing of a complaint"). Instead, the Trebitsch Group chose to use *Barron's*, a weekly publication that costs $3.50 per copy, and is delivered to only 14,621 residents in Massachusetts. Affidavit of Nancy Freeman Gans in Support of Ron Rogers and Steve Alvarez's Memorandum of Points and Authorities in Opposition to Competing Lead Plaintiff Motions ("Gans Opp. Aff."), Exhibit ("Ex.") B at 5. Indeed, two days after their *Barron's* ad ran, the Trebitsch Group republished an almost identical notice on the *PrimeZone Media Network* ("*PrimeZone*") wire service – but this time they did not provide any indication of either the former *Barron's* notice or of the date that a lead plaintiff application was due. Declaration of Aaron Brody in Support of the Motion of the Gabriele Proposed Lead Plaintiffs for Consolidation, Appointment as Lead Plaintiffs Pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 and Approval of Selection of Co-Lead and Liaison Counsel ("Brody N.J. Decl."), Ex A, filed on April 5, 2004, in *Trebitsch v. Wave Sys. Corp.*, Case No. 04-266 (JCL) (D.N.J.). Given the time and the significant difference in the notice, it is reasonable to conclude that the Trebitsch Group attempted to start the 60-day clock with a notice that it knew was ineffective and yet avoid that consequence by publishing an incomplete, but "widely-circulated," notice two days later. The Trebitsch Group's only effective notice was that one which was widely circulated on *PrimeZone* on February 4, 2004, and Rogers and Alvarez's application as of April 5, 2004, was therefore, timely.

The PSLRA requires that courts "appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). In determining which class member is "the most adequate," the PSLRA requires a "presumption" that the most adequate plaintiff is that

plaintiff with the "largest financial/interest." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). As demonstrated in Rogers and Alvarez's opposition brief, Rogers, with individual losses of $51,404, is the individual with the largest losses of any other individual movant in this case. Further, when combined with Alvarez, Rogers and Alvarez have $79,555 in losses which is the largest financial interest in this litigation of any movant group that otherwise meets the requirements of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Thus, Rogers and Alvarez are presumptively the most adequate plaintiffs and should be appointed lead plaintiff.

The arguments filed by defendants, the Trebitsch Group, the Gabriele Group and the Brumbaugh Group do not overcome the presumption that lies in favor of Rogers and Alvarez. Although the Brumbaugh Group's three members purport to have incurred a larger aggregate loss than Rogers and Alvarez, much of their loss derives from the inclusion of Griffin as a member of their group. However, Griffin failed to retain any of his shares at the end of the class period, which defendants will undoubtedly attempt to exploit to the detriment of the class if Griffin were appointed lead plaintiff, claiming that he is an atypical plaintiff. *See In re Party City Sec. Litig.,* 189 F.R.D. 91 (D.N.J. 1999) (refusing approval of a group of lead plaintiffs consisting of some members who were stock retention plaintiffs and other members who divested themselves of 100% of their shares during the class period). Defendants will seize upon Griffin's complete divestment as the focus of their attention in this case, thereby creating a needless diversion and potential harm to the class. As such, the Brumbaugh Group's inclusion of Griffin creates needless factual issues that defendants will exploit in arguing that the Brumbaugh Group cannot satisfy Rule 23's adequacy and typicality requirements. *See In re MicroStrategy, Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436 (E.D. Va. 2000) ("[T]he statute specifies two factors that may be considered to rebut the statutory presumption, namely evidence that the presumptive lead plaintiff ... 'is subject to unique defenses that render such

plaintiff incapable of adequately representing the class.'") (citation omitted); *In re Bank One S'holder Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (rejecting hedge fund as presumptive lead plaintiff due to unusual trading pattern).

