# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN, | ) ) | No. 04-30022-MAP |
| | ) | <u>CLASS ACTION</u> |
| Plaintiffs, | ) ) | |
| | ) | **CONSOLIDATED AMENDED CLASS** |
| v. | ) | **ACTION COMPLAINT FOR** |
| | ) | **VIOLATIONS** |
| WAVE SYSTEMS CORPORATION, JOHN E. | ) | **OF THE FEDERAL SECURITIES** |
| BAGALAY, JR., STEVEN K. SPRAGUE, and | ) | **LAWS** |
| GERARD T. FEENEY | ) | |
| | ) | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | | |

## PART 2 OF 2 (PAGES 22 - 34)

need in order to operate, the recent exercise of options which brought in additional cash was something that really helped to strengthen our balance sheet. We continue to work towards strengthening the overall company, and the ultimate way to do that is to drive the revenue base so this company reaches a cash flow breakeven position and **we think that's very achievable in 2004.** (Emphasis added.)

59.    In addition, during the August 14, 2003 conference call with analysts, defendant Sprague was specifically questioned by analysts as to when revenues would be seen by the Company:

Q. (John Stuart, National Media) So my infamous question is of leaving the lights on till all this happens, you feel like you're well-you're much more comfortable now than you were, say, four months ago? That we're going to have the resources and the wherewithal to keep the lights on until this unfolds?

A. (Steven Sprague) Very much so. The real challenge in this market has been when are the first units going to ship with scope and volume, and I think that we're beginning to be able to show that in the marketplace. **We certainly had a clearer view in it for the last couple of quarters, so we've been much more comfortable than perhaps our shareholders can be because it's hard to see the data that we have. But we're very comfortable.** . . . (Emphasis added.)

60.    Defendants statements contained in paragraphs 58 and 59 were materially false and  misleading at the time they were made. Defendants were aware that the forecasted revenue stream was a fabrication, pulled out of the air and created to mislead the investing public and artificially inflate the Company's stock. Defendants knew that the Intel deal would not generate the revenue stream forecast by the Company at any time in the foreseeable future, if ever, and that the IBM relationship was not fee producing.

00003557.WPD ; 1                                    22

61.    On August 18, 2003, Defendants filed a Prospectus with the SEC relating to the

registration of 1,700,000 shares of Class A Common Stock. In the Prospectus, Defendants made

the following representations under "Material Changes":

> On July 31, 2003, Wave announced an agreement with Intel
> Corporation that will help enable both companies to accelerate the
> development and deployment of trusted applications and services
> for safer computing on personal computer platforms. The
> agreement will enable Intel to bundle Wave's software and services
> with a future Intel desktop motherboard, targeted for trusted
> computing platforms. Similar in nature to a previously announced
> March 2003 licensing agreement between Wave and National
> Semiconductor, Intel will pay a royalty fee to Wave for each unit
> shipped. Intel plans to introduce the new motherboard in the fourth
> quarter of 2003.
>
> On August 4, 2003, Wave announced that it has partnered with
> IBM's Independent Software Vendor (ISV) Program. Wave's new
> Document Manager Vault and SmartSignature security software
> applications in Wave's EMBASSY Trust Suite client software
> family now work with the IBM Embedded Security Subsystem, a
> hardware and software-based security solution available on select
> ThinkPad notebooks and ThinkCentre desktops. Wave's
> partnership with IBM enables Wave in its objective to sell and
> deliver open and interoperable solutions to business customers as
> trusted computing continues to evolve. Wave will try to interest
> other security chipmakers and motherboard suppliers in its product
> in the coming months.

