# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN, | ) ) ) ) |  |
| Plaintiffs, | ) |  |
| v. | ) ) ) | CIVIL ACTION |
| WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE and GERARD T. FEENEY, | ) ) ) ) | NO. 04-30022-MAP |
| Defendants. | ) ) ) ) ) ) |  |

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS
## THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

WAVE SYSTEMS CORPORATION, JOHN E.
BAGALAY, JR., STEVEN K. SPRAGUE AND
GERARD T. FEENEY,

By their attorneys,

Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
Raquel J. Webster, BBO #658796
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................1

I.  THE OPPOSITION FAILS TO IDENTIFY ANY STATEMENT THAT
    COULD BE DEEMED MATERIALLY FALSE OR MISLEADING ..................3

    A.  The Sole Facts That Plaintiffs Claim Should Have Been Disclosed
        On July 31 and August 4, 2003 Are Immaterial As A Matter Of
        Law ................................................................................................3

    B.  Unable To Allege A Materially Misleading Statement, The
        Plaintiffs Focus Instead On Non-Actionable Pre-Class Period
        Statements, To No Avail .................................................................8

    C.  The Company Cannot Be Held Liable If The Market Speculated
        About Wave's Future Prospects ....................................................10

    D.  Defendants' Corporate Optimism Is Not Actionable ................................11

II. DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT
    ACTIONABLE -- THE COMPLAINT MUST BE DISMISSED ........................13

    A.  The Plaintiffs Fail To Demonstrate That The Challenged
        Statements Are Not "Forward-looking." .....................................14

    B.  Defendants' Forward-Looking Statements Contained Meaningful
        Cautionary Language ...................................................................16

    C.  The Opposition Fails to Cite Any Particularized Allegation Of Fact
        To Show That the Defendants Made Any Forward-looking
        Statement With the Requisite "Actual Knowledge" Of Falsity ................17

III. THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS
    HAVE UTTERLY FAILED TO ALLEGE SUFFICIENT FACTS
    SUPPORTING A STRONG INFERENCE OF SCIENTER AS TO EACH
    DEFENDANT ........................................................................................19

    A.  Plaintiffs' Allegations of Defendants' "Direct Knowledge" Fail To
        Raise the Required Strong Inference of Scienter .......................19

    B.  Plaintiffs' Motive and Opportunity Allegations Do Not Add to
        Their Purported Strong Inference of Scienter ............................20

    C.  Plaintiffs' Allegations Concerning Sprague and Feeney's Stock
        Sales Do Not Add to Plaintiffs' Purported Strong Inference of
        Scienter .......................................................................................20

CONCLUSION ............................................................................................21

i

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

*Barr v. Matria Healthcare, Inc.,* 324 F. Supp. 2d 1369 (N.D. Ga. 2004) ........................14

*Coates v. Heartland Wireless Communications, Inc.,* 26 F. Supp. 2d 910
(N.D. Tex. 1998) ...................................................................................................................18

*Colby v. Hologic Inc.,* 817 F. Supp. 204 (D. Mass. 1993)................................................17

*Eisenstadt v. Centel Corp.,* 113 F.3d 738 (7th Cir. 1997) .................................................10

*Greebel v. FTP Software, Inc.,* 194 F.3d 185 (1st Cir. 1999)..........................13, 16, 19, 20

*Greenstone v. Cambex Corp.,* 975 F.2d 22 (1st Cir. 1992) ...............................................18

*Guerra v. Teradyne Inc.,* No. Civ. A. 01-11789-NG-2004 WL 1467065
(D. Mass. Jan. 16, 2004) .......................................................................................................4

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999).............................................13, 14, 16

*In re AMDOCS Ltd. Sec. Litig.,* 390 F.3d 542 (8th Cir. 2004) .......................................3, 5

*In re Allaire Corp. Sec. Litig.,* 224 F. Supp. 2d 319 (D. Mass. 2002).........................11, 12

*In re Burlington Coat Factory Seurities. Litig..,* 114 F.3d 1410 (3d Cir.
1997) ......................................................................................................................................5

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002) ...............................................10

*In re Fidelity/Apple  Sec. Litig.*, 986 F. Supp. 42 (D. Mass. 1997) ...................4, 5, 12, 13

*In re Galileo Corporation Shareholders Litig.*, 127 F. Supp. 2d 251 (D.
Mass. 2001), ..................................................................................................................2, 8, 9

*In re Microstrategy Inc. Sec. Litig..,* 115 F. Supp. 2d 620 (E.D. V.A. 2000)...................19

*In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314 (3rd Cir. 2002)..............................................5

*In re PLC Systems, Inc. Sec. Litig.*, 41 F. Supp. 2d 106 (D. Mass. 1999) ..........................7

*In re Sun Healthcare Group Inc. Sec. Litig.*, 181 F. Supp. 2d 1283
(D.N.M. 2002)......................................................................................................................16

*Karacand v. Edwards*, 53 F. Supp. 2d 1236 (D. Utah 1999)...............................................7

*Loan v. Federal Deposit Ins. Corp.*, 717 F. Supp. 964 (D Mass. 1989)...........................18

*Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir.1998) .......................................................18

*Miller v. Champion Enterprises Inc.*, 346 F.3d 660 (6th Cir. 2003) .................................14

CTDOCS/1622425.2

*Nathenson v. Zonagen,* 267 F.3d 400 (5th Cir. 2001)......................................................4, 5

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ...................................................................6

*Orton v. Parametric Technology Corp.*, 344 F. Supp. 2d 290 (D. Mass. 2004)......................................................................................................................................12

*Shaw v. Digital Equipment Corp*, 82 F.3d 1194 (1st Cir. 1996) .......................4, 5, 11, 12

## STATE CASES

*In re Blockbuster Inc. Sec. Litig.,* No. 3:03-CV-0398-M 2004 WL. 884308 (N.D. Tex. Apr. 26, 2004).......................................................................................................5

*In re DSP Group, Inc. Sec. Litig.*, No. C 95-4025-CAL, 1997 WL. 678151 (N.D. Cal. March 5, 1997) ..............................................................................................9

*In re Hall, Kinion & Assocs.,* No. C-99-02943, 2000 WL. 1639503 (N.D. Cal. Oct. 27, 2000) ......................................................................................................17, 18

*In Re PEC Solutions Sec. Litig.*, No. 03-CV-331, 2004 WL. 1854202 (E.D. Va. 2004)............................................................................................................15

