UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNE BRUMBAUGH, et al. | ) |
| | ) **CLASS ACTION** |
| Plaintiffs, | ) |
| | ) No. 04-30022-MAP |
| v. | ) |
| | ) |
| WAVE SYSTEMS CORPORATION, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL
AUTHORITY AND SUPPLEMENT OF THE RECORD ON ORAL ARGUMENT**

**PRELIMINARY STATEMENT**

Lead Plaintiffs Anne Brumbaugh, Gary L. Harmon, and Randy K. Griffin ("Plaintiffs"), respectfully submit the following in response to Defendants' Supplemental Authority[1] and Supplement Of The Record.[2] For the following reasons, Defendants' post-hearing submissions do not warrant dismissal of the Plaintiffs' claims set forth in the Consolidated Amended Complaint ("Complaint").[3]

---

[1] References to the Defendants' Unopposed Motion For Leave To File Supplemental Authority shall be made as "Def. S.A. ¶ __."

[2] References to the Defendants' Motion For Leave To Supplement The Record shall be made as "Def. S.R. ¶ __."

[3] References to the Consolidated Amended Complaint shall be made as "CAC ¶ __."

1. **The Facts As Plead In The Instant Action Are Readily Distinguishable From *In Re Credit Suisse First Boston Corp.* And Defendants' Reliance Is Misplaced.**

Defendants' offer of the recent decision by the Judge O'Toole in *In re Credit Suisse First Boston Corp.,* No. 02-12056 (D. Mass. Mar. 31, 2005) as controlling authority in the instant action is misplaced, and should have no bearing on this Court's decision concerning Defendants' motion to dismiss.

    a. **Plaintiffs Have Adequately Plead A Drop In Wave's Stock Price Related To Defendants' Fraudulent Conduct.**

Defendants offer *Credit Suisse* for the sole proposition that Plaintiffs have not alleged a stock price drop in connection with the alleged materially false and misleading statements which occurred at the beginning of the Class Period (CAC ¶¶ 36, 42). On this basis alone, Defendants conclude the false and misleading statements alleged are not material as a matter of law, and loss causation has not been adequately plead. Def. S.A. ¶ 4. However, Defendants have mischaracterized the well plead allegations of the Complaint, which indeed plead a drop in Wave's stock price at the end of the Class Period. CAC ¶¶ 13, 70-72. For this reason alone, Defendants' reliance on *Credit Suisse* is unfounded.

Moreover, contrary to Defendants' argument, the stock's failure to free fall in the interim, before the close of the Class Period and after defendant Sprague's conference call on August 14, 2003, does not establish, "as a matter of law" that materiality and loss causation have not been sufficiently plead.[4] In *Swack v. Credit Suisse First Boston,* 2004 U.S. Dist. LEXIS 22749 * (D.

---

[4] Indeed, Defendants ignore the well-plead fact that the partial disclosures were made alongside additional misleading statements made by defendant Sprague– during the same conference call, which prevented any "corrective effect" on the market. CAC ¶¶ 58, 59. The

Mass. Sept. 21, 2004), Judge Woodlock rejected a similar argument. In *Swack,* the defendant analysts argued that their ratings, i.e., "Buy," were not actionable as they had little or no discernable effect on the stock price. "Evidence that the stock price changed in particular ways on particular days in a manner apparently inconsistent with a plaintiff's theory is powerful evidence. But it is just that – evidence. At this stage, my task is to examine the formal sufficiency of the pleadings, not to determine whether there is evidence sufficient to support a jury verdict in plaintiff's favor." *Id.* at *41, 42. Quoting the court's own prior ruling in *Blatt v. Muse Techs., Inc.,* 2002 U.S. Dist. LEXIS 18466, 2002 WL 31107537, 32 at *14-15 (D. Mass. Aug. 27, 2002), Judge Woodlock reiterated:

> I am unwilling at this stage to draw conclusions regarding market reliance from ambiguous market history. In order to reject plaintiffs' market reliance allegations at this stage, I must engage in my own projections about likely market movement had there not been a failure of disclosure. There must be actual factfinding, including perhaps expert testimony about general market trends in the NASDAQ Small Cap Market, to draw appropriate conclusions about the market impact of non-disclosure. While on initial review, the market seems to have been largely indifferent to the actionable misrepresentations I have found adequately alleged here, I cannot say with the requisite decisiveness that this is so on a motion to dismiss record.

