UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>WAVE SYSTEMS CORPORATION, JOHN E. BAGALAY, JR., STEVEN K. SPRAGUE and GERARD T. FEENEY,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION<br>NO. 04-30022-MAP |

**DEFENDANTS' MOTION FOR LEAVE TO CITE
SUPPLEMENTAL SUPREME COURT AUTHORITY,
*DURA PHARMACEUTICALS, INC. V. BROUDO*, 125 S. CT. 1627 (2005)**

Pursuant to Local Rule 7.1(b)(3), Defendants Wave Systems Corporation, Steven K. Sprague and Gerard T. Feeney (collectively, the "Defendants") respectfully submit this Motion For Leave To Cite Supplemental Authority, the recent Supreme Court case of *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005), decided April 19, 2005. That decision was rendered after oral argument on Defendants' Motion To Dismiss on March 30, 2005. The Court's decision in *Dura Pharmaceuticals* unequivocally requires dismissal of the Consolidated Amended Complaint.

**AS IN *DURA PHARMACEUTICALS*, THE COMPLAINT HERE
MUST BE DISMISSED FOR FAILURE TO ALLEGE LOSS CAUSATION**

In *Dura Pharmaceuticals*, the Court reversed the Ninth Circuit and affirmed a dismissal of a Section 10b securities fraud action for failure to plead "loss causation" -- "a causal

CTDOCS/1627474.1

connection between the material misrepresentation and the loss." 125 S. Ct. at 1631. As the Court recognized, even a materially misleading statement of fact will not support a securities fraud action absent allegations and proof that the statement *caused* loss. 125 S. Ct. at 1632-33. In short, the securities laws were not designed to "provide investors with broad insurance against market losses," but were rather designed to "protect them against those economic losses that misrepresentations actually cause." *Id.* at 1633.

The Supreme Court held that securities plaintiffs must both *plead* and prove loss causation, and also established the minimal pleading requirements to show the necessary causal connection between misleading statements and a loss to withstand a motion to dismiss. Particularly relevant here, the Court rejected the Ninth Circuit's iteration of a pleading threshold for loss causation. The Ninth Circuit had held that loss causation is sufficiently pled by an allegation that "'the price' of the security 'on the date of purchase was inflated because of the misrepresentation.'" *Id.* at 1629. The Supreme Court disagreed, holding that merely to allege that plaintiffs "'paid artificially inflated prices for [the] securities' and suffered damages" is insufficient. *Id.* at 1634. Rather, a plaintiff must plead and prove that the company's "share price fell significantly after the truth became known," such that the "defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover." *Id.* at 1633-34.

Dispositively, the Complaint here makes *no allegation* that any of the purportedly misleading statements identified by the Plaintiffs proximately caused any loss to the Plaintiffs or Class. Rather, as in *Dura Pharmaceuticals*, the Complaint here alleges only that the statements "artificially inflate[ed] the value of [Wave's] equity." *E.g.*, A.C. ¶¶ 67, 79 ("all purchasers of Wave common stock during the Class Period suffered similar injury through their purchase of Wave common stock at artificially inflated prices"); 89 ("Plaintiffs and the Class have suffered

damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Wave common stock."). Nowhere do the Plaintiffs allege, as they must under *Dura Pharmaceuticals*, that the allegedly misleading statements caused *loss* to the Plaintiffs -- *i.e.* that the "share price fell significantly after the truth became known." 125 S. Ct. at 1634. Indeed, as the Defendants have previously pointed out, Wave's stock price failed to react at all to the purported disclosure of the "truth" on August 14, 2003. *See* Defendants' Reply Brief.

The Complaint's *only* allegation that concerns a drop in share price involves the disclosure of the SEC investigation in December of 2003. However, the Plaintiffs do not allege -- because they *cannot* so allege -- that any purported "truth" concerning any of the allegedly misleading statements was disclosed in December of 2003. As this Court recognized during oral argument, the Company's disclosure of the SEC investigation simply reported the fact of the investigation and the general focus of inquiry, facts which by themselves could cause a drop in share price.[1] No "fact" relating to any purportedly misleading statement, however, was disclosed. A.C. ¶¶70-72.[2] In short, the Plaintiffs have failed to allege any causal nexus whatever between any allegedly misleading statement and any purported loss.[3]

---

[1] During oral argument, this Court recognized the absence of any necessary causal link between any allegedly misleading statements and Wave's drop in stock price following the announcement of the SEC investigation in December, 2003:

> THE COURT: I guess my own -- fortunately I don't invest, but my own reaction would be it's never very nice to be told you're being investigated even if you're clean as the driven snow, pure as the driven snow. I wouldn't particularly like it if tomorrow morning I was to read in the newspaper that the SEC is investigating Judge Ponsor even though I've never -- I have no stock holdings or anything else. I think my stock would go down. Just the fact you're being investigated can't be too helpful to a company or a person.

