# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

ANNE BRUMBAUGH, ET AL,
Plaintiffs,

vs.

WAVE SYSTEMS CORPORATION, ET AL,
Defendants.

Civil Action NO. 04-30022-MAP

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

**GILMAN AND PASTOR, LLP**
David Pastor
BBO#391000
60 State Street
37th Floor
Boston, MA 02109
Tel.: 617-742-9700
Fax: 617-742-9701
*Liaison Counsel for Plaintiffs and the Class*

**SCHIFFRIN & BARROWAY, LLP**
Gregory M. Castaldo
Karen E. Reilly
Todd M. Mosser
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
*Lead Counsel for Plaintiffs and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................ii

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF ALLEGATIONS ..................................................................................... 4

ARGUMENT ....................................................................................................................... 6

   I.   THE STANDARDS FOR CLASS CERTIFICATION ........................................... 6

      A.   Securities Fraud Cases, Such As This One, Are Particularly
           Well-suited For Class Action Treatment ............................................ 6

      B.   The Requirements Of Rule 23 .......................................................... 7

  II.   THIS ACTION SHOULD BE PERMITTED TO PROCEED AS
       A CLASS ACTION BECAUSE ALL THE REQUIRMENTS OF
       RULE 23 ARE SATISFIED ..................................................................... 8

      A.   The Proposed Class Satisfies All Of The Requirements of Rule 23(a) ............ 8

           1.   The Proposed Class Is So Numerous That Joinder
               Is Impracticable ................................................................. 8

           2.   There Are Common Questions Of Law And Fact
               Between Plaintiffs And The Class ..................................... 10

           3.   Plaintiffs' Claims Are Typical Of The Class Claims ............................. 11

           4.   Plaintiffs Will Fairly And Adequately Protect The
               Interests Of The Class ....................................................... 12

      B.   The Requirements Of Rule 23(b)(3) Are Also Satisfied ............................. 14

           1.   Common Questions Of Law Or Fact Predominate ................................. 14

           2.   A Class Action Is Superior To Any Other Method Of
               Resolving This Controversy ............................................... 17

CONCLUSION ................................................................................................................. 20

TABLE OF AUTHORITIES

*Abelson v. Strong*,
    [1987 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶93,365 (D. Mass. July 30, 1987) ........................................................ 12, 18

*Adair v. Sorenson*,
    134 F.R.D. 13 (D. Mass. 1991) .................................................................. 7, 11, 12

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124, 130 (1st Cir. 1985)) ............................................................... 13

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972) ................................................................................. 16

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997), *aff'd* 83 F.3d 610 (3d Cir. 1996) ............................. 14

*In re AremisSoft Corp. Sec. Litig.*
    210 F.R.D. 109 (D.N.J. 2002) ..................................................................... 13

*Backman v. Polaroid Corp.*,
    [1982 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶ 99,631 (D. Mass. July 16, 1982) ................................................. 15

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991) .................................................... 11, 13

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ................................................................................. 16

*In re Biogen Sec. Litig.*,
    179 F.R.D. 25 (D. Mass. 1997) ................................................................. 8

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .................................................................... 17

*Bowe v. PolyMedica Corp. (In re PolyMedica Corp. Sec. Litig.)*,
    432 F.3d 1 (1st Cir. 2005) ........................................................................ 16

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ................................................................. 9

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .................................................................................. 8

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir.Pa. 1985)..........................................................................6, 16

*In re Elscint, Ltd. Sec. Litigation*,
    M.D.L. No. 675, No. 85-2622-6,
    1987 U.S. Dist. LEXIS 16746 (D. Mass. June 22, 1987) ........................................15

*Esplin v. Hirschi*,
    402 F.2d 94 (10th Cir. 1968) ...................................................................................7

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987) .............................................................................15

*Grace v. Perception Technology Corp.*,
    128 F.R.D. 165 (D. Mass. 1989).......................................................7, 9, 11, 16, 18

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)...................................................................................17

*Guckenberger v. Boston Univ.*,
    957 F. Supp. 306 (D. Mass. 1997) ...................................................................11, 13

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970).....................................................................................7

*Kirby v. Cullinet Software, Inc.*,
    116 F.R.D. 303 (D. Mass. 1987)......................................................9, 10, 11, 16, 18

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
    100 F.R.D. 468, 470 (D. Mass. 1984)) ..................................................................11

*Lamphere v. Brown University.*,
    71 F.R.D. 641 (D.R.I. 1976) ....................................................................................8

*Malanka v. Data General Corp.*,
    [1986 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶92,837 (D. Mass. July 2, 1986) .................................................................18

