UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN,<br><br>        **Plaintiffs,**<br><br>  v.<br><br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,<br><br>        **Defendants.** | CIVIL ACTION<br>NO. 04-30022-MAP |

**DEFENDANTS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER**

Defendants Wave Systems Corporation, Steven K. Sprague and Gerard T. Feeney ("Defendants") respectfully submit this memorandum of law in opposition to the Plaintiffs motion for protective order, filed April 21, 2006, seeking preclusion of certain information obtained by Defendants through third parties (the "Motion"). The Plaintiffs' untimely Motion fails to articulate any basis for entering a protective order -- let alone a preclusion order -- concerning the information that Defendants' discovered through subpoenas directed to third parties. The Motion should be denied.

**Preliminary Statement**

In connection with opposing the Plaintiffs' class certification motion in this consolidated securities litigation, the Defendants served discovery upon the Plaintiffs, including requests for documents concerning the Plaintiffs' trading in Wave and other securities, to which the Plaintiffs

CTDOCS/1659032.5

objected insofar as the discovery concerned securities other than Wave or extended outside the Class Period. The Plaintiffs' Motion does not concern discovery directed at the Plaintiffs, but rather, seeks preclusion of certain evidence that the Defendants obtained from third parties by subpoena. The Plaintiffs have failed to meet their burden of demonstrating that the information at issue should be protected from use in these proceedings.

**Plaintiffs Received Notice Of The Subpoenas On April 6, 2006 -- And Did Nothing**. On April 6, 2006 -- prior to serving the subpoenas at issue here -- the Defendants provided Plaintiffs with facsimile notice of the third party subpoenas that the Defendants intended to serve on certain brokerage firms (Scottrade and TD Waterhouse). See Ex. A. The Plaintiffs did not respond or object to Defendants serving the subpoenas. Accordingly, on April 7, 2006, the Defendants served the third party subpoenas and at 3:07 p.m. provided the Plaintiffs with facsimile notice of the same. See Ex. B. The Plaintiffs again made no response or objection.

**Long After The Fact, The Plaintiffs Objected To The Third Party Subpoenas.** On April 19, 2006, nearly two weeks after Plaintiffs were given notice of the third party subpoenas, and after one third party had already complied with the subpoena, the Plaintiffs articulated objections to the scope of the subpoenas. Specifically, the Plaintiffs claimed that the subpoenas, by seeking information concerning trading in securities other than Wave and during times outside the Class Period, (i) invaded Plaintiffs' privacy regarding financial information; and (ii) were overbroad.[1]

---

[1] It is not true, however, that counsel for Defendants "acquiesced" in the Plaintiffs' objections to the subpoenas. See Pl. Motion at 3. Rather, on April 7, 2006, counsel for the Defendants' wrote to counsel for the Plaintiffs concerning Plaintiffs' objections regarding the discovery directed to the Plaintiffs. The Plaintiffs responded in writing on April 19, 2006. With regard to virtually every discovery request, the Plaintiffs confirmed that they were not withholding any documents or information based on the objections -- i.e. while they stood on their objections, the Plaintiffs' objections became largely irrelevant as they were not precluding discovery of any information in their possession.

**Plaintiffs Primary Objection -- Privacy -- Is Moot As The Defendants Will Agree To Confidential Treatment.** Counsel for Defendants promptly informed Plaintiffs' counsel that <u>the information provided would be kept confidential</u>, thus obviating any concerns regarding privacy (to the extent that any such concerns could legitimately exist regarding trading records). At this time, the parties are negotiating an agreed confidentiality stipulation and order to be presented to the Court.

**The Third Party Discovery Is Relevant To Class Certification.** Otherwise, the Defendants disagree that the information sought is "overbroad" as it relates directly to the adequacy and typicality of the named plaintiffs as proposed class representatives under the Private Securities Litigation Reform Act ("PSLRA"). As post-PSLRA decisions confirm, information regarding a proposed securities class representative's trading before and after the Class Period, regarding both the securities at issue and other securities, is relevant to issues concerning the adequacy and typicality of the proposed class representative.

**The Plaintiffs Have Not Met Their Burden Of Establishing That A Protective Order -- Let Alone A Preclusion Order -- Is Warranted.** Nonetheless, the Plaintiffs have moved for an extraordinary protective order, seeking to preclude the Defendants' use of information obtained through third parties insofar as the information concerns trading in securities other than Wave or concerns trading more than 30 days prior to or 90 days following the Class Period. The Plaintiffs, however, have not satisfied their burden of demonstrating that such an extraordinary order is warranted. The Plaintiffs' Motion is without merit.

