LEXSEE 2004 US DIST. LEXIS 2247

IN RE MERRILL LYNCH TYCO RESEARCH SECURITIES LITIGATION

03 CV 4080 (MP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2004 U.S. Dist. LEXIS 2247

February 18, 2004, Decided

**DISPOSITION:** Motion to dismiss was granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants, a securities firm and an analyst, filed a motion to dismiss plaintiff's class action, which sought to recover damages for alleged violations of § 10(b) and § 20(a) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 78a,* and Rule 10b-5.

**OVERVIEW:** The putative class purchased a company's stock during a period in which a $ 75 billion decline occurred in the stock's market capitalization. The firm had publicly rated the company's asset valuation range from $ 60 to $ 70 per share when the stock was trading in the $ 30 range. During the class period, the company was contemplating a corporate reconstruction involving a possible sale of its financial service subsidiary, the proceeds of which would be applied to debt reduction. The plans did not eventuate during the period. Plaintiff claimed that the putative class's losses on their purchases were caused by a statement in a firm earnings model, which estimated that the subsidiary could be sold or spun-off for $ 7 to $ 8 billion. The court held that the complaint failed to plead that the alleged fraud was the proximate cause of the losses claimed. The court also held that the complaint failed to plead fraud with the requisite particularity. The court, however, held that sanctions under Fed. R. Civ. P. 11 were not warranted because there was no evidence that the complaint was filed for an improper purpose such as to harass defendants or to cause unnecessary delay.

**OUTCOME:** The court granted defendants' motion and dismissed plaintiff's class action with prejudice but without imposition of sanctions.

**LexisNexis(R) Headnotes**

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN1] To plead loss causation in a case involving material misstatements and omissions, a plaintiff must allege something more than mere price inflation or purchase-time value disparity.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*
[HN2] Loss causation in effect requires that the damage complained of must be one of the foreseeable consequences of the misrepresentation. The loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Securities Law > Liability > Private Securities Litigation > General Overview*
[HN3] A complaint alleging securities fraud must meet the strict mandate of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, *15 U.S.C.S. § 78u-4(b),* and state with particularity the circumstances constituting the alleged fraud. Fed. R. Civ. P. 9(b) requires a complaint alleging securities fraud to (1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

Case 3:04-cv-30022-MAP    Document 106-7    Filed 06/06/2006    Page 2 of 6

Page 2
2004 U.S. Dist. LEXIS 2247, *

*Securities Law > Liability > Private Securities Litigation > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > General Overview*
[HN4] Congress added § 21D, *15 U.S.C.S. § 78u-4*, to the Securities Exchange Act of 1934 to strengthen existing pleading requirements for securities fraud, and to require the complaint to specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. *15 U.S.C.S. § 78u-4(b)(1)*. Thus, to withstand a motion to dismiss plaintiffs must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question. Plaintiffs must plead specific facts showing defendants' statements were false when made or that optimistic predictions lacked a reasonable basis. The actual fraudulent statements or conduct and the fraud alleged must be stated with particularity.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*
*Securities Law > Liability > Private Securities Litigation > General Overview*
[HN5] Plaintiff must not only allege with particularity the statements or omissions that he contends were fraudulent, but also the fraud itself.

*Securities Law > Liability > Private Securities Litigation > General Overview*
[HN6] See *15 U.S.C.S. § 78u-4(c)(1)*.

*Antitrust & Trade Law > Private Actions > Costs & Attorney Fees > Clayton Act*
*Securities Law > Liability > Private Securities Litigation > Attorney Fees*
*Securities Law > Liability > Private Securities Litigation > Sanctions*
[HN7] If the trial court determines that there has been a violation of Fed. R. Civ. P. 11, § 21D(c)(2) imposes mandatory sanctions and adopts a rebuttable presumption that the appropriate sanction for noncompliance is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred. *15 U.S.C.S. § 78u-4(c)(3)(A)(i)-(ii)*. The Private Securities Litigation Reform Act of 1995, *15 U.S.C.S. § 78u-4*, thus does not in any way purport to alter the substantive standards for finding a violation of Fed. R. Civ. P. 11, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found.

*Civil Procedure > Sanctions > Baseless Filings > General Overview*
[HN8] An argument constitutes a frivolous legal position for purposes of Fed. R. Civ. P. 11 sanctions if, under an objective standard of reasonableness, it is clear that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.

*Civil Procedure > Sanctions > Baseless Filings > General Overview*
[HN9] Sanctions may not be imposed unless a particular allegation is utterly lacking in support.

