# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN, on behalf of themselves and all others similarly situated,<br><br>                   Plaintiffs,<br><br>v.<br><br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,<br><br>                   Defendants. | **Civil Action**<br>**No. 3:04-CV-30022 (MAP)** |

## LEAD PLAINTIFFS' REPLY MEMORANDUM
## IN SUPPORT OF CLASS CERTIFICATION

David Pastor (BBO #391000)
GILMAN AND PASTOR, LLP
60 State Street, 37th Floor
Boston, MA 02109
Telephone: (617) 742-9700
Facsimile: (617) 742-9701

**Plaintiffs' Liaison Counsel**

Gregory Castaldo
Karen E. Reilly
Todd M. Mosser
SCHIFFRIN & BARROWAY, LLP
280 King of Prussia Rd.
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Plaintiffs' Lead Counsel**

{00008843.DOC ; 1}

TABLE OF CONTENTS

Preliminary Statement ........................................................................................................... 1

I. Defendants' Failed Loss Causation Arguments Do Not Preclude Class Certification ... 2

II. Plaintiffs Are Typical Class Member And Therefore Appropriate Class
Representatives ................................................................................................................ 5

   A. A Theoretical "Equity Conflict" Between Retention And In/Out Sellers Of Wave
Common Stock Does Not Support Denial Of Class Certification Or Denial Of Lead
Plaintiffs' Certification As Class Representatives ........................................................ 6

   B. The Inclusion Of Investors Who Purchased And Sold Their Wave Stock ..................... 9

III. Brumbaugh, Harmon And Griffin Are Adequate Class Representatives That Have
Actively Participated In This Action And Fulfilled Their Obligations As Lead
Plaintiffs And Proposed Class Representatives ............................................................ 12

Conclusion ........................................................................................................................ 15

TABLE OF AUTHORITIES

**Cases**

*Baum v. Centronics Data Computer Corp.*,
   1986 U.S. Dist. LEXIS 25451 (D.N.H. May 15, 1986) ............................................................. 7

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ........................................................................ 8

*Brumbaugh v. Wave Systems Corp.*,
   416 F. Supp. 2d 239 (D. Mass. 2006) .................................................................................. 3, 6

*Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005) ................................... 2, 3, 10, 12

*Freeland v. Iridium World Communs., Ltd.*,
   233 F.R.D. 40, 2006 U.S. Dist. LEXIS 744 (D.C. Jan. 9, 2006) ............................................... 3

*Guckenberger v. Boston University,* 957 F. Supp. 306 (D. Mass. 1997) ................................ 5, 12

*Herbst v. ITT*, 495 F.2d 1308 (2d Cir. 1974) ............................................................................... 7

*In re AST Research Sec. Litig.*,
   1994 U.S. Dist. LEXIS 20850 (C.D. Cal. Nov. 10, 1994) ......................................................... 8

*In re Cendant Corporation Litigation*,
   264 F.3d 201 (3d Cir. 2001) ..................................................................................................... 7

*In re CMS Energy Secs. Litig.,* 403 F. Supp. 2d 625,
   2005 U.S. Dist LEXIS 31576 (E.D. Mich. Dec. 7, 2005) .......................................................... 3

*In re Computer Memories Sec. Litig.,* 111 F.R.D. 675
   (N.D. Ca. 1986) ........................................................................................................................ 5

*In re CornerStone Propane Partners, L.P. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006). .......................................................... 8

*In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003) .................................... 7, 9

*In re Dynegy, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 26492
   (S.D. Tex. Dec. 31, 2004) ......................................................................................................... 7

*In re Honeywell Int'l*, 211 F.R.D. 255 (D.N.J. 2002) ................................................................. 10

*In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65
   (S.D.N.Y. 2004) ...................................................................................................................... 11

*In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427
   (E.D. Va. 2000) ...................................................................................................................... 15

*In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369
   (S.D.N.Y. 2000) .................................................................................................................. 9, 12

*In re Proxima Corp. Sec. Litig.*,
   1994 U.S. Dist. LEXIS 21443 (S.D. Cal. May 4, 1994) ............................................................ 8

*In re Rent-Way Sec. Litig.*, 218 F.R.D. 101 (W.D. Pa. 2003) ....................................................... 11

*In re Schering-Plough Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 26297 (D.N.J. Oct. 9, 2003) ........................................................ 7, 9

*In re Seagate Tech. II Sec. Litig.*, 156 F.R.D. 229 (N.D. Cal. 1994) .............................................. 8

*In re Seagate Tech. II Secs. Litig.,* 843 F. Supp. 1341 (N.D. Cal. 1994) .................................. 8, 9

