# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN, <br> Plaintiffs, <br><br> v. <br><br> WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     CIVIL ACTION <br>     NO. 04-30022-MAP |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,**

By their attorneys,

Robert A. Buhlman, BBO #554393
Michael D. Blanchard, BBO #636860
Robert B. Baker, BBO #654023
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

July 5, 2006

## TABLE OF CONTENTS

Page

I.    THIS COURT'S DECISION ON DEFENDANTS' RULE 12(B)(6) MOTION,
      ADDRESSED TO THE ADEQUACY OF THE PLEADINGS, DID NOT LIFT
      THE PLAINTIFFS' BURDEN OF SHOWING HOW COMMON ISSUES WILL
      PREDOMINATE OVER INDIVIDUAL ISSUES ............................................................ 3

II.   THE CLASS CONFLICTS ARE REAL -- NOT THEORETICAL --
      RENDERING CERTIFICATION INAPPROPRIATE ...................................................... 6

III.  LEAD PLAINTIFFS ARE INADEQUATE CLASS REPRESENTATIVES .................. 9

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adair v. Sorenson*, 134 F.R.D. 13 (D. Mass. 1991) ..............................................................5

*In re AST Research Sec. Litig.*, 1994 WL. 722888 (C.D. Cal. Nov. 8, 1994) ....................6

*Bastian v. Petren Resources Corp.*, 892 F.2d 680 (7th Cir.),
cert. denied, 496 U.S. 906 (1990) ........................................................................................3

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)................................................................6

*Brumbaugh v. Wave Sys. Corp.*, 416 F. Supp. 2d 239 ..................................................1, 3, 4

*In re Carbon Black Antitrust Litigation*, 2005 WL. 102966
(D. Mass. Jan. 18, 2005) ......................................................................................................4

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)....................................................9

In re Cornerstone Propane Partners Sec Litig., 2006 WL. 1180267
(N.D. Cal. May 3, 2006) ...................................................................................................5, 6

*In re Credit Suisse First Boston Corp. Analyst Reports Sec. Litig.*,
2005 WL. 852455 (D. Mass. Mar. 31, 2005).......................................................................5

*In re Daimler Chrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003)............................6

*In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004)...........................3

*Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149 (S.D. Tex. 2003) ..........................10

*Lubin v. Sybedon Corp.*, 688 F. Supp. 1425 (S.D. Cal. 1988)....................................10, 11

*In re Lucent Tech., Inc. Sec. Litig.*, 194 F.R.D. 137 (D.N.J. 2000) ..................................10

*McCabe v. Ernst & Young, LLP*, 2006 U.S. Dist. LEXIS 524
(D.N.J. Jan. 6, 2006) ............................................................................................................3

*Merrill Lynch , Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503 (2006) ................5

*In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165 (D.N.J. 1999) ...............................10

*In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369 (S.D.N.Y. 2000)...................6

LITDOCS/645680.2

*People United For Children, Inc. v. The City of New York*, 214 F.R.D. 252 (S.D.N.Y. 2003) ............................................................................................................11

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61 (D. Mass. 2005) ......................................................................................................1, 4

*Piccard v. Perrigo Co.*, 1996 WL 739170 (W.D. Mich. Sept. 27, 1996) ..........................6

*In re Polymedica Corp. Sec. Litig.*, 432 F.3d 1 (1st Cir. 2005) .........................................1

*In re Proxima Corp. Sec. Litig.*, 1994 WL 374306 (S.D. Cal. May 3, 1994) ....................6

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658 (D. Or. 1991) ............................................................................................................10

*In re Schering-Plough Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 26297 (D.N.J. Oct. 9, 2003) ......................................................................................................6

*Seagate Tech. II Sec. Litig.*, 156 F.R.D. 229 (N.D. Cal. 1994) ........................................8

*In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341 (N.D. Cal. 1994) ...........................6

*Smyth v. Carter*, 168 F.R.D. 28 (W.D. Va. 1996) ....................................................10, 11

