# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN,** **Plaintiffs,** **v.** **WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,** **Defendants.** | **CIVIL ACTION NO. 04-30022-MAP** |

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Gregory M. Castaldo
Karen E. Reilly
Kay E. Sickles
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Lead Counsel for Lead Plaintiffs**

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone: (617) 742-9700
Facsimile: (617) 742-9701

**Liaison Counsel for Lead Plaintiffs**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

I.    HISTORY AND BACKGROUND OF THE ACTION ................................................. 2

    A.    Wave's Financial Circumstances And The Availability Of
        Limited Insurance Proceeds .................................................................... 2

    B.    Settlement Negotiations ............................................................................ 4

    C.    Notice Sent To Class Members ............................................................. 5

II.   THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION
    SETTLEMENTS UNDER RULE 23 FAVOR THIS SETTLEMENT ........................ 6

    A.    The Law Favors And Encourages Class Action Settlements ................ 6

    B.    The Fairness Factors In Favor Of Approval .......................................... 7

        1.    Defendants' Inability To Withstand A Greater Judgment
            Overwhelmingly Supports The Settlement ................................. 7

        2.    The Range Of Reasonableness Of The Settlement Fund In Light
            Of The Best Possible Recovery And The Attendant Risks In
            Litigation Supports Court Approval Of The Settlement ............. 9

        3.    The Complexity, Expense, And Likely Duration Of The
            Litigation Favors Settlement ....................................................... 10

        4.    The Risks Of Proving Liability And Damages Also Support
            Approval Of The Settlement ....................................................... 11

        5.    The Class' Reaction Supports The Settlement ........................... 13

        6.    The Stage Of The Proceedings And Discovery Completed
            Also Point In Favor Of The Settlement ...................................... 13

        7.    The Risks Of Maintaining A Class Though Trial Supports
            Settlement .................................................................................... 14

III.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ............................. 15

    A.    The Plan Of Allocation Is Reasonable And Should Be Approved .................... 15

    B.    The Court Should Overrule The Objection To The Plan Of Allocation ............. 16

IV.   FINAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE ........ 17

    A.    Numerosity, Commonality, And Typicality ....................................... 18

    B.    Adequacy Of Representation ............................................................. 18

    C.    Predominance Of Common Issues And Superiority........................... 18

V.    CONCLUSION .......................................................................................... 20

## TABLE OF AUTHORITIEIS

*In re AOL Time Warner, Inc. Securities and 'ERISA' Litigation*,
  No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 78101
  (S.D.N.Y. Sept. 28, 2006) ...................................................................................... 7, 8

*Amchem Prods. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ............................. 17, 18, 19

*Bussie v. Allmerica Fin. Corp*,
  50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................... 6, 12, 13

*City P'shp Co. v. Atlantic Acquisition Ltd. P'shp.*,
  100 F.3d 1041 (1st Cir. 1996) ............................................................................. 6, 7

*In re Compact Disc Min. Advertised Price Litig.*,
  216 F.R.D. 197 (D. Me. 2003) ................................................................................. 6

*In re Cornerstone Propane Ptnrs. L.P. Sec. Litig.*,
  No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006).......... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997) .......................................................................... 6, 13

*Dura Pharma., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) .................................... 9, 12

*Durrett v. Housing Auth. of Providence*,
  896 F.2d 600 (1st Cir. 1990) ................................................................................... 6

*In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................... 14, 15

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ................................................................................. 12

*Hawkins v. Comm'r of the N.H. HHS*,
  No. 02-cv-3150, 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004) ....................... 6

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000) .............................................................................. 15

*In re Lupron Marketing & Sales Practices Litig.*,
  228 F.R.D. 75 (D. Mass. 2005) ............................................................... 7, 11, 14, 17

*Maley v. Del Global Techs. Corp.*,
    186 F.Supp. 2d 358 (S.D.N.Y. 2002)................................................................ 11, 15

*In re Microstrategy, Inc. Sec. Litig.*,
    148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................ 17

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)........................................................................ 10

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    176 F.R.D. 158 (E.D. Pa. 1997)................................................................ 7

*In re PaineWebber Limited Partnerships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................. 15

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985)......................... 19

*Priest v. Zayre*,
    118 F.R.D. 552 (D. Mass. 1988)................................................................ 17

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005).............................................................. 7, 10

*Rolan v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000) ................................................................ 11