Under the PSLRA, the Trebitsch Group, with losses of $30,301 – the lowest of any applicant group – and the Gabriele Group, with losses of $55,352, simply do not qualify as a presumptive lead plaintiff. *See Cendant,* 264 F.3d 201; *In re Cavanaugh,* 306 F.3d 726 (9th Cir. 2002). The Stoddard Group, with losses of $41,871, clearly recognize their inability to overcome the presumption and have not opposed Rogers and Alvarez's motion. *See, e.g., Sweeney v. St. Joseph's Hosp*., 769 F. Supp. 747 (M.D. Pa. 1991) (deeming a motion unopposed based upon the parties' failure to file an opposition brief).

Accordingly, Rogers and Alvarez's application is timely and because they have the largest financial interest and also satisfy the requirements of Rule 23, Rogers and Alvarez should be appointed lead plaintiff in this case, and their choice of counsel should be approved.

## II.    ARGUMENT

### A.    Rogers and Alvarez's Motion Is Timely Because the First "Widely Circulated" Press Release Occurred on February 4, 2004

The Trebitsch Group argues that its advertisement in *Barron's* on February 2, 2004 – a publication never approved for PSLRA notice by any court – constitutes proper notice. Trebitsch Group's Memorandum of Points and Authorities in Opposition to Competing Lead Plaintiff Motions ("Trebitsch Opp.") at II C. The conclusion is false and the argument is specious.

"[T]he purpose of the early notice provision of the PSLRA is to 'enable investors to intervene in the litigation and take charge of it.'" *In re Lucent Tech. Inc. Sec. Litig*., 194 F.R.D. 137, 146 (D.N.J. 2000) (citation omitted). Given this goal, the PSLRA requires that any notice be "widely circulated." 15 U.S.C. §78u-4(a)(3)(A)(i). Although the PSLRA does not define "widely-

- 4 -

circulated," this phrase has been interpreted to mean that the notice must be "'reasonably calculated ... to apprise [a potential lead plaintiff] of the pendency of the action and offer [it, him, or her] an opportunity [to move the court to serve as lead plaintiff].'" *Lucent*, 194 F.R.D. at 146 (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Maryland District Court has noted that the publication requirement expresses Congressional intent that the publication be "reasonably calculated to reach sophisticated investors." *See Acterna*, 2004 U.S. Dist. LEXIS 4309, at *8. *Barron's* is a weekly magazine sent to a very limited number of subscribers.    It is disseminated on Saturdays and paid circulation for Massachusetts is only 14,621 copies. Gans Opp. Aff., Ex. B.  Further, unlike the national newswires, *Barron's* is not a springboard from which other publications obtain their information, thereby ensuring wide circulation.  The above facts demonstrate that the notice was not widely circulated within either the language or purpose of the PSLRA.

The importance of the requirement that notices be given wide circulation has been most poignantly raised by Judge Chasanow of the Maryland District Court in *Acterna*.  In that case, the original notice of filing was published in *The New York Times*, a publication with a far larger audience than *Barron's*.  Despite *The New York Times'* extensive circulation, the court held that publication in *The New York Times* was insufficient to satisfy the "widely-circulated" test required by the PSLRA:

> Additionally, the PSLRA requires publication in a "widely-circulated national business-oriented publication or wire service." Although it does not clearly define this phrase, the publication requirement expresses Congress' intent that publication be "reasonably calculated to reach, at the least, sophisticated and institutional investors." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 64 (D. Mass. 1996).  The Movants argue that *The New York Times* is an acceptable publication, but the authority they provide as support does not even address *The Times* at all.  Based on the showing made thus far, the court is not satisfied that *The New York Times* meets the standards of the PSLRA.  For the foregoing reasons, movants have failed to satisfy the notice requirements of the PSLRA.

- 5 -

*Acterna*, 2004 U.S. Dist. LEXIS 4309, at **8-9.  Indeed, despite a complete lack of competition for

lead plaintiff, the *Acterna* court refused to appoint a lead plaintiff due to the defective notice, and

ordered plaintiffs to re-publish "in an appropriate publication."  *Id.* at *12.