62.    On August 20, 2003, Defendants filed a Form S-3 Registration Statement with the

SEC relating to the registration of 12,593,880 shares of Class A Common Stock. In the Form S-

3, Defendants made the following representations under "Material Changes":

> On July 31, 2003, Wave announced an agreement with Intel
> Corporation that will help enable both companies to accelerate the
> development and deployment of trusted applications and services
> for safer computing on personal computer platforms. The
> agreement will enable Intel to bundle Wave's software and services
> with a future Intel desktop motherboard, targeted for trusted

00003557.WPD ; 1                                23

computing platforms. Similar in nature to a previously announced
March 2003 licensing agreement between Wave and National
Semiconductor, Intel will pay a royalty fee to Wave for each unit
shipped. This licensing agreement is non-exclusive and there are
no minimum licensing requirements on the part of Intel pursuant to
the agreement. Intel plans to introduce the new motherboard in the
fourth quarter of 2003.

On August 4, 2003, Wave announced that it has partnered with
IBM's Independent Software Vendor (ISV) Program. Wave's new
Document Manager Vault and SmartSignature security software
applications in Wave's EMBASSY Trust Suite client software
family now work with the IBM Embedded Security Subsystem, a
hardware and software-based security solution available on select
ThinkPad notebooks and ThinkCentre desktops. Wave's
partnership with IBM enables Wave in its objective to sell and
develop open and interoperable solutions to business customers as
trusted computing continues to evolve. **This licensing agreement
is non-exclusive and there are no minimum licensing
requirements on the part of IBM pursuant to the agreement**.
Wave will try to interest other security chipmakers and
motherboard suppliers in its product in the coming months.
(Emphasis added.)

63.    On August 22, 2003, Defendants filed a Prospectus with the SEC relating to the

registration of 12,593,880 shares of Class A Common Stock. In the Prospectus, Defendants

made the following representations under "Material Changes":

On July 31, 2003, Wave announced an agreement with Intel
Corporation that will help enable both companies to accelerate the
development and deployment of trusted applications and services
for safer computing on personal computer platforms. The
agreement will enable Intel to bundle Wave's software and services
with a future Intel desktop motherboard, targeted for trusted
computing platforms. Similar in nature to a previously announced
March 2003 licensing agreement between Wave and National
Semiconductor, Intel will pay a royalty fee to Wave for each unit
shipped. This licensing agreement is non-exclusive and there are
no minimum licensing requirements on the part of Intel pursuant to
the agreement. Intel plans to introduce the new motherboard in the
fourth quarter of 2003.

On August 4, 2003, Wave announced that it has partnered with
IBM's Independent Software Vendor (ISV) Program. Wave's new
Document Manager Vault and SmartSignature security software
applications in Wave's EMBASSY Trust Suite client software
family now work with the IBM Embedded Security Subsystem, a
hardware and software-based security solution available on select
ThinkPad notebooks and ThinkCentre desktops. Wave's
partnership with IBM enables Wave in its objective to sell and
develop open and interoperable solutions to business customers as
trusted computing continues to evolve. **This licensing agreement
is non-exclusive and there are no minimum licensing
requirements on the part of IBM pursuant to the agreement.**
Wave will try to interest other security chipmakers and
motherboard suppliers in its product in the coming months.
(Emphasis added.)

64.     Defendants' statements contained in the Company's SEC filings described in

paragraphs 61, 62 and 63 were materially false and misleading at the time they were made.

Defendants knew that the Intel deal would not generate the revenue stream forecast by the

Company at any time in the foreseeable future, if ever, and that the IBM relationship was not fee

producing– and was not a "licensing agreement." Contrary to Defendants' representations, the

purported Intel and IBM deals were not "material changes."

65.     On September 16, 2003, the Company filed with the SEC a Form 8-K, disclosing

that Defendants had successfully negotiated modifications and waivers related to the Series H

Placement, with the Series H securities holders waiving their right to require the Company to

redeem Class A Common Stock in excess of the NASDAQ threshold number of outstanding

shares allowable without first obtaining shareholder approval. In addition, the right of first

refusal was modified to apply only to Wave's next financing. Further, the strike price for

Warrant holders was reduced from $1.13 to $1.00 per share.

66.    During September 2003, 508.5 shares of Series H Stock were converted into 6,690,788 shares of Class A Common Stock.  In addition, Series H Warrants were exercised for 2,349,418 shares of Class A Common Stock, yielding net proceeds to Wave of $2,323,445.