*In re Loewen Group, Inc. Sec. Litig., No. Civ. A. 98-6740, 2003 WL 22436233 (E. D. Pa. July 16, 2003)* ...............................................................................6

*Kurtzman v. Compaq Computer Corp.,* No. 99-1429, 2000 WL. 34292632 (S.D. Tex. 20006*........................................................................................................6

## FEDERAL STATUTES

15 U.S.C. § 78u-5 ...................................................................................................13, 16, 17

CTDOCS/1622425.2

**Preliminary Statement**

Plaintiffs' Opposition To Defendants' Motion To Dismiss (the "Opposition") only further demonstrates the Amended Complaint's failure to plead a claim for securities fraud cognizable under Section 10(b) of the 1934 Act and the PSLRA. The gravamen of Plaintiffs' argument is that Wave's announcements of going-forward agreements with IBM and Intel were allegedly misleading because Wave did not at the same time disclose that the agreements were non-exclusive or without minimum purchase requirements for purposes of revenue. According to Plaintiffs, this "omission" rendered the statements misleading -- despite the factual accuracy of the statements otherwise -- because of a pre-Class Period, forward-looking statement made one month prior about a "forecast" of a potential "$5 million in gross margin contribution." The Plaintiffs' theory of the case cannot be squared with extant law governing the minimum requisites of pleading a Section 10(b) claim under the 1934 Act and PSLRA.

The Plaintiffs have not -- because they cannot -- explain away the fact that the non-exclusivity and absence of minimum requirements for the Intel and IBM agreements (the *only* facts that they claim should have been disclosed) is *immaterial as a matter of law*. Apart from the fact that, as alleged, the market recognized that the terms of the deals were not immediately revealed, Wave *disclosed* this very information that the Plaintiffs claim was a "material" omission. Critically, the market's reaction, as reflected in Wave's stock price, was virtually non-existent – with a mere two cent (0.6%) difference from the day prior to the disclosure to the day after. In cases relying on a "fraud on the market" theory of reliance, such as this one, the First Circuit has instructed that materiality is measured *by the market*. Here, the market has spoken. Wall Street's stasis in response to Wave's disclosure of the only information Plaintiffs claim was "omitted" renders that information immaterial as a matter of law.

That the purportedly "concealed" facts about the Intel and IBM deals are immaterial as a matter of law is dispositive. But even if it were not, the Opposition fails to overcome the fact

1

that the Class Period statements were factually accurate and contextually non-misleading, and as a matter of law, the Company had no duty to disclose any further information regarding the Intel and IBM agreements. This case is analytically indistinguishable from cases like *In re Galileo Corporation Shareholders Litig.*, 127 F. Supp. 2d 251 (D. Mass. 2001), dismissing allegations regarding a company's announcement of a five-year supply contract, even though the company described the deal as involving minimum purchase requirements without disclosing that there was no way to enforce the terms. Cases like *Galileo* hold that such a disclosure is not misleading as a matter of law where there was no guarantee of revenue, and the disclosure was factually accurate. So too here, Wave's disclosure was factually accurate and made no projections -- let alone guarantees -- of revenue from the IBM and Intel agreements. At the end of the day, the Plaintiffs' Complaint is based on the market's speculation regarding the profitability of the deals -- with full knowledge that the details were not disclosed -- and as a matter of law, that speculation cannot serve as the basis for a securities fraud suit.

What remains of Plaintiffs' arguments amounts to little more than misstatements of the law followed by misapplication to the alleged facts. The statements made during the Class Period were plainly forward-looking, protected by the PSLRA's safe harbor, and the Plaintiffs have fallen far short of overcoming their heightened pleading burdens in this respect. Similarly, the Opposition fails to explain away the Amended Complaint's shortcomings in regard to pleading *scienter* under the PSLRA. Plaintiffs' argument that a strong inference of scienter may be inferred simply because Defendant Sprague on August 14 disclosed the alleged "omitted" information to the market -- *i.e.*, he knew later so he must have know before -- amounts to a stillborn claim of "fraud by hindsight." Similarly, the alleged insider trading can provide *no* inference of scienter without particularized allegations of the individuals' pre-Class Period trading patterns to show that the trades were suspicious – mere proximity between trading and allegedly misleading announcements fails as a matter of law.

2

## REPLY

I.  **THE OPPOSITION FAILS TO IDENTIFY ANY STATEMENT THAT COULD BE DEEMED MATERIALLY FALSE OR MISLEADING.**

A.  **The Sole Facts That Plaintiffs Claim Should Have Been Disclosed On July 31 and August 4, 2003 Are Immaterial As A Matter Of Law.**

"Alleged misrepresentations can be immaterial as a matter of law if they . . . present or conceal such insignificant data that, in the total mix of information, it simply would not matter." *In re AMDOCS Ltd. Sec. Litig.*, 390 F.3d 542, 548 (8th Cir. 2004). Plaintiffs claim that Wave's announcements of agreements with Intel and IBM on July 31 and August 4, 2003, respectively, were misleading because the Company should have also disclosed that the Intel agreement was non-exclusive, without any minimum licensing requirement, and the IBM deal was not fee producing. (Opp. at 10; A.C. ¶¶ 41, 56, 60, 64). Precisely that information, however, was disclosed to the market on August 14, 2003. While the Plaintiffs argue that Wave's *July 31 and August 4 disclosures* were material because, following the announcements, the stock price rose, *e.g.*, Opp. at 19, the issue is *not* whether these statements were material, but rather, *whether the allegedly omitted information was material.* That Wave's stock price jumped following July 31 is irrelevant. Immediately after the press releases, the press reports about them recognized that financial terms were not contained in the press releases.[1] Later, the market did not even flinch at the disclosure of the purportedly "concealed" information. The market's non-reaction to the purported "bad news" conclusively determines that the information was immaterial as a matter of law.[2]

---

[1] The price rise was clearly not based on omitted information. As alleged, the third-party press coverage of the announcement recognized that financial details of the agreement were *not* provided -- *i.e.* the market recognized the absence of the very information that the Plaintiffs' contend should have been disclosed *See* A.C. ¶38 ("Financial terms of the partnership weren't disclosed"); A.C. ¶46 ("Once again, terms were not disclosed, so traders remain in the dark as to the value of the deals to the company, and there is no analyst coverage to interpret the data").

[2] Indeed, the Plaintiffs' entire case is based on the proposition that the deals were not material.