The court sustained plaintiffs' complaint, finding "The plaintiff must, indeed, plead that the price declined as the truth emerged, but she need not allege that it happened on a single day." *Swack* at

---

comparison between alleged misstatements and stock price movements is fact-intensive and appropriately left to the trier of fact to resolve. *See e.g., Gebhardt v. ConAgra Foods, Inc.,* 335 F.3d 824, 831-32 (8th Cir. 2003)(declining "to attach dispositive significance to the stock's price movements absent sufficient facts and expert testimony, which cannot be considered at this [12(b)(6)] procedural juncture, to put this information in its proper context"); *Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.),* 197 F. Supp. 2d 42, 67-68 (D. Del. 2002)(refusing to dismiss on basis of stock price movements because "these arguments are fact intensive matters usually requiring expert testimony concerning the state of the financial markets and the like").

*50.[5]  Here, Plaintiffs have more than adequately plead that Wave's stock price dropped following the Company's disclosure that it was under investigation by the Securities and Exchange Commission ("SEC") for statements made in August 2003, and insider trading in Wave securities during that time.  CAC ¶¶ 70-72.  For the same reasons, the admitted false statement made by Defendants on August 20, 2003, in the Form S-3 Registration Statement identifying the IBM "partnership" as a "Material Change" and a "licensing agreement" (CAC ¶ 62) should not be dismissed.[6]

### b.  The Holding In *Credit Suisse* Does Not Mandate That The False And Misleading Statements Alleged Were Immaterial As A Matter Of Law.

Contrary to Defendants' contention, the holding in *Credit Suisse* does not demonstrate that Defendants' false and misleading statements as plead are immaterial as a matter of law.  In *Credit Suisse,* Judge O'Toole found that a "Buy" recommendation made by an analyst was not actionable because at the same time it was made, the "company announced surprisingly positive earnings for the previous quarter" and plaintiffs had failed to allege facts showing that the stock

---

[5] Judge Woodlock refused to "apply a standard by which the plaintiff suffers a loss at the instant she has purchased stock at an inflated price; . . . unless and until the truth emerges and the market corrects, she could sell it to another unknowing investor without suffering a loss attributable to fraud." (citations omitted.)  Therefore, and as Plaintiffs here have plead a drop in Wave's stock price (CAC ¶¶ 13, 70-72), as a result of the Defendants' fraudulent conduct, the Supreme Court's recent decision *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. __ (2005) does not alter the ruling in *Swank,* and is not applicable to the facts as plead in the case at bar.

[6] As addressed at the hearing, Defendants' statements made throughout the Class Period also demonstrate Defendants' intent to deceive or mislead the investing public as to the true nature of the Intel and IBM business relationships, and their significance to Wave's ability to meet its revenue projections.  *See Rosen v. Textron, Inc.,* 321 F. Supp. 2d 308, 324 n.9 (D.R.I. 2004)("Courts have held that whether a defendant knowingly publishes misstatements is a factor to be considered when determining if there is a strong inference of scienter.  *See, e.g., In re Raytheon Sec. Litig.,* 157 F. Supp. 2d 131, 147 (D. Mass. 2001).  This is to be distinguished from the altogether separate analysis of whether an alleged misstatement is actionable.")

price increase was due in part to the defendants' "Buy" recommendation. *Credit Suisse* slip op. at 16.[7] On this basis, and in light of the other analysts in the marketplace who were also making recommendations as to the company's stock, Judge O'Toole found plaintiffs had not demonstrated that the "Buy" ratings had "significantly altered the 'total mix' of information" available. *Id.* at 17. (citing *Basic, Inc. v. Levinson,* 485 U.S. 224, 232 (1988); *Cooperman v. Individual Inc.,* 171 F.3d 43, 49 (1st Cir. 1999)).