Tr. March 30 oral Argument, at 24, (attached hereto as Exhibit A).

[2] At oral argument, the Plaintiffs contended that, in effect, while the December 2003 disclosure did not reveal any "facts" about any previous statements, the announcement of the SEC investigation at least related to those statements because the time period of August 2003 was identified as the focus of the inquiry. Tr. at 24-25, Ex. A. At most (if at all), the Plaintiffs can say that the alleged misleading statements might have touched upon the drop in stock price following the December 2003 announcement of the SEC investigation. But the Supreme Court

Devoid of any allegation concerning any drop in stock price at any time other than following the December 2003 disclosure of the SEC investigation (which itself disclosed no "truth" about any previous statement), the Complaint fails to allege loss causation and must be dismissed.

*   *   *

Viewing the forest as well as the trees, *Dura Pharmaceuticals* also speaks to Congress' broad policy goals in enacting the PSLRA, and the Court's statements, express and implied, are apt here. The Supreme Court reaffirmed that, through enactment of the PSLRA, Congress sought to curtail "abusive" practices in securities litigation, including the "routine filing of lawsuits . . . with only a faint hope that the discovery process might lead eventually to some plausible cause of action." 125 S. Ct. at 1634 (quoting H.R. Conf. Rep. No. 104-369, p. 31 (1995)). As such, the Court was not hesitant to require the pleading of loss causation with perhaps more specificity than Rule 8 would require. *Id.* at 1634.

With all due respect, the Complaint here -- predicated solely on the drop in Wave's stock price following an announcement of an SEC investigation that contained no disclosure of any previously withheld facts about the Company-- is precisely the type of lawsuit Congress had in mind when it enacted the PSLRA. In effect, the Plaintiffs here have filed a lawsuit based on the

---

specifically rejected that same contention in *Dura Pharmaceuticals* -- "to 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires." 125 S. Ct. at 1632.

[3] For this reason too, the Plaintiffs' attempt to distinguish *In re Credit Suisse* by citation to Judge Woodlock's decision in *Swack v. Credit Suisse Boston*, 2004 U.S. Dist. LEXIS 22749 (D. Mass. Sept. 21, 2004) is unavailing. In their brief in response to Defendants' supplemental briefs, the Plaintiffs attempt to argue that whether or not the stock price dropped on any given day as a matter of pleading and proving loss causation is a factual matter inappropriate for resolution on a motion to dismiss. Plaintiffs' Response To Defendants' Supplemental Authority ("Pl. Br.") at 2-4. But the Supreme Court held in *Dura Pharmaceuticals* that a plaintiff must *plead* loss causation -- and affirmed dismissal for failure to do so. The Plaintiffs here rest their case with respect to loss causation solely on their allegation that the stock price dropped following the announcement of the SEC investigation in December, 2003. Pl. Br. at 4. While the Plaintiffs may have pled a connection between the announcement of the SEC investigation and the price of Wave's stock, that allegation says nothing about any causal connection between any misleading statement and a loss. A.C. ¶¶ 70-72. As the Supreme Court held in *Dura Pharmaceuticals*, the Plaintiffs must plead a causal connection between misleading statements and a loss, not merely that a statement may have "touched upon" a loss. 125 S. Ct. at 1632.

mere speculation that the SEC might turn up some wrongdoing, without alleging any factual basis for their lawsuit in their own right. Permitting this case to proceed in spite of the strict pleading requirements of the PSLRA would truly "transform a private securities action into a partial downside insurance policy," allowing the Plaintiffs "to simply take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value . . . ." *Id.* This is not what Congress intended when it enacted the PSLRA, and this case should be dismissed, with prejudice.

**WHEREFORE**, Defendants request that their Motion For Leave To Cite Supplemental Authority be granted.

Respectfully submitted,

**JOHN E. BAGALAY, JR., STEVEN SPRAGUE, GERALD T. FEENEY, AND DEFENDANT WAVE SYSTEMS CORP.**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Michael D. Blanchard, BBO #636860
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110

Dated: May 11, 2005

## RULE 7.1(a)(2) CERTIFICATION

I, Michael D. Blanchard, hereby certify that counsel for Defendants attempted to confer with liaison counsel for Plaintiffs in good faith to resolve or narrow the issues presented in this motion, but as of the time of filing, Plaintiffs' liaison counsel has not assented.

/s/ Michael D. Blanchard
Michael D. Blanchard

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon each attorney of record electronically on May 11, 2005.