*Margaret Hall Found., v. Atlantic Fin. Management*,
    [1987 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶93359 (D. Mass. July 30, 1987) ...............................................................10

*McCuin v. Secretary of Health & Human Services*,
    817 F.2d 161 (1st Cir. 1987)....................................................................................9

*Modell v. Eliot Sav. Bank*,
    139 F.R.D. 17 (D. Mass. 1991)..............................................................................13

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
    183 F.R.D. 33 (D. Mass. 1998)..............................................................................11

*Ohman v. Kahn*,
    [1990 Transfer Binder], Fed. Sec. L. Rep.
    (CCH) ¶ 95,359 (S.D.N.Y. June 27, 1990)...........................................................15

*In re One Bancorp Sec. Litigation*,
    136 F.R.D. 526 (D. Me. 1991)..........................................................................6, 17

*Ortega v. Star-Kist Foods, Inc.*,
    370 F.3d 124 (1st Cir. 2004).................................................................................9

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988).................................................................11, 12, 18

*Randle v. SpecTran*,
    129 F.R.D. 386 (D. Mass. 1988)..............................................9, 10, 12, 15, 16, 18

*Risinger v. Concannon*,
    201 F.R.D. 16 (D. Me. 2001).................................................................................8

*Shamberg v. Ahlstrom*,
    111 F.R.D. 689 (D.N.J. 1986)..............................................................................15

*Shelter Realty Corp. v. Allied Maintenance Corp.*,
    75 F.R.D. 34 (S.D.N.Y. 1977) ..............................................................................17

*Smilow v. Southwestern Bell Mobile Sys.*,
    323 F.3d 32 (1st Cir. 2003).........................................................................14, 16, 19

*Stuebler v. Xcelera.com (In re Xcelera.com Sec. Litig.)*,
    430 F.3d 503 (1st Cir. 2005).................................................................................16

*Swack v. Credit Suisse First Boston*,
    2005 U.S. Dist. LEXIS 20564 (D. Mass. 2005) ........................................7, 9, 11, 18

*In re TCW/DW N. Am. Gov§t Income Trust Sec. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996).........................................................................13

*Tolan v. Computervision Corp.*,
    696 F. Supp. 771 (D. Mass. 1988) .........................................................................11

*In re Transkaryotic Therapies, Inc. Sec. Litig.*,
  2005 WL 3178162 (D.Mass. Nov. 28, 2005) ........................................................... 17

FEDERAL STATUTES

Section 10(b) ...........................................................................................................................2
Section 20(a) ...........................................................................................................................2
Fed. R. Civ. P. 23 ................................................................................................................1, 7
Fed. R. Civ. P. 23(a) ....................................................................................................2, 12, 19
Fed. R. Civ. P. 23(b)(3) ...................................................................................................17, 18
17 C.F.R. 240.10b-5 ...............................................................................................................2

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANNE BRUMBAUGH, ET AL,<br>Plaintiffs,<br><br>        vs.<br><br>WAVE SYSTEMS CORPORATION, ET AL,<br>Defendants. | Civil Action NO. 04-30022-MAP |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR CLASS CERTIFICATION

### PRELIMINARY STATEMENT

Lead Plaintiffs, Anne Brumbaugh, Gary L. Harmon, and Randy K. Griffin ("Plaintiffs"), respectfully submit this Memorandum of Law in support of their Motion for an Order pursuant to Fed. R. Civ. P. 23 certifying a class (the "Class") consisting of all persons or entities who purchased the common stock of Wave Systems Corp. ("Wave" or "the Company") on the open market during the period from July 31, 2003 through December 18, 2003, inclusive (the "Class Period"), and to appoint Plaintiffs as Class Representatives.[1]

---

[1] Excluded from the Class are defendants, immediate families, any subsidiary, affiliate, or control person of any such person or entity, the officers of Wave and the legal representatives, heirs, successors or assigns of any such excluded party.

This action arises out of Defendants'[2] scheme and common course of conduct to artificially inflate the market price of Wave securities and to defraud Class members by making misrepresentations and nondisclosures of material fact concerning the Company's purported licensing agreements with industry leaders Intel and IBM, and their supposed prospects to generate the Company's first-ever source of meaningful revenue. These false statements and omissions of material fact were made in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and 78t(a) (the "Exchange Act") and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. 240.10b-5. The misrepresentations and omissions at issue were contained in SEC filings, Company-issued press releases, investor conferences and articles in the media. Defendants' wrongful course of conduct artificially inflated the market price of Wave common stock and caused damages to Plaintiffs and members of the proposed Class.