---

Accordingly, on April 19, 2006, when the parties conducted a telephonic meet and confer regarding the Plaintiffs' objections, counsel for Defendants agreed that there was "nothing left to discuss" regarding the objections that the Plaintiffs made concerning discovery directed at them. Counsel for Defendants did not agree, however, that the Defendants acquiesced to the Plaintiffs objection. The fact that there was "nothing left to discuss" was a simple function of the fact that the Plaintiffs' objections warranted no attention as the Plaintiffs confirmed that they withheld nothing based on those objections.

I.   **THE PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF DEMONSTRATING THAT THE INFORMATION OBTAINED BY SUBPOENAS SHOULD BE SUBJECT TO A PROTECTIVE ORDER, LET ALONE PRECLUDED FROM USE IN THESE PROCEEDINGS.**

   A.   **Plaintiffs Have Failed To Satisfy Rule 26(c).**

To obtain a protective order, Plaintiffs have the burden of identifying a specific, significant harm and demonstrating why the protective order is narrowly tailored to protect against that harm.[2]  All the plaintiffs offer, however, is a conclusory assertion that their brokerage trading records are private.  Rule 26(c) does not recognize "privacy" as a ground for a protective order, though Plaintiffs cite Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984) for the proposition that "[a]lthough [Fed. R. Civ. P. 23(c)] contains no specific reference to privacy or to other rights or interest that may be implicated, such matters are implicit in the broad purpose and language of the Rule."  Moving Brief at 2.  Seattle Times, however, fails to support the Plaintiffs' request here to preclude altogether the discovery of the Plaintiffs' trading records.

In Seattle Times, a religious organization, its leader, and some of its members brought a defamation action against two newspapers, journalists at those newspapers, and the journalists' spouses.  Id. at 23.  In discovery, the defendants sought the identity of all donors who made contributions to a religious organization during the five years preceding the complaint.  Id. at 24.

---

[2] See, e.g., J.T. Baker v. Aetna Cas. And Sur. Co., 135 F.R.D. 86, 90 (D.N.J. 1989) ("The burden of persuasion is clearly on the party seeking the protective order, which must demonstrate a particular need for protection, not a broad allegation of harm unsubstantiated by specific examples.  Further, the harm must be significant, not trivial.") (citations omitted); Deford v. Schmid Prod. Co., 120 F.R.D. 648, 653 (D. Md. 1987) ("The burden is on the party requesting a protective order to demonstrate that (1) the material in question is a trade secret or other confidential information within the scope of Rule 26(c), and (2) disclosure would cause an identifiable, significant harm."); Burlington City Bd. of Educ. v. United States Mineral Prod. Co., Inc., 115 F.R.D. 188, 191 (M.D.N.C. 1987) ("Nothing indicates plaintiff intends to use the video depositions in a non-judicial manner or for an ulterior purpose… Without a clear demonstration of hardship or oppression, the Court will not entertain protective orders against video depositions in order to protect a generalized concern of personal privacy."); Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 409 (N.D.N.Y. 1973) ("Any protective order inhibiting liberal discovery must issue only upon a specific showing that the information in question is of the nature that its disclosure should be restricted and that the party disclosing will indeed be harmed by disclosure."); Citizens' Util. Bd. of Oregon v. Oregon Public Util. Comm'n, 877 P.2d 116, 122 (Or. Ct. App. 1994) (The party seeking a protective order must "establish good cause for the protective order by demonstrating that disclosure 'will work a clearly defined and serious injury.'") (quoting Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866 (E.D. Pa. 1981))).

The court granted the discovery request, conditioning production on a protective order prohibiting the defendants "from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case." Id. at 27. The defendants challenged the ruling on the grounds that it restricted their freedom of the press. After finding that the state's Rule 26(c), modeled on Fed. R. Civ. P. 26(c), "further[ed] a substantial governmental interest unrelated to the suppression of expression," the Court upheld the protective order which allowed for the discovery to be had subject to confidentiality, id. at 34 -- precisely what the Defendants agree to here.