**COUNSEL:** [*1]

Pomerantz Haudek Block Grossman & Gross LLP (by Stanley M. Grossman, Marc I. Gross, and Paul T. Curley), New York, New York, for Lead Plaintiff.

Law Offices Bernard M. Gross, P.C. (by Deborah R. Gross), Philadelphia, Pennsylvania, for Lead Plaintiff.

Hughes Hubbard & Reed LLP (by Edward J.M. Little and Christopher M. Wilson), New York, New York, for Defendant Phua K. Young.

Skadden, Arps, Slate, Meagher & Flom LLP (by Jay B. Kasner, Edward J. Yodowitz, Scott D. Musoff and Joanne Gaboriault), New York, New York, for Defendants Merrill Lynch, Inc. and Merrill Lynch, Pierce, Fenner & Smith Incorporated.

**OPINIONBY:** MILTON POLLACK

**OPINION:** ON MOTION TO DISMISS

DECISION AND ORDER

POLLACK, Senior District Judge.

Defendants Merrill Lynch & Co., Inc. and its wholly owned subsidiary Merrill Lynch, Pierce Fenner & Smith Incorporated (together referred to as "Merrill Lynch") move to dismiss the Consolidated Amended Complaint dated September 25, 2003 ("Complaint" or "Compl.") for, among other things, (1) failure to state a claim upon which relief can be granted, pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, and [*2] (2) failure to plead fraud with particularity, as required by the Private Securities Litigation Reform Act of 1995 ("Re-

Case 3:04-cv-30022-MAP    Document 106-7    Filed 06/06/2006    Page 3 of 6

Page 3
2004 U.S. Dist. LEXIS 2247, *

form Act"), see *15 U.S.C. § 78u-4(b)*, and *Rule 9(b) of the Federal Rules of Civil Procedure*. Individual defendant Phua K. Young ("Young"), a former analyst and Managing Director of Merrill Lynch, joins the motion. For the reasons set forth below, the motion is granted.

OVERVIEW

This is a federal securities class action to recover damages for alleged violations of *Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act")*, and *Rule 10b-5* issued thereunder by the SEC. The suit is against the Merrill Lynch companies and an individual formerly in their employ as an analyst. It is asserted by Lead Plaintiff Ronald Gutzwiller on behalf of himself and a putative class of all persons who acquired the common stock of Tyco International Ltd. ("Tyco"). The purchases were made in the open market at some unspecified date or dates during the period from January 22 to June 6, 2002 (the "class" period); a period in which a $ 75 billion decline occurred in the market capitalization [*3] of Tyco stock.

Merrill Lynch in its published research reports had publicly rated Tyco's asset valuation range from $ 60- $ 70 per share when the stock was trading in the $ 30 range. Over time the valuations by Merrill Lunch were successively lowered during the relevant period as circumstances dictated.

During the class period Tyco was contemplating a corporate reconstruction involving a possible sale of Tyco's financial service subsidiary, the CIT Group, Inc. ("CIT"), the proceeds of which would be applied to debt reduction. The plans did not eventuate during the period.

Plaintiff asserts that the putative class's losses on their purchases were caused by a statement which appeared in a Merrill Lynch earnings model: an estimate that CIT could be sold or spun-off for $ 7- $ 8 billion.

The complaint fails to plead that the alleged fraud was the proximate cause of the losses claimed. Lead Plaintiff makes the conclusory allegation that he "purchased the common stock of Tyco at an artificially inflated price during the Class Period . . . and has been damaged thereby." Self-evidently, such allegations are insufficient to allege loss causation. Lead Plaintiff also alleges that the decline [*4] of Tyco's stock from its opening price on June 6 to its opening price on June 7, 2002 was "directly attributable to Merrill Lynch's disclosure on June 6, 2002 that Defendants did not support Tyco's stock, management, and operations." However, the language in the report that Plaintiff characterizes as a disclosure does not actually "disclose" anything relevant to Plaintiff's claim.