*In re Vesta Insurance Group, Inc., Sec. Litig.*,
   1999 U.S. Dist. LEXIS 22233 (N.D. Ala. Oct. 25, 1999) ........................................................ 7

*Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*,
   1996 U.S. Dist. LEXIS 16330 (W.D. Mich. Sept. 27, 1996) .................................................... 9

*Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204 (D.R.I. 2005) ........................................................... 12

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
   323 F.3d 32 (1st Cir. 2003) .................................................................................................. 11

*Steiner v. Aurora Foods, Inc.,*
   2000 U.S. Dist. LEXIS 20341 (N.D. Cal. Jun. 5, 2000) ........................................................ 14

*Yamner v. Boich, 1994* U.S. Dist. LEXIS 20849
   (N.D. Cal. Sept. 15, 1994) ...................................................................................................... 8

*Ziemack v. Centel Corp.*, 164 F.R.D. 477 (N.D. Ill. 1995) ............................................................. 6

**Statutes**

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 5, 10, 15

**Other Authorities**

7 Newberg on Class Actions § 22.39 (4th ed. 2002) ....................................................................... 6

Fed. R. Evid. 702 ............................................................................................................................ 4

Lead Plaintiffs Anne Brumbaugh ("Brumbaugh"), Gary L. Harmon ("Harmon"), and Randy K. Griffin ("Griffin") (collectively the "Lead Plaintiffs") respectfully submit this reply memorandum in further support of their Motion for an Order pursuant to Fed. R. Civ. P. 23 with respect to the Class of all persons and entities who purchased or otherwise acquired Wave Systems common stock between July 31, 2003 and December 18, 2003 inclusive (the "Class Period"), and were damaged thereby.

## PRELIMINARY STATEMENT

Lead Plaintiffs, the proposed Class Representatives, have demonstrated through the conduct of this litigation since their appointment in 2004[1] that they are adequate and typical plaintiffs determined to achieve the best result for the entire class of those who acquired Wave common stock during the Class Period. Lead Plaintiffs have amended the consolidated class action complaint, defeated Defendants' motions to dismiss, provided class certification discovery, and prepared for depositions. Lead Plaintiffs' claims, under the Securities Exchange Act of 1934 ("1934 Act"), share a common set of factual and legal issues with all members of the Class based on Defendants' common course of wrongful conduct.

Defendants' brief in opposition to certification has not presented any reason to deny certification. Plaintiffs' claims overwhelmingly share common issues with those of the class, as all such claimants will seek to prove the materially false and misleading nature of the statements and omissions made by Defendants in Wave's SEC filings and other public statements disseminated during the Class Period. Moreover, courts have long rejected the theoretical equity/purchaser "conflict" and have repeatedly certified classes including persons who sold some or all of the subject securities before the end of the class period. In addition, as this Court

---

[1] On September 3, 2004 Brumbaugh, Harmon and Griffin were appointed Lead Plaintiffs by Order of this Court.

{00008843.DOC ; 1}    1

recognized in its opinion denying Defendants' motion to dismiss, Lead Plaintiffs have articulated a theory of damages to satisfy the pleading standards of the majority of circuit courts and as affirmed by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627 (2005). Defendants' argument in opposition to class certification based on loss causation is nothing more than an attempt to re-argue their motion to dismiss.

Lead Plaintiffs have demonstrated their typicality and adequacy, despite Defendants' attempts to argue the contrary, and each Lead Plaintiff should be certified as a representative of the Class. Brumbaugh, Harmon and Griffin have all cooperated fully in discovery, produced responsive documents and sat for their depositions on May 5, 2006; May 26, 2006; and May 9, 2006, respectively. Indeed, Defendants make no argument at all regarding Lead Plaintiffs' qualifications as class representatives.

Lead Plaintiffs' motion for class certification should be granted.

## I.   DEFENDANTS' FAILED LOSS CAUSATION ARGUMENTS DO NOT PRECLUDE CLASS CERTIFICATION

Defendants' argument that "no class" may properly be certified in this action as no "corrective disclosure" has been identified, is nothing more than a rehash of the flawed loss causation argument asserted by Defendants' in their Motion to Dismiss and Supplemental Authority. This argument is without merit because this Court applied the correct legal standard endorsed by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S. Ct. 1627 (2005) when it weighed the sufficiency of Lead Plaintiffs' loss causation allegations, and *Dura* does not require "that a corrective disclosure precede a stock's decline." *Brumbaugh v. Wave Systems*

*Corp.,* 416 F. Supp. 2d 239, 256 (D. Mass. 2006)[2]  Therefore, Defendants' assertion, a repeat of it's already rejected motion to dismiss argument, does not support denial of class certification.