*In re Sys. Software Assoc. Sec Litig.*, 2000 U.S. Dist. LEXIS 18285 (N.D. Ill. Dec. 6, 2000) ..............................................................................................................6

*Teco Energy, Inc. Sec. Litig.*, 2006 WL 845161 (M.D. Fla. Mar. 30 2006) ......................4

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ..................4

*Yamner v. Boich*, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................................6

## FEDERAL STATUTES

Fed. R. Civ. P. 23(a) ........................................................................................................ ii

Fed. R. Civ. P. 23(b) ........................................................................................................ ii

# PRELIMINARY STATEMENT[1]

Plaintiffs' Reply rests on the faulty premise that their Motion for Class Certification should be evaluated by the same standard as applied on a Rule 12(b)(6) motion.  The Plaintiffs are wrong, as is clear from this Court's decision on the Motion to Dismiss, cautioning that many of the issues raised there might be revisited on class certification.[2]  Indeed, courts in this Circuit look "well beyond the four corners of the pleadings,"[3] and often use expert reports to determine "whether after a sneak preview of the issues," Plaintiffs have satisfied their burden of proving that class certification is appropriate.  In re Pharmaceutical Indus. Average Wholesale Price Litig., 230 F.R.D. 61, 90 (D. Mass. 2005).  While Defendants have presented overwhelming evidence militating against certification -- hard data, interpreted by expert opinion, concerning the composition of the class and Wave's stock price behavior -- the Plaintiffs have chosen to rest on the mere allegations of the Complaint.

Accordingly, the Plaintiffs simply ignore the fact that they have not pointed to any form of a corrective disclosure for loss causation purposes, apart from December 18, 2003.  Yet Defendants' expert has concluded that the December 18th announcement by the Company cannot serve as a correction -- a conclusion that is unrebutted.  Plaintiffs are obligated to both plead and prove loss causation on behalf of the class.  While this Court has held (in deciding Defendants' Rule 12(b)(6) motion) that loss causation was pled for certain statements, the Plaintiffs have not even attempted to prove that there is any basis for establishing loss causation on behalf of the

---

[1] Defendants Wave Systems Corporation ("Wave"), Steven K. Sprague and Gerard T. Feeney (collectively, the "Defendants") respectfully submit this Sur-reply to Lead Plaintiffs' Reply Memorandum In Support of Class Certification ("Plaintiffs' Reply" or "Reply"), pursuant to this Court's Order permitting such sur-reply, dated March 1, 2006.

[2] See Brumbaugh v. Wave Sys. Corp., 416 F. Supp. 2d 239, 245, n.1 and 255, n.16 (D. Mass. 2006).

[3] In re Polymedica Corp. Sec. Litig., 432 F.3d 1, 5-6 (1st Cir. 2005).

class in a manner that will not result in countless mini-trials. In the face of Defendants' evidence that either disproves loss causation altogether, or, in the least, demonstrates that it is impossible to establish loss causation as a common issue among class members, the Plaintiffs' token class certification motion should be denied.

The Plaintiffs similarly attempt to sidestep the unrebutted fact that 60-80% of the putative class is comprised of short sellers and market makers. That unique circumstance means, per the affidavit of Dr. James, that the class is riddled with conflicts over which misstatements are misleading, and when (if ever) the allegedly misleading statements were corrected -- partially, completely or otherwise -- issues that bear directly on <u>liability</u>, resulting in the necessity for as many mini-trials as there are uniquely situated traders in Wave stock. The Plaintiffs simply dismiss the foregoing, arguing that courts reject "hypothetical conflicts" between retention and in-an-out class members as a basis for denying certification. The argument is a straw man, however, as here, the conflict is not hypothetical -- it is <u>established</u> by the Defendants, unrebutted, and goes directly to issues of liability, not damages alone.