*Schwartz v. TXU Corp.*,
    No. 3:02-CV-2243-K, 2005 U.S. Dist.
    LEXIS 27077 (N.D. Tex. Nov. 8, 2005).................................................... 13

*In re Veritas Software Corp. Sec. Litig.*,
    Master File No. C-03-0283 MMC, 2005 U.S. Dist.
    LEXIS 30880 (N.D. Cal. Nov. 15, 2005) ................................................ 16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)........................................................................ 10

*Weiss v. A.H. Robins*,
    700 F. Supp. 682 (S.D.N.Y. 1988)............................................................ 13

**FEDERAL STATUTES**

15 USCS § 78u-4(b)(4)................................................................................ 12

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs, Anne Braumbaugh, Gary L. Harmon and Randy K. Griffin (collectively "Lead Plaintiffs") respectfully move this Court for an order approving the proposed settlement of the above-captioned action (the "Action") and approving the proposed plan of allocation (the "Plan"), both of which the Court preliminary approved by Order dated October 24, 2006 (the "Preliminary Approval Order").[1]

## PRELIMINARY STATEMENT

The present settlement of $1,750,000 (the "Settlement"), as set forth in the Stipulation and Agreement of Settlement dated October 3, 2006 (the "Stipulation"),[2] and as procured by Lead Counsel, Schiffrin Barroway Topaz & Kessler, LLP ("Lead Counsel"), represents an excellent recovery for the Class where, as here: (i) Defendant Wave Systems Corporation ("Wave" or the "Company"), was in dire financial straits; (ii) a limited directors' and officers' liability insurance policy of only $5 million had already been depleted by $1 million in defense costs; and (iii) the Settlement represents a substantial percentage of the likely recovery at trial.

As more fully discussed below, and in the Sickles Declaration submitted herewith, the significant risks involved in taking this Action further into litigation and possibly onto trial, when measured against the immediate benefit of the Settlement Fund, justify the Court's approval of the Settlement. Further, the overwhelmingly positive reaction of the Class to the

---

[1] Lead Plaintiffs are also submitting a separate Memorandum of Law in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses and Reimbursement Award to Lead Plaintiffs.

[2] The Stipulation is attached as Exhibit 1 to the Declaration of Kay Sickles in Support of Class Action Settlement, Plan of Allocation, and the Application for an Award of Attorneys' Fees and Reimbursement of Expenses and Reimbursement Award for Lead Plaintiffs (the "Sickles Declaration" or "Sickles Decl.") submitted herewith. Unless otherwise noted, capitalized terms shall have those meanings contained in the Stipulation.

Settlement is also compelling support for the Settlement.  When given the opportunity to object or request exclusion, not a single Class Member has objected to the Settlement or the request for attorney's fees.  Only two Class Members have requested to be excluded from the Class, and only one objection to the Plan of Allocation has been received, demonstrating that the Settlement is fair, reasonable and adequate.[3]

Prior to recommending the Settlement to Lead Plaintiffs, Lead Counsel has had ample time to assess the strengths and weakness of Lead Plaintiffs' case through filing of a detailed amended complaint (the "Complaint"), conducting a thorough investigation into and researching Lead Plaintiffs' claims and Defendants' defenses, consultations with a damage expert, fully briefing both Defendants' motion to dismiss and Lead Plaintiffs' motion for class certification, reviewing documents produced by third-parties, as well as assessing Defendants' financial ability to fund a settlement or satisfy a judgment.  After analyzing all of the information at its disposal, Lead Counsel believes the Settlement is in the best interests of all Class Members and recommends that the Court approve it.

## I.    HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to paragraphs 9-25 of the accompanying Sickles Declaration for a full discussion of the factual background and procedural history of the Action.

### A.    Wave's Financial Circumstances and the Availability of Limited Insurance Proceeds

When the Parties entered into serious settlement negotiations, Lead Counsel undertook an in-depth analysis of Wave's financial circumstances.  At that time, not only was Wave's financial situation negative, but it was continuing to decline.  In its quarterly financial statement filed with the SEC on Form 10-Q for the quarter ended March 31, 2006, Wave reported a

---

[3]  Two Class Members have requested exclusion from the Class.  *See* §II(B)(5), below.

decrease in cash and cash equivalents – reporting $1.6 million (down from $2 million for the fiscal year end 2005, and $5.8 million for the fiscal year end 2004), an increase in accumulated deficit to approximately $290 million (up from $285 million for fiscal year end 2005), and an increase in negative working capital to $1.4 million (up from $1.1 million for fiscal year end 2005).  Sickles Decl. ¶ 22.