Apparently, even the Trebitsch Group realizes that the *Barron's* notice was ineffective as the

Trebitsch Group's attorneys also published a second notice (albeit incomplete) on *PrimeZone* on

February 4, 2004 – only two days later.  The difference between the notices suggests that the

Trebitsch Group was attempting to start the 60-day clock without telling prospective lead plaintiffs

the actual date for filing.  The February 2, 2004 *Barron's* notice stated in full:

> Lawsuit Filed Against Wave Systems Corporation
>
> ***The following statement appeared in the January 31, 2004 issue of Barron's,
> which was disseminated to the public on February 2, 2004***.  A class action lawsuit
> was filed in the United States District Court for Southern District of New Jersey on
> behalf of all purchasers of the securities of Wave Systems Corp. ("Wave" or the
> "Company") between August 4, 2003 and December 18, 2003 (the "class period").
> the Complaint alleges that Wave, and individual defendants, Steven Sprague, and
> Gerard T. Feeney, violated the federal securities laws (sections 10(b) and 20(a) of the
> Securities Exchange Act of 1934) by issuing materially false and misleading public
> statements regarding certain software agreements with International Business
> Machines, Corp. ("IBM").  Specifically, during the class period, Wave announced
> that it had entered into an agreement with IBM to embed Wave's software inside
> certain IBM notebook and desktop computers.  This press release among others
> during the class period, was materially false and misleading.  If you are a member of
> the class described above, you may, not later than April 2, 2004, move the Court to
> serve as lead plaintiff of the class, if you so choose. In order to serve as lead plaintiff,
> however, you must meet certain legal requirements.  You may retain Zimmerman .....

Declaration of Eduard Korsinsky in Support of the Trebitsch Group's Motion for Consolidation,

Appointment as Lead Plaintiffs, and for Approval of Choice of Lead Counsel ("Korsinsky

Decl."), Ex. A. (emphasis added).[2]

---

[2]    Note that the Trebitsch Group's notice is also defective because it notices only the New
Jersey proceedings and not the instant Massachusetts proceeding.

By contrast, the notice filed by the Trebitsch Group in *PrimeZone* two days later was identical to the above notice except for two crucial omissions. First, the opening statement ("The following statement appeared in the January 31, 2004 issue of *Barron's* ....") was deleted. Thus, no one reading the *PrimeZone* notice knew that there had been a *Barron's* notice two days earlier. Second, the date for the deadline for filing for lead plaintiff ("April 2, 2004") was replaced by the statement "60 days from the date of the first-issued notice." Because the *PrimeZone* notice made no reference or suggestion that there was a prior filed notice, let alone indicated that they had filed a notice in *Barron's*, anyone reading the *PrimeZone* notice would conclude that the last date for filing a lead plaintiff motion was April 5, 2004. That is precisely what Rogers and Alvarez did.

Indeed, Rogers and Alvarez's February 4, 2004 notice was published nationwide on *Business Wire,* a medium which satisfies the requirements of the PSLRA, as numerous district courts have held. *Fitzgerald v. Citigroup Inc.*, 03 Civ. 4305 (DAB), 2004 U.S. Dist. LEXIS 5066 (S.D.N.Y. March 26, 2004); *In re Universal Access, Inc.*, 209 F.R.D 379, 383 (E.D. Tex. 2002); *Takeda v. Turbodyne Tech., Inc.*, 67 F. Supp. 2d 1129, 1134 n.14. (C.D. Cal. 1999) (*Business Wire* meets requirements of the PSLRA); *see, e.g., Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-63 (D. Mass. 1996) (approving of PSLRA notice using *Business Wire*); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Mayo v. Apropos Tech., Inc.*, No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924, at *5 (N.D. Ill. Feb. 7, 2002); *Taft v. Ackermans*, 02 Civ 7951 (PKL), 2003 U.S. Dist. LEXIS 2486, at *2 & n.4 (S.D.N.Y. Feb. 20, 2003) (publication over *Internet Wire* satisfies PSLRA). For example, in *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 413 (D.N.J. 1998), the court considered what constitutes "widely-circulated" for purposes of the notice requirements under the PSLRA. The court ultimately approved of notice issued on *Business Wire*, because it "is subscribed to by 'hundreds of print publications and wire services, encompassing news