67.    Based on Defendants' misrepresentations concerning Wave's purported agreements and partnerships, and its forecasted revenue growth, the Company was able to artificially inflate the value of its equity and continue operating.  Without a commercially viable product, as stated in the Company's Form 10-Q for the quarter ended September 30, 2003 filed on November 14, 2003, "Wave has financed its operations through September 30, 2003 principally through the issuance of Class A and B Common Stock and various series' preferred stock, for total proceeds of $214,535,000."

68.    On November 13, 2003, Wave issued a press release reporting on its third quarter 2003  financial results. Defendant Sprague commented on the Company's performance, "[w]e can now clearly see the **growing momentum for trusted computing in the marketplace, and we expect substantial growth in volumes over the course of the next four quarters**." (Emphasis added.)   Defendants' comments were materially false and misleading at the time they were made. Defendants knew that the Company's prospects for growth were no more clear than they were at the outset of the Class Period.

69.    However, continuing to benefit from Defendants' unwarranted hype concerning Wave's revenue prospects and resulting inflated share price, on November 19, 2003, Wave announced in a press release that it had successfully completed a $7.1 million private placement financing.

> The private placement consists of 3,725,263 shares of common
> stock priced at $1.90 per share as well as warrants to purchase

1,095,227 shares of the company's common stock at an exercise price of $2.62 per share. If exercised in their entirety, the warrants would generate an additional $2.9 million in gross proceeds to Wave.

## THE TRUTH BEGINS TO EMERGE

70.    On December 18, 2003, after the close of the market, the Company issued a press release, disclosing Wave Systems was under formal investigation by the SEC. The release stated:

> Wave Systems Corp. Today reported that the Securities and Exchange Commission has commenced a formal investigation into certain matters relating to Wave. The SEC's investigative order, received by Wave on December 17, 2003, relates to certain public statements made by Wave during and around August 2003, as well as certain trading in Wave's securities during such time.

71.    As reported in *The San Diego Union-Tribune* on December 20, 2003, the investigation focused on the statements by Defendants which began the stock's rally. "U.S. regulators are formally investigating certain public statements from the company that sent its stock soaring last summer. Yesterday the company's shares fell 17 percent. . . . The company's stock quadrupled in value in heavy volume trading in the days around the announcements."

72.    News of the investigation shocked the market, with shares falling 17.13%, or $0.31 per share, to close at $1.50 per share on extremely high volume on December 19, 2003. Plaintiffs suffered damages as a result of Defendants' misconduct.

73.    The SEC investigation is ongoing.

## SCIENTER ALLEGATIONS

74.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements, issued or disseminated by or in the name of the Company were

materially false and misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violators of the federal securities laws. Defendants knew or recklessly disregarded that, based on their knowledge of the terms of the Intel licensing agreement and the absence of any partnership or licensing agreement with IBM, despite Defendants' representations to the contrary, that their representations and forecasts for significant revenue growth and reaching breakeven in 2004 were materially false and misleading and lacked any reasonable basis for belief. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Wave and its business practices, their control over and/or receipt of Wave's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Wave were active and culpable participants in the fraudulent scheme alleged herein.

75.    In addition, as stated above, the Individual Defendants personally profited from their knowledge of the falsity of the statements they provided to the investing public concerning Wave's purported deals and partnerships and the revenue expected from such arrangements. During the Class Period, defendant Feeney sold 100,000 shares of Wave stock at $5.00 per share for proceeds of $500,000, cutting his overall share ownership by 50%. Defendant Sprague sold 150,000 shares of Wave stock at prices ranging from $3.14-3.47 per share for proceeds of $492,636, reducing his overall share ownership by 20%.

76.    Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing

fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

## STATUTORY SAFE HARBOR

77.    The federal statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  Any forward-looking statements pleaded were not accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from the statements made therein.  Defendants are liable for the forward-looking statements pleaded because, at the time each of those forward-looking statements was made, the speaker knew the forward-looking statement was false and the forward-looking statement was authorized and/or approved by an executive officer of Wave who knew that those statements were false when made.