(Footnote Continued on Next Page)

3

The Plaintiffs here allege a "fraud on the market" theory of reliance -- the theory that "in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business." *In re Fidelity/Apple Sec. Litig.*, 986 F. Supp. 42, 47 (D. Mass. 1997). In fact, Plaintiffs have specifically *alleged* that "the market for Wave common stock *promptly digested current information* regarding Wave from all publicly available sources *and reflected such information in Wave common stock pricing*." (Am. Compl. ¶ 79) (emphasis added). That alleged element of Plaintiffs' claim requires this Court, under First Circuit precedent, to consider only the market's reaction -- and not individual investors' -- when determining whether information is or is not material. "*In a fraud-on-the-market case the hypothetical 'reasonable investor,' by reference to whom materiality is gauged, must be 'the market' itself . . . .*" *Shaw v. Digital Equipment Corp*, 82 F.3d 1194, 1218 (1st Cir. 1996) (emphasis added), *superseded by statute on other grounds, as noted in Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197 (1st Cir. 1999) (emphasis added).

As noted, the sole "facts" that Plaintiffs have identified as actionable omissions in both the July 31, 2003 and August 4, 2003 press releases were the non-exclusivity for the Intel agreement and lack of fee generation for IBM. These facts, however, were *disclosed* on August 14, 2003. (*See* August 14, 2003 Conference Call Transcript at pp. 7-8, attached hereto as Exhibit 1 to Defendants' Appendix of Exhibits ("App. Exh"). Wave's closing price on August 13, 2003 was $3.22. On August 15, 2003, the day following the disclosure, Wave's stock price closed at $3.20 -- *a two cent difference, 0.6% change*.[3] The market -- "by reference to whom materiality

---

(Footnote Continued from Previous Page)

A.C. ¶¶ 56, 60. How can there be a fraud claim under Section 10(b) for failure to disclose *additional*, non-material details? The Opposition strains to argue that the omission of the details of the deals allowed the market to believe that the agreements were in fact material, when they were not. Opp. at 17. But the market's alleged *speculation* -- engaged in without inducement by any statement of fact from the Company -- cannot be the basis of a Section 10(b) action. *See* Part I.C, below.

[3] Specifically, the Company's stock price increased from $3.22 on August 13 to $3.39 on August

(Footnote Continued on Next Page)

CTDOCS/1622425.2

is gauged" (*Shaw*, 82 F.3d at 1218) had *no reaction* to the purportedly material "bad news."  The

information is immaterial as a matter of law. [4]  *In re Fidelity/Apple Sec. Litig.*, 986 F. Supp. at 48

(D. Mass. 1997) (holding that individual's allegedly misleading statements were immaterial as a

matter of law because, in part, there was "no significant rise (or fall) in the price of Apple shares

[] precipitated by the publication of Lange's statements"); *In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997) ("because the market for BCF stock was 'efficient' and

because the July 29 disclosure had no effect on BCF's price, it follows that the information

disclosed on September 20 was immaterial as a matter of law.").[5]

---

(Footnote Continued from Previous Page)

14, and back to $3.20 on August 15.  (*See* Bloomberg Historical Prices for Wave's Systems Corp., July 31, 2003 – August 31, 2003, App. Exh. 2 at 1).  This court may take judicial notice of this document.  *See Guerra v. Teradyne Inc.*, No. Civ. A. 01-11789-NG  2004 WL 1467065 *1, n.2 (D. Mass. Jan. 16, 2004) (taking judicial notice of stock price in securities fraud case).

To the extent the Plaintiffs might attempt to argue that the August disclosure resulted in a drop in stock price from August 14 to August 15, the argument fails as a matter of law.  Under their own fraud on the market theory the stock price on August 13 must have included the alleged "artificial inflation."  Accordingly, the comparison of August 13 and August 15 measures the impact of the disclosure on the artificially inflated levels.  Moreover, during August of 2003, Wave's stock price regularly demonstrated similarly insignificant twenty cent changes in price from day to day -- 8/8 @ $3.46, 8/11 @ $3.25, 8/12 @ $3.41, 8/13 @ $3.22.  (*See* Bloomberg Historical Prices for Wave's Systems Corp., July 31, 2003 – August 31, 2003, App. Exh. 2 at 1).In any event, the change in stock price was a mere nineteen cents (from $3.39 to $3.20), or a mere 5.6 % change.  Courts have found similar changes in stock price insignificant.  *See Nathenson v. Zonagen* 267 F. 3d 400, 418 & n.17 (5th Cir. 2001) (describing drop in price from $9 ¼ to $8 7/8 as "no decline").

[4] Plaintiffs state that the issue of whether a statement is misleading and whether adverse facts are adequately disclosed are normally questions that should be decided by a trier of fact.  (Opp. at 16, n. 10).  Courts, however, have held that complaints alleging only "immaterial misrepresentations" present an "insuperable bar to relief" and are properly dismissed.  *See In re Amdocs Ltd. Sec. Litig.*, 390 F.3d 542, 547 (8th Cir. 2004).

[5] Indeed, courts have routinely held that, in just these circumstances, securities complaints are properly dismissed:

"In ... an 'efficient' market, the concept of materiality translates into information that alters the price of the firm's stock."  **If the disclosure of certain information has no effect on stock prices, it follows that the information disclosed was immaterial as a matter of law.**

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3rd Cir. 2002) (emphasis added) (citations omitted)

(Footnote Continued on Next Page)

CTDOCS/1622425.2

Predictably, Plaintiffs have attempted to explain away Wall Street's unequivocal judgment as to the unimportance of Wave's disclosure, arguing that, in effect, the Company spun the bad news with other "misleading" statements during the August 14 investor conference call (Opp. at 20). Plaintiffs' attempt at explanation is unavailing, however, as they fail to point to a single statement in the August 14 investor call that was inaccurate in any respect, instead merely citing to selective excerpts of corporate optimism that were conditioned in the same call by caution (ignored by the Opposition). Addressing similar arguments in similar circumstances, courts have held that dismissal is proper. In *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) for instance, the defendants argued for dismissal on the ground that the disclosure of the allegedly negative omitted information had no appreciable affect on the stock price. The plaintiffs countered, as do the Plaintiffs here, arguing that the company's "spinning" of the information in its disclosure prevented the market from reacting. The Third Circuit rejected the argument, because, as is the case here, the plaintiffs could point to nothing inaccurate in the company's disclosure, even if it was "spinning":