Unlike the facts present in *Credit Suisse,* in the instant action, the only information available to the market was that provided by Defendants. As Defendants concede, there was no analyst coverage of Wave at the time the false and misleading statements were made. *See* CAC ¶ 46 ("... and there is no analyst coverage to interpret the data."). Defendants controlled the "total mix" of information available to the investing public. As such, Defendants cannot take shelter from liability through statements and conditions they generated-- including the misleading statements made by defendant Sprague during the August 14, 2003 conference call, which effectively precluded any curative effect the partial disclosures could have had on Wave's stock price.

---

[7] Defendants mistakenly indicate that the court in *Credit Suisse* found the statements were not material as the stock did not inflate in price after the statements were made. Def. S.A. ¶ 3. However, the stock price did rise, but the court found plaintiffs had not alleged any facts to indicate the price inflation was caused, or due to defendants' "Buy" recommendations, or the company's contemporaneous positive statements– or both. *Credit Suisse* slip op. at 16. In the case at bar, Plaintiffs have plead Wave's stock price was inflated at the start of the Class Period because of Defendants' materially misleading statements (*i.e.,* CAC ¶¶ 36-47) and that the stock price fell once the truth emerged (CAC ¶¶ 13, 70-72).

2.  **Plaintiffs' Comments At Oral Argument Concerning National Semiconductor Do Not Disturb The Well Plead Allegations of the Complaint**.

Plaintiffs concede, and apologize to the Court and counsel for confusing at oral argument the Defendants' Class Period description of the Intel and National Semiconductor agreement with Defendants' pre-Class Period press release concerning National Semiconductor.[8] However, as addressed in Plaintiffs' opposition brief, as well as at the hearing, Plaintiffs have stated sufficient facts to establish a strong inference of scienter on the part of Defendants to deceive the investing public as to the significance of Wave's purported business relationships with Intel and IBM. Defendants, when faced with the oppressive terms of the Series H Placement (*i.e.,* CAC ¶¶ 4-7) and certain closure of the Company's doors, devised a scheme to trigger the one escape route available under the terms of the Series H Placement– a radical rise in Wave's stock price which would mandate conversion of the preferred securities to common stock, which did not pay a dividend. CAC ¶ 5. To achieve this goal, Defendants primed the market to anticipate an historic turn of events– a $5 million revenue stream, generated by "deals that we are currently pursuing will close." CAC ¶ 9. With the market thus primed, within one month's time, Defendants announce business deals with Intel and IBM, which Defendants also describe during the Class Period as "Material Changes" in the Company's business– and which deals Defendants continued to misrepresent even after the partial disclosures of August 14, 2003. *See* CAC ¶ 62. All the Defendants profited by their misrepresentations, the Company avoided closing its doors, defendant Sprague sold 20% of his shares in the Company for proceeds of $492,636 on August 6,

---

[8] The details of the pre-Class Period National Semiconductor press release are not part of the allegations contained in the Complaint.

2003,[9] and defendant Feeney sold 50% of his overall share ownership for proceeds of $500,000 on August 5, 2003, within days of the announcements at issue.[10]  CAC ¶¶ 12, 20, 21, 49, 50.

## CONCLUSION

For the foregoing reasons, and the reasons asserted in Plaintiffs' opposition to the motion to dismiss the Complaint, as well as argument presented at the hearing on March 30, 2005, Defendants' motion to dismiss should be denied in its entirety, or in the event the Court identifies any pleading deficiencies in the Complaint, Plaintiffs should be granted leave to amend pursuant to Fed. R. Civ. P. 15(a).

DATED:     April 20, 2005            Respectfully submitted,

/s/ David Pastor
David Pastor (BBO #391000)
GILMAN AND PASTOR, LLP
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, MA 01906
Telephone:  (781) 231-7850
Facsimile:   (781) 231-7840

**Plaintiffs' Liaison Counsel**
Gregory Castaldo
Karen E. Reilly
SCHIFFRIN & BARROWAY, LLP
280 King of Prussia Rd.
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:   (610) 667-7056

**Plaintiffs' Lead Counsel**

---

[9] In all of 2002, Defendant Sprague sold only $192,760 worth of Wave shares.

[10] Defendant Feeney did not sell any shares of Wave stock held in 2002.