/s/ Michael D. Blanchard
Michael D. Blanchard

CTDOCS/1627474.1

# Exhibit A

```
1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2                         WESTERN SECTION
3
4
5    ANNE BRUMBAUGH, et al      .   Docket No. CA 04-30022-MAP
                                 .
6              v.                .   Springfield, MA
                                 .
7    WAVE SYSTEMS, et al         .   March 30, 2005
     . . . . . . . . . . . . . . .   2:44 p.m.
8
9
10              TRANSCRIPT OF HEARING HELD BEFORE
11              THE HONORABLE MICHAEL A. PONSOR,
12            UNITED STATES DISTRICT COURT JUDGE.
13
14
     APPEARANCES:
15
16   For the plaintiff:   David Pastor, 999 Broadway, Suite
                          500, Saugus, MA 01906.
17
                          Karen Reilly, Three Bala Plaza East,
18                        Suite 400, Bala Cynwyd, PA 19004.
19
     For the defendant:   Robert Buhlman and Michael Blanchard,
20                        150 Federal Street, Boston, MA 02110.
21
22              Alice Moran, CSR, RPR, RMR
                Official Federal Court Reporter
23              1550 Main Street, Room 536
                Springfield, MA 01103
24         Tel: 413-731-0086   Fax: 413-737-7333
25
26
```

```
 1    clean -- here we have a situation where there was a clean
 2    statement made and the market didn't react because that's
 3    not this situation, and you can juxtaposition that
 4    statement and that scenario to what actually did happen
 5    at the end of the class period on December 18th.
 6         If defendants are right that that information was
 7    not relevant and not material to an investor, then why
 8    was there a response at the end of the class period when
 9    the market was essentially told about the investigation,
10    look, those statements and that whole run-up that
11    happened in July and August is suspect.  Then why wasn't,
12    you know, why was there no response at all to that
13    statement at the end?
14              THE COURT:  I guess my own -- fortunately I
15    don't invest, but my own reaction would be it's never
16    very nice to be told you're being investigated even if
17    you're clean as the driven snow, pure as the driven snow.
18         I wouldn't particularly like it if tomorrow morning
19    I was to read in the newspaper that the SEC is
20    investigating Judge Ponsor even though I've never -- I
21    have no stock holdings or anything else.  I think my
22    stock would go down.  Just the fact you're being
23    investigated can't be too helpful to a company or a
24    person.
25              MS. REILLY:  No, but I think it's directly tied
26
```

1    to specific events.  It's not a general investigation
2    announcement.  It's specifically tied to something that
3    the market could then say, whoa, you know, look at this.
4    Maybe we weren't looking at this -- maybe we didn't have
5    all the information that we should have had.
6         And, Your Honor, I know that in the defendants'
7    motion to dismiss, and also their reply, they try to --
8    they're trying to persuade the Court to only look at the
9    July 31st and the August 4th statements as the only
10   statements that should be looked at in deciding whether
11   or not the plaintiffs have properly asserted a claim
12   under the securities laws and that's not our position.
13        There were statements made within that first month
14   time period that can be attributed to the company.  I
15   know in the reply papers they talk about an entanglement
16   analysis.
17             THE COURT:  Yeah.  I think probably the most --
18   as I was looking through your complaint, probably the
19   most helpful statement from the plaintiffs' point of
20   view, and I'm going to be asking the defendants about
21   this, is quoted at paragraph 45 of your complaint.
22        It says that, "On August 5, 2003, a Wave
23   spokesperson confirmed and furthered the market's
24   perception of the company's materially misleading August
25   4th announcement."  And then it says, "As reported in the
26

1    June 30, 2003, as quoted in part by the plaintiffs, Wave
2    had -- and I'm quoting -- "had incurred substantial
3    operating losses since its inception, and as of December
4    31, 2002 had an accumulated deficit of approximately $233
5    million," and as of that time Wave's independent
6    auditors, KPMG, had issued what is commonly referred to
7    as a going concern letter with respect to Wave.
8         I believe that's been the case throughout Wave's
9    entire history.  Wave disclosed in the Form 10-K that
10   "Wave has not yet attained commercial acceptance of its
11   products and has not generated any significant operating
12   revenue.  Considerable uncertainty currently exists with
13   respect to the adequacy of current funds to support our
14   activities beyond the second quarter of 2003.  If Wave is
15   not successful in raising sufficient capital, it will not
16   be able to continue as a going concern."
17        Wave was always very up front that the way it
18   maintained itself as a going concern was raising capital.
19   And with respect to the particular quote that the
20   plaintiffs use as their springboard for their entire
21   theory, they have selectively quoted from that statement.
22   And if the Court would bear with me, I would like to read
23   it because it is an important point for us.
24        "Wave does not foresee that it will achieve
25   significant revenues at least until the latter part of
26

```
 1    UNITED STATES OF AMERICA
      DISTRICT OF MASSACHUSETTS
 2    CITY OF SPRINGFIELD
 3
 4
 5           I, Alice Moran, do hereby certify that the
 6    foregoing is a true and accurate transcription of my
 7    stenographic notes to the best of my knowledge and
 8    ability.
 9           Certified on April 7, 2005.
10
11
12                              _____
                                Alice Moran, CSR, RPR, RMR
13                              Official Federal Court Reporter
14
15
16
17
18
19
20
21
22
23
24
25
```