As demonstrated herein, this action meets all of the prerequisites of Rule 23 and is ideally suited for class action treatment pursuant to Fed. R. Civ. P. 23(a) and (b)(3). All requirements under Rule 23(a) have been satisfied. First, there can be no real dispute that the proposed Class is so numerous that joinder of all members is impracticable. The proposed class consists of, at minimum, hundreds of common stock investors, geographically dispersed throughout the United States. ¶81.[3]

Second, questions of law and fact common to Plaintiffs and the Class exist because, as stated above, this action arises out of a common course of conduct by Defendants wherein they

---

[2] The Defendants are Wave, its President and CEO Steven K. Sprague, and its senior Vice President, CFO, and Secretary, Gerard K. Feeney.

[3] All references to "¶__" are to paragraphs of the Complaint.

publicly made materially false and misleading statements and omissions.  Common questions of law and fact include: (i) whether Defendants violated Sections 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, and whether defendants Sprague and Feeney are further liable for violations of Section 10(b) under Section 20(a) of the Exchange Act; (ii) whether Defendants participated in and pursued the common course of conduct complained of herein; (iii) whether documents, filings, releases and statements disseminated to the investing public during the Class Period omitted and/or misrepresented material facts about the Company; (iv) whether the market prices of Wave's common stock during the Class Period were artificially inflated due to the nondisclosures and/or misrepresentations complained of herein; (v) whether in connection with violations of the Exchange Act, Defendants acted knowingly, willfully, or recklessly in omitting and/or misrepresenting material facts; and (vi) whether the members of the Class have sustained damages and, if so, what is the proper measure of such damages.

Third, Plaintiffs' claims are typical of the claims of the Class.  They all seek to recover their damages for losses in Wave securities transactions arising from the same course of material misrepresentations and omissions by Defendants during the Class Period and based upon the same legal theories.  Finally, there can be no doubt that Plaintiffs are adequate Class representatives.  No disabling conflicts exist between the Plaintiffs and the Class they seek to represent and Plaintiffs have engaged experienced and highly qualified counsel to represent them.

The requirements set forth in Rule 23(b) have also been satisfied.  As stated above, there are questions common to the Plaintiffs and the Class as a result of Defendants' common course of wrongful conduct alleged in the Consolidated and Amended Complaint (the "Complaint") and summarized herein, and those questions predominate over any individual questions.

Additionally, in a securities fraud case such as this, a class action is unquestionably superior to individual actions because it would be economically infeasible for each member of the Class to proceed on an individual basis. Indeed, a class action is the most efficient method in which to provide redress for such common injuries as those incurred here in order to preserve the reliability and integrity of the securities markets. Further, Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

### SUMMARY OF ALLEGATIONS

Wave develops, produces and markets hardware and software based digital security products for the Internet-- a highly competitive, evolving and yet to be defined marketplace. ¶ 2. Despite its more than 16 years in business, Wave had not yet successfully marketed any of the products its business model relied upon. Id. Nor had Wave realized any significant revenues, incurring losses for fiscal years ended December 31, 2002, 2001 and 2000, of approximately $43,467,000, $48,701,000, and $47,656,000, respectively. Id. As of December 31, 2002, Wave had accumulated an enormous deficit of approximately $233,092,000 and working capital of only $8.8 million, requiring an additional $11 million in cash to keep its doors open through the end of December 31, 2003. ¶ 3.

Throughout the Class Period, Defendants engaged in a course of conduct to artificially inflate the market price of Wave securities and to defraud Class members by mischaracterizing and concealing material facts about Wave's relationships with Intel and IBM and the supposed prospects for revenue that would result from those supposed relationships. Specifically, after 16 years of mounting losses Defendants convinced the investing public that Wave was finally on the verge of earning significant revenue, based on its development of relationships with leaders in

the PC industry, who were purportedly considering bundling Wave's security software applications with their computers. Then, with the market primed to expect imminent contracts with industry leaders, Defendants announced "licensing agreements" with Intel and IBM to bundle Wave's software with the PC makers' computers. Based on these materially misleading announcements which misrepresented the true nature of the Company's relationships with Intel and IBM, as well as attendant promises that Wave would finally generate significant revenue, the price of the Company's stock went from $0.84 per share, prior to the announcements, to close at $4.42 on August 4, 2003.[4]