Nonetheless, unlike Seattle Times, where the plaintiffs offered authority in support of their privacy interests, the Plaintiffs here offer no precedent to meet their burden of showing that a party has a privacy interest in brokerage account statements, and as demonstrated below, courts routinely permit discovery of lead plaintiffs' brokerage account statements.[3] At most, courts will order that such information be kept confidential -- as Defendants have already agreed here -- but courts will not block discovery from third parties of brokerage account statements altogether.

### B. Any Privacy Concerns May Be Addressed By A Confidentiality Order -- Preclusion Is Unwarranted.

The purpose of a protective order issued pursuant to Fed. R. Civ. P. 26(c) is to limit the use of discovery, not to bar the discovery of relevant evidence altogether.[4] Tellingly, in Seattle Times, (cited by Plaintiffs) the plaintiffs sought only to restrict use of their private information

---

[3] In a dubious effort to find any authority in this jurisdiction that supports their position, Plaintiffs also purport to take a quote from the court's decision in Gill v. Gulfstream Park Racing Assoc., 399 F.3d 3981, 402 (1st Cir. 2005), though the quote they take from this opinion is actually quoting from United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999). Neither case addresses whether a party has a privacy interest in its brokerage account statements sufficient to restrict the use of such discovery, much less deny it altogether. In Gill, the court did not even issue a protective order.

[4] See, e.g., Mackey v. IBP, Inc., 167 F.R.D. 186, 196-97 (D. Kan. 1996) ("IBP objects that Interrogatories 7(b) and 12 seek confidential information. Confidentiality may occasion a protective order, pursuant to Fed. R. Civ. P. 26(c), to restrict the use of requested information. Confidentiality, however, does not necessarily bar discovery."); Johnson Foils, Inc., 61 F.R.D. at 409-10 ("The fact that sensitive information is involved in litigation gives a party neither an absolute nor automatic right to have the discovery process hindered… Moreover, the protective order may only minimize the potential ill-effects to the party making disclosures, e.g., limiting access to certain person or the public in general, but it should not prohibit the full disclosure of all facts necessary to the litigation.").

"except where necessary to prepare for and try the case," but did not seek a protective order barring the discovery altogether. Here, prior to the Plaintiffs filing their motion, the Defendants offered exactly the same protections that the plaintiffs in Seattle Times sought and received.

In this respect, the issue here is akin to that in In re Initial Public Offering Sec. Litig., 220 F.R.D. 30, 38 (S.D.N.Y. 2003), where the court denied plaintiff's motion for a protective order concerning disclosure of the identities of non-party purchasers of IPO shares, noting that, (as is also the case here) "the parties have agreed to treat the identities of these customers as confidential, meaning that the information requested will only be shared with counsel (including in-house counsel) and certain limited non-legal personnel." Id. Accordingly, because "[t]he parties . . . have already addressed plaintiffs' confidentiality concerns . . . the balance of interests does not warrant the requested protective order." Id. This protection is exactly what the Defendants offered to undertake voluntarily before the Plaintiffs filed this motion, by agreeing that the information obtained via subpoena could be subject to confidentiality.[5]

The appropriate protection in this case has already been agreed -- information obtained from the Plaintiffs' brokerage firms will be treated as confidential pursuant to an agreed confidentiality order. No further relief is warranted.

---

[5] In Zane S. Blanchard & Co. v. PSPT Ltd., No. Civ. 92-660-SD, 1995 WL 17211932, *6 (D.N.H. May 18, 1995), cited by Plaintiffs at 6, the plaintiff's counsel noticed the deposition of two of the defendant's employees, both of whom were based in Israel, to take place at plaintiff's counsel's offices in New Hampshire. Because "the deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business" the court granted the motion for a protective order on the basis of undue burden and expense. Zane S. Blanchard has little or nothing to do with the issues raised by Plaintiffs here. The case is instructive, however, as to Plaintiffs' overreaching by their motion to preclude third party discovery. While Plaintiffs seek to deny discovery altogether, in Zane S. Blanchard the court merely restricted discovery, i.e. where the plaintiff could take a deposition, to avoid unnecessary expense and burden. Notably, in this case, the discovery the plaintiffs seek to preclude does not pose any burden or expense on them. Scottrade and TD Waterhouse -- not Plaintiffs -- are charged by subpoena with gathering and producing the documents in question.