DISCUSSION

I. THE COMPLAINT FAILS TO STATE A CLAIM FOR SECURITIES FRAUD

A. Plaintiff Fails to Plead That The Alleged Fraud Was The Proximate Cause of His Losses

Plaintiff fails to plead that the Merrill Lynch research reports were the proximate cause of his losses. The Complaint plainly alleges that Plaintiff "purchased the common stock of Tyco at an artificially inflated price during the Class Period . . . and has been damaged thereby." Compl. P 8. The Complaint also alleges that the alleged "wrongful conduct" of Merrill Lynch "caused the artificial inflation of Tyco's common stock during the Class period and caused Lead Plaintiff and members of the Class to sustain losses when they purchased Tyco common stock at these artificially inflated prices." Compl. P 2. Such allegations [*5] are insufficient to allege loss causation. [HN1] To plead loss causation in a case involving material misstatements and omissions, a plaintiff must allege something more than mere price inflation or "purchase-time value disparity." See *Emergent Capital Investment Mgmt. v. Stonepath Group, Inc., 343 F.3d 189, 198 (2003)*. n1

---

n1 Plaintiff has called attention to *DeMarco v. Robertson Stephens Inc., 2004 U.S. Dist. LEXIS 265, 03 Civ. 590 (GEL), 2004 WL 51232 (S.D.N.Y. Jan. 9, 2004) (Lynch, J.)*, which has no application to the dissimilar facts herein. This case in no way represents the pump and dump scheme disclosed in DeMarco and the presumption of loss causation there dealt with.

---

Plaintiff simply does not and cannot identify any factual allegations in the Complaint from which it can be inferred that the alleged false statements in the research reports were the foreseeable cause of the decline in Tyco's stock price on June 6, 2002, the last day of the class period, as opposed to the myriad negative factual information [*6] about Tyco that entered the marketplace that same day. Plaintiff fails even to address the requirement that he must allege facts showing that the misrepresentations and omissions alleged in the complaint were the proximate cause for the decline in Tyco's stock price. See *Emergent, 343 F.3d at 198*.

Plaintiff challenges Merrill Lynch's projection that CIT could be sold for $ 7- $ 8 billion. Models containing the assumption that CIT could be sold for $ 7- $ 8 billion appeared in research reports dated 2/14/02, 2/15/02, 3/1/02, 3/19/02, 3/20/02 and 4/1/02. Another report, one issued on April 15, 2002, opined that "if Tyco is able to announce a sale of CIT for $ 7.5 $ 8B [sic] (the range

discussed in the press three weeks ago) in cash, we believe that the shares would react very favorably." The assumption was superseded by the issuance of a new estimate in a June 4, 2002 Merrill Lynch research report which downgraded Tyco's rating from a B-1-1 (Average Risk, Strong Buy) to a D-3-3 (High Risk, Neutral). The June 4th report suggested a lower expectation for the likely proceeds from a sale of CIT (that is, a price of $ 5 billion) when it noted that all the proceeds from [*7] the private sale or IPO of CIT were "slated to pay down debt" and then hypothesized that a possible sale or IPO of CIT would produce $ 5 billion with which to pay down debt. ("Assuming that $ 5 billion is paid down post-CIT . . .") The June 4th report also contained a brief section entitled "Liquidity Crisis?". But Tyco's shares actually closed higher on the day of the report (June 4) and on June 5, 2002. Faced with this obvious impediment to his "fraud" claim against Merrill Lynch, Plaintiff instead chose to end the class period on June 6, 2002, a date upon which Tyco's stock was pummeled by negative reports concerning its former CEO's use of company funds to buy artwork, an $ 18 million apartment and that the SEC had opened an investigation.

Fatal to Plaintiff's "fraud" claim is the fact that the June 6, 2002 research report does not disclose anything new about the projected size of the proceeds from a sale, spin-off or IPO of CIT; about allegedly insincere opinions regarding Tyco's financial position and stock price; about an allegedly illicit relationship between Tyco, Young, and Merrill Lynch; or about Young and Merrill Lynch's allegedly undisclosed liquidity concerns. n2 Accordingly, [*8] Plaintiff has failed to assert any causal relationship between the "fraud" alleged and the decline in the trading price of Tyco's securities on June 6, 2002. Because the June 6 research report did not discuss the subject matter of the alleged fraud, as a matter of law, the decline in Tyco's trading price on that date cannot be considered a reaction to the disclosure of the alleged "fraud." See *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 215 (2d Cir. 2000) (where alleged fraud did not manifest itself during putative class period, no loss causation); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (no showing that "artificial inflation" was removed from the stock price during the class period)); *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999) (Chin, J.).

---

n2 The disclosure cited by Plaintiff as causing the decline in Tyco's securities on June 6, 2002 (Compl. P 54) is "We had been believers in the story as we felt the accounting allegations were false and because we thought the company could be successful with its sale/IPO of CIT. As recent events and information have surfaced, our confidence in management has weakened, and the probability of a successful sale/IPO continues to be uncertain. There is no way to know how this story will ultimately unfold, however, it is clear that there are ample warning signs to take note of."