Defendants also argue that a class cannot be certified in this action as Lead Plaintiffs' have failed to identify any "corrective disclosure," as when the "true facts" were revealed to the market on August 14, 2003, no loss was sustained by the class as Wave's share price did not significantly decline in value. Def. Opp. to Cert. at 5-18.  As this argument is largely based on the same arguments rejected by this Court in ruling on the motion to dismiss— a selective reading of Sprague's comments made during the August 14, 2003 conference call in isolation (Def. Opp. to Cert. at 8), while completely disregarding the additional misleading statements made during the same call, this argument is without merit and does not support denial of class certification.  As the Court stated in denying Defendants' motion to dismiss, "The flaw in this argument is that it focuses on Sprague's 'disclosure' in isolation.  During the conference call with analysts, Sprague did acknowledge that neither of the Company's new partners was obligated to purchase or use any Wave products or services.  However, Sprague subsequently predicted that Wave's relationship with Intel would soon be a significant revenue source and indicated that Wave insiders were 'very comfortable' about Wave's capacity to continue operations until significant revenue arrived." *Brumbaugh* at 257.  The Court concluded from a complete reading of Defendant Sprague's statement "that Sprague's 'disclosure' came in the

---

[2]  Other courts have similarly held that a "corrective disclosure" along the lines endorsed by Defendants is not required under *Dura*.  *Freeland v. Iridium World Communs., Ltd.*, 233 F.R.D. 40, 2006 U.S. Dist. LEXIS 744, at *18-*19 (D.C. Jan. 9, 2006)  (interpreting *Dura* narrowly and finding that "reading *Dura* to require proof of a complete, corrective disclosure resulting in a large price decline. . . would allow wrongdoers to immunize themselves with a protracted series of partial disclosures"); *In re CMS Energy Secs. Litig.,* 403 F. Supp. 2d 625, 2005 U.S. Dist LEXIS 31576, at *17 (E.D. Mich. Dec. 7, 2005) (though defendants sought to rebut plaintiffs' theory of loss causation by demonstrating that the price of CMS stock did not drastically increase on any of the days on which the allegedly fraudulent statements were made public, the Court was not persuaded that "the link between defendants' allegedly fraudulent statements and plaintiffs' decision to purchase CMS stock is severed by a mere showing that the stock prices did not immediately and drastically increase in response to the statements" and held that plaintiffs had adequately alleged loss causation).

midst of additional misrepresentations designed to maintain the Company's artificially inflated value. Consequently, the market's quiescence following the August 14th conference call does not preclude a presumption of reliance." *Id.* at 255.

As nothing more than an attempt to reargue the Court's ruling in Plaintiffs' favor on the motion to dismiss, Defendants' assertions should be disregarded by the Court in its deliberation concerning class certification. Likewise, the opinion of Defendants' expert Christopher M. James' is fundamentally flawed as it is based upon the same myopic, limited reading of Sprague's August 14th statements, contrary to this Court's finding concerning the relevant factual allegations made in the Complaint in ruling on the motion to dismiss. Under Fed. R. Evid. 702, the opinion of an expert may be considered by the fact finder provided the following factors are present: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principle and methods reliably to the case." Here, Mr. James opinion does not the meet the requirements of Fed. R. Evid. 702(1) as his affidavit is not based on "sufficient facts" demonstrated by his complete disregard for Sprague's August 14th statements concerning anticipated revenues which the Court found significant in denying Defendants' motion to dismiss. Instead of assisting the trier of fact, Defendants are simply seeking to substitute their own finding of fact by way of Mr. James, in place of the Court's own holding.[3] Mr. James' opinion is simply a regurgitation of Defendants' failed argument and does not support denial of certification of the class, or the Lead

---

[3] In light of the Court's prior ruling concerning Defendant Sprague's statements and the flawed premise of Defendants' expert's opinion, Lead Plaintiffs did not retain an expert to refute Mr. James' opinion.

Plaintiffs as class representatives. His opinion is contradicted by the Court's ruling on the motion to dismiss.