Otherwise, the Plaintiffs present a series of unsupported conclusions concerning the purported adequacy of the Lead Plaintiffs to represent the Class. The Plaintiffs' rhetoric does not alleviate the fact that Lead Plaintiffs were recruited by counsel, failed to negotiate any fee agreement with counsel, and otherwise have vested unfettered control over this litigation in counsel's hands -- the very ill for which much of the PSLRA was enacted to correct. If Rule 23's adequacy and typicality requirements have any meaning at all, these Lead Plaintiffs may not represent the proposed Class.

LITDOCS/645680.2

**I.    THIS COURT'S DECISION ON DEFENDANTS' RULE 12(B)(6) MOTION, ADDRESSED TO THE ADEQUACY OF THE PLEADINGS, DID NOT LIFT THE PLAINTIFFS' BURDEN OF SHOWING HOW COMMON ISSUES WILL PREDOMINATE OVER INDIVIDUAL ISSUES.**

The Reply fails to demonstrate how the Plaintiffs will prove any common issues of loss causation.[4] Dr. James has presented an unrebutted expert opinion that "market participants were aware of the relevant information in this matter well before December 18, 2003,"[5] and, as the Court concluded, after August 14th conference call, "the market was aware that Wave's Intel agreement lacked a minimum licensing requirement, and its IBM deal was not fee producing."[6] One of the Lead Plaintiffs has even testified that the August 14th conference call was corrective.[7]

As Dr. James has also established (and the Plaintiffs have not addressed), "the change in Wave's stock price on August 15th was not statistically significant."[8]  Accordingly, investors alleging a cause of action based on Wave's statements on July 31, 2003 and August 4, 2003 cannot demonstrate "a disclosure or revelation of truth about a defendant's prior misstatement or

---

[4] Plaintiffs do not contest that if they have no common mechanism for proving that the alleged fraud caused their losses, then they cannot establish the requirements of Rule 23(b)(3).  See In re Initial Public Offering Sec. Litig., 227 F.R.D. 65, 112 (S.D.N.Y. 2004) ("Plaintiffs must provide a mechanism for proving that inflation dissipation occurred throughout the class period.").  Without a common methodology for proving loss causation, individual questions will derail this litigation -- each and every plaintiff will have to prove that he or she purchased Wave stock in reliance (i.e, individual reliance) on an alleged misrepresentation.  Bastian v. Petren Resources Corp., 892 F.2d 680, 684 (7th Cir.), cert. denied, 496 U.S. 906 (1990).  See also, McCabe v. Ernst & Young, LLP, 2006 U.S. Dist. LEXIS 524, *22 (D.N.J. Jan. 6, 2006) (describing how loss causation must be proven individually where plaintiffs cannot rely on the Dura standard of demonstrating that the market eventually became aware of the defendant's fraud and the plaintiffs' investment declined as a result).  This sort of individualized inquiry is not the province of a class action.

[5] Affidavit of Dr. Christopher James ("James Aff.") at ¶ 10.  Dr. James Affidavit was submitted in support of the Defendants' Opposition to Plaintiffs' Motion for Class Certification.

[6] Brumbaugh at 258.

[7] In his deposition, Mr. Harmon testified that Wave's disclosures during the August 14th conference call clarified the true facts concerning the nature of Wave's relationships with Intel and IBM.  Harmon Dep. at 129, 131-32.

[8] James Aff. at ¶ 15.

3

omission that is in some way connected with a stock price drop." <u>Teco Energy, Inc. Sec. Litig.</u>, 2006 WL 845161, *2 (M.D. Fla. Mar. 30 2006). Dr. James also opined that the December 18, 2003 disclosure was <u>not</u> a "corrective disclosure" in any sense. Accordingly, the Plaintiffs also cannot prove loss causation for statements made on or after August 14, 2003.