The Company's performance in the marketplace did not appear to be building a foundation that would turnaround the Company's prospects in the short-term.  As stated in the Company's Form 10-Q for the quarter ended March 31, 2006:

> Wave has begun market introduction of its security and broadband media distributions software products and has signed initial distribution contracts for these applications.  However, due to the early stage nature of this market, it is unlikely that Wave will generate sufficient revenue to cover all of its cash flow needs to fund its operating requirements for the twelve months ending March 31, 2007. . . Because Wave does not have sufficient cash to fund operations for the twelve months ending March 31, 2007; and given the uncertainties described above with respect to Wave's revenue outlook for 2006, Wave has been and will continue to be actively engaged in financing activities in order to generate additional funding to cover its operating costs for the twelve months ending March 31, 2007.
>
> ***
>
> If we do not succeed in these objectives, we will not generate revenues; hence, our business will not be sustainable. . . .We may not be able to fund our operations and continue as a going concern . . .Wave is uncertain as to the availability of financing from other sources to fund any cash deficiencies.  Even if we are successful in achieving our objectives, a positive cash flow from operations may not ultimately be realized unless we are able to sell our products and services at a profit.  Given the early stage nature of the markets for our products and services, considerable uncertainty exists as to whether or not Wave's business model is viable. . . We may be unable to raise the $12 million of additional cash flow, which is necessary to continue as a going concern for the next twelve months.

Therefore, Lead Counsel concluded that the Company was not in a financial circumstance to

satisfy any potential judgment against it.[4]  Sickles Decl. ¶ 23.

Lead Counsel also investigated the amount of available insurance proceeds to either fund a settlement or satisfy a future judgment in this Action.  Wave had a $5 million dollar wasting directors' and officers' insurance policy which was being used to fund defense costs in this Action, and had also been used to fund defense costs in a derivative action, which was dismissed shortly before the Parties negotiated the Settlement.  As of the time of the mediation, $1 million dollars of the policy had already been spent for defense costs.  Continuing litigation, through document discovery, depositions, and expert discovery, would have surely depleted the policy further by at least another $1 million dollars or more.  Furthermore, as the SEC investigation continues, it is likely that Wave will continue to incur large legal fees associated with that investigation as well.  Thus, it is unlikely that enough of the policy would have remained by the time of a trial in this Action to fund a judgment for an amount greater than this Settlement, if even the amount of this Settlement.  Sickles Decl. ¶ 24.

B.    Settlement Negotiations

Lead Plaintiffs, through Lead Counsel, and Defendants (the "Parties") began discussing a possible resolution of the Action in late February 2006.  These settlement discussions continued through numerous telephonic negotiations over the course of the next few months, while the Parties briefed class certification and undertook class discovery.  Ultimately, these negotiations lead to a decision to participate in formal mediation.  On July 7, 2006, the Parties participated in a full-day mediation session with the assistance of the Honorable Nicholas H. Politan (Ret.), United States District Judge for the District of New Jersey.  In advance of this formal mediation

---

[4]  In addition, although Wave's most recent financial statement, the  Company's 10-Q for the quarter ended September 30, 2006, indicates that Wave received financing to continue operating to June 2007 instead of March 2007, Lead Counsel does not believe that the Company's overall outlook has changed.

session, the Parties prepared detailed mediation statements for Judge Politan's review.  During the mediation, the Parties presented their respective views regarding the merits of the Action as well as their views concerning available defenses, the evidence and damages analyses.  The Parties reached a tentative resolution of the Action at the mediation, and soon thereafter notified the Court that they had reached a settlement.  Sickles Decl. ¶ 15.

Once the tentative resolution of the Action was reached, Lead Plaintiffs and Defendants negotiated the details of the Settlement and drafted the relevant settlement papers.  Based upon Lead Plaintiffs' and Lead Counsel's belief that the terms of the Settlement were fair, reasonable and adequate, Lead Plaintiffs and Defendants finalized the papers supporting the Settlement, executed the Stipulation and filed these documents with the Court on October 4, 2006.  On October 24, 2006, this Court signed the Preliminary Approval Order, preliminarily approving the Settlement as set forth in the Stipulation.