media in all fifty states,' and is thus 'widely-circulated.'"  *Milestone*, 183 F.R.D. at 413 n.10 (citation omitted); *see also Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1314 (N.D. Ala. 2000).  As a result of court decisions like those above and with the widespread use of the Internet, *Business Wire* or other similar newswire services have become the de facto standard for ensuring compliance with the PSLRA's requirements and for ensuring maximum investor awareness.  As such, the first "widely-circulated" notice occurred on February 4, 2004.

To support its argument, the Trebitsch Group cites *In re Independent Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 187 (S.D.N.Y. 2003) for the proposition that limited circulation publications have been held adequate for purposes of notice under the PSLRA.  However, *Independent Energy* offers the Trebitsch Group little assistance.  First, that notice involved publication in a ***daily*** business publication, not a weekly magazine (*Barron's* is issued only once and then only on Saturdays – a religious day for some).  Second, the court expressly based its decision on the unusual circumstances of that case, which the court found to include the disingenuousness of the lawyers involved in the case:

> This is a rather disingenuous argument given that [counsel] himself used the *Investors Business Daily* in a case in which his then current law firm, Rabin & Peckel LLP, was appointed lead counsel.

*Indep. Energy*, 302 F. Supp. 2d at 187.  Obviously, the basis for this case is found in the bad faith of the attorney in question.[3]

The Trebitsch Group provides the Court with not a single case approving the use of *Barron's* to satisfy the PSLRA's publication requirements.  Moreover, under the facts here (publication of the

---

[3]     Defendants also point to *Seamans v. Aid Auto Stores, Inc.*, 98-CV-7395 (DRB), 2000 U.S. Dist. LEXIS 1749 (E.D.N.Y. Feb 15, 2000).  This case predates the wide-scale transformation of market news in the past few years from print to Internet sources, and the vast case law suggesting that *Business Wire* is the appropriate noticing mechanism.

second notice two days later), it ***did not*** satisfy the statute.  The statute is designed to notify the widest group of potential lead plaintiffs.  As such, a weekly subscription-only publication with limited circulation does not qualify.

    **B.**    **Rogers and Alvarez Have the Largest Financial Interest of Any Qualified Movant**

There can be no dispute that Rogers, with individual losses of over $51,404, has suffered the single largest loss of any individual lead plaintiff movant in the case.  Indeed, Rogers' losses alone exceed each of the Brumbaugh Group applicants' individual losses by 23%-71% (Brumbaugh: $40,666; Harmon: $41,699; Griffin: $30,016); the Gabriele Group applicants' losses by at least 233% (Bohman: $889; Chen: $12,839; Freiler: $3,625; Gabriele: $15,450; Lu: $5,657; Tahraoui: $9,503; Xiong: $7,391); the Trebitsch Group applicants' losses by at least 321% (Trebitsch: $1,312; Naeini: $12,201; Clayton: $10,300; Dostalek: $6,480); and the Stoddard Group applicants' losses by at least 91%-242% (Stoddard: $26,848; Rapp: $15,022).  Neither the Brumbaugh Group nor the Trebitsch Group address this key fact in their motions.  This suggests that Rogers, even if he were to be considered alone, is the presumptive lead plaintiff.[4] *See, e.g., In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 457-58 (S.D. Tex. 2002) (appointing single largest entity as lead plaintiff over groups with larger losses).

---

[4]     Movants continue to believe that it would be in the best interests of the class if Rogers and Alvarez were jointly appointed lead plaintiff in this case. *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998).  However, if this Court were to appoint a single individual as lead plaintiff, Rogers alone (with the largest individual losses of any movant in the case) should be appointed.