## FRAUD-ON-THE-MARKET DOCTRINE

78.    Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine, in that at all relevant times, the market for Wave Systems' common stock was an efficient market for the following reasons, among others:

(a)    Wave common stock met the requirements for listing, and was listed and actively traded on the NASDAQ National Market ("NASDAQ"), a highly efficient and automated market;

(b)    As a regulated issuer, Wave filed periodic public reports with the SEC and the NASDAQ;

(c)    Wave regularly communicated with public investors via established market communication mechanisms, including the regular disseminations of press releases on the national circuits of major news wire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services. Each of these releases was publicly available and entered into the marketplace; and

(d)    Wave was followed by securities analysts who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports were publicly available and entered the public marketplace.

79.    As a result of the foregoing, the market for Wave common stock promptly digested current information regarding Wave from all publicly available sources and reflected such information in Wave common stock pricing. Under these circumstances, all purchasers of Wave common stock during the Class Period suffered similar injury through their purchase of Wave common stock at artificially inflated prices and a presumption of reliance applies.

## CLASS ACTION ALLEGATIONS

80.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of themselves and a class (the "Class"), consisting of all those who purchased the common stock of Wave between July 31, 2003 and December 18, 2003, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of their immediate families and their legal

representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

81.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Wave common stock was actively traded on NASDAQ. Wave has approximately 52 million shares actively trading on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.

82.    Plaintiffs' claims are typical of the claims of the members of the Class, because Plaintiffs and all of the Class members sustained damages arising out of Defendants' wrongful conduct complained of herein.

83.    Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel who are experienced and competent in class actions and securities litigation.

84.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impractical for the members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

85.    Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, in that Defendants have acted on grounds

31

generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

    (a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    Whether the Company's publicly disseminated press releases and statements during the Class Period omitted and/or misrepresented material facts;

    (c)    Whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated;

    (d)    Whether Defendants participated in and pursued the fraudulent scheme or course of business complained of;

    (e)    Whether the Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

    (f)    Whether the market price for Wave common stock during the Class Period was artificially inflated due to material non disclosures and/or misrepresentations complained of herein; and

    (g)    Whether members of the Class have sustained damages and, if so, what is the appropriate measure of damages.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

    86.    Plaintiffs repeat and reiterate the allegations set forth above as though fully set forth herein. This claim is asserted against all Defendants.

87.     During the Class Period, Wave and the Individual Defendants disseminated or approved the statements specified above, which they knew or deliberately disregarded were materially false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

88.     Wave Systems and the Individual Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

a.     Employed devices, schemes, and artifices to defraud;

b.     Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c.     Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Wave common stock during the Class Period.

89.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Wave common stock. Plaintiffs and the Class would not have purchased Wave common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' materially misleading statements.

90.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their purchases of Wave common stock during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of The Exchange Act Against
### the Individual Defendants

91.    Plaintiffs repeat and reiterate the allegations as set forth above as if set forth fully

herein. This claim is asserted against the Individual Defendants.

92.    The Individual Defendants acted as controlling persons of Wave within the

meaning of §20(a) of the Exchange Act. By reason of their positions as senior officers of Wave,

the Individual Defendants had the power and authority to cause Wave to engage in the wrongful

conduct complained of herein. By reason of such conduct, the Individual Defendants are liable

pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

(1)    Declaring this action to be a proper class action pursuant to Federal Rules of Civil

Procedure  23;

(2)    Awarding Plaintiffs and the members of the Class damages, interest and costs;

and

(3)    Awarding such equitable/injunctive or other relief as the Court may deem just and

proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: October 22, 2004

Respectfully submitted,

GILMAN & PASTOR, LLP


/s/ David Pastor
David Pastor (BBO #391000)
John C. Martland (BBO #322980)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts 01906
Telephone: 781/231-7850
781/231-7840 (fax)

SCHIFFRIN & BARROWAY, LLP
Marc I. Willner
Karen E. Reilly
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Telephone: 610/667-7706
610/667-7056 (fax)

Lead Counsel

00003557.WPD ; 1