> Plaintiffs counter, however, that this lack of adverse price movement may be traceable to defendant's own "spinning" of the Mayo data -- which, plaintiffs maintain, itself constituted a material misrepresentation. . . . We reject this argument, and agree with the District Court that AHP's so-called "spinning" of the Mayo data was not materially misleading. AHP, in its public statements, did characterize the Mayo data as "limited and therefore inconclusive," and emphasized that "additional scientific investigation must be conducted before any possible link can be confirmed." *There is, however, nothing in these statements*

---

(Footnote Continued from Previous Page)

(affirming dismissal). *See also Nathenson v. Zonagen* 267 F. 3d 400, 418 (5th Cir. 2001); *In re Blockbuster Inc. Sec. Litig.*, No. 3:03-CV-0398-M 2004 WL 884308 * 10(N.D. Tex. Apr. 26, 2004) ("Plaintiffs' Amended Complaint pleads neither a presumption of reliance nor a reason why the stock price was unaffected by the public disclosure of the Buena Vista dispute. Therefore, the Court agrees with Defendants that Plaintiffs' pleading of reliance with respect to the failure to disclose the Buena Vista dispute is insufficient."); *In re the Loewen Group, Inc. Sec. Litig.*, No. Civ. A. 98-6740. 2003 WL 22436233 (E.D. Pa. July 16, 2003) (negligent effect of disclosure on stock price rendered information immaterial as a matter of law).

6

*that could reasonably be characterized as inaccurate.*

*Id.* at 282 (emphasis added).

As in *Oran*, Plaintiffs point to nothing in the August 14 press release that is inaccurate in any respect. In fact, each of the statements attacked by Plaintiffs were no more than non-actionable corporate optimism coupled with cautious qualifications that cannot, as a matter of law, be deemed misleading or actionable:

| The Investor Conference Call Statements . . . | Are Non-Actionable As A Matter of Law. |
|---|---|
| "the market will start generating revenue for us really [at] the end of this year in fourth quarter . . . that this revenue is based primarily on the applications that are bundled with the platform, very much around the relationship that we've announced with Intel" (A.C. ¶58). | • A statement about what "*the market*" will or will not generate is unequivocally soft information that is non-actionable as a matter of law. *See Kurtzman v. Compaq Computer Corp.*, No. 99-1429, 2000 WL 34292632 at *7 (S.D. Tex. 2000) (holding that the following statements were non-actionable vague statements of corporate optimism: "[T]he market in Europe in 1999 is strong for industry and Compaq products"; "[W]e are quite optimistic about the PC market…we believe its going to be continuously a good PC market"; and "we want to grow faster than the market in order to increase market share").<br><br>• The statement is especially "soft" when the *full text* of the Plaintiffs' selective excerpt is considered -- "*we believe* the market will start generating revenue . . ." -- a forward-looking statement of opinion is not actionable as a matter of law. *Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1252 (D. Utah 1999) (noting significance of plaintiff's failure to include full quote of statement beginning with "we think").<br><br>• In any event, there is no statement as to how much revenue "the market" would "generate," and in the same conference call, Mr. Sprague cautioned in response to the question about "what [the Intel deal] could mean for revenue?" -- "*it's just premature to answer the question.*" (Aug. 14, 2003 Conference Call Transcript, App. Exh. 1 at 6). |
| "Sprague further asserted that he was comfortable with his forecast, '. . . much more comfortable, than perhaps our shareholders can be | • Remarkably, Plaintiffs' selective quote *does not concern any forecast regarding revenue or Intel.* Rather, Mr. Sprague was responding to a question about whether the Company would be able to "keep the lights |

7

| The Investor Conference Call Statements . . . | Are Non-Actionable As A Matter of Law. |
|---|---|
| because it's hard to see the data we have.'" (A.C. ¶ 59). | on" long enough for the products to gain acceptance in the market. (App. Exh. 1 at 4). The discussion was in the context of questions concerning the Company's burn rate, in follow up to comments about how the Company had become "lean." Far from "comfort" about any "forecast," the quoted comments were simply about whether the Company would be able to stay in business to see any potential benefits from recent developments in the market. |
| "Defendant Sprague further represented that on this basis, Wave would reach 'cash flow breakeven sometime in 2004.'" (Opp. at 11, citing A.C. ¶58). | • The quote from paragraph 58 is actually a part of Mr. Sprague's comments at page 3 of the investor call transcript, wherein he stated "*We think* the long term scope in that business is tremendous and on a short term basis *we think* we can reach the point where the Company gets to cash flow breakeven sometime in 2004." (App. Exh. 1 at 3). Mr. Sprague's opinions stated in terms of "we think" are simply not actionable. *See In re PLC Systems, Inc. Sec. Litig.*, 41 F. Supp. 2d 106, 117-18 (D. Mass. 1999) (holding that statements which were stated in terms of "we believe" and "we expect" were not actionable and stating that "[m]ere expressions of hope or expectation…not worded as guarantees, are not actionable").<br>• In any event, the statement concerned the state of the trusted computing market generally, and Wave's hopes about "penetrating" it, statements that are not actionable as a matter of law. |

In short, as in *Oran*, the Plaintiffs point to nothing false or misleading in any of Mr. Sprague's comments during the August 14 investor call. The August 14 disclosure failed to even register a blip in Wave's stock price. The allegedly omitted information concerning the "true nature" of the Intel and IBM agreements is immaterial as a matter of law.

### B.    Unable To Allege A Materially Misleading Statement, The Plaintiffs Focus Instead On Non-Actionable Pre-Class Period Statements, To No Avail.

Plaintiffs attempt to assert that Wave's disclosures were misleading because a month earlier, the Company optimistically "forecast" a potential $5 million in gross margin over the next year. (Opp. at 14, 17, 22). Plaintiffs' effort is futile in light of the fact that the purportedly

8

undisclosed information during the July 31 and August 4 Class Period statements is immaterial as a matter of law.  (*See* Part I.A).  But in any event, Plaintiffs' theory cannot be reconciled with the cases decided under the PSLRA.  There was no duty to disclose the terms of the deals.