These well-crafted and carefully timed disclosures of "agreements" with giants Intel and IBM were integral to Defendants' scheme to artificially inflate Wave's common stock price to bail the Company out of a high cost private equity placement, which closed prior to the Class Period on April 30, 2003. Specifically, with Wave's stock price artificially inflated by the misleading disclosures, the Company was able to avoid paying hefty dividends on preferred stock which the Company could not afford to pay, and obtain additional funding through employees' exercises of stock options. In addition to saving the Company from a fatal cash shortfall and thereby keeping their jobs, Sprague and Feeney richly profited from their fraud,

---

[4] When Wave announced its supposed "agreement" with Intel on July 31, 2003, Wave's stock increased from its previous day's close of $0.84 per share to $2.25 per share, realizing a gain of 168%. Volume on that day was approximately 19 million shares traded, as compared to Wave's average daily volume of only 199,136 shares. ¶ 37. Further, after Wave's August 4, 2003 announcement of a "partnership" with IBM, Wave's stock closed at $4.42 per share on August 4, 2004, up $0.77 per share, or 21%, from its closing price of $3.65 per share on the previous trading day, August 1, 2004. The volume of Wave shares traded on that day was also extremely high at over 40 million shares. ¶ 44.

netting approximately $1 million dollars in proceeds from sales of their personally held Wave shares– sales made within days of the announced "agreements" with Intel and IBM.

The truth about Wave's "deals" with Intel and IBM was slowly but surely revealed to the market.  After admitting that neither Intel or IBM were actually required to purchase any of Wave's products, and that the SEC was formally investigating the truthfulness of Defendants' characterizations of these agreements as well trading of Wave's securities in that same time frame, Wave's stock had tumbled all the way back down to $1.50 per share.

## ARGUMENT

## I.    THE STANDARDS FOR CLASS CERTIFICATION

### A.    Securities Fraud Cases, Such As This One, Are Particularly Well-Suited For Class Action Treatment.

Securities fraud cases are particularly suited for class certification under Rule 23.  See, e.g., In re One Bancorp Sec. Litigation, 136 F.R.D. 526, 533 (D. Me. 1991) ("This Court concurs with the numerous cases that have discussed the desirability and utility of the class action device in the context of federal securities law litigation."); Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir.Pa. 1985) ("the effectiveness of the securities laws may depend in large measure on the application of the class action device").  As a result, it is well settled that class actions are a particularly appropriate and desirable means to resolve claims based on the securities laws.

Indeed, because of the utility of class actions, it has been explicitly recognized by courts in this District and others that:

> [t]here is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end.

Grace v. Perception Technology Corp., 128 F.R.D. 165, 167 (D. Mass. 1989).  See also Adair v. Sorenson, 134 F.R.D. 13, 16-17 (D. Mass. 1991) ("suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment").  Moreover, because the securities laws are complex and litigation relating thereto expensive, without the class action device, many actionable wrongs would go uncorrected and persons damaged thereby uncompensated.  Accordingly, "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action."  Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970) (quoting Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir. 1968)).  See also Swack v. Credit Suisse First Boston, 2005 U.S. Dist. LEXIS 20564, at *23-24 (D. Mass. 2005)("courts have expressed a general preference for class certification in securities fraud cases based on a policy favoring enforcement of the federal securities laws and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights.")(internal citations omitted).

> **B.      The Requirements of Rule 23.**

Fed. R. Civ. P. 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) are met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b).  Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) provides, in pertinent part:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:
>
> *      *      *

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The inquiry as to whether the requirements of Rule 23 have been satisfied does not extend to the merits of the plaintiffs' claims. Rather, the focus is limited to whether the prerequisites of Rule 23 are met. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); In re Biogen Sec. Litig., 179 F.R.D. 25, 41 (D. Mass. 1997) ("a Court does not consider the merits of a claim in determining class certification"); Risinger v. Concannon, 201 F.R.D. 16, 22 (D. Me. 2001) ("Class certification is not an appropriate mechanism 'to conduct a preliminary inquiry into the merits of a suit'"). Therefore, for purposes of class certification, the allegations of the Complaint must be accepted as true. See, e.g., Lamphere v. Brown University., 71 F.R.D. 641, 646 (D.R.I. 1976) (acknowledging the "usual policy of accepting the plaintiff's factual allegations as true for purposes of class certification").

As demonstrated below, the Plaintiffs have properly satisfied all of the prerequisites of Rule 23(a), and the requirements of Rule 23(b)(3) that common questions of law and fact predominate as to all members of the Class and that a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the securities laws. Class certification is therefore appropriate, and Plaintiffs' motion should be granted.