## II. PLAINTIFFS' INVESTMENT HISTORY IS RELEVANT TO CLASS CERTIFICATION.

With Plaintiffs' privacy concerns already addressed by an agreed confidentiality order, the only remaining objection interposed by Plaintiffs is their assertion that information in brokerage account statements concerning securities other than Wave, and outside the Class Period, is irrelevant. Overbreadth is simply not a ground for granting a protective order. See Aikens v. Deluxe Fin. Serv., Inc., 217 F.R.D. 533, 536 (D. Kan. 2003) ("The Court agrees that [the plaintiff's] request may be 'overly broad on its face.' Overbreadth, however, is not one of the grounds enumerated in Rule 26(c) that will support a request for protective order. While it is an objection that may be asserted in responding to a discovery request, it simply is not a basis upon which the Court may enter a Rule 26(c) protective order."). Otherwise, the third party discovery is plainly relevant.

The Federal Rules of Civil Procedure allow for broad discovery and the burden is on the party objecting to discovery to demonstrate why it is irrelevant to the subject matter of the action.[6] As lead plaintiffs in a securities class action, Lead Plaintiffs have made their adequacy as class representative an important issue in this case, and accordingly, their trading records are discoverable. For instance, in In re Grand Casinos, Inc., Sec. Litig., 181 F.R.D. 615, 621 (D. Minn. 1998), the defendants sought discovery of not only the plaintiffs' trading records but the trading records of the plaintiffs' family members. The plaintiffs objected to this request on the grounds of overbreadth, burdensomeness, and privacy. Id. The court denied the defendants'

---

[6] See, e.g., Ziemack v. Centel Corp., No. 92 C 3551, 1995 WL 729295, *1 (N.D. Ill. Dec. 7, 1995) ("The scope of discovery should be broad in order to aid the search for the truth. The Federal Rules of Civil Procedure allow discovery regarding any non-privileged matter that is relevant to the subject matter of the action. The term 'relevant' is much more liberally construed during the discovery stage, under the Federal Rules of Civil Procedure, than at trial, where the Federal Rules of Evidence govern. Therefore, a party objecting to discovery bears the burden of sustaining its objections.") (citations omitted).

motion to compel with respect to lead plaintiffs' family members trading records "so long as those activities were without the involvement of a Lead Plaintiff." Id. In other words, even the trading records of the plaintiffs' family members could be relevant if the plaintiffs were involved. More to the point, the court rejected the plaintiffs' privacy concerns with respect to their own trading records, holding that "we can appreciate the Defendants' interest in the Lead Plaintiffs' own trading activities…" Id. See also In re Scimed Life Sec. Litig., Civ. No. 3-91-575, 1992 WL 413867, *5 (D. Minn. Nov. 20, 1992) (in granting the defendant's motion to compel discovery concerning "Plaintiffs' investment history and background," including the plaintiffs' brokerage account statements, and denying the plaintiffs' motion for a protective order concerning their brokerage account statements, the court noted that "Courts should allow discovery under the concept of relevancy unless it is clear that the information sought can have no possible bearing on the subject matter of the action.").

As demonstrated above and below, courts routinely permit discovery of lead plaintiffs' trading records in securities litigation. The cases cited by the Plaintiffs to the contrary are inapposite, and likely no longer good law.

    **A.**    **As Courts Routinely Hold, A Proposed Lead Plaintiff's Trading History, Patterns, And Strategies Are Relevant To Class Certification.**

Information concerning the Lead Plaintiffs' trading in Wave and other securities, both before and after the proposed class period, is relevant to whether the lead plaintiffs are adequate and typical class representatives. The information could indicate, for example, that the Plaintiffs would have invested regardless of the integrity of the market, such as day traders who trade on speculation regarding price movement rather than information concerning the company. See In re Sonus Networks Sec. Litig., 229 F.R.D. 339, 342, (D. Mass. 2005) (acknowledging that a

proposed class representative's "day trading" patterns could render him an improper class representative, rendering him atypical of the putative class in that he did not "rely on the integrity of the market" making him "vulnerable to defenses that made his claim atypical and his representation of the class possibly inadequate"); In re Safeguard Scientifics, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (on a class certification motion, proposed lead plaintiff deemed subject to unique defenses, and therefore atypical and inadequate, where the court found that "[i]n light of Lead Plaintiff Adal's employment as a day trader (or 'position trader') who typically focuses on technical price movements rather than price, we find that even under a fraud-on-the-market theory, Defendants have presented compelling reason to rebut the reliance presumption.").