[*9]

Plaintiff's allegations that the representation concerning the expected proceeds from a sale of CIT caused his losses fail for the additional reason that the allegations are too speculative and remote. See *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769-70 (2d Cir. 1994). Plaintiff fails to assert any facts suggesting that Merrill Lynch or Young could have reasonably foreseen that Young's projection -- that Tyco could sell CIT for $ 7- $ 8 billion -- would have caused Tyco's stock price to collapse on June 6.

"[HN2] 'Loss causation in effect requires that the damage complained of must be one of the foreseeable consequences of the misrepresentation.'" *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 216 (2d Cir. 2000) (citing *Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.*, 801 F.2d 13, 21 (2d Cir. 1986)); see also *Emergent*, 343 F.3d at 197 (citing *Castellano v. Young & Rubicam*, 257 F.3d 171, 186 (2d Cir. 2001) and *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992)); *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 96 (2d Cir. 2001) [*10] ("The loss causation inquiry typically examines how directly the subject of the fraudulent statement caused the loss, and whether the resulting loss was a foreseeable outcome of the fraudulent statement.")

A sale of CIT was only one possibility: Merrill Lynch's Tyco research reports repeatedly stated that Tyco's intention was to either sell or spin off CIT. Tyco stated that a sale of CIT would be "more lucrative to shareholders." On April 25, 2002, however, Tyco announced that, rather than a sale or spin-off, it would instead divest itself of CIT by means of an initial public offering. Thus, Young's previously disclosed assumption regarding a projected sale price cannot support Plaintiff's conclusory allegations of loss causation, especially given CIT's own IPO registration statement (dated April 25), which listed maximum proceeds to Tyco of $ 6.5 billion.

Information available to the market several weeks after the last mention of a $ 7- $ 8 billion price appeared suggested that $ 5 billion might be the highest amount Tyco could hope to get for CIT. On May 24, 2002, it was widely reported that Lehman Brothers Inc., one of the

bankers for the proposed CIT offering, had [*11] made a $ 5 billion offer for CIT and had promptly withdrawn it. See, e.g., Greg Cresi and Arindam Nag, Lehman Bids for Tyco's CIT, Then Backs Out --Source, Reuters, May 24, 2002; Christopher C. Williams, Tyco Again Victim of Flip-Flop, This Time From Lehman, Dow Jones News Serv., May 24, 2002; Steve Gelsi, Tyco shares flip-flop on conflicting rumors of CIT buy, CBSMarketWatch.com, May 24, 2002. n3

n3 "On a motion to dismiss, a court may consider ... 'matters as to which judicial notice may be taken.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment. See *Levitt v. Bear Stearns & Co. (In re Sterling Foster & Co.)*, 222 F. Supp. 2d 312, 321 (E.D.N.Y. 2002); *Schwenk v. Kavanaugh*, 4 F. Supp. 2d 116, 118 (N.D.N.Y. 1998). Plaintiff has submitted a request for the Court to take judicial notice "of the information obtained during the trial of Dennis Kozlowski in the State Supreme Court in Manhattan." While news articles may be judicially noticed for the fact of their publication, they may not be judicially noticed for the truth of the matter asserted -- that is, as "adjudicative facts." See *Fed. R. Evid. 201*. That the newspaper articles refer to testimony which can also be gleaned from trial transcripts does not qualify the asserted testimony as an appropriate matter for judicial notice. See *Int'l Star Class Yacht Racing Assoc. v. Tommy Hilfiger, U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998); see also *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 354 n.2 (S.D.N.Y. 1998) (Chin, J.). In any event, the subject matter of the articles is asserted to have occurred outside the putative class period and is thus irrelevant to Plaintiff's claims.

[*12]

B. Plaintiff Fails to Plead Fraud with Particularity

[HN3] A complaint alleging securities fraud must meet the strict mandate of *Rule 9(b)* and the Reform Act and state "with particularity" the circumstances constituting the alleged fraud. See *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). *Rule 9(b)* requires a complaint alleging securities fraud to "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills*, 12 F.3d at 1175).

[HN4] Congress added *Section 21D, 15 U.S.C. § 78u-4*, to the Exchange Act "to strengthen existing pleading requirements" for securities fraud, H.R. Conf. Rep. No. 104-369, at 41 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 740, and to require the complaint to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information [*13] and belief, the complaint shall state with particularity all facts on which that belief is formed," *15 U.S.C. § 78u-4(b)(1)* (emphases added). Thus, "'to withstand a motion to dismiss plaintiffs must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question.'" *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001) (citation omitted); see *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812-13 & n.13 (2d Cir. 1996) (plaintiffs must plead specific facts showing defendants' statements were false when made or that optimistic predictions "lacked a reasonable basis"). The actual fraudulent statements or conduct and the fraud alleged must be stated with particularity.