## II. PLAINTIFFS ARE TYPICAL CLASS MEMBER AND THEREFORE APPROPRIATE CLASS REPRESENTATIVES

Lead Plaintiffs have clearly met the typicality representation requirements in order to be certified as class representative in this action. Typicality under Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "[T]he typicality requirement is satisfied when the [named] plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory." *Guckenberger v. Boston University,* 957 F. Supp. 306, 325 (D. Mass. 1997). The claims or defenses of the proposed class representative need not be identical to those of absent class members, they must only not "differ significantly from the claims or defenses of the class as a whole." *In re Computer Memories Sec. Litig.,* 111 F.R.D. 675, 680 (N.D. Ca. 1986). Here, Lead Plaintiffs have demonstrated that their claims are typical of those of other members of the Class as they were all injured by Defendants' misrepresentations and omissions in connection with their acquisition of Wave common stock during the Class Period, in that the prices paid for the securities were artificially inflated as a result of the Defendants' fraudulent acts.[4] As this Court wrote in denying Defendants'' motion to dismiss, the "crux of Plaintiffs' complaint is that Defendants' efforts to inflate the Company's stock artificially caused them harm. They allege that as Wave stood on the brink of extinction, Defendants made a series of misrepresentations that led reasonable investors to believe that the Company was poised to fulfill its recent

---

[4] Defendants' argument that "individual adjudication of loss causation" issues would predominate rendering Lead Plaintiffs "atypical" and therefore preclude class certification (Def. Opp. Cert. at 5) is without merit, as they rest in loss causation arguments already rejected by this Court in ruling on Defendants' motion to dismiss.

predictions of unprecedented revenue growth.  In short, Plaintiffs submit that by concealing the true nature of the purported Intel and IBM deals, Defendants perpetrated a fraud on the market." *Brumbaugh* at 248.  Defendants have not offered any argument that absent class members will seek to establish Defendants' liability based on anything other than the fraudulent conduct alleged.

        A.        **A Theoretical "Equity Conflict" Between Retention And In/Out Sellers Of Wave Common Stock Does Not Support Denial Of Class Certification Or Denial of Lead Plaintiffs' Certification As Class Representatives**

Defendants argue Lead Plaintiffs are "atypical" of the absent class members and seek denial of Lead Plaintiffs' motion for certification of the class and as class representatives on the basis of a purported conflict between so-called "retention plaintiffs" (those who held Wave common units through the end of the Class Period) and "in/out plaintiffs" (those who sold Wave common units prior to the close of the Class Period) (Def. Opp. Cert. at 19), an argument that is clearly without merit.

The so-called equity conflict is grounded on the theory that a plaintiff who holds shares through the end of the Class Period, contrasted with plaintiffs who sold during the Class Period, will seek to prove that corrective disclosures occurred at times that would maximize false inflation relative to their own holdings and not as to other class members, resulting in an inherent conflict. Def. Opp. Cert. at 19.   However, "[m]ost of the rare cases that address the equity holder/non-holder conflict do not recognize it as engendering antagonism among class members." *Ziemack v. Centel Corp.*, 164 F.R.D. 477, 479 (N.D. Ill. 1995).  Indeed, it is well-accepted hornbook law that "a plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased and then sold them, and vice versa."  7 Newberg on Class Actions § 22.39, at 198 (4th ed. 2002).

For example, in *In re Cendant Corporation Litigation*, 264 F.3d 201 (3d Cir. 2001), the court held that in enacting the PSLRA, Congress rejected the "equity conflict" by presumptively establishing that "the class member 'most capable of adequately representing the interests of class members' is the shareholder with the largest financial stake in the recovery sought by the class" which, "almost invariably," will be a large institutional investor who will continue to hold and otherwise trade shares in the defendant company:

> We presume that Congress was aware that an institutional investor with enormous stakes in a company is highly unlikely to divest all of its holdings in that company, even after a securities class action is filed in which it is a class member.
>
> By establishing a preference in favor of having such investors serve as lead plaintiffs, Congress must have thought that the situation present here does not inherently create an unacceptable conflict of interest. ("The Committee believes that an institutional investor acting as lead plaintiff can, consistent with its fiduciary obligations, balance the interests of the class with the long-term interests of the company and its public investors.") For this reason, the simple fact that the institutional investors who comprise Lead Plaintiff retained Cendant stock while the Settlement was negotiated is not clearly enough, standing alone, to support Throenle's claim that Lead Plaintiff was so conflicted that the Settlement should be overturned.