Plaintiffs attempt to sidestep their loss causation problem by arguing that this Court has "already decided" that, during the August 14, 2003 conference call, Mr. Sprague perpetrated a new fraud by predicting "that Wave's relationship with Intel would soon be a significant revenue source and indicat[ing] that Wave insiders were 'very comfortable' about Wave's capacity to continue operations until significant revenue arrived."[9] Plaintiffs accordingly pretend to dismiss Dr. James' expert opinions concerning loss causation as contrary to "this Court's finding" on the Motion to Dismiss. Reply at 4. However, as this Court expressly acknowledged in ruling on the Motion to Dismiss, it has made <u>no</u> such "findings" that would be determinative on class certification. Rather, this Court instructed that "Defendants may seek to rebut this presumption [of reliance] at the class certification stage where the dictates of <u>Polymedica</u> and <u>Xcelra.com</u> will control" <u>Brumbaugh</u> at 255, n.16.[10] The Defendants have rebutted the presumptions permitting

---

[9] Reply at 3 (quoting <u>Brumbaugh</u> at 257).

[10] On class certification, where the burden is shifted from the defendant to the plaintiffs and the court "rigorously" tests the <u>facts</u> underlying class certification issues, courts in this Circuit look to expert opinions to assess whether plaintiffs can meet their burden of demonstrating that common questions of fact predominate over individual questions. Moreover, a court will only disregard an expert opinion at this stage where it is "fundamentally flawed." <u>See</u>, <u>e.g.</u>, <u>Wholesale Price Litig.</u>, 230 F.R.D. at 87, 90 (denying, at the class certification stage, a motion to strike an expert declaration under <u>Daubert</u> because "'The question for the district court at the class certification stage is whether plaintiffs' expert evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class… The important question in a class certification context is whether after a sneak preview of the issues, the expert approach appears fundamentally flawed – an issue usually vetted more fully at a <u>Daubert</u> hearing based on a more detailed record.") (quoting <u>In re Visa Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 135 (2d Cir. 2001)) (emphasis added); <u>In re Carbon Black Antitrust Litig.</u>, 2005 WL 102966, *17 (D. Mass. Jan. 18, 2005) (same).

the Amended Complaint's survival of the 12(b)(6) motion, and the Plaintiffs have offered nothing in response.

In any event, even if, as the Plaintiffs seem to argue, a second class period could begin on August 14, 2003, Lead Plaintiffs cannot represent this class: (i) two of the Lead Plaintiffs lack standing to do so as a matter of law because they made no purchases following the statements[11]; and (ii) the third Lead Plaintiff sold all of his shares before these allegedly fraudulent statements were even allegedly revealed to the market and therefore suffered no loss resulting from the alleged misstatements.[12]  Moreover, as Dr. James demonstrated (and the Plaintiffs do not address), none of the allegedly misleading statements made on or after August 14, 2003 even caused Wave's stock price to be inflated.[13]

---

[11]  Recently, the Supreme Court reiterated its longstanding holding that investors do not have standing to assert "holder" claims under the federal securities laws.  See Merrill Lynch , Pierce, Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1510 (2006). In the federal securities class action context, this holding has come to mean that a class representative does not have standing to represent investors damaged by misleading statements that occurred after the class representatives' last purchase of stock.  See, e.g., Adair v. Sorenson, 134 F.R.D. 13, 16 (D. Mass. 1991) (holding that the lead plaintiff "lacks standing to assert a 10b-5 claim based on" the announcement that occurred after his last purchase, "and, therefore, cannot represent those class members who purchased after" his last purchase" because the lead plaintiff "cannot establish that he relied on events which occurred after he purchased his stock.  Any injuries sustained by [lead plaintiff] necessarily resulted from events occurring prior to his last purchase on July 14, 1988.").

[12] Mr. Harmon and Ms. Brumbaugh purchased the last of their Wave shares on August 6, 2003, and, therefore, as a matter of law, lack standing to pursue a claim for allegedly fraudulent statements made on or after August 14, 2003.  While Mr. Griffin might possibly have standing to assert a claim based on the August 14, 2003 conference call (he purchased shares on September 17, 2003, September 19, 2003 and October 15, 2003), he cannot pursue the interests of the class because he sold all of his shares before any alleged corrective disclosure.  See, e.g., In re Cornerstone Propane Partners Sec Litig., 2006 WL 1180267, *8 (N.D. Cal. May 3, 2006) (granting motion for class certification subject to amendment of the class definition to exclude anyone who sold their stock prior to the corrective disclosure and noting that "since corrective disclosure is alleged to have occurred only from July 2001 onwards, under Dura there can be no loss causation for plaintiffs who purchased and sold stock at the inflated share price prior to that disclosure, and thus these plaintiffs may not recover at all").  Even if he had held his shares that he purchased after the conference call, Mr. Griffin testified that he was not damaged by the first purchase of Wave stock that he made after the conference call on September 17, 2003.  Griffin Dep. at 70.