C.    **Notice Sent to Class Members**

In accordance with the Preliminary Approval Order, the Claims Administrator, The Garden City Group, Inc. ("GCG"), mailed copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") to 20,684 potential Class Members beginning on November 8, 2006.  The Notice informed potential Class Members, among other things, of the opportunity to object to any aspect of the Settlement, including the Settlement itself, the Plan, and the request for attorneys' fees, as well as the opportunity to request exclusion, and how to submit a Claim Form.  GCG also published a summary notice in the *Investor's Business Daily* on November 15, 2006.  *See* Affidavit of Jose C. Fraga of GCG, the Claims Administrator in this Action (the "GCG Affidavit" or "GCG Aff."), attached to the Sickles Declaration as Exh. 1, at ¶¶ 3, 6, 9.

The deadline for objections or requests for exclusion expired on December 28, 2006. Not a single Class Member has filed an objection to the Settlement or the fee request. Only one Class Member has filed an objection to the Plan, and two Class Members have requested to be excluded from the Class. Sickles Decl. ¶ 5.

## II.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS UNDER RULE 23 FAVOR THIS SETTLEMENT

### A.     The Law Favors and Encourages Class Action Settlements

The settlements of complex class actions are undoubtedly favored in the First Circuit. *Durrett v. Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990); *Hawkins v. Comm'r of the N.H. HHS*, No. 02-cv-3150, 2004 U.S. Dist. LEXIS 807, at *15 (D.N.H. Jan. 23, 2004); Rule 16.4(a) Local Rules D. Mass. ("The judicial officer shall encourage the resolution of disputes by settlement").[5]

In deciding whether or not to approve a class action settlement, a court should refrain from ruling on the merits of the dispute. *Bussie v. Allmerica Fin. Corp*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999); *see also In re Compact Disc Min. Advertised Price Litig*., 216 F.R.D. 197, 211 (D. Me. 2003). A court also should refrain from looking towards the highest amount that could be awarded to Lead Plaintiffs. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997). Instead, a court should attach a presumption in favor of settlement if "sufficient discovery was provided and the parties have bargained at arms-length." *City P'shp Co. v. Atlantic Acquisition Ltd. P'shp*., 100 F.3d 1041, 1043 (1st Cir. 1996).

Here, the Court should presume that the Settlement is fair and adequate as Lead Plaintiffs and their counsel obtained sufficient information regarding the merits of the claims, as well as

---

[5]   The decision to grant or deny approval of a settlement lies within the broad discretion of the trial court and should be exercised in light of the general policies favoring settlements. *See Durrett*, 896 F.2d at 604.

their ability to obtain a greater recovery, and reached the present Settlement through arms'-length negotiations.

**B.      The Fairness Factors Counsel in Favor of Approval**

The First Circuit employs a fair, reasonable and adequate standard for reviewing the proposed settlement of a class action.  *City P'shp. Co.*, 100 F.3d at 1043.  Although the First Circuit has not identified a particular set of factors to consider when deciding whether to approve a proposed class action settlement, district courts in this jurisdiction have recently applied the following criteria:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005) (internal citations omitted); *In re Lupron Marketing & Sales Practices Litig.*, 228 F.R.D. 75, 94 (D. Mass. 2005)

The application of the above factors overwhelmingly demonstrates that the Settlement is fair, reasonable and adequate.  Indeed, there is serious doubt that a more favorable result could be obtained if this Action were litigated further, and therefore, the Settlement warrants approval.

**1.      Defendants' Inability to Withstand a Greater Judgment Overwhelmingly Supports the Settlement**

Defendants are incapable of withstanding a greater judgment.  This inquiry is a "defendant oriented consideration."  *Relafen*, 231 F.R.D. at 58; *see In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 186 (E.D. Pa. 1997) (considering company's asset base and insurance coverage in assessing ability to withstand greater judgment); *In re AOL Time Warner,*

*Inc. Securities and 'ERISA' Litigation*, No. 02 Civ. 5575 (SWK), 2006 U.S. Dist. LEXIS 78101, at *46-47 (S.D.N.Y. Sept. 28, 2006) ("attorneys often face the risk of nonpayment, especially in large class actions that could drive Defendants into bankruptcy or otherwise make a judgment uncollectible").

Since its founding more than 16 years ago, Wave has failed to generate any meaningful revenue from the sales of its products or services and has incurred and operated at substantial losses. Wave's financial statements demonstrate a bleak financial picture. As set forth above and in the Sickles Declaration at ¶¶ 21-24, no reasonable assessment could or can be made that the Company will experience a financial turnaround in the short-term and all of the information at Lead Counsel's disposal fully supports Lead Counsel's conclusion that Defendants could not withstand a greater judgment.