Rogers and Alvarez have suffered aggregate losses of $79,555, the largest of any competing *movant group that also satisfies the requirements of Rule 23*.[5] Rogers and Alvarez's adequacy and typicality under Rule 23 cannot be questioned. Specifically, Rogers and Alvarez suffered the same injuries as the absent class members, their injuries came as a result of the same course of conduct by defendants, and their claims are based on the same legal issues. *See Seidman v. Am. Mobile Sys.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994); *Weiss v. York Hosp.*, 745 F.2d 786, 809-10 & n.36 (3d Cir. 1984). Contrary to the Trebitsch Group's assertions, and unlike the Brumbaugh Group, Rogers and Alvarez retained substantial holdings at the end of the class period. Rogers and Alvarez are willing and able to accept the responsibilities that arise from their role as lead plaintiff, have conferred regarding the case, and have established a process for regular meetings to monitor the action. *See* Joint Declaration of Steve Alvarez and Ron Rogers in Support of Their Motion for Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and for Consolidation of Related Actions ("Joint Decl."), at ¶5. In addition, they have retained the pre-eminent plaintiffs' class action lawyers in the nation to represent the class. *Cavanaugh*, 306 F.3d 726; *Enron*, 206 F.R.D. 427. As such, Rogers and Alvarez should be appointed lead plaintiff and their selection of counsel should be approved.

---

[5]    The Gabriele Group challenges the losses of Alvarez claiming that the loss calculations fail to reflect the significant proceeds obtained. Gabriele Group's Memorandum in Further Support of Their Motion for Appointment as Lead Plaintiffs and in Opposition to All Other Lead Plaintiff Motions ("Gabriele Opp.") at 6. There is simply no basis for the objection, as Alvarez clearly provides all of his acquisitions and sales (Affidavit of Nancy Gans in Support of Lead Plaintiff Motion ("Gans Moving Aff."), Ex. A at page 5) and calculates the total cost as well as the total loss in Gans Moving Aff., Ex. B.

C.    **The Brumbaugh Group Does Not Have the Largest Individual Losses, and It Cannot Satisfy Rule 23**

The Brumbaugh Group's constituents have losses of $40,666 (Brumbaugh), $41,699 (Harmon), and $30,016 (Griffin).  None of the losses of any of its three constituents rises to the level of Rogers' $51,404 in individual losses and, therefore, the Brumbaugh Group cannot claim that there is no dispute as to which movant has the "largest financial interest."

One of the Brumbaugh Group's constituents, Griffin, completely divested himself of 100% of his shares prior to the end of the class period.  *See* Ex. C to the Declaration of David Pastor in Support of Motion of the Brumbaugh Plaintiff Group to Consolidate Actions, to Be Appointed Lead Plaintiffs and for Approval of Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel ("Pastor Decl.").  Having sold 100% of his shares prior to the end of the class period, defendants are likely to attempt to argue that he has a conflict with the other members of the Brumbaugh Group and with the majority of damaged stockholders who retained shares.  As one district court noted:

> The ownership interests of Krasnow and Slater Asset, as Retention Plaintiffs, may conflict with the interests of Taylor Capital as an In/out Plaintiff. Taylor Capital will likely seek to maximize its recovery without concern for the continued commercial viability and financial success of Party City.  Krasnow and Slater Asset, however, given their equity interest in Party City, would presumably want Party City to continue as a healthy going concern after the conclusion of the instant litigation. Given the fundamental nature of the Retention/Seller conflict, it appears likely Retention Plaintiffs and In/out Plaintiffs would have divergent interests during the course of settlement negotiations and throughout the litigation process.  Further, it appears the Retention/Seller Conflict would prevent counsel from providing adequate representation to parties with the discussed opposing interests.  Accordingly the interests of Krasnow and Slater Asset on the one hand, and Taylor Capital on the other, are not sufficiently aligned to allow for the appointment of all three as lead plaintiffs in the instant action.