*In re Galileo*, 127 F. Supp. 2d 251 is illustrative.  In *Galileo*, after losing 48% of its annual sales by the loss of its main client, the company announced how it would make up for the loss by expanding its medical products division (similar to the "forecast" of $5 million in gross margin alleged here).  That statement was followed shortly thereafter by an announcement of a five-year supply contract with "Physician Sales."  The company described the deal in its announcement as involving minimum purchase requirements, but as alleged by the plaintiffs, the company failed to disclose that there was no way to enforce the terms (*id*. at 256) -- similar to the Plaintiffs' Complaint here that Wave disclosed the Intel and IBM agreements without also disclosing that the deals were non-exclusive.  The District of Massachusetts did not hesitate to dismiss the claim, holding that the disclosure was not misleading because there was no guarantee of revenue, and the disclosure was factually accurate:

> [T]he press release did not state or imply that revenues of $150 million dollars were *guaranteed* over five years or that $25 million dollars in revenues would be achieved by Galileo in the first year of the agreement. . . .  [A]ll that the press release did was to describe--perhaps with some enthusiasm and optimism-- revenue goals that Galileo hoped to achieve from its agreement with Physician Sales.  *No reasonable investor would have seen in the press release a promise of sales at specific levels, under all circumstances, during the first year or over the term of the agreement.*  In a fraud-on-the-market of the kind alleged here, a claim of fraud "can draw no sustenance from allegations that the defendants made overly-optimistic statements if those statements are ones that any reasonable investor would... recognize as nothing more than a kind of self-directed puffery."

*Id*. at 267.

Remarkably similar to the facts alleged here, in *In re DSP Group, Inc. Sec. Litig.*, No. C 95-4025-CAL, 1997 WL 678151 (N.D. Cal. March 5, 1997), the plaintiffs complained that the defendants "created a false and misleading impression of future recognizable revenues" by "announc[ing] the execution of license agreements with major companies;" while the defendants

"knew, but did not disclose, that those licenses would produce revenue only if the licensees actually produced products using [the defendant's] technology" and the defendants "knew that the licenses were not exclusive relationships with [the defendants]." *Id.* at *3.  Because the defendants, in their disclosures regarding the agreements, made no revenue projections based on the agreements, the court held that the "Defendants had no duty to disclose the detailed terms of every new license agreement they announced." *Id.* at *5.

Wave made no projection -- let alone a guarantee -- of revenue based on the agreements. Even if the announcement of the Intel and IBM deals are read in conjunction with Wave's alleged "forecast" of potentially $5 million in gross margin contribution, made an entire month earlier, "no reasonable investor would have seen in the press release a promise of sales at specific levels, under all circumstances, during the first year or over the term of the agreement[s]." *Galileo,* 127 F. Supp. 2d at 267.  *Galileo*, *DSP* and the legal principles upon which they stand, provide an additional, independently dispositive reason for dismissing the Amended Complaint.[6]

### C.    The Company Cannot Be Held Liable If The Market Speculated About Wave's Future Prospects

At the end of the day, the Plaintiffs' core contention seems to be that the July 31 and August 4 press releases made the Intel and IBM deals seem material to future revenue when they allegedly were not.  *E.g.* Opp. at 17.  That claim, however, is unsupported by any alleged misstatement by the Company.  Rather, the Plaintiffs base their lawsuit solely on the Company's non-disclosure of the agreements' details -- information that the market recognized was

---

[6] Plaintiffs' attempt to distinguish *Galileo* falls flat.  Plaintiffs contend that *Galileo* is distinguishable because there the defendants "simultaneously provided detailed terms of the agreement." (Opp. at 20).  Of course, the allegations in *Galileo* were such that those detailed terms were misleading because of an omission directly related to whether the agreement would actually produce revenue, exactly as the plaintiffs allege here.

10

unknown. As a matter of law, there can be no liability for the market's mere speculation about future revenue absent a misstatement inducing the speculation.

The law in the First Circuit regarding whether analysts' statements are actionable is illustrative. In the First Circuit (and elsewhere), for instance, issuers are *immune* from liability based on misstatements in media coverage, absent a showing of "entanglement" with the media that effectively caused the statement or "intentionally foster[ed] a mistaken belief concerning a material fact." *See In re Cabletron Systems, Inc.,* 311 F.3d 11, 37-38 (1st Cir. 2002). Indeed, "*a corporation has no duty to correct rumors planted by third parties.*" *Eisenstadt v. Centel Corp.,* 113 F.3d 738, 744 (7th Cir. 1997) (emphasis added). The Plaintiffs' theory of liability here would extend an already legally deficient principle (*i.e.* responsibility for third party statements) one step further. As alleged, the market was *not* misled to believe the deals were more profitable by anything the Company *said* -- the media *recognized* that no financial details were provided. A.C. ¶¶ 38, 46. At most, the market speculated about the deals' value. Analytically, that is no different than if the media simply assumed that the deals were exclusive license agreements and reported the same, causing the stock price to rise. In the First Circuit and elsewhere, Wave could not be liable under those circumstances, absent misstatements to the media, as a matter of law. *A fortiori*, Wave cannot be held liable for the market's speculation here.

### D. Defendants' Corporate Optimism Is Not Actionable

Plaintiffs also attempt to argue that certain loosely optimistic statements during the Class Period are actionable. In particular, Plaintiffs attack Wave's optimistic statements that "[w]e can now clearly see the growing momentum for trusted computing in the marketplace, and we expect substantial growth in volumes over the course of the next four quarters" (Opp. at 22). Wholly apart from the fact that the statement is about the market for "trusted computing" in general, as opposed to Wave's products in particular (and accordingly is not actionable on that ground alone), in the First Circuit and elsewhere, such loose optimism is not actionable as a matter of law.

11

In *Shaw*, 82 F.3d at 1217, the First Circuit held that similarly optimistic statements -- *i.e.* the company "should show progress quarter over quarter, year over year" -- was immaterial as a matter of law. The court began by recognizing that "courts have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace--loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *Id.* The court also noted that "[r]eview of vaguely optimistic statements for immateriality as a matter of law may be especially robust in cases involving a fraud-on-the-market theory of liability," as is the case here, and the court held that the company's statements of "progress quarter over quarter, year over year" were immaterial as a matter of law. *Id.* at 1218.

As the District of Massachusetts has observed, mere statements of corporate optimism are especially immaterial in a case relying on the fraud on the market theory:

> [A] statement must be factual and specific to perpetrate a fraud-on-the-market. Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism . . . The market gives the most credence to those predictions supported by specific statements of fact, and those statements are, of course, actionable if false or misleading. However, "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws."

*In re Fidelity/Apple*, 986 F. Supp. at 47 (emphasis added).