## II.    THIS ACTION SHOULD BE PERMITTED TO PROCEED AS A CLASS ACTION BECAUSE ALL THE REQUIREMENTS OF RULE 23 ARE SATISFIED

### A.    The Proposed Class Satisfies All of the Requirements of Rule 23(a).

#### 1.    The Proposed Class is So Numerous that Joinder is Impracticable

Under Rule 23(a)(1), the proposed class must be so numerous that joinder of all class members is impracticable. "To meet this requirement, the class representatives need only show

that it is difficult or inconvenient to join all the members of the class." Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54, 62 (D. Mass. 1997), overruled on other grounds by Ortega v. Star-Kist Foods, Inc., 370 F.3d 124 (1st Cir. 2004). As courts in this District have held, "numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large." Grace, 128 F.R.D. at 167. See also Swack, 2005 U.S. Dist. LEXIS 20564 at *25 ("courts may draw reasonable inferences from the facts presented to find the requisite numerosity") citing McCuin v. Secretary of Health & Human Services, 817 F.2d 161, 167 (1st Cir. 1987).

Numerosity is clearly not at issue here. While the exact number of persons who purchased Wave common stock cannot be determined until relevant discovery has been completed, pragmatic estimates suggest that the Class members number at least in the hundreds and likely the thousands. During the Class Period, Wave had 52 million shares of common stock trading on the NASDAQ. ¶81. Wave's average trading volume up until Defendants' announcement regarding the "agreement" with Intel was 199,136 shares. ¶37. After Wave's fraudulent announcements, daily trading volume rose to the tens of millions of shares. ¶¶37-45. The reasonable inference to be drawn from this trading volume information is that the putative class comprises hundreds, if not thousands, of members. Swack at *30. Thus, one can reasonably infer that number of potential class members is too numerous to make joinder practicable. Id. The proposed Class, therefore, plainly satisfies the numerosity requirement of Rule 23. See, e.g., Randle v. SpecTran, 129 F.R.D. 386, 390 (D. Mass. 1988) (certifying a class where more than 4.5 million shares of common stock were outstanding and actively traded); Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) ("'an assumption that the class members are not so numerous as to make joinder impracticable would be, in light of the

number of shares traded during the class period, ridiculous'"), amended by 721 F. Supp. 1444 (D.

Mass. 1989).

> **2.      There are Common Questions of Law and Fact Between Plaintiffs and the Class**

Rule 23(a)(2) requires that there be common questions of law or fact, not "that every

question be common."  Kirby, 116 F.R.D. at 306.  In fact, Rule 23(a)(2) may be satisfied even

where there is only a single issue common to the entire class.  Margaret Hall Found., v. Atlantic

Fin. Management, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93359, at 96,841 (D. Mass.

July 30, 1987).  Common questions of law and fact abound where, as here, the allegations

involve material misrepresentations in uniform statements to the investing public.  See, e.g.,

Randle, 129 F.R.D. at 390 ("Plaintiffs present common questions in their allegations of

misstatements and omissions in various Spectran public financial documents.").

Among the questions of law and fact common to the Class are:

1.      Whether the federal securities laws were violated by Defendants' acts and omissions as alleged in the Complaint

2.      Whether Defendants participated in and pursued the common course of conduct as alleged in the Complaint.

3.      Whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business operations and financial conditions and prospects of Wave.

4.      Whether the misrepresentations and omissions made by Defendants upon  which the Plaintiffs' claims are based were made with scienter.

5.      Whether the market price of Wave common stock during the Class Period was artificially inflated due to the material misrepresentations and omissions as alleged in the Complaint.

6.      To what extent the members of the Class have sustained damages and the proper measure of those damages.

These central issues, which are common to all Class members' claims, satisfy the requirement that there be common questions of fact or law. See, Swack, at *33 ("The common questions of conduct, causation, and harm identified by Swack underlie and are essential to the claims of all members of the proposed class"). Indeed, in certifying a shareholder class in Kirby, the court recited a similar listing of common questions and found: "These 'questions are illustrative rather than exhaustive, but establish the existence of the commonality required by Rule 23,'" 116 F.R.D. at 306 (quoting M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 100 F.R.D. 468, 470 (D. Mass. 1984)); see also Grace, 128 F.R.D. at 167 ("all plaintiffs will have to prove the same misrepresentations and omissions. . . . Thus, it is obvious that common questions exist."); Priest v. Zayre Corp., 118 F.R.D. 552, 554 (D. Mass. 1988); In re New England Mut. Life Ins. Co. Sales Practices Litig., 183 F.R.D. 33, 39 (D. Mass. 1998) (court able to identify common issues of fact and law where allegations were of common course of fraudulent conduct by high-level decision makers).