In addition, when plaintiffs buy securities following a corrective disclosure, courts find that otherwise presumptive reliance on the market is rebutted. In Rolex Employees Ret. Trust v. Mentor Graphics Corp., 136 F.R.D. 658, 663-64 (D. Or. 1991), for example, where a lead plaintiff purchased 1,000 shares of the company's stock almost six months after the class period ended, the court refused to certify lead plaintiff as class representative because "[t]he fact that [lead plaintiff] continued to trade in the stock in Mentor Graphics after he learned of the alleged misrepresentations of defendants severs the link between the alleged misrepresentations of defendants and the stock purchases made by [lead plaintiff] and acts to rebut the presumption that [lead plaintiff] relied on the alleged misrepresentations in making his purchases." Similarly, in Basic Inc. v. Levinson, 485 U.S. 224, 248-249 (1988), the court concluded that "Any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance. For example…if, despite petitioners' allegedly fraudulent attempt to manipulate market price, news of the merger discussions credibly entered the market

and dissipated the effects of the misstatements, those who traded Basic shares after the corrective statements would have no direct or indirect connection with the fraud." See also, In re World Access, Inc. Sec. Litig., 310 F. Supp. 2d 1281, 1300 (N.D. Ga. 2004) (granting summary judgment where the defendants rebutted the fraud on the market presumption of reliance by showing that plaintiff "continued to purchase WAXS stock after he learned of the alleged misrepresentations in early 1999"); In re Safeguard Scientifics, 216 F.R.D. at 582 (on a class certification motion, proposed lead plaintiff deemed subject to unique defense, and therefore atypical and inadequate, where he "increased his holdings in Safeguard stock even after public disclosure of the alleged fraud"); Ballan v. Upjohn Co., 159 F.R.D. 473, 481 (W.D. Mich. 1994) ("The evidence before the court clearly shows that plaintiff purchased Upjohn stock at the same price both several months before and shortly after October 1, 1991. Thus, a question arises as to whether plaintiff was in fact relying on the market price. Such a question presents an arguable defense unique to plaintiff… Since the burden of proof is upon plaintiff to convince the court his claims are typical, I conclude that he has not met that burden."); Kovaleff v. Piano, 142 F.R.D. 406, 408 (S.D.N.Y. 1992) (denying class certification where "defenses that can be asserted against putative class action plaintiffs would likewise adversely impact the interest of the class" because "plaintiffs increased their holdings of Mizlou common stock after disclosure of the alleged fraud."). Likewise, some courts have held that the presumption of reliance on the market is rebutted where the plaintiffs are short sellers who do not believe that the price of the stock accurately reflects relevant information.[7]

---

[7] See, e.g., Zlotnick v. Tie Comm., 836 F.2d 818, 821-23 (3d Cir. 1988) ("While we will allow Zlotnick the opportunity to prove his reliance, based on the allegations in his complaint, we decline to presume it… Here, Zlotnick sold short because he believed the market price of the stock overvalued Technicom's present earnings and underestimated its potential competition. Given Zlotnick's belief that in January, 1983, the market in Technicom stock did not reflect all available information, we do not find it logical to presume that the market did reflect all available information in March, 1983, when he made his covering

**B.     Because Information Concerning Trading Strategies And Investment History Are Relevant to Class Certification, Several Courts Have Compelled Lead Plaintiffs to Produce Such Relevant Information.**

As information concerning investment history, trading strategies and the like are plainly relevant to class certification, courts have also <u>compelled</u> discovery of <u>all</u> lead plaintiffs' trading records from before the class period began to the present, on the grounds that such discovery is relevant to class certification analysis. In <u>Roseman Profit Sharing Plan v. Sports and Recreation</u>, 165 F.R.D. 108, 112 (M.D. Fla. 1996), a post-PSLRA decision, a class representatives was required to produce "brokerage statements and all other documents showing all of your trading and holding of public securities from January 1, 1993 to March 14, 1995" where the proposed class period ran from only July 14, 1994 to March 13, 1995. The court held that: "The plaintiffs' investment history and background is relevant to the adequacy issue," and "Plaintiffs' trades in publicly held securities other than the defendant corporation for the period of time requested is also relevant to the issue of plaintiffs' reliance and motivation in bringing this action and may lead to the discovery of admissible evidence." <u>Id.</u> Likewise, In <u>Degulis, et al. v. Blech</u>, 176 F.R.D. 123, 125 (S.D.N.Y. 1997), another post-PSLRA decision, the court granted the defendants' motion to compel where the defendant sought all of plaintiffs' brokerage account statements for the period January 1, 1992 to the present to rebut the plaintiffs' allegation of reliance. In reaching its decision, the court noted that "discovery rules are to be given a broad