Plaintiff challenges every research report issued by Merrill Lynch during the putative class period. n4 Yet the Complaint does not sufficiently allege why and in what respects each particular research report issued during the putative class period did not provide a "sound basis" for "evaluating the facts concerning Tyco," or why particular [*14] target prices for Tyco's shares "lacked any reasonable basis."

n4 Contrary to Plaintiff's contention in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss, the Complaint refers to all research reports published during the putative class period. For example, the Complaint states, without limitation, that "the Research Reports written in the ordinary course of Young's employment at Merrill Lynch and published by Merrill Lynch were false and misleading." Compl. P 52. The second paragraph of the Complaint, which provides an overview of the entire pleading, broadly alleges wrongful conduct associated with "the Research Reports during the Class Period."

Case 3:04-cv-30022-MAP   Document 106-7   Filed 06/06/2006   Page 6 of 6

Page 6
2004 U.S. Dist. LEXIS 2247, *

Plaintiff also fails to plead the CIT allegations with the requisite particularity. For [HN5] Plaintiff must not only allege with particularity the statements or omissions that he contends were fraudulent, but also "the fraud itself." See *Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994); Chill v. General Elec. Co.,101 F.3d 263, 267 (2d Cir. 1996).* [*15] Plaintiff alleges no facts supporting the conclusions that: (i) During the class period Tyco appeared to the market to be "a rock solid, blue chip conglomerate with a successful track record and a bright and prosperous future"; and (ii) The $ 7- $ 8 billion valuation of CIT actually inflated the trading price of Tyco shares.

## II. FINDINGS REGARDING RULE 11 SANCTIONS

*Section 21D(c) of the PSLRA*, entitled "Sanctions for abusive litigation", provides:

> [HN6] In any private action arising under this chapter, upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of *Rule 11(b) of the Federal Rules of Civil Procedure* as to any complaint, responsive pleading, or dispositive motion.

*15 U.S.C. § 78u-4(c)(1)*; see *Rombach v. Chang, 355 F.3d 164, 178* (remanding for specific findings regarding compliance with *Rule 11* pursuant to PSLRA).

[HN7] If the court determines that there has been a violation of *Rule 11, section 21D(c)(2)* imposes mandatory sanctions and adopts a rebuttable [*16] presumption that the appropriate sanction for noncompliance "is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred." *15 U.S.C. § 78u-4(c)(3)(A)(i)-(ii)*. "The PSLRA thus does not in any way purport to alter the substantive standards for finding a violation of *Rule 11*, but functions merely to reduce courts' discretion in choosing whether to conduct the *Rule 11* inquiry at all and whether and how to sanction a party once a violation is found." *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 167 (2d Cir. 1999)*. Because this dismissal with prejudice constitutes a "final adjudication" of an action arising under the PSLRA, this Court's *Rule 11* findings with respect to Plaintiff's Consolidated Amended Complaint are set forth below.

In resolving Defendants' motion to dismiss, the Court has thoroughly reviewed Plaintiff's Complaint. The Court finds no indication that *Rule 11* sanctions are warranted. There is no evidence that Plaintiff filed his Consolidated Amended Complaint for "an improper purpose" such as to harass defendants or to cause unnecessary delay. Under the law of this [*17] Circuit, "[HN8] an argument constitutes a frivolous legal position for purposes of *Rule 11* sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995)* (internal quotations omitted). Although the Court finds, for the reasons set forth above, that Plaintiff's allegations of loss causation are insufficient, this does not mean that Plaintiff's claim is so unreasonable that it had absolutely "no chance" of success. Finally, as for Plaintiff's allegations and other factual contentions, the standard for holding that a particular allegation warrants sanctions is high. See *O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996)* ("[HN9] Sanctions may not be imposed unless a particular allegation is utterly lacking in support."). Even though the Court concludes that the Consolidated Amended Complaint warrants dismissal, the Court need not conclude that the factual allegations are so unreasonable as to warrant *Rule 11* sanctions. Plaintiff's allegations and other factual contentions [*18] are not so weak as to warrant sanctions.

## CONCLUSION

For all of the foregoing reasons the Consolidated Amended Complaint should be and hereby is dismissed with prejudice but without imposition of sanctions under *Rule 11*.

SO ORDERED.

Dated: New York, New York

February 18, 2004

MILTON POLLACK

Senior United States District Judge