*Id*. at 244 (quoting S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690)).[5]

---

[5] *See also Herbst v. ITT*, 495 F.2d 1308, 1314 (2d Cir. 1974) ("We do not perceive any conflict of interest between those who have retained their ITT shares and those who have since sold them. The personal interest of those who still hold ITT stock in gaining more from the exchange than they did far outweigh their concern that any award could damage ITT."); *In re Dynegy, Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 26492, at *45 (S.D. Tex. Dec. 31, 2004) ("Individual stock holdings of absent class members would have to be massive before their equity investment in the company would outweigh their personal interest in a recovery in this case.") (citation omitted); *In re Schering-Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297, at *23-*24 (D.N.J. Oct. 9, 2003) ("Congress, in enacting the PSLRA, intended that large institutional shareholders . . . would serve as lead plaintiffs in securities class actions notwithstanding the fact that such investors were highly unlikely to divest all of their holdings in the defendant company"); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 297 n.3 (D. Del. 2003) ("using this [equity conflict] ground as a basis to reject class certification would undermine the use of the class certification mechanism in securities actions and lead to the systematic disqualification of large investors and institutions from serving as lead plaintiffs, a result which is at odds with the intent of the PSLRA"); *In re Vesta Insurance Group, Inc., Sec. Litig.*, 1999 U.S. Dist. LEXIS 22233, at *15 (N.D. Ala. Oct. 25, 1999) ("[t]he court believes that the overriding goal of the class, and of its representatives, will virtually always be to demonstrate the liability of the defendant," and accordingly, "this court finds that the theoretical intra-class [equity] antagonisms are not so great that the proposed representatives will be unable adequately to represent the class, and certification will not be denied based on these potential conflicts"); *Baum v. Centronics Data Computer Corp.*, 1986 U.S. Dist. LEXIS 25451, at *11-*12 (D.N.H. May 15, 1986) (in certifying class holding that "[t]he interest of those still holding stock does not conflict with the

{00008843.DOC ; 1}    7

Nor does Defendants' virtually exclusive reliance on the holding in *In re Seagate Tech. II Secs. Litig. ("Seagate II"),* 843 F. Supp. 1341 (N.D. Cal. 1994), advance their argument that denial of class certification is appropriate here.  Unlike the case at bar, the motion for class certification in *Seagate II* was decided along with motions for summary judgment, and after the close of merits discovery.  *Id.*  In addition, the district court in *Seagate II* did not formally deny plaintiff's motion for class certification, but rather ordered an evidentiary hearing to "evaluate whether due process requirements and the prerequisites of FRCP 23 are satisfied." *Id.* at 1345.  In fact, the court ultimately granted plaintiffs' motion for certification.  *See In re Seagate Tech. II Sec. Litig.*, 156 F.R.D. 229 (N.D. Cal. 1994).  Moreover, Seagate is a "minority decision as courts have continued to certify securities class actions despite the existence of these Retention and In/Out Plaintiffs." *In re CornerStone Propane Partners, L.P. Sec. Litig.,* 2006 U.S. Dist. LEXIS 25819 at *22 (N.D. Cal. May 3, 2006).  *See also Yamner v. Boich, 1994* U.S. Dist. LEXIS 20849 at *20 (N.D. Cal. Sept. 15, 1994)(The Ninth Circuit in *Blackie v. Barrack,* 524 F.2d 891 (9th Cir. 1975),* specifically rejected the argument that the seller/purchaser conflict precludes class certification.)(citation omitted.); *In re AST Research Sec. Litig.,* 1994 U.S. Dist. LEXIS 20850 (C.D. Cal. Nov. 10, 1994)(the Ninth Circuit rejected precisely the argument embraced by *Seagate,* the Court will follow *Blackie,* which is binding Ninth Circuit precedent and grant plaintiff's motion for class certification); *In re Proxima Corp. Sec. Litig.*, 1994 U.S. Dist. LEXIS 21443, at *53 (S.D. Cal. May 4, 1994) ("The Court finds defendants' arguments here unpersuasive and in any case contrary to established precedent, including the Ninth Circuit's decision in *Blackie*, which as a general matter deem inconsequential such nuances between the claims of individual class members.") (citation omitted.)

---

class" because "[t]his court finds that plaintiffs' interest in achieving a favorable outcome outweighs their concern that an award could damage Centronics").

Other district courts have also rejected *Seagate*. *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 1996 U.S. Dist. LEXIS 16330, at *25 (W.D. Mich. Sept. 27, 1996) (*Seagate II* "knowingly rejected the traditional rule that a plaintiff class should be certified despite conflicts over damages issues between early and late sellers of the stock.""[T]his Court believes that the potential for intraclass conflict is a peripheral concern to a class whose primary interest is in proving the materiality of the alleged omissions in an effort to prove liability."); s*ee also In re Schering-Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297, at *24 (D.N.J. Oct. 9, 2003) ("*Seagate II* has been criticized heavily, and to date no court in this district has elected to adopt its reasoning."); *In re Daimler Chrysler AG Sec. Litig.*, 216 F.R.D. 291, 297 (D. Del. 2003) ("[T]he reasoning of the *Seagate* decision has been repeatedly rejected by courts in this Circuit"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369 at 377-78 (S.D.N.Y. 2000) (rejecting *Seagate II* and stating that "[t]he argument based on an assumed Seller/Purchaser conflict is rejected."); *In re Systems Software Assocs. Sec. Litig.*, 2000 U.S. Dist. LEXIS 18285, at *9 ("Defendants' argument and the seminal case cited by defendants *(In re Seagate Technology II*, 843 F. Supp. 1341) have been rejected by the courts."). Therefore, Defendants argument is unavailing, and does not prevent certification of the class.[6]