[13] James Aff. at 15-16.  See In re Credit Suisse First Boston Corp. Analyst Reports Sec. Litig., 2005 WL 852455, *9 (D. Mass. Mar. 31, 2005) (dismissing securities fraud complaint and finding that "apart from loss causation specifically, the allegations of the consolidated amended complaint do not sufficiently allege facts to support an inference that misleading rating had any effect on the price of Agilent stock.  In other words, the

Finally, even if Lead Plaintiffs had standing to represent a class of investors who purchased Wave following the August 14, 2003 conference call, such a class could not be certified because Plaintiffs have not shown how Wave's stock price <u>declined</u> due to <u>any</u> corrective disclosure -- "partially corrective," "leaking" or otherwise.  Plaintiffs have simply pointed to December 18, 2003, but, as Dr. James concluded, "the decline in Wave's stock price following the December 18, 2003 disclosure is consistent with market reactions to the announcement of SEC investigations, and cannot be claimed by Plaintiffs to be caused by a corrective disclosure."[14]  Again, Plaintiffs have no response.

## II.    THE CLASS CONFLICTS ARE REAL -- NOT THEORETICAL -- RENDERING CERTIFICATION INAPPROPRIATE.

Much of the Plaintiffs' Reply is spent trying to distinguish the Defendants' partial reliance on <u>In re Seagate Tech. II Sec. Litig.</u>, 843 F. Supp. 1341 (N.D. Cal. 1994) -- a case where the district court initially refused to certify a class because of the potential for divisive conflicts among class members.  Plaintiffs' efforts miss the mark, however, because unlike the cases cited in the Plaintiffs' Reply where courts refused to deny certification on the basis <u>theoretical</u> conflicts going to damages issues, the intra-class conflicts in this case are severe, proven, and implicate both <u>liability</u> and damages.  In other words, the record demonstrates an actual and substantial <u>Seagate II</u> conflict, rendering the Plaintiffs' case law discussion superfluous, and precluding class certification.[15]

---

plaintiffs have not only failed to allege loss causation, they have failed to allege inflation causation.") (emphasis added).

[14] James Aff. at ¶ 17.

[15] In the cases cited in Plaintiffs' Reply, the court expressly noted that the conflict was either theoretical and unproven or insubstantial.  <u>Blackie v. Barrack</u>, 524 F.2d 891, 909 (9th Cir. 1975) ("the conflict, if any, is

As established by Dr. James, <u>at least 60-80%</u> of the proposed class is comprised of short sellers and market makers, "in-and-out" traders who cannot prove liability or damages in the manner alleged in the Amended Complaint. Each of these putative class members will have conflicting incentives regarding: (i) which statements are even misleading; (ii) which statements are corrective; and (iii) which statements caused price dissipation (and by how much). This hodge-podge of interests will result in countless mini-trials, each plaintiff pursuing different and conflicting agendas.

In addition, Defendants have revealed that there is a real in-and-out versus retention conflict among the Lead Plaintiffs themselves. Ms. Brumbaugh, a retention plaintiff, testified that none of the allegedly misleading information was revealed to her (<u>i.e.</u> corrected) until the end of the class period. In contrast, Mr. Griffin, an in-and-out plaintiff who retained no shares at the end of the class period, testified that <u>none</u> of his Wave losses were caused by a drop in Wave's stock price following the December 18th announcement -- <u>i.e.</u>, the same announcement that Ms. Brumbaugh must argue was a corrective disclosure.[16] Likewise, the "equity" conflict is real here because one of the three Lead Plaintiffs (Mr. Harmon) still holds all of his Wave shares