Furthermore, limited insurance proceeds were available to either fund a settlement or satisfy a future judgment in this Action. At the time the Parties reached the Settlement, $1 million dollars of Wave's $5 million dollar wasting directors' and officers' insurance policy had already been spent for defense costs, which would continue to mount at an increasing rate as the Parties proceeded into full merits discovery, including expert discovery, and eventually trial. Lead Counsel therefore concluded that continuing to litigate would not enhance the opportunity to recover a substantial sum for Lead Plaintiffs and the Class, and would in fact only place at risk the ability to recover from the insurance proceeds. Sickles Decl. ¶ 29.

Finally, while the Individual Defendant's personal assets could have been sought to satisfy a judgment, in entering into the Settlement, Lead Counsel and Lead Plaintiffs weighed this prospect against: (i) the likelihood that the Individual Defendants would personally be found liable; (ii) the ease with which the material assets belonging to them could be readily attached;

(iii) the experience of Lead Counsel that especially in circumstances such as this, where the corporate defendant is in dire financial straits, individual defendants do not contribute to class-wide settlements out of their own pockets until, if ever, trial and its attendant costs and risks are upon them; and (iv) the experience of Lead Counsel that it is not possible to fund a settlement with insurance proceeds and then continue to prosecute individual defendants if the insurer wants a global release for all individuals and entities covered under the policy at issue.  Lead Counsel reached the conclusion that it would not be beneficial to the Class to forego the Settlement in order to continue to prosecute the Individual Defendants in the hopes of obtaining a greater recovery from their personal assets.  Sickles Decl. ¶ 25.

> **2. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and the Attendant Risks in Litigation Supports Court Approval of the Settlement**

The range of reasonableness of the Settlement Fund in light of the best possible recovery and the attendant risks in litigation both support approval of the Settlement.  The Settlement Fund represents a significant recovery for the Class both in absolute terms and when viewed in light of the risks of litigation.  The greatest possible recovery for the Class falls in the range of $7 to $23 million.  A significant proportion of the $23 million damage estimate, possibly $16 million, may be attributable to losses suffered by in and out purchasers, *i.e.* purchasers who sold their shares of Wave common stock before the disclosure at the end of the Class Period.  Under prevailing Supreme Court law, Defendants would present defenses to loss causation for these purchasers.  *See Dura Pharma., Inc. v. Broudo*, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).  *See, e.g., In re Cornerstone Propane Ptnrs. L.P. Sec. Litig.*, No. C 03-2522 MHP, 2006 U.S. Dist. LEXIS 25819, at *30-31 (N.D. Cal. May 3, 2006) (excluding "in-and-out" purchasers from certified class).  Viewing any possible recovery in the context of the risk that Defendants

could prevail in this defense, this Settlement may be viewed as a recovery of 25% of estimated damages of $7 million.  Sickles Decl. ¶ 30.

An analysis of this factor presents even greater support for approval of the Settlement when the Settlement is viewed in light of the risks created by Wave's financial circumstances and the availability of only limited insurance proceeds, as well as the other risks of litigation, detailed below in §II(B)(4).  By settling at this point, Lead Plaintiffs have maximized the recovery for the Class, while minimizing costs and the risks.  Considering the time value of money, the certainty of many additional years of litigation and inevitable appeals in the absence of the Settlement, the risk of no recovery if the Company runs out of money or declares bankruptcy, and the limited insurance proceeds available to fund a settlement, this Settlement is well within the range of reasonableness against which settlements are measured.  Sickles Decl. ¶ 31.  As this Court recently stated, "a fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist."  *Relafen*, 231 F.R.D. at 64 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("In any case there is a range of reasonableness with respect to a settlement.")).  An analysis of this factor firmly supports approval of the Settlement.