*Party City*, 189 F.R.D. at 110-11.[6]

Rogers and Alvarez have met to discuss this case and have established a process for decision making (Joint Decl. at ¶5). By contrast, the Brumbaugh Group has not provided any evidence to this Court suggesting that they have ever actually ***met***, as opposed to signing a lawyer-prepared declaration that they will work together under the direction of the counsel who put them together. Similarly, Rogers and Alvarez have negotiated a fee arrangement designed to maximize recovery for the class – a fee arrangement that represents substantially lower fees than typically awarded in securities cases. Joint Decl. at ¶9. The Brumbaugh Group has failed to do this. Likewise, Rogers and Alvarez have developed a plan to deal with the financial crisis Wave Systems Corporation is experiencing. Joint Decl. at ¶¶6-8. Again, the Brumbaugh Group has not. There is, therefore, no basis to conclude that the Brumbaugh Group is anything other than three disparate individuals improperly thrown together by counsel simply as a mathematical exercise. *See, e.g., In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000) (holding that the "burden is on those seeking to aggregate to demonstrate the cohesiveness of their purported 'group'"). Much like the apparent manipulation of the Trebitsch Group's counsel to avoid using the national newswires, the Brumbaugh Group's counsel's efforts to portray it as a group – even though a careful reading of its declaration seems to indicate that they have never even met – should not be considered. These facts require the Court to reject the Brumbaugh Group as lead plaintiff.

_____

[6]    *See also Epstein v. Am. Reserve Corp.*, No. 79 C 4767, 1988 U.S. Dist. LEXIS 3382, at *14 (N.D. Ill. Apr. 21, 1988); *MicroStrategy*, 110 F. Supp. 2d at 437 (lead plaintiff movant rejected because of atypical trading strategy subjecting him to unique defenses).

**D.    The Trebitsch Group Cannot Be Appointed Lead Plaintiff Because It Has the Smallest Financial Interest**

The Trebitsch Group, with losses of $30,301, has suffered less than half of the losses of Rogers and Alvarez.  Indeed, the Trebitsch Group's losses combined are approximately 60% of Rogers' losses alone and less than 40% of Rogers and Alvarez's combined losses.  In accordance with the PSLRA, the Trebitsch Group's motion for appointment as lead plaintiff should be denied. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb); *Cendant*, 264 F.3d 201; *Cavanaugh*, 306 F.3d 726.

**E.    Defendants Do Not Have Standing to Rebut the Arguments in Favor of Lead Plaintiff**

Defendants filed a Response to Motions for Consolidation, Appointment of Lead Plaintiffs and for Approval of Selection of Lead Counsel ("Response").  This response includes objections regarding the selection of lead plaintiff based on the lead plaintiffs' proposed class period (Response at 4), regarding the "apparent atypicality of some of the proposed lead plaintiffs," (Response at 5) and suggesting conflicts of interest (Response at 6).  Defendants' response should be ignored and/or striken from the record as they have no standing to raise these arguments.  *Cavanaugh*, 306 F.3d at 730.

The language of the PSLRA explicitly provides that "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i).  The PSLRA further provides that "the presumption described [in 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)] may be rebutted only upon ***proof by a member of the purported plaintiff class*** ...." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (emphasis added).  In accordance with the plain language of the statute, only members of the "purported plaintiff class" are entitled to submit papers on the adequacy and typicality of the proposed lead plaintiff.  Had Congress intended otherwise, it would not have chosen to limit the language of the statute in this way.  *See Perry v. Commerce Loan Co.*, 383 U.S. 392, 400 (1966) ("'There is, of course, no more persuasive evidence of the purpose of

- 13 -

a statute than the words by which the legislature undertook to give expression to its wishes.'") (citation omitted).