Ignoring *Shaw*, Plaintiffs' instead cite Judge Young's decision *In re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d. 319 (D. Mass. 2002). In *Allaire*, the defendant stated that its product, Spectra, was "fueling growth." *Id.* at 331. Judge Young held that the statement was actionable because it was "a precise statement as to the basis for profit growth which, *if the assertions about Spectra's inability to operate are true*… could not have been believed by its maker." *Id.* at 331-32 (emphasis added). Plaintiffs claim that Sprague's November 13, 2003 statement about the "momentum for trusted computing in the marketplace" was somehow a "precise statement as to

12

the basis for Wave's alleged profit growth."  (Opp. at 22).[7]  That argument stretches the reasoning behind *Allaire* beyond logical limits.  First, "momentum for trusted computing in the marketplace" is hardly "precise."[8]  Second, Plaintiffs here, unlike the plaintiffs in *Allaire*, do not make any allegations to the effect that there was not a "momentum for trusted computing," which, if true, could render the statement false.

In short, the statement regarding "momentum" is insufficiently "factual and specific to perpetrate a fraud-on-the-market," *In re Fidelity/Apple*, 986 F. Supp. at 47.  Rather, the statement is "so vague [and] so lacking in specificity . . . that no reasonable investor could find them important to the total mix of information available."  *Shaw,* 82 F.3d at 1217.

## II.  DEFENDANTS' FORWARD-LOOKING STATEMENTS ARE NOT ACTIONABLE -- THE COMPLAINT MUST BE DISMISSED.

Plaintiffs assert that Defendants' statements were not forward-looking, but if they were, they were not accompanied by sufficient cautionary language for "safe harbor" protection, and the Plaintiffs somehow pled with particularity facts to show that the statements were

---

[7] Of course, Plaintiffs fail to point to a single statement concerning Wave's "alleged profit growth" for which the Sprague quote formed the alleged "precise statement as to the basis."

[8] The statement is in the same category of vague statements held non-actionable by Judge Young in *Orton v. Parametric Technology Corp.*, "we feel confident that the combination of our motivated workforce, solid infrastructure and total commitment to product development which is intended to deliver a high return on investment for customers, positions us for long-term growth."  344 F. Supp. 2d 290, 300 (D. Mass. 2004).  In *Orton*, Judge Young, distinguished his decision in *Allaire* on the very point upon which the Plaintiffs rely, with reasoning that is fully applicable here.  In *Orton*, the plaintiffs attacked the following statement:  "Our results show that the actions taken to create separate business units within the company and to strengthen the product line focus of the sales organization are starting to have a positive impact."  Noting that the statement only skirted corporate puffery, Judge Young held that it was non-actionable because the plaintiffs failed to allege that the company's "business strategies somehow impaired, or had no impact whatsoever, on the company's financial performance in the third quarter of fiscal 2000."  *Id.* at 299.  Accordingly, the case was distinct from *Allaire* because the plaintiffs had alleged no facts that could show that the statement was false.  *Id.*  As in *Orton*, Plaintiffs fail to allege any basis for contending that the alleged statement was false -- there is no allegation concerning whether there was or was not "momentum" in the market for trusted computing that was or was not causing volume increases in that market.

13

disseminated by Defendants with actual knowledge of falsity. (Opp. at 28-29). Importantly, if the statements are in fact forward-looking (and as set forth below, there is no question that this is the case) the Plaintiffs must prevail *both* on their argument that the disclosures lacked meaningful cautionary language *and* that the complaint pleads actual knowledge of falsity, as the safe harbor protection for forward-looking statements is disjunctive. *See* 15 U.S.C. § 78u-5(c); *Greebel,* 194 F.3d at 201 (describing safe harbor prongs as "alternative inlets"). Plaintiffs have failed to overcome any of the protections provided by the PSLRA's forward-looking statements safe harbor. 15 U.S.C. § 78u-5(c)(1)(A)(i)-(B); (*see* Defs. Br. at 14-34).

**A.     The Plaintiffs Fail To Demonstrate That The Challenged Statements Are Not "Forward-looking."**

Plaintiffs attempt to argue that Wave's disclosures were not "forward-looking," contending that the statements in part concerned "present facts" -- *i.e.* facts concerning the terms of the Intel and IBM agreements. (Opp. at 29-30). The law is to the contrary.

Where a statement contains both projections of future performance coupled with statements of present fact, the entire statement is deemed "forward-looking" to the extent that the gravamen of the plaintiff's challenge concerns future events. *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999) (holding that entire statement of mixed present facts and future projections forward-looking: "the allegation here is that the list *as a whole* misleads anyone reading it for an explanation of Ivax's projections"). The Eleventh Circuit in *Ivax* reached its common sense conclusion based on the legislative history of the PSLRA:

> Congress enacted the safe-harbor provision in order to loosen the "muzzling effect" of potential liability for forward-looking statements, which often kept investors in the dark about what management foresaw for the company. *Forward-looking conclusions often rest both on historical observations and assumptions about future events.* Thus, were we to banish from the safe harbor lists that contain both factual and forward-looking factors, we would inhibit corporate officers from fully explaining their outlooks. Indeed, liability-conscious officers would be relegated to citing only the factors that could individually be called forward-looking. That would hamper the communication that Congress sought to foster.

14

*Id.* at 806-07 (emphasis added).[9]

Plaintiffs here assert that Wave's statements were not forward-looking because the Company disclosed agreements, *i.e.* present facts, concerning the Company's relationship with Intel and IBM. (Opp. at 29). Plaintiffs thus attempt to ignore the crux of their challenges to these statements, vehemently asserted in their Amended Complaint and their brief:

- "If the truth about the Intel agreement had been disclosed by Defendants, investors would have learned that the Intel arrangement was *not likely to be a component of the touted '$5 million in gross margin contribution* . . . . (Opp. at 10) (emphasis added);

- "Defendants knew that the Intel 'agreement' would not generate revenue stream forecast by the Company at any time in the foreseeable future . . . ." (Opp. at 10) (emphasis added), (A.C. ¶ 56).

- "Disclosure of the truth regarding the Company's arrangements with Intel and IBM would have revealed that *the purported deals were not likely to be a component of the anticipated '$5 million in gross margin contribution'*" . . . . Opp. at 17 (emphasis added), (*See* A.C. ¶ 41).