### 3.     Plaintiffs' Claims are Typical of the Class Claims

The typicality requirement of Rule 23(a)(3) is met "'when the named plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims,' and 'when the plaintiff's claims and those of the class are based on the same legal theory.'" Guckenberger v. Boston Univ., 957 F. Supp. 306, 325 (D. Mass. 1997) (quoting In re Bank of Boston Corp. Sec. Litigation, 762 F. Supp. 1525, 1532 (D. Mass. 1991)); see also Adair v. Sorenson, 134 F.R.D. 13, 17 (D. Mass. 1991) (citing Tolan v. Computervision Corp., 696 F. Supp. 771, 777 (D. Mass. 1988)).

"[T]he burden on plaintiffs in proving typicality is not 'very substantial.'" <u>Abelson v.</u> <u>Strong</u>, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,365 at 96,886 (D. Mass. July 30, 1987) (citations omitted). As the court in <u>Randle</u> explained:

> In order to meet the typicality requirement of Rule 23(a)(3) "plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members. . . . The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs."

129 F.R.D. at 391 (quoting <u>Priest</u>, 118 F.R.D. at 555).

The typicality requirement is clearly satisfied here. Plaintiffs' claims arise from the same events and practices and are based on the same legal theories as the claims of absent Class members. Plaintiffs allege that Defendants violated the federal securities laws by publicly disseminating a series of false and misleading statements, that they purchased or otherwise acquired Wave stock at prices inflated by Defendants' misrepresentations in reliance on the market, and they were damaged thereby in violation of Sections 10(b) and 20(a) Exchange Act. In sum, Plaintiffs are purchasers of Wave common stock who seek to prove Defendants' liability on theories that are identical to those available to other Class members and based upon an identical set of facts as set forth in the Complaint and summarized in the Statement of Facts in this Memorandum. Accordingly, Plaintiffs' claims are typical of the Class.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Fed. R. Civ. P. 23(a) also requires that the representative plaintiff must adequately protect the interests of the Class. The First Circuit has interpreted the *Rule 23(a)(4)* adequacy prerequisite to entail a two part test:

> "the moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the

representative party is qualified, experienced and able to vigorously conduct the proposed litigation."

Guckenberger, 957 F. Supp. at 326 (quoting In re Bank of Boston, 762 F. Supp. at 1534); see also Adair, 134 F.R.D. at 18 (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985)).  Each of these elements is plainly satisfied here.

Plaintiffs' interests are not antagonistic to or in conflict with the interests of other Class members.  In this action, Plaintiffs allege that Defendants issued materially false and misleading statements with scienter that misled the investing public concerning, among other things, Wave's characterization of its supposed agreements with Intel and IBM and the likelihood that these "agreements" would produce significant revenue.  Plaintiffs are the victims of the same wrongful conduct as all other Class members.  Thus, Plaintiffs possess the incentive to fairly represent all Class members' claims and to achieve the maximum possible recovery. As such, Plaintiffs are committed to the vigorous prosecution of this action.

Moreover, Plaintiffs are represented by counsel who are thoroughly experienced in federal securities litigation and have the ability and willingness to protect the interests of the Class.  See Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 23 (D. Mass. 1991) (approving of lead counsel because lead counsel was "familiar with and experienced in this type of litigation"); In re TCW/DW N. Am. Gov't Income Trust Sec. Litig., 941 F. Supp. 326, 341 (S.D.N.Y. 1996) ("this Court is in agreement with 'the recent trend in this district [in complex securities cases] to assess the adequacy of the representative's attorney rather than the personal qualification of the named plaintiff.'") (citation omitted).  Plaintiffs' Lead Counsel, Schiffrin & Barroway, LLP, are highly experienced in complex securities class actions and have successfully prosecuted numerous securities class actions suits throughout the country.  See generally In re AremisSoft Corp. Sec.

Litig., 210 F.R.D. 109, 121 (D.N.J. 2002) (Plaintiffs' counsel, Schiffrin & Barroway, are "highly experienced in securities class action litigation," have "successfully prosecuted numerous class actions in the United States" and are "clearly competent to conduct this litigation").[5]  Moreover, Plaintiffs' liaison counsel, Gilman and Pastor, also has substantial experience in securities and class action litigation and have served as liaison or lead counsel in many cases in this District and elsewhere.