---

purchases."); <u>Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prod. N.V.</u>, No. Civ.A. 00-5965(JCL), 2005 WL 1365465, *7 (D.N.J. June 7, 2005) ("Short sellers, by definition, do not believe that the price of the stock accurately reflects such relevant information and, therefore, cannot benefit from the presumption of reliance. Plaintiff short sellers are therefore required to allege actual reliance in that (1) the misrepresentation or fraudulent act raised the price of stock; (2) at the time of cover, plaintiff relied on the integrity of the market price of the stock; and (3) reliance on the stock's price at the time of cover was reasonable."); <u>In re Bank One Shareholders Class Actions</u>, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (rejecting a hedge fund as a lead plaintiff where it "engaged in extensive daytrading, first shorting Bank One stock (presumably because it was regarded as overvalued at market price) and then buying to cover the short position.").

and liberal construction to effectuate their purpose of ensuring that civil trials are not conducted in the dark." Id. Even before the PSLRA, several courts had compelled plaintiffs to produce the types of documents that the Defendants sought here through the subpoenas to third parties as relevant to both the typicality and adequacy requirements of Fed. R. Civ. P. 23.[8] Accordingly, as numerous courts have held, the lead plaintiffs' trading in securities other than Wave, before and after the Class Period, may be relevant for any number of reasons, including reliance and motivation to bring suit.

## C. Plaintiffs' Reliance On A Pre-PSLRA District Court Decision Is Inapposite.

The Plaintiffs rely principally upon Burstein v. Applied Extrusion Technologies, Inc., 153 F.R.D. 488 (D. Mass. 1994), a 1994 -- i.e. pre-PSLRA -- decision by the Honorable Magistrate Judge Collings in support of their contention that the information concerning Lead

---

[8] See Feldman v. Motorola, No. 90 C 5887, 1992 WL 137163 (N.D. Ill. June 10, 1992) (where the proposed class period was May 4, 1990 to April 16, 1991, the court granted the defendant's motion to compel discovery of all of plaintiff's brokerage account statements from January 1, 1990 to the present because the documents are relevant to class certification analysis.); In re AES Corp. Sec. Litig., 849 F. Supp. 907 (S.D.N.Y. 1994) (where defendant sought "discovery concerning plaintiffs' past securities investments" to rebut the plaintiffs' allegation of reliance, the court granted the defendants' motion and noted that Fed. R. Civ. P. "26(b)(1) 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"); In re Scimed Life Sec. Litig., 1992 WL 413867 at *2-3 (where the defendant moved to compel "discovery concerning plaintiffs entire investment history and background," including the plaintiffs' brokerage account statements, customer agreements, margin agreements, and documents concerning purchases and sales of securities and the plaintiffs also moved for a protective order with respect to subpoenas issued by the defendant concerning "plaintiffs' Trading Records," the court granted the defendant's motion to compel and denied the plaintiffs' motion for a protective order, noting that the defendant "should have an opportunity to rebut the presumption [of causation under the fraud on the market theory], using information obtained through discovery of investment history and background."); Harcourt Brace Jovanovich, Inc., Sec. Litig., 838 F. Supp. 109, 114 (S.D.N.Y. 1993) (where plaintiffs appealed a magistrate's order compelling the production of plaintiffs' brokerage statements from 1988-1989 where the class period ran from March 30, 1989 – November 28, 1989, the court held "It is axiomatic under Basic that non-reliance on the integrity of the market is critical in rebutting the presumption of reliance in a fraud on the market case. Thus, discovery of a named plaintiff's investment history has been permitted. The Magistrate Judge's Order permitting discovery of plaintiffs Rand and LeWinter's investment history is in accord with the above cited principles of law which indicate that the investment history of a named plaintiff is relevant to a defense of non-reliance on the integrity of the market, and therefore discoverable.") (citations omitted).