    **B.    The Inclusion Of Investors Who Purchased And Sold Their Wave Stock At Various Times During The Class Period Does Not Preclude Class Certification**

Defendants' argument that "no class" may properly be certified in this action as no "corrective disclosure" has been identified—before or after the August 14th conference call (Def.

---

[6] Similarly, the purported conflict between Retention and In/Out Sellers of Wave common stock does not preclude any of the Lead Plaintiffs from properly being certified as a class representative.

Opp. Cert. at 11) with no resulting injury to the Class,[7] is nothing more than a rehash of the flawed loss causation argument asserted by Defendants in their motion to dismiss, as discussed above. As this Court has already rejected these arguments, and *Dura* does not require the dismissal of claims on behalf of particular plaintiffs based upon speculation that such plaintiffs will ultimately be unable to prove damages based on the date(s) of those plaintiffs' sales, Defendants' argument is without merit and does not support preclusion of class certification.

Taken to its logical conclusion, this argument would preclude the certification of *any* class of investors because of the possibility that proof of damages could vary among individual class members. Moreover, the law is clear that Lead Plaintiffs are not required to provide *proof* on the issue of damages at the class certification stage.[8] *In re Honeywell Int'l*, 211 F.R.D. 255, 264 (D.N.J. 2002) ("[A]lthough the court must satisfy itself that Plaintiffs have put common questions in play, and that those questions predominate, it is inappropriate at this stage of the case for the Court to resolve disputed issues--especially where the proper resolution of those issues would require (at least) the sort of developed, post-discovery record usually associated with motions for summary judgment.").

In the instant case, having already pled a cognizable theory of loss causation and damages in addition to all of the other elements of their claims, and having met all the prerequisites of Fed. R. Civ. P. 23, Lead Plaintiffs are now entitled to certification of the class.

---

[7] Defendants asked Lead Plaintiff Harmon to read the August 14, 2003 analyst conference call statements made by Sprague into the record, without also asking him to read Sprague's statements concerning anticipated significant revenues. Mr. Harmon was not aware of the conference call prior to the filing of this action, and his misconstrued testimony does not in any way support Defendants' opposition to class certification.

[8] Defendants argue that the inclusion of class members who sold their stock prior to December 18, 2003 would create a "core conflict" within the Class as "in-and-out plaintiffs will have to demonstrate artificial inflation and then dissipation during the various periods of their trading, as opposed to the theory of a one-time December 18th corrective disclosure" and would need to prove "a very different and contradictory set of facts" than those alleged in the Complaint. Def. Op. Cert. at 20. Specifically, Defendants assert that plaintiffs who sold their Wave stock prior to December 18, 2004 will be subject to a unique loss causation defense and may wish to pursue a different litigation strategy. Def. Op. Cert. at 24. This argument is baseless and should be rejected.

Defendants' attempt to use the pleading standard for loss causation as a means to limit damage theories to be developed through discovery and expert analysis should be summarily rejected. If accepted, Defendants' theory would preclude certification of *any* class of investors that included investors who sold before the final, end-of-class-period disclosures. *See In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 102-103 (S.D.N.Y. 2004) ("Any securities fraud class action runs the risk of including individual investors who may be ineligible for recovery for any number of reasons, including actual knowledge of the alleged fraud. If the possibility that certain class members might eventually be excluded were sufficient to preclude class certification, there could never be a securities fraud class action."). However, courts routinely certify classes of investors who purchased and sold their stock *throughout* the class period. *See, e.g., In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 119 (W.D. Pa. 2003) (rejecting argument that predominance requirement cannot be met where proposed class incorporated investors that: (i) purchased and sold stock prior to the company's initial disclosure about its accounting problems; and (ii) sold stock after the disclosure). Just as in the instant action, the defendant in *In re Rent-Way Sec. Litig.*, specifically pointed out "that there are undoubtedly Plaintiffs who, despite the alleged market inflation, did not sell their stock at a loss and, therefore, suffered no injury in fact." However, the Court found this argument unpersuasive, holding:

> Nevertheless, we do not consider this sufficient grounds to defeat a finding of predominance at this juncture. The problems presented by "in and out sellers" are bound to inhere in any securities action alleging a fraud on an open securities market. This is all the more true in cases such as this one where the alleged fraudulent scheme was of longer duration and/or involved a multiplicity of alleged misrepresentations. To accept PwC's logic and refuse certification because of the existence of "in and out" traders would perhaps establish a precedent that rewards the most egregious violations of § 10(b) by making class certification unattainable.