---

peripheral"); <u>In re Cornerstone Propane Partners Sec Litig.</u>, 2006 WL 1180267, *7 (N.D. Cal. May 3, 2006) ("this court declines to rule in contravention to established precedent and deny certification on the basis of a <u>claimed</u> conflict between In/Out and Retention Plaintiffs.") (emphasis added); <u>In re Schering-Plough Corp. Sec. Litig.</u>, 2003 U.S. Dist. LEXIS 26297, *22 (D.N.J. Oct. 9, 2003) (addressing only the "equity" conflict, and even then refusing to deny certification on the basis of the conflict because it was only a "potential" conflict); <u>In re Daimler Chrysler AG Sec. Litig.</u>, 216 F.R.D. 291, 297-98 (D. Del. 2003) ("the Court is not persuaded that internal conflicts exist which would preclude the Court from certifying the proposed class"); <u>In re Sys. Software Assoc. Sec Litig.</u>, 2000 U.S. Dist. LEXIS 18285, *9 (N.D. Ill. Dec. 6, 2000) ("a conflict of interest between early and late purchasers is theoretically possible"); <u>In re Oxford Health Plans, Inc. Sec. Litig.</u>, 191 F.R.D. 369, 377 (S.D.N.Y. 2000) ("Defendants claim the existence of two potential conflicts"); <u>Piccard v. Perrigo Co.</u>, 1996 WL 739170, *6 (W.D. Mich. Sept. 27, 1996) ("at this stage in the proceedings, the potential for intraclass conflict remains purely theoretical"); <u>In re AST Research Sec. Litig.</u>, 1994 WL 722888 (C.D. Cal. Nov. 8, 1994) (the "potential conflict"); <u>Yamner v. Boich</u>, 1994 WL 514035, *7 (N.D. Cal. Sept. 15, 1994) ("Defendants argue that because different members of the proposed class may have opposing interests, no one individual can adequately represent the class.") (emphasis added); <u>In re Proxima Corp. Sec. Litig.</u>, 1994 WL 374306, *19 (S.D. Cal. May 3, 1994) ("the theoretical conflicts posed by defendants").

[16] Brumbaugh Dep. at 89-90, 97-98; Griffin Dep. at 66, 80.

today and testified that he hopes that Wave's stock will increase in value.[17]  In contrast, Mr. Griffin testified that he does not care if the value of Wave's stock declines as a result of the lawsuit.[18]

These actual conflicts preclude certification of the proposed class.   Indeed, as the Plaintiffs point out, in <u>Seagate II</u> the court eventually certified a class after refusing to do so pending an evidentiary hearing.   However, when the court finally did certify a class, it was notably narrower, free from the conflicts that continue to be present here – the court certified a class "only on behalf of retention traders" who purchased their shares prior to the first alleged corrective disclosure.[19]  Thus, the certification in <u>Seagate II</u> addressed the very problem that Plaintiffs have failed to overcome here.

Plaintiffs also argue that, if the conflicts between in-and-out versus retention plaintiffs prevents class certification, then no securities class action could ever be certified "because of the possibility that proof of damages could vary among individual class members."   Reply at 10. While it is undoubtedly true that a variation in damages calculations will not prevent class certification, the facts presented by Defendants do not merely involve damages, and Defendants have not in any sense argued that damages variations have anything to do with class certification. What Defendants have demonstrated, and the Plaintiffs have not addressed, is that the severe intra-class conflicts in this case will predominate on findings of <u>liability</u>.   As Dr. James concluded, at least 60-80% of the class cannot possibly prove liability on the basis of the allegations in the Amended Complaint because they will not be able to show that they purchased

---

[17] Harmon Dep. at 101-03.

[18] Griffin Dep. at 80.