### 3.    The Complexity, Expense, and Likely Duration of the Litigation Favors Settlement

This factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 546 (3d Cir. 2004) (internal quotations omitted).  Lead Plaintiffs' claims involve numerous complex legal, financial and factual issues that would have required Lead Plaintiffs to conduct voluminous paper discovery, take numerous depositions and engage in extensive expert discovery.  At the time this Settlement was reached, the Parties were about to begin merits discovery, which would have been very expensive and

time consuming and would have undoubtedly added considerable expense and duration to the Action. Of course, expert discovery, summary judgment, and preparation for trial, let alone a trial itself, would also incur tremendous additional expenses and require many hours of the Court's time and resources. "When comparing the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future . . . there are clearly strong arguments for approving settlement." *Rolan v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000) (internal citations omitted). In addition, if Lead Plaintiffs had proceeded with the Action, significant additional expenses would also have been borne by Defendants, and taken a toll on an already financially troubled corporate defendant, as well as further depleting a limited insurance policy, thus, increasing the possibility that Lead Plaintiffs may have been precluded from obtaining any relief at all. Sickles Decl. ¶ 32.

Therefore, the Court should conclude that an analysis of this factor supports approval of the Settlement.

### 4.     The Risks of Proving Liability and Damages Also Support Approval of the Settlement

While Lead Plaintiffs believe they would have uncovered documents and admissions from Defendants during discovery that would establish liability, they also acknowledge the significant hurdles to proving liability and particularly damages in a securities class action.[6] Courts have long recognized that "[s]tockholder litigation is notably difficult and unpredictable." *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 364 (S.D.N.Y. 2002).

The Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder. To prevail under the Exchange Act, the Class must show

---

[6] "As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron*, 228 F.R.D. at 97.

that Defendants made a misstatement or omission of a material fact with scienter in connection with the sale or purchase of securities. *See, e.g., Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193 (1st Cir. 1999). Although the Court found that Lead Plaintiffs' pleadings were sufficient to state a claim, Lead Plaintiffs faced significant hurdles with respect to proving liability at trial. As asserted in both their motion to dismiss and opposition to class certification, Defendants have maintained throughout the Action that Wave disclosed the "true facts" with respect to the nature of its business relationships with Intel and IBM to the market and that Lead Plaintiffs would ultimately be unable to meet their burdens of proof for two of the elements of Lead Plaintiffs' claims - that Defendants made misstatements of materials fact and that Defendants made these alleged misstatement with scienter. Sickles Decl. ¶ 33.

In addition to the risks of proving liability, Lead Plaintiffs also would face significant risks in proving damages. "The very real risk that the Class would not recover if this Action proceeded to trial also supports approval of the settlement because 'basic to the [fairness] inquiry is the need to compare the terms of the compromise with the likely rewards of litigation.'" *Bussie*, 50 F.Supp.2d at 76. (internal quotations omitted). While Lead Plaintiffs believe they could prove damages at trial, the Class would inevitably face a "battle of experts" on damages. Lead Plaintiffs' expert would need to prove loss causation, *i.e.* that the cause of the end of the Class Period stock drop was due exclusively to the alleged misstatements by Wave. As stated above, a significant majority of the estimated damages would be vulnerable to a loss causation defense. *See Dura Pharma, Inc.*, 125 S. Ct. at 1631.[7] While Lead Counsel believes that reliable and convincing expert testimony can be provided on the damages issue, the Class is by no means

---

[7] *See also* 15 USCS § 78u-4(b)(4) ("Loss causation. In any private action arising under this title, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages.")

assured that the Court will permit its damage experts to testify, that a jury will find Lead

Plaintiffs' expert more persuasive than Defendants' expert and, most importantly, that Lead

Plaintiffs will be able to recover nearly the amount provided for under the Settlement, or any

amount at all.    As a result of these considerations, the likely recovery by the Class, even

assuming Lead Plaintiffs prevailed on the liability issue, is speculative.    Sickles Decl. ¶ 34.

### 5.    The Class' Reaction Supports the Settlement

The positive reaction of the Class also counsels in favor of the Settlement.  *See Bussie*, 50

F. Supp.2d at 78.    More than 20,600 copies of the Notice were mailed to potential Class

Members and a summary notice was published advising Class Members of their right to object to

any aspect of the Settlement.    Not a single Class Member has submitted any opposition to the

Settlement, and only two Class Members have submitted requests for exclusion.  Sickles Decl. ¶

5; *See* Exh. 1, ¶10.  Indeed, "the absence of objectants may itself be taken as evidencing the

fairness of a settlement."  *Weiss v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988) (internal

citations omitted).