As a result, numerous courts, relying upon the plain language of the statute, have held that defendants lack standing to oppose the appointment of lead plaintiff. *Cavanaugh,* 306 F.3d at 730 ("The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements.... [O]ther plaintiffs may be allowed to conduct discovery if they 'demonstrate [] a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.'") (citation omitted); *Enron*, 206 F.R.D. at 441 (noting that the presumption "may only be rebutted by another plaintiff"); *Takeda*, 67 F. Supp. 2d at 1138; *Greebel*, 939 F. Supp. at 60-61; *Zuckerman v. Foxmeyer Health Corp.*, No. 3:96-CV-2258-T, 1997 U.S. Dist. LEXIS 23549, at *2 (N.D. Tex. Mar. 28, 1997); *Fischler v. AmSouth Bancorp.*, Case No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *2 (M.D. Fla. Feb. 6, 1997). Hence, defendants simply do not have standing to raise objections in the context of the appointment of lead plaintiff.

Additionally, allowing defendants to weigh in on the selection of lead plaintiff, particularly with regard to whether a group should be appointed, would allow defendants to choose who should prosecute them. Thus, it should be no surprise that defendants take a position contrary to the great weight of authority, the best interests of the class, and common sense. *Oxford Health*, 182 F.R.D. 42. It is clearly to defendants' advantage to manipulate the lead plaintiff process to the advantage of themselves, rather than the class. Courts generally view with skepticism the motives of defendants who feign concern over the well being of class members through a challenge to the "adequacy" or "typicality" of its proposed representatives:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class

- 14 -

> should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," ... it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981); *see also Umbriac v. Am. Snacks, Inc.*, 388 F. Supp. 265, 275 (E.D. Pa. 1975); *Farber v. Pub. Serv. Co.*, Civil No. 89-0456-JB, 1990 U.S. Dist. LEXIS 18376 (D.N.M. Dec. 3, 1990). As such, for jurisprudential reasons, defendants' objections to lead plaintiff should be ignored by this Court.

Regardless, defendants' criticisms of Alvarez are clearly off base. In particular, defendants assert that Alvarez's sales are not listed, "only his acquisitions." Response at 5. This is clearly incorrect as shown in Schedule A to Mr. Alvarez's list of all of his "sales." Gans Moving Aff., Ex. A at 5. Curiously, defendants then take the inconsistent position that Alvarez's sales make him atypical. Response at 5. However, Alvarez held shares throughout the class period. Surely mere selling cannot make Alvarez atypical. Under defendants' view, almost all applicants are "atypical." *Id*. (listing reasons why eight applicants are "atypical"). Other than their desire to avoid accountability for their conduct, defendants simply have no basis for this objection. Finally, defendants' attempt to object to essentially every proposed lead plaintiff in this case should make their motive obvious: to avoid effective litigation in this securities fraud case.

## III. CONCLUSION

Based on the foregoing, Rogers and Alvarez respectfully request that this Court grant their motion for appointment as lead plaintiff, approve their selection of counsel and deny the competing lead plaintiff motions.

DATED: April 28, 2004                    MOULTON & GANS, P.C.


                                         _____
                                         \s\ Nancy Freeman Gans
                                         NANCY FREEMAN GANS, BBO #184540

- 15 -

33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  617/369-7979
617/369-7980 (fax)

MILBERG WEISS BERSHAD
   HYNES & LERACH LLP
JEFFREY W. LAWRENCE
STANLEY S. MALLISON
100 Pine Street, Suite 2600
San Francisco, CA  94111
Telephone:  415/288-4545
415/288-4534 (fax)

MILBERG WEISS BERSHAD
   HYNES & LERACH LLP
WILLIAM S. LERACH
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

T:\CasesSF\Wave Systems\BRF00008959.doc

<u>DECLARATION OF SERVICE BY FEDERAL EXPRESS AND FACSIMILE</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Francisco, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is 100 Pine Street, Suite 2600, San Francisco, California 94111.

2.      That on April 28, 2004, declarant served the RON ROGERS AND STEVE ALVAREZ'S REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFby Federal Express addressed to the parties listed on the attached Service List. Declarant also served the parties by facsimile.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 28th day of April, 2004, at San Francisco, California.