In their attempt to characterize the Company's statements as "present tense," Plaintiffs also simply ignore the forward-looking content of the press releases that form the basis for their entire action. For instance, the crux of the July 31 press release was that "the agreement with Intel *will* enable both companies to *accelerate development*. The agreement *will* enable Intel to bundle Wave's software and services *with a future Intel desktop* motherboard " (Press Release dated July 31, 2003 at 2, App. Exh. 3). Similarly, the August 4 press release stated "Wave's partnership with IBM *will* significantly help us in our *objective* to deliver open and interoperable solutions to business customers as trusted computing continues *to evolve*." (Press Release dated

---

[9]  *See also Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 677 (6th Cir. 2003) (agreeing with *Ivax* and holding that "statements that imply projections or objectives, fall[] squarely within the definition of 'forward-looking statements'"); *Barr v. Matria Healthcare, Inc.,* 324 F. Supp. 2d 1369, 1381 (N.D. Ga. 2004) (holding "statements, though in isolation seemingly describing Matria's status quo operations, were made in the context of projections regarding future capabilities and earnings" and thus forward-looking).

15

August 4, 2003 at 1, App. Exh. 4). These forward-looking statements are not actionable. *See In Re PEC Solutions Sec. Litig.*, No. 03-CV-331, 2004 WL 1854202 at *8 (E.D. Va. 2004) (granting motion to dismiss and holding that defendants' statements regarding expected revenue growth and expected earnings per share were non-actionable, forward-looking statements because they "involve[d] financial projections that [would] not be determined to be true or false until some point in the future").

In short, both the content of the disclosures at issue here and Plaintiffs' challenge to them are plainly forward-looking. The safe harbor applies.

## B.   Defendants' Forward-Looking Statements Contained Meaningful Cautionary Language.

Plaintiffs maintain that Defendants' forward-looking statements do not qualify for safe harbor protection because they were accompanied only by, Plaintiffs say, generic cautionary language. (Opp. at 30-31). According to Plaintiffs, the Company's disclosed "risk factors" "would apply to any company." (Opp. at 32). To the contrary, Wave's detailed risk factors disclosed to the public that net operating profits and revenue depended on the Company's products gaining commercial acceptance, due to the "early stage nature of the digital security industry" -- hardly a risk factor that could apply to "any company." For example only:

> We have experienced net loss and negative cash flows from operations since our inception. ***We have not realized a net operating profit in any quarter since we began our operations, nor have we generated any significant operating revenue, as our products have not yet attained commercial acceptance.*** This is due primarily to ***the early stage nature of the digital security industry in which we operate.*** As of March 2003, we had a deficit accumulated during the development of our products and services, there is little basis for evaluating the financial viability of our business and our long-term prospects.

Form S-3/A, filed Aug. 11, 2003, App. Exh. 5 at 3 (emphasis added). (*See also* Form S-3 filed Aug. 20, 2003, App. Exh. 6 at 3). This and the other risk factors cited and quoted in Defendants' initial memorandum of law provide warnings about the important factors that could cause actual

16

results to differ materially from any projections made in the forward-looking statements. That is all that is required under the plain terms of the PSLRA. 15 U.S.C. § 78u-5(c)(1)(A)(i).

Nonetheless, Plaintiffs complain that Wave's risk disclosures did not "inform the market about the significant, specific risk that the Intel and IBM arrangements would not produce revenues for the Company." (Opp. at 32). In a word, no such pinpointed risk disclosure is required under the PSLRA. To be meaningful, "cautionary language [need not] explicitly mention the factor that ultimately belies a forward-looking statement" but rather requires the warning only to mention "important factors that could cause actual results to differ materially from those in the forward-looking statement." *Ivax,* 182 F.3d at 806 (*quoting* 15 U.S.C. § 78u-5(c)(1)(A)(i)).[10] Wave's disclosures do just that, and the statements are therefore not actionable.

**C.    The Opposition Fails to Cite Any Particularized Allegation Of Fact To Show That the Defendants Made Any Forward-looking Statement With the Requisite "Actual Knowledge" Of Falsity.**

Plaintiffs perfunctorily and conclusorily claim in the Opposition that Defendants made their forward-looking statements with actual knowledge of falsity, without citing to a single allegation in support. (Opp. at 32-33). Apparently, Plaintiffs are content to rest on their arguments that their allegations regarding scienter are sufficient to satisfy the actual knowledge requirement of the PSLRA's safe harbor. Plaintiffs' argument fails to recognize, however, that "[a]ctual knowledge is a higher level of scienter than the recklessness required by the pleading standards of the PSLRA." *In re Sun Healthcare Group Inc. Sec. Litig.*, 181 F. Supp. 2d 1283, 1289 (D.N.M. 2002) (internal quotations and citations omitted); *see also Greebel,* 194 F.3d at 200-01 (discussing differences in standards). As explained below, Plaintiffs utterly fail to allege

_____

[10]   The conference report, moreover, that accompanied the PSLRA specified that "*[f]ailure to include the particular factor* that ultimately causes the forward-looking statement not to come true *will not mean that the statement is not protected by the safe harbor.*" H.R. Conf. Rep. 104-369, at 44 (1995), reprinted at 1995 U.S.C.C.A.N. 730, 743, App. Exh. 7 (emphasis added).

17

scienter, *a fortiori* they have failed to allege actual knowledge.  But even if Plaintiffs had alleged some lower level of scienter, there is no allegation anywhere in the Amended Complaint that could satisfy "actual knowledge" regarding the forward-looking statements.

Importantly, Plaintiffs attack the Intel and IBM disclosures claiming that they were misleading with regard to projections (albeit made one month earlier) about revenue in the future.  It is not enough, as Plaintiffs contend, to simply plead (albeit conclusorily) that Defendants had actual knowledge of the terms of the agreements.  (Opp. at 24).  Rather, Plaintiffs must show actual knowledge that the *forward-looking statement was misleading -- i.e.* that the purported projection was misleading.  *See* 15 U.S.C. § 78u-5(c)(1)(A)(iii).  To show that the Defendants had actual knowledge would therefore require a showing that the Defendants *knew* that the agreements *would not produce revenue due to their non-exclusivity or lack of minimum purchase requirements*.  There is no allegation of fact in the Amended Complaint to that effect.