### B.     The Requirements of Rule 23(b)(3) are Also Satisfied

As noted above, in addition to meeting the prerequisites of Rule 23(a), a class action must satisfy at least one of the three conditions of subdivision (b) of Rule 23.  This action meets the requirements of Rule 23(b)(3), which provides, in part:

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> * * *
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.     Common Questions of Law or Fact Predominate

Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions.  See, e.g., Smilow v. Southwestern Bell Mobile Sys., 323 F.3d 32, 39 (1st Cir. 2003) ("After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class")(citation omitted), rev'g 2002 U.S. Dist. LEXIS 25880 at * 18 (D. Mass. Apr. 10, 2002); Amchem Prods. v. Windsor, 521 U.S. 591,615 (1997), aff'g 83 F.3d 610 (3d Cir. 1996).  In

---

[5]  The firm resumes of Lead Counsel and Liaison Counsel are attached.  See, Declaration of David Pastor, Exhibits 'A' and 'B'.

Amchem, 521 U.S. at 625, the Supreme Court stated, "[p]redominance is a test readily met in certain cases alleging . . . securities fraud . . ."  In this regard, it is well-established that the Court's inquiry under Rule 23(b)(3) should be directed toward the issue of liability.  See, e.g., In re Elscint, Ltd. Sec. Litigation, M.D.L. No. 675, No. 85-2622-6, 1987 U.S. Dist. LEXIS 16746, at *29 (D. Mass. June 22, 1987) ("questions concerning the defendants' liability for alleged misstatements and omissions, predominate over any individual questions in this action"); Ohman v. Kahn, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,359, at 96,743 (S.D.N.Y. June 27, 1990) ("Courts generally focus on the liability issue in deciding whether the predominance requirement is met"); Shamberg v. Ahlstrom, 111 F.R.D. 689, 698 (D.N.J. 1986).  If the liability issues are common to the Class, common questions are held to predominate over individual questions.  See, e.g., Randle, 129 F.R.D. at 393 ("I conclude that the common questions with respect to the existence and materiality of misleading statements or omissions in documents or press releases concerning SpecTran securities, along with the related questions of defendants' liability for such alleged statements or omissions, predominate over any individual questions in this action."); Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 114 F.R.D. 48, 52 (S.D.N.Y. 1987) ("[w]hen determining whether common questions predominate… . . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions'"); Backman v. Polaroid Corp., [1982 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,631 (D. Mass. July 16, 1982) ("Where, as here, the liability issue is common to the class, common questions predominate and the plaintiffs meet the first requirement of Rule 23(b)(3).").

As demonstrated above in the discussion of commonality, issues of law and fact clearly predominate over any individual issues in this case.  Plaintiffs have alleged that a series of

misrepresentations and omissions in violation of the federal securities laws have been perpetrated against the members of the Class.  Thus, critical issues of law and fact raised in this action include whether the Defendants made the omissions and misrepresentations as alleged in the Complaint and whether those omissions and misrepresentations were material and resulted in damage to members of the Class.  These issues of law and fact clearly predominate over any individual issues and make class action treatment not only appropriate, but mandated by Rule 23.

Moreover, the common questions presented in the Complaint clearly predominate over any differences between individual Class members with respect to reliance or damages.   Indeed, any "reliance" challenges are irrelevant to Plaintiffs' Section 10(b) claims because of the presumption of reliance created by the Supreme Court in Basic Inc. v. Levinson, 485 U.S. 224, 247 (1988) (reliance on misrepresentations presumed) and Affiliated Ute Citizens v. United States, 406 U.S. 128, 153-54 (1972) (reliance on omissions presumed).  See Grace, 128 F.R.D. at 171 ("[i]n fraud on the market cases, common questions of law and fact predominate over individual questions"); Kirby, 116 F.R.D. at 311 (same), Randle, 129 F.R.D. at 393 (same).[6]

---

[6]  In Basic, 485 U.S. at 247, the Supreme Court found "that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed."  At the class-certification stage, a party need only establish these "basic facts" in order to invoke the presumption of reliance.  Bowe v. PolyMedica Corp. (In re PolyMedica Corp. Sec. Litig.), 432 F.3d 1, 17 (1st Cir. 2005); Stuebler v. Xcelera.com (In re Xcelera.com Sec. Litig.), 430 F.3d 503, 517 (1st Cir. 2005)(applying PolyMedica). The Complaint here alleges each of these elements, and thus the presumption of reliance is applicable.  See ¶¶36, 41, 48, 56, 60-64, 68 (identifying Defendants' materially false and misleading statements); ¶ 78 (alleging that Wave traded on an efficient market); ¶ 79 (alleging that all purchasers of Wave common stock during the Class Period suffered similar injury through their purchase of Wave  common stock at artificially inflated prices and a presumption of reliance applies). Thus, Defendants bear the burden of establishing the nonexistence of this presumption.  Xcelera.com, 430 F.3d at 517.  In any event, courts recognize that the potential of individual issues of reliance "does not mean that the common questions of law and fact do not predominate over questions affecting individual class members."  Eisenberg, 766 F.2d at 786.