Plaintiffs' trading history is not discoverable in securities action class certification proceedings. <u>Burstein</u> denied the discovery, seeking documents regarding investment history, on the legal premise -- viable at the time but no longer so -- that issues concerning reliance and investor sophistication are simply irrelevant for class certification proceedings because the court must presume reliance at the class certification stage:

> At this stage of the proceedings, where the issue is class certification, the Court may not intrude into the merits of a case. As in <u>Affiliated Ute Citizens v. United States</u>, 406 U.S. 128, (1972), for present purposes, <u>the Court must presume reliance</u> and due diligence. To do otherwise would be to <u>embark upon an unwarranted intrusion into the merits</u>.

<u>Id</u>. (emphasis added). <u>Burstein</u> itself recognized, however, that many other courts disagreed with this limited inquiry on class certification: "The problem arises from the necessity of being able to litigate at the class certification stage whether or not the 'typicality' requirement has been met without turning the class certification litigation into a full-scale litigation on the merits of plaintiffs' underlying claims." <u>Id</u>. at 490-91. In sum, <u>Burstein</u> denied discovery of investment history based on the view that reliance-based inquiries are inappropriate at the class certification phase, as courts are not permitted to evaluate the merits on class certification.

Times have changed.

<u>Burstein</u> was decided in <u>1994</u>, <u>before</u> the PSLRA was enacted to protect against "professional plaintiff" and lawyer-driven strike suits filed under the auspices of the federal securities laws, and <u>before</u> federal courts began to approach class certification as a "preview" to the merits of the suit. While class certification has not become a "mini-trial on the merits," the First Circuit in modern times clearly permits factual showings bearing on presumptions, such as

presumptions of reliance.[9]  In In re Polymedica Corp. Sec. Litig., 432 F.3d 1 (1st Cir. 2005) the First Circuit explained that in the class certification stage in the post-PSLRA, post-Burstein era, the District Court may look beyond the pleadings and beyond presumptions of reliance -- the very limitations and presumptions that drove the Burstein decision:

> [I]n light of our prior precedent, we conclude that the district court was entitled to look beyond the pleadings in its evaluation of the applicability of the fraud-on-the-market presumption of reliance, and its resolution of the class-certification question.

Id. at 6; see also  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 297-98 (1st Cir. 2000) ("it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question… a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case"); Tardiff v. Knox County, 365 F.3d 1, 4, 6 (1st Cir. 2004) (on class certification, the "court has the power to test disputed premises."); Unger v. Amedisys Inc., 401 F.3d 316, 322 (5th Cir. 2005) ("Because [the market efficiency determination, which is an essential element of the fraud on the market theory,] can prove decisive for class certification, and because, given the realities of litigation costs, certification can compel settlements without trial, courts have frequently applied rigorous, though preliminary, standards of proof to the market efficiency determination"); Blades v. Monsanto Co., 400 F.3d 562, 575 (8th Cir. 2004) ("in ruling on class certification, a court may be required to resolve disputes concerning the factual setting of the

---

[9]  Since Burstein, Congress enacted the PSLRA, seeking to discourage the use of professional plaintiffs. See, e.g., Weltz v. Lee, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("The purpose behind the PSLRA was to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" (citing In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)).  Indeed, Congress enacted as part of the PSLRA specific measures designed to ensure that putative class representatives in fact serve the interests of the class, including requiring the Courts to make preliminary determinations about who the lead plaintiffs would be in a securities class action.  15 U.S.C. § 78u-4(a)(3)(B)(i) and (vi) (1998).

case"); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 167-69 (3d Cir. 2001) ("Irrespective of the merits, certification decisions may have a decisive effect on litigation… [G]ranting certification may generate unwarranted pressure to settle nonmeritorious or marginal claims… In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action.  This is such and instance.  We must probe beyond the surface of plaintiffs' allegations in performing our review to assess whether plaintiffs' securities claims satisfy Fed. R. Civ. P. 23's requirements."); In re Carbon Black Antitrust Litig., No. Civ. A. 03-10191-DPW, 2005 WL 102966, at *9 n.10 (D. Mass. Jan. 18, 2005) (court may assess the entire record).  In light of these jurisprudential developments, Burstein's conclusions are no longer sound.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Protective Order should be denied.

COUNSEL FOR DEFENDANTS

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Michael D. Blanchard, BBO #636860
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110
(617) 951-8000

Dated:  May 4, 2006

## Certificate of Service

I, Michael D. Blanchard, hereby certify that on May 4, 2006, a true and correct copy of the foregoing was served electronically upon counsel of record for each other party.

/s/ Michael D. Blanchard
Michael D. Blanchard