218 F.R.D. at 120. *See also Smilow v. Southwestern Bell Mobile Sys., Inc.,* 323 F.3d 32, 41 (1st Cir. 2003) ("The individuation of damages in consumer class actions is rarely determinative

{00008843.DOC ; 1}                                     11

under Rule 23(b)(3).  Where, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."); *Oxford Health Plans,* 191 F.R.D. at 377 ("While damages may vary among class members, all share common questions of liability.  Damage amounts can be calculated for each individual class member after a determination of liability."); *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 207 (D.R.I. 2005) ("'[S]ecurities actions are considered particularly appropriate for class action treatment.'") (citation omitted).[9]

### III. BRUMBAUGH, HARMON AND GRIFFIN ARE ADEQUATE CLASS REPRESENTATIVES THAT HAVE ACTIVELY PARTICIPATED IN THIS ACTION AND FULFILLED THEIR OBLIGATIONS AS LEAD PLAINTIFFS AND PROPOSED CLASS REPRESENTATIVES

Adequacy of representation is measured by two standards: (1) the representative party's counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the plaintiff's interests must not be antagonistic to those of the other members of the class.[10]  *E.g.*, *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326 (D. Mass. 1997) (quoting *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1534).  Brumbaugh, Harmon and Griffin are adequate representatives under both standards.

---

[9]  Defendants also erroneously assume that class members who sold their shares before December 18, 2004 will be unable *to prove* that they suffered damages.  Moreover, Defendants' argument that class members who sold their Wave stock prior to December 18, 2004 "cannot prove loss causation under *Dura*" makes little sense since *Dura* (which is the only case Defendants' cite in support of its erroneous argument) concerned the *pleading standard* for loss causation.

[10]  The testimony of Brumbaugh, Harmon and Griffin clearly demonstrates that they all meet the standards.  Their deposition testimony demonstrates that they each understand the factual basis for this lawsuit, understand the duties of class representatives and their attorneys, and are in regular contact with class counsel. (Appendix of Exhibits Cited in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification (hereinafter "Defs. App."), Ex. 5 at 107:20-108:18; 110:3-25; 112:2-12.)(May 5, 2006 Anne Brumbaugh Deposition Testimony Transcript (hereinafter "Brumbaugh Dep.")); (Defs. App., Ex. 7 at 103:13-104:17; 109:22-110:15)(May 9, 2006 Randy Griffin Deposition Testimony Transcript (hereinafter "Griffin Dep.")); (Defs. App., Ex. 8 at 23:21-24:13; 26:14-27:8; 31:6-22; 35:11-36:8)(May 26, 2006 Gary Harmon Deposition Testimony Transcript (hereinafter "Harmon Dep.")).

Brumbaugh, Harmon and Griffin have participated fully in every aspect of the litigation, including class discovery. They have each produced relevant documents, including their investment policies and account statements. Brumbaugh, Harmon and Griffin have also appeared for deposition. Moreover, Lead Plaintiffs have diligently prosecuted this case since being appointed by the Court to represent the proposed class. Such active participation confirms their ability to prosecute the action vigorously and the adequacy of Lead Plaintiffs to be class representatives.

Defendants cannot support their position through the misrepresentation of Lead Plaintiffs' testimony. Defendants distort the deposition testimony of Anne Brumbaugh in an attempt to create the false impression that this is "lawyer driven" litigation. As Ms. Brumbaugh's testimony indicates:

> Q:   Okay. The very first time you spoke to counsel regarding this case was, or the very first time you had a communication by counsel regarding this case was a mailed notice to you; is that correct?
> A:   Yes, after this form, which was a pretty generic form as far as if you were an owner of Wave between this time, you know, and you're interested in being part of the class action, list your shares and when you purchased them, which is what this was talking about, right?
> Q:   Yes.
> A:   Okay.
> Q:   Was it initiated by you or was it by Schiffrin & Barroway?
> A:   Well it was initiated when I sent in this notice, and then they contacted me by e-mail.