[19] In re <u>Seagate Tech. II Sec. Litig.</u>, 156 F.R.D. 229, 231 (N.D. Cal. 1994).

their shares after an allegedly misleading statement and sold their shares after the alleged "truth" concerning that statement was revealed to the market.[20]

## III.    LEAD PLAINTIFFS ARE INADEQUATE CLASS REPRESENTATIVES

Defendants have pointed out that the Lead Plaintiffs are inadequate as they have taken no step whatsoever to protect the interests of the class vis-à-vis their own counsel by negotiating a fee agreement, the most basic litmus test for adequacy.[21]  On Reply, Plaintiffs pretend that the Defendants have incorrectly argued something else -- that "Lead Plaintiffs are obligated to engage in a bidding process in order to adequately retain lead counsel."[22]  The Defendants have not so argued.   The correct standard, and the standard articulated clearly in Defendants' Opposition brief, was articulated in In re Cendant Corp. Litig., 264 F.3d 201 (3d Cir. 2001), a post-PSLRA case also cited in Plaintiffs' Reply:

> [O]ne of the best ways for a court to ensure that [a class representative] will fairly and adequately represent the interest of the class is to inquire whether the [lead plaintiff] has . . . negotiate[d] a reasonable retainer agreement with that counsel."[23]

The Plaintiffs' arguments concerning an imagined obligation to conduct a bidding process are little more than a transparent distraction from the fact that, in this case, the lawyers selected the Plaintiffs (not the other way around) and the Lead Plaintiffs then failed to negotiate **any** fee agreement whatsoever with class counsel.  As numerous courts have held, class certification may

---

[20] Market makers and short sellers "will either not be able to claim damages or will be required to prove damages in a different and potentially conflicting way to other class members."  James Aff. at ¶ 30.

[21] Defendants' Opposition to Plaintiffs' Motion For Class Certification at 27-28.

[22] Plaintiffs' Reply at 14.

[23] Id. at 265-66 (citation omitted).

9

be denied in such circumstances, and the Plaintiffs have failed to even address those decisions here.[24]

Defendants also revealed through deposition transcripts that the Lead Plaintiffs have played little to no role in this litigation.[25]  In response, the Plaintiffs posit that Lead Plaintiffs are adequate, simply because they have produced documents and appeared for depositions.  Reply at 13.  Numerous courts have held that a class representative must do more than simply show up for a deposition, and class representatives have been found inadequate where, as here, they demonstrate a glaring lack of familiarity with the case and have made little or no effort to prosecute the case on behalf of the class.[26]

Plaintiffs also appear to argue that this is not "lawyer driven litigation" by quoting Ms. Brumbaugh's deposition, where she testified that her initial contact with counsel occurred when

---

[24] See, e.g., In re Lucent Tech., Inc. Sec. Litig., 194 F.R.D. 137, 155 (D.N.J. 2000) ("The selection of counsel by lead plaintiff must be the product of deliberate and in depth evaluation, as well as of independent arm's length negotiations… While proposed Lead Plaintiffs have provided the court with data attesting to the skill and experience of Proposed Lead Counsel, the skill and experience of counsel are only part of the equation which must be considered when granting a motion for lead counsel.  As discussed, there must also be independent, arm's-length negotiating between a lead plaintiff and the chosen lead counsel.  Subsumed within this requirement is the need for independent decision-making on the apart of a lead plaintiff in choosing lead counsel.") (emphasis added); In re Milestone Scientific Sec. Litig., 187 F.R.D. 165, 178 (D.N.J. 1999) ("The selection of counsel by a lead plaintiff also must be the product of independent, arms length negotiations… Not only should the proposed counsel fees be the result of hard-bargaining, but the initial selection of counsel should also be the result of independent decision-making by the lead plaintiff.") (emphasis added).

[25] Defendants' Opposition to Plaintiffs' Motion For Class Certification at 26-32.