### 6.    The Stage of the Proceedings and Discovery Completed Also Point in Favor of the Settlement

This    factor    focuses    on    whether    the    parties    have    obtained    enough    information    to

appreciate the strengths and weaknesses of their respective positions and requires the Court to

consider the extent of discovery completed.  *Duhaime,* 177 F.R.D. at 68.  "Formal discovery is

not a prerequisite to settlement" approval.  *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005

U.S. Dist. LEXIS 27077, at *65-66 (N.D. Tex. Nov. 8, 2005). Lead Counsel has fully evaluated

the merits of Lead Plaintiffs' claims, in light of the probability of achieving any recovery, when

deciding whether to settle this dispute.

Lead Counsel has achieved a balance between gaining knowledge necessary to assess Lead Plaintiffs' case and Defendants' defenses, and settling at a point in the process which maximizes the recovery for the Class due to the financial condition of the Company. Lead Plaintiffs drafted both an initial and an amended complaint, engaged in an extensive investigation of the Class' claims, consulted with a damage expert, fully briefed Defendants' motion to dismiss, fully briefed a motion for class certification, undertook class certification-related discovery, reviewed documents produced by third-parties, drafted a detailed mediation statement and engaged in protracted settlement discussions with Defendants, including participation in formal mediation. On the one hand, by the time the Parties entered into the Settlement, Lead Counsel had sufficient information in its possession, which allowed it to understand the issues and to evaluate the strengths and weaknesses of the claims of the Class, particularly in the area of damages and the potential for recovery of those damages due to Wave's financial condition. On the other hand, at the time the Parties reached the Settlement, the Parties had not yet undertaken the most expensive aspects of litigation - merits discovery, including numerous depositions, expert discovery, summary judgment and trial. Sickles Decl. ¶ 36. Therefore, this Court should find that this factor supports approval of the Settlement.

**7.    The Risks of Maintaining a Class Though Trial Supports Settlement**

Courts in this jurisdiction generally consider this inquiry futile in the context of a settlement and some have refused to consider it when assessing approval. *In re Lupron*, 228 F.R.D. at 95. Nonetheless, in this Action the Class has not yet been certified. But for the Settlement, it is likely Defendants would have vigorously contested class certification in the first instance, and subsequently taken any opportunity to argue for decertification as the litigation progressed. *See In re General Motors Corp. Pickup Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d

768, 817 (3d Cir. 1995) (value of class action rests on certification of class since aggregation of claims and claimants enlarges the monetary value of the suit, facilitates proof on merits through the pooling of resources).

## III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

### A.    The Plan of Allocation is Reasonable and Should be Approved

The proposed Plan of Allocation, as set forth in the Notice, provides the manner in which the Gross Settlement Fund, less any attorneys' fee and expenses awarded and the costs of Notice and administrative costs (collectively, the "Net Settlement Fund"), shall be distributed to Authorized Claimants.  Lead Counsel prepared the Plan of Allocation after careful consideration, based on a damage analysis prepared by Lead Plaintiffs' damage expert.  If the Court approves the Settlement, upon completion of the claim process and pursuant to a motion for distribution, the Net Settlement Fund will be distributed to members of the Class according to the Plan of Allocation.  Sickles Decl. ¶ 45.

The approval of a plan of allocation of a settlement's proceeds is "governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (internal quotations omitted).  The adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims and whether the proposed allocation is fair and reasonable in light of that information. *In re PaineWebber Limited Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" counsel. *Maley*, 186 F. Supp. 2d at 367 (citations omitted).

The Plan reflects the proposition that the price of Wave common stock was artificially inflated from the beginning of the Class Period on July 31, 2003 until the end of the Class Period on December 18, 2003, the last trading day before Wave announced that it was under formal investigation by the SEC for public statements it made regarding its business in and around August 2003.  More specifically, the Plan is based on the proposition that the price of Wave common stock declined by $0.31 per share following the Company's subject disclosure. Differences in treatment of Class Members are made only with respect to the timing of Class Members' purchases, acquisitions, and sales.  The Plan was fully disclosed in the Notice and, as of the filing of the instant motion, there has been only one objection to the Plan.  Sickles Decl. ¶¶ 46-47.