\s\ Caroline Wiley
CAROLINE A. WILEY

WAVE SYSTEMS (Mass)

Service List - 4/15/2004    (04-0046M)

Page 1 of  3

**Counsel For Defendant(s)**

Robert A. Buhlman
Eunice E. Lee
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
  617/951-8000
  617/951-8736 (Fax)

**Counsel For Plaintiff(s)**

Jeffrey C. Block
Michael T. Matraia
Leslie R. Stern
Berman DeValerio Pease Tabacco Burt & Pucillo
One Liberty Square
Boston, MA  02109
  617/542-8300
  617/542-1194 (Fax)

Sandy A. Liebhard
Joseph R. Seidman, Jr.
Bernstein Liebhard & Lifshitz, LLP
10 East 40th Street
New York, NY  10016
  212/779-1414
  212/779-3218 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Cauley Geller Bowman & Rudman, LLP
200 Broadhollow Road, Suite 406
Melville, NY  11747
  631/367-7100
  631/367-1173 (Fax)

David  Pastor
Gilman And Pastor, L.L.P.
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA  01906
  781/231-7850
  781/231-7840 (Fax)

Jonathan M. Plasse
Christopher J. Keller
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue, 12th Floor
New York, NY  10017-5563
  212/907-0700
  212/818-0477 (Fax)

Harold B. Obstfeld
Harold B. Obstfeld, P.C.
260 Madison Avenue, 19th Floor
New York, NY  10016
  212/696-1212
  212/679-8998 (Fax)

WAVE SYSTEMS (Mass)
Service List - 4/15/2004    (04-0046M)
Page 2 of  3

Deborah R. Gross
Susan R. Gross
Law Offices Bernard M. Gross, P.C.
1515 Locust Street, 2nd Floor
Philadelphia, PA  19102
   215/561-3600
   215/561-3000 (Fax)

Charles J. Piven
Law Offices of Charles J. Piven, P.A.
The World Trade Center
401 East Pratt Street, Suite 2525
Baltimore, MD  21202
   410/332-0030
   410/685-1300 (Fax)

Marjorie A. McKeithen
McKeithen, McKeithen & Bohman
10771 Perkins Road, First Floor
Baton Rouge, LA  70810
   225/766-6500

Jeffrey W. Lawrence
Stanley S. Mallison
Milberg Weiss Bershad Hynes & Lerach LLP
100 Pine Street, Suite 2600
San Francisco, CA  94111-5238
   415/288-4545
   415/288-4534 (Fax)

William S. Lerach
Darren J. Robbins
Milberg Weiss Bershad Hynes & Lerach LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
   619/231-1058
   619/231-7423 (Fax)

Nancy Freeman Gans
Moulton & Gans, P.C.
33 Broad Street, Suite 1100
Boston, MA  02109
   617/369-7979
   617/369-7980 (Fax)

Susan E. Stenger
Perkins Smith & Cohen LLP
One Beacon Street, 30th Floor
Boston, MA  02108-3106
   617/854-4000
   617/854-4040 (Fax)

Marc A. Topaz
Richard A. Maniskas
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
   610/667-7706
   610/667-7056 (Fax)

WAVE SYSTEMS (Mass)

Service List - 4/15/2004    (04-0046M)

Page 3 of  3

Thomas G. Shapiro
Theodore M. Hess-Mahan
Shapiro Haber & Urmy, LLP
75 State Street
Boston, MA  02109
  617/439-3939
  617/439-0134 (Fax)


Robert I. Harwood
Jeffrey M. Norton
Wechsler Harwood LLP
488 Madison Avenue, 8th Floor
New York, NY  10022
  212/935-7400
  212/753-3630 (Fax)

Jules  Brody
Aaron L. Brody
Tzivia  Brody
Stull, Stull & Brody
6 East 45th Street, 4th Floor
New York, NY  10017
  212/687-7230
  212/490-2022 (Fax)


Eduard  Korsinsky
Zimmerman, Levi & Korsinsky, LLP
39 Broadway, Suite 1440
New York, NY  10006
  212/363-7500
  212/363-7171 (Fax)