Further, the Defendants' actual statements during the period show, if anything, that they neither had actual knowledge of whether the agreements would produce revenue, nor could they have.  *E.g.*, Aug. 14 Investor Call, App. Exh. 1 at 8 (emphasis added) ("its not an exclusive with Intel.  We are a supplier to them.  It's a very standard PC OEM industry contract.  We built something that they think is currently cool.  They can replace it when they decide they want to replace it with something else.  *They can use it as broadly as they want, or as little as they want*") (emphasis added).  Under the actual terms of the agreement, Intel *could have* "use[d] it [] broadly" producing significant revenue for Wave, and the Plaintiffs have alleged no facts to the contrary.  *See Colby v. Hologic Inc.*, 817 F. Supp. 204, 211 (D. Mass. 1993) (dismissing challenge to projection where defendant had basis for it); *In re Hall, Kinion & Assocs.*, No. C 99-02943, 2000 WL 1639503 at *2 (N. D. Cal. Oct. 27, 2000) (emphasis added) ("Actual knowledge of falsity could be shown *only* if the internal circumstances were so gloomy that it was unlikely that managers in the shoes of defendants could have reasonably believed the

external projections").

## III.   THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE UTTERLY FAILED TO ALLEGE SUFFICIENT FACTS SUPPORTING A STRONG INFERENCE OF SCIENTER AS TO EACH DEFENDANT.

### A.   Plaintiffs' Allegations of Defendants' "Direct Knowledge" Fail To Raise the Required Strong Inference of Scienter.

Plaintiffs have failed to raise a strong inference of scienter for each Defendant, as required.[11]   Plaintiffs' core argument is that Defendants disclosed the purportedly omitted information about Wave's relationships with Intel and IBM on August 14, 2003, and thus, according to Plaintiffs, the Defendants "were obviously aware of this information." (Opp. at 24). The Plaintiffs' theory amounts to little more than an allegation of "fraud by hindsight," and fails to satisfy Rule 9(b)'s requirement that specific facts be pled. *See Maldonado v. Dominguez*, 137 F.3d 1, 9-10 (1st Cir.1998) (scienter not sufficiently alleged by bare allegation that defendant must have had knowledge of facts contradicting its statements); *Greenstone v. Cambex Corp.*, 975 F.2d 22, 25 (1st Cir. 1992) ("Courts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity unless the complaint also sets forth *specific facts* that make it reasonable to believe that defendant new that a statement was false or misleading").[12]

---

[11] In response to Defendants' argument that Plaintiffs have failed to sufficiently assert specific allegations of scienter against *each* Defendant (Def.s. Br. at 34-41), Plaintiffs repeat the allegations of the Amended Complaint that at all relevant times, Sprague was Wave's CEO and Feeney was Wave's CFO and that each had immediate access to information concerning the true nature of Wave's relationships with Intel and IBM. (Opp. at 25, n. 15; A.C. at ¶ 74). Allegations of an individual's position and control within the Company are insufficient to plead scienter. *See Coates v. Heartland Wireless Communications, Inc.*, 26 F. Supp. 2d 910, 916 (N.D. Tex. 1998); *Loan v. Federal Deposit Ins. Corp.*, 717 F. Supp. 964, 968 (D Mass. 1989). *See also* Defs. Br. at 36-37.

[12] As explained fully in Defendants' opening brief, Plaintiffs' reliance on a confidential witness (A.C. ¶¶ 12, 40) is insufficient to plead falsity under the PSLRA. (*See* Defs. Br. at 25). In their Opposition, Plaintiffs fail to address and thus, impliedly concede this point.

19

**B.      Plaintiffs' Motive and Opportunity Allegations Do Not Add to Their Purported Strong Inference of Scienter.**

Plaintiffs contend that Wave's survival and the Individual Defendants' jobs were dependent on inflating the Company's stock price to escape the so-called crippling terms of the private equity placement. (A.C. at ¶ 7). Allegations of motive and opportunity, however, are *never enough* by themselves to create a strong inference of scienter. *In re Microstrategy Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 629 (E.D. V.A. 2000) (*citing Greebel*, 194 F. 3d at 197) ("[M]erely pleading motive and opportunity, *regardless of the strength of the inferences to be drawn of scienter*, is not enough") (emphasis added). As discussed below, the Amended Complaint fails to offer any well pled allegation of scienter to which the Plaintiffs' "motive and opportunity" allegations add.

**C.      Plaintiffs' Allegations Concerning Sprague and Feeney's Stock Sales Do Not Add to Plaintiffs' Purported Strong Inference of Scienter.**

Plaintiffs' allegations about Sprague and Feeney's stock sales utterly fail to add to their purported strong inference of scienter. As Plaintiffs themselves acknowledge, courts require particularized facts to show "unusual trading or trading at suspicious times or in suspicious amounts," and the Plaintiffs contend they have so pled based on their allegations concerning "both the timing and amount of the stock sold by Feeney and Sprague raise suspicions." (Opp. at 27). The allegations are insufficient, as fully explained in Defendants' opening brief. (Def. Br. at 38-40). It warrants further attention here, however, that in the First Circuit, to satisfy the PSLRA's scienter pleading requirements based on insider trading allegations, Plaintiffs must plead the past trading pattern of the defendants. *Greebel*, 194 F.3d at 198 ("*[a]t a minimum*, . . . [the insider trading] must be unusual, *well beyond the normal patterns of trading by those defendants*."). Indeed, *Greebel* provided a road map for plaintiffs in the First Circuit seeking to meet this standard, noting that "[b]ecause insiders of a publicly traded company must regularly file share ownership and trading reports with the SEC (on Forms 3, 4, 5, and 144), such information is readily available to plaintiffs." *Id.* at n.11. Yet *nowhere* do the Plaintiffs allege

20

the trading patterns of any Defendant. Without allegations of the Defendants' trading patterns prior to the Class Period, the Plaintiffs have failed to plead the context necessary to drawing an inference that the trading was "unusual" in any respect.

## CONCLUSION

For the foregoing reasons and for the reasons stated in Defendants' Memorandum in Support of their Motion to Dismiss, Defendants respectfully request that this Court dismiss Plaintiffs' Consolidated Amended Class Action Complaint in its entirety.

Respectfully submitted,

**WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE and GERARD T. FEENEY,**

By their attorneys,

/s/Raquel J. Webster
Robert A. Buhlman, BBO #554393
Eunice E. Lee, BBO #639856
Michael D. Blanchard, BBO #636860
Raquel J. Webster, BBO #658796
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: March 22, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above pleading was electronically served upon the attorneys of record for all parties on March 22, 2005.

/s/Raquel J. Webster
Raquel J. Webster

21