Likewise, the fact that individual issues of damages may have to be addressed after the common issues are determined, does not overcome the fact that common questions predominate. See, e.g., Smilow, 323 F.3d at 40 ("Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain")(citations omitted); In re One Bancorp Sec. Litig., 136 F.R.D. at 533 ("The utility of the class action device in Rule 10b-5 actions would be severely impaired were the Court to hold that damages issues preclude class action treatment here."). See also In re Transkaryotic Therapies, Inc. Sec. Litig. 2005 WL 3178162 at *2 (D.Mass. Nov. 28, 2005)(citing Smilow). Indeed, once common questions of liability are resolved, all that remains is the mechanical act of computing the amount of damages suffered by each class member that can readily be accomplished through the use of a simple mathematical formula. See, e.g., Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34, 38 (S.D.N.Y. 1977). In any event, questions regarding the computation of individual damages do not preclude class certification. Green v. Wolf Corp., 406 F.2d 291, 301 (2d Cir. 1968); Blackie v. Barrack, 524 F.2d 891, 908-10 (9th Cir. 1975).

In sum, it is difficult to discern any liability issues that are not common to the claims of the Lead Plaintiff, the Additional Plaintiffs and each member of the Class. Moreover, common questions of law and fact clearly predominate over those affecting only individual Class members.

### 2.    A Class Action is Superior to Any Other Method of Resolving this Controversy

Not only do common questions predominate in the present litigation, but, as further required by Fed. R. Civ. P. 23(b)(3), "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Indeed, the superiority of the class action

device in securities fraud cases, which involve numerous defrauded investors whose claims could not economically be litigated individually, is well recognized. As explained in <u>Randle</u>:

> [I]n light of plaintiffs' allegations concerning the large number of outstanding Spectran shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy. . . .

129 F.R.D. at 393. <u>See</u> <u>also</u> <u>Grace</u>, 128 F.R.D. at 171; <u>Priest</u>, 118 F.R.D. at 553-54; <u>Kirby</u>, 116 F.R.D. at 311; <u>Malanka v. Data General Corp</u>., [1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶92,837 at 94,072 (D. Mass. July 2, 1986) ("It is well established that a class action is not only a superior method of expediting securities claims, but it is often the only feasible method."); <u>Abelson</u>, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) at 96,890.

Further, each of the factors specified in Rule 23(b)(3) militate in favor of certification:

(1) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(4) the difficulties likely to be encountered in the management of a class action.

<u>See</u> Fed. R. Civ. P. 23(b)(3). Here, 1) there is no indication that members of the Class would prefer to individually control the prosecution of their claims, and Class members will be given the opportunity to opt out of the Class if they later determine that it is in their best interests to do so; 2) no related action has been commenced; 3) it is desirable to concentrate the litigation in one forum since inconsistent adjudications will thereby be avoided, and because, as discussed above, shareholders would find individual litigation costs prohibitive; and 4) Lead Counsel, who have substantial experience in class action litigation in this District and elsewhere, do not anticipate any significant or unusual difficulties in the management of this litigation.

In sum, granting class certification in this case will secure the rights of those investors whose rights otherwise cannot be redressed because it would not be economically feasible for them to retain individual counsel or otherwise pursue their individual actions. <u>Swack</u>, at *79 (<u>citing</u> <u>Smilow</u>, 323 F.3d at 41). It will also facilitate the vindication of the statutory objective of a fair, orderly, trustworthy and reliable securities market. A class action is, therefore, the superior, if not the only practical, method for the expeditious resolution of this controversy.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs respectfully request that this action be certified as a class action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of the Class defined herein, that Lead Plaintiff and Additional Plaintiffs be certified as the representatives of the Class, and that Lead Counsel be certified as Class Counsel.

Dated:  March 31, 2006.

**GILMAN AND PASTOR, LLP**


By:   ___/s/  David Pastor_____
David Pastor
BBO#391000
60 State Street
37th Floor
Boston, MA 02109
Tel.: 617-742-9700
Fax: 617-742-9701

*Liaison Counsel for Plaintiffs and the Class*

**SCHIFFRIN & BARROWAY, LLP**
Gregory M. Castaldo
Karen E. Reilly
Todd M. Mosser
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Lead Counsel for Plaintiffs and the Class*