(Brumbaugh Dep. at 104:7-25; 105:1-2)

Defendants have likewise misrepresented the testimony of Mr. Griffin concerning his understanding of the crux of this litigation, and the claims against Defendants.[11]

---

[11] Defendants also misconstrued Mr. Griffin's testimony concerning his understanding of his role and responsibilities as a class representative. As Mr. Griffin testified, he understood his duties to be: "Well, it's to represent each one that's in the class action also – lawsuit, again, fairly and equally in all manners, to deal with counsel of any of the research or any of the decisions that are made in the class action lawsuit. Also, to discuss with them what fees or costs may be incurred that could happen in this lawsuit if – for settlement, if there is a settlement,

{00008843.DOC ; 1}                            13

>Q: And do you know why the stock price went up on July 31st, 2003?
>A: The only thing that I can think of, going back and looking that the articles that were online, was what Mr. Sprague and anyone lese for the company that may have come out with the seemingly positive outlook for Wave with their maybe joint venture with Intel, IBM or some other software.
>    So I – I'm assuming that the analysts and other investors as myself were banking on this would be a good stock since they were going to hook up with such good companies with past histories.

(Griffin Dep. at 58:10-21).

>Q: Are you claiming that you were damaged by the sale of this stock because of the conduct of any of the Defendants?
>A: Yes.
>Q: Okay. What conduct was that?
>A: Misleading information.
>Q: And what misinformation – what misleading information in particular?
>A: Well, there was no contract or consortium with Intel or any other software company for their security to be put on their platform. Misleading information.

(Griffin Dep. at 66:5-16).

Further, Defendants erroneously contend that Lead Plaintiffs are inadequate because they have not negotiated a fee agreement with lead counsel. Def. Op. Cert. at. 27-28. However, this spurious argument does not warrant denial of certification of Lead Plaintiffs as class representatives. Appearing to argue Lead Plaintiffs are obligated to engage in a bidding process in order to adequately retain lead counsel, Defendants argument is unpersuasive. As the court noted in *Steiner v. Aurora Foods, Inc.,* 2000 U.S. Dist. LEXIS 20341, at * 6 (N.D. Cal. Jun. 5, 2000), competitive bidding was rejected because it "appears to be contrary to the plain language of the PSLRA." According to *Steiner,* a court's authority under the PSLRA to approve counsel selected by the lead plaintiff and to limit the attorneys' fees awarded to a reasonable percentage

---

if it were a class action lawsuit. And then all responses – to oversee, to the best of my ability, of -- of information that they may be presenting be true and factual. So, again, to be more involved in it as a lead than just someone that's coming on as part of the class action lawsuit." (Griffin Dep. at 110:1-15).

{00008843.DOC ; 1}                             14

of any recovery is "sufficient to ensure that the interests of the class are protected, without depriving the lead plaintiff of its right to the counsel of its choice." *Id.* at *10. Likewise, in *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000), the court concluded that an "imaginative, if unauthorized proposal to abandon the statutory lead plaintiff selection procedure and adopt instead a competitive bidding process" finds no warrant in the PSLRA. *Id.* at 437-438. The court explained that "approval [of the lead plaintiff's selection of counsel] should not be based on whether plaintiff's chosen counsel promises to charge a cheaper fee than anyone else." *Id.* Rather, "a district court should approve plaintiffs' choice of lead counsel based solely on that counsel's competence, experience, and resources, saving the question of fees until the conclusion of the litigation." *Id.* at 438. Therefore, Lead Plaintiffs have demonstrated by their conduct in the course of this litigation that they are indeed adequate class representatives.

## CONCLUSION

For the reasons stated herein, Lead Plaintiffs respectfully request that this action be certified as a class action under Fed. R. Civ. PR. 23(a) and (b)(3) on behalf of the Class defined herein, and that Lead Plaintiffs be certified as the representatives of the Class.

Dated: June 28, 2006

                      Respectfully submitted,

                      /s/ David Pastor
                      David Pastor (BBO #391000)
                      GILMAN AND PASTOR, LLP
                      60 State Street, 37th Floor
                      Boston, MA 02109
                      Telephone:  (617) 742-9700
                      Facsimile:   (617) 742-9701

                      **Plaintiffs' Liaison Counsel**

>Gregory Castaldo
>Karen E. Reilly
>Todd M. Mosser
>SCHIFFRIN & BARROWAY, LLP
>280 King of Prussia Rd.
>Radnor, PA 19087
>Telephone: (610) 667-7706
>Facsimile: (610) 667-7056
>
>**Plaintiffs' Lead Counsel**

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 28, 2006.

>/s/ David Pastor
>David Pastor