[26] See, e.g., Rolex Employees Ret. Trust v. Mentor Graphics Corp. 136 F.R.D. 658, 666 (D. Or. 1991) (denying a motion for class certification after finding that, based on deposition testimony, the class representative was "unfamiliar with basic elements of the case, including what the allegations of the complaint are and which allegations of the complaint pertain to which defendants."); Kase v. Salomon Smith Barney, Inc., 218 F.R.D. 149, 159 (S.D. Tex. 2003) (denying a motion by investors to certify a class because, among other reasons, the investors had failed to demonstrate that they would actively monitor the decision of class counsel); Smyth v. Carter, 168 F.R.D. 28, 33 (W.D. Va. 1996) (denying motion for class certification where there was "some evidence of a lack of understanding of this case on the part of plaintiffs that cannot be compensated by the enthusiasm of their lawyers."); Lubin v. Sybedon Corp. 688 F. Supp. 1425, 1462 (S.D. Cal. 1988) ("Lubin's unfamiliarity with the outlines of his suit is somewhat "alarming," so that the court cannot certify the proposed class in his name.  Lubin's deposition disclosed an inadequate knowledge of the circumstances underlying this suit, and it would be improper for the court to entrust Lubin with the burden of representing his fellow limited partners.").

she sent in a notice to counsel and was then contacted by email. Reply at 13. The "notice" she sent in, however, was a notice she <u>received</u> from counsel in the first place -- <u>i.e.</u> she was recruited.[27]  Indeed, Ms. Brumbaugh never considered suing Wave until after her attorneys contacted her.[28]

Plaintiffs also attempt to rehabilitate Mr. Griffin from the testimony showing that he has no clue about the nature of the Defendants' alleged wrongdoing. Reply at 13-14. The quoted transcript excerpts in the Reply are unpersuasive. Mr. Griffin, when asked why Wave's stock rose following July 31st, claimed it was due to Mr. Sprague's "positive outlook" for the company based on a relationship with Intel or IBM. Reply at 14. When asked why he was damaged, Mr. Griffin responded "misleading information" because "there was no contract or consortium with Intel or any other software company." <u>Id.</u>  It is perplexing why the Plaintiffs would point to this statement further demonstrating Mr. Griffin's lack of understanding. The epicenter of the Plaintiffs' case concerning the Intel announcement hinges almost entirely on the premise that Wave failed to disclose whether its deal with Intel was "exclusive" and involved minimum purchase requirements. See Amended Complaint at ¶41. Yet Mr. Griffin, pursuing claims of fraud on behalf of the class, appears to think that there were in fact no contract whatsoever with Intel -- a theory not asserted in the Amended Complaint.[29]

---

[27] Brumbaugh Dep. at 105.

[28] <u>Id.</u> at 120.

[29] Plaintiffs' Reply at 14. An uninformed class representative cannot be an adequate class representative. <u>See, e.g.</u>, <u>People United For Children, Inc. v. The City of New York</u>, 214 F.R.D. 252, 264 (S.D.N.Y. 2003) ("In examining whether a named plaintiff is suitable to fulfill the fiduciary obligations of a class representative, <u>a court must decide whether the party has adequate knowledge of the case or 'whether the party is simply lending his name to a suit controlled entirely by the class attorney.'</u>") (emphasis added); <u>Smyth v. Carter</u>, 168 F.R.D. 28, 33 (W.D. Va. 1996) (denying motion for class certification where there was "some evidence of a lack of understanding of this case on the part of plaintiffs that cannot be compensated by the enthusiasm of their lawyers.").

In short, the Plaintiffs have offered nothing to detract from the obvious conclusion that, in this case, the "tail is wagging the dog," the very circumstance which the PSLRA is designed to prevent.

## CONCLUSION

For these reasons, Defendants Wave, Steven K. Sprague and Gerard T. Feeney respectfully request that the Court deny Plaintiffs' Certification Motion.

**WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,**

By their attorneys,

/s/ Michael D. Blanchard
Robert A. Buhlman, BBO #554393
Michael D. Blanchard, BBO #636860
Robert B. Baker, BBO #654023
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA  02110-1726
Dated: July 5, 2006        (617) 951-8000

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was electronically served upon the attorney of record for each party on July 5, 2006.

/s/ Michael D. Blanchard
Michael D. Blanchard

12