**B.      The Court Should Overrule the Objection to the Plan of Allocation**

One objection to the Plan has been received from Bill and Marlene Stewart, who purchased 200 shares of Wave common stock during the Class Period and sold those 200 shares before the end of the Class Period disclosure.  *See* copy of the Objection attached as Exhibit 4 to the Sickles Declaration.  The Stewarts are "in-and-out" purchasers, meaning that they purchased the stock at an inflated price and also sold the stock at an inflated price as based on the allegations of the Complaint - the inflation due to Defendants' misstatements ($0.31) was not taken out of the price of the stock until December 18, 2003.  Courts have approved plans which discount recoveries for in-and out-purchasers.  *See In re Veritas Software Corp. Sec. Litig.*, Master File No. C-03-0283 MMC, 2005 U.S. Dist. LEXIS 30880, at *23-24 (N.D. Cal. Nov. 15, 2005) (approving plan of allocation providing for discounted recovery to in and outers over objection to providing them with any recovery and stating damages need not be calculated with precision in determining a plan of allocation for settlement proceeds; the only requirement is that

the allocation be fair and reasonable); *In re Microstrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668-669 (E.D. Va. 2001) (approving the plan of allocation providing for discounted recovery to in and out purchasers, stating that it "fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue"). In addition, as set forth above in §II(B)(2), in the context of continuing litigation, the claims of in-and-out purchasers would likely face strong defenses, and for that reason, also warrant a discounted recovery under the Plan. Therefore, the Court should overrule the objection filed by Bill and Marlene Stewart and approve the Plan of Allocation.

## IV.    **FINAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE**

Before assessing the fairness, reasonableness and adequacy of the Settlement, the Court must certify the Class, which was conditionally certified in the Preliminary Approval Order. Lead Plaintiffs now move, with the consent of Defendants, for final certification of the Class.[8] Because Lead Plaintiffs set forth an expansive discussion of their submission in support of preliminary approval of the Settlement, a summary argument is set forth below.

In *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997), the Supreme Court held that a class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rule 23, *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance of common issues, and superiority. As

---

[8] In "'determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *In Re Lupron*, 228 F.R.D. at 88 (citation omitted). Courts within the First Circuit have demonstrated a preference for certifying class actions in the securities context. *Priest v. Zayre*, 118 F.R.D. 552, 554-55 (D. Mass. 1988).

explained below, and as conditionally certified in this Court's Preliminary Approval Order, the proposed Class satisfies each of these requirements.

### A.    Numerosity, Commonality, and Typicality

The Class meets the numerosity, commonality, and typicality standards.  Over 20,600 notices were sent to potential Class Members who purchased Wave common stock during the Class Period.  Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*, whether the alleged misrepresentations and omissions made by Defendants during the Class Period were material and whether Defendants acted with the requisite scienter).  In *Amchem*, 521 U.S. at 625, the Supreme Court noted that the common issues test is readily met in securities fraud cases.  Further, the class representatives' claims are "typical" of other Class Members' claims because they purchased Wave common stock during the period of asserted price inflation and thus have alleged damages similar to other Class Members.

### B.    Adequacy of Representation

Rule 23(a) also requires that the class representative fairly and adequately protect the interests of the class.  That requirement is satisfied here because Lead Plaintiffs are members of the Class and suffered the same type of injury as the other Class Members (*i.e.*, economic damages), and are represented by preeminent securities class action lawyers.  Thus, the interests of all Class Members are adequately represented by the Lead Plaintiffs and their counsel.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy.  Both of these requirements are satisfied.  The predominance inquiry focuses on the existence of common issues.  As the Supreme Court recognized in

*Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." 521 U.S. at 625. In this Action, the issues of materiality, causation, and scienter are common to all Class Members and clearly predominate over any individual issues. Further, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in Wave common stock. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (class action device permits pooling of claims where it would be uneconomical to litigate individually).

V.    <u>**CONCLUSION**</u>

The Settlement represents an excellent recovery for the Class when viewed against the significant financial hurdles the Parties had to overcome.    For all the reasons enumerated above, Lead Plaintiffs respectfully request the Court to find the Settlement fair, reasonable and adequate.

Respectfully submitted,

DATED:   January 3, 2007                    **GILMAN AND PASTOR, LLP**

                             /s/  David Pastor
                         David Pastor (BBO: #391000)
                         225 Franklin Street, 16th Floor
                         Boston, MA  02110
                         Telephone:  (617) 742-9700
                         Facsimile:   (617) 742-9701

                         ***Liaison Counsel for Lead Plaintiffs***


                         **SCHIFFRIN BARROWAY TOPAZ &**
                         **KESSLER, LLP**
                         Gregory M. Castaldo
                         Kay E. Sickles
                         Karen Reilly
                         280 King of Prussia Road
                         Radnor, PA 19087
                         Telephone:  (610) 667-7706
                         Facsimile:    (610) 667-7056

                         ***Lead Counsel for Lead Plaintiffs***