# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ANNE BRUMBAUGH, GARY L. HARMON and RANDY K. GRIFFIN,<br><br>        Plaintiffs,<br><br>v.<br><br>WAVE SYSTEMS CORPORATION, STEVEN K. SPRAGUE and GERARD T. FEENEY,<br><br>        Defendants. | CIVIL ACTION<br>NO. 04-30022-MAP |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND REIMBURSEMENT AWARD TO LEAD PLAINTIFFS**

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Gregory M. Castaldo
Karen E. Reilly
Kay E. Sickles
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**Lead Counsel for Lead Plaintiffs**

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone: (617) 742-9700
Facsimile: (617) 742-9701

**Liaison Counsel for Lead Plaintiffs**

{00010491.DOC ; 1}

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   SUMMARY OF ARGUMENT ................................................................................... 1

II.  ARGUMENT IN SUPPORT OF ATTORNEYS' FEE AWARD
     AND REIMBURSEMENT OF EXPENSES ............................................................. 2

     A.   The Factors Affecting Approval Of Attorneys' Fees In The
          First Circuit ........................................................................................................ 2

          1.   The Risk Of Nonpayment ........................................................................ 3

          2.   The Size Of The Settlement Fund And Number Of Persons
               Who Will Benefit Favors Court Approval Of The Requested Fee ............ 4

          3.   The Absence Of Objections Supports The Fee Request ............................ 6

          4.   The Complexity Of The Litigation Supports The Fee Request ................. 6

          5.   The Skill And Efficiency Of Counsel Also Supports
               The Requested Fees ................................................................................... 7

          6.   The Time Spent By Lead Counsel Favors Approval Of
               The Fee Request ........................................................................................ 8

          7.   The Fee Request Is Consistent With Fee Awards In Similar Cases ........... 9

     B.   Lead Counsel And Liaison Counsel Should Be Reimbursed For
          Their Litigation Expenses ................................................................................. 10

III. REIMBURSEMENT AWARD TO LEAD PLAINTIFFS ........................................ 10

VI.  CONCLUSION ........................................................................................................ 13

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*AUSA Life Ins. Co. v. Ernst & Young*,
    No. 00-9472, 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) .............................. 4

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ....................................................................................... 4

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ........................................................................................... 4

*Boeing Co. v. Van Gemert*,
    100 S. Ct. 745 (1980) .................................................................................................... 2

*Broderick v. PricewaterhouseCoopers LLP*,
    No. 04-56057, 2006 U.S. App. LEXIS 4680 (9th Cir. Feb. 23, 2006) .......................... 4

*Bussie v. Allmerica Fin. Corp*,
    50 F. Supp. 2d 59 (D. Mass. 1999) ............................................................................... 3

*In re Centennial Techs. Litig.*,
    20 F. Supp. 2d 119 (D. Mass. 1998) ............................................................................. 3

*In re Corel Corp. Sec. Litig.*,
    293 F. Supp. 2d. 484 (E.D. Pa. 2003) ........................................................................... 6

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) .................................................................................... 9

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997) ..................................................................................... 5

*Edmonds v. United States*,
    658 F. Supp. 1126 (D.S.C. 1987) .................................................................................. 7

*In re Employee Benefit Plans Sec. Litig.*,
    No. 3-93-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) ........................ 5

*Florin v. Nationsbank of Ga., N.A.*,
    60 F.3d 1245 (7th Cir. 1995) ......................................................................................... 9

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000) .......................................................................................... 7

*Hicks v. Morgan Stanley & Co.*,
  No. 01-10071, 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) .................... 12

*Landy v. Amsterdam*,
  815 F.2d 925 (3d Cir. 1987) .......................................................................... 4

*Lazy Oil, Co. v. Witco Corp.*,
  95 F.Supp. 2d 290 (W.D. Pa. 1997) ............................................................... 8

*Maley v. Del Global Techs. Corp.*,
  186 F.Supp. 2d 358 (S.D.N.Y. 2002) ............................................................. 7

*Miller v. Thane, Int'l, Inc.*,
  372 F. Supp. 2d 1198 (C.D. Cal. 2005) .......................................................... 4

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) .......................................................................... 5

*In re Relafen Antitrust Litig.*,
  231 F.R.D. 52 (D. Mass. 2005) ............................................................... 3, 5, 6

*In re Rite Aid Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) .......................................................................... 6

*Robbins v. Koger Props.*,
  116 F.3d 1441 (11th Cir. 1997) ..................................................................... 4

*In re Safety Components Int'l*,
  166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................. 9

*In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d. 295 (1st Cir. 1995) ............................................................... 2, 3, 8, 10

*Vaszlavik v. Storage Tech. Corp.*,
  No. 95-B-2572, 2000 U.S. Dist. LEXIS 21140 (D. Col. 2000) ...................... 9

*Winkler v. NRD Mining, Ltd.*,
  198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000), *aff'd* 2000
  U.S. App. LEXIS 31332 (2d Cir. Dec. 6, 2000) ........................................... 4

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................... 11

**STATE CASES**

*In re Walt Disney Co. Derivative Litig.*,
  C.A. No. 15452, 2005 Del. Ch. LEXIS 113 (Del. Ch. Aug. 9, 2005) ............................ 4

**DOCKETED CASES**

*In re Biogen Sec. Litig.*,
  No. 94-12177-PBS (D. Mass 1999) ................................................................. 4

*Carpe v. Aquila, Inc.*,
  No. 02-0388-CV-W-FJG (W.D. Mo. March 23, 2005) ................................................. 4

*In re Clarent Corp. Sec. Litig.*,
  No. C 01-03361 CRB (N.D. Cal. 2005) ............................................................ 4

*Fasano v. Caminus Corp, et al.*,
  No. 03-1743 (S.D.N.Y. Oct. 7, 2005) ............................................................ 9

*In re Health Mgmt., Inc. Sec. Litig.*,
  No. 96-CV-889 (ADS) (E.D.N.Y. 1999) ........................................................... 4

*In re NX Networks Securities Litigation*,
  C.A. No. 00-11850-JLT, slip. op. (D. Mass. Nov. 22, 2004) ..................................... 9

*In re Segue Software Sec. Litig.*,
  C.A. No. 99-10891-RGS, slip op. (D. Mass. July 31, 2001) ...................................... 9

*In re Summit Tech. Sec. Litig.*,
  C.A. No. 96-11589-JLT, slip. op. (D. Mass. Apr. 25, 2001) ..................................... 10

*In re Vaso Active Pharma. Sec. Litig.*,
  Master Docket No. 04-10708 (RCL), slip. op. (D. Mass. Dec. 21, 2005) .......................... 9

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(a)(4) ................................................................................ 11

In connection with the Court's approval of the Settlement[1] in the above-captioned action (the "Action"), court-appointed Lead Counsel, Schiffrin Barroway Topaz & Kessler, LLP ("Lead Counsel") respectfully moves this Court for: (i) an award of attorneys' fees of twenty-five percent (25%), or $437,500 of the Settlement Fund; (ii) reimbursement of $55,357.65 in expenses that were incurred in successfully prosecuting the claims in this Action; and (iii) reimbursement awards of $5,000 for each Lead Plaintiff.

I.      **SUMMARY OF THE ARGUMENT**

Lead Counsel has successfully obtained a $1,750,000 Settlement in this Action – representing a substantial percentage of the estimated damages - despite facing challenging obstacles. The Settlement is directly attributable to Lead Counsel's skill and diligent litigation efforts. Indeed, the Settlement was reached only after this Court sustained the Complaint, the Parties fully briefed class certification and conducted class certification-related discovery. In addition, Lead Counsel conducted a thorough investigation into the vitality of Lead Plaintiffs' claims and the opportunities for a recovery through: (i) review of Wave's public filings, annual reports and other public statements; (ii) review of reports about Wave by securities analysts, rating agencies and news services; (iii) consultations with a damage expert; (iv) interviews and follow-up with confidential witnesses; (v) review of documents produced by third-parties; (vi) research of the applicable law with respect to the claims asserted in the Action and Defendants' potential defenses thereto; and (vii) review of information concerning Wave's financial condition and the availability of insurance coverage. Sickles Decl. ¶ 18.

---

[1] This Memorandum incorporates by reference the definitions in the Stipulation and Agreement of Settlement (the "Stipulation") dated October 3, 2006. In support of this Memorandum, Lead Counsel also is submitting the Declaration of Kay E. Sickles in Support of Class Action Settlement, Plan of Allocation, and the Application for an Award of Attorneys' Fees and Reimbursement of Expenses and Reimbursement Award to Lead Plaintiffs ("Sickles Declaration" or "Sickles Decl.").

As explained below, Lead Counsel overcame substantial hurdles in this Action, including Wave's deteriorated financial condition and the availability of limited insurance coverage for Wave. Sickles Decl. ¶¶ 21-25. While avoiding long and costly additional litigation, the Settlement provides a valuable benefit to the Class Members. Thus, for the reasons set forth below and in the Sickles Declaration submitted herewith, Lead Counsel respectfully requests an award of attorneys' fees representing 25% of the Gross Settlement Fund, or $437,500.00 and requests $55,357.65 for reimbursement of reasonable and necessary expenses, plus interest earned on both amounts at the same rate as the Class. These fees and expenses are well within the range of fees and expenses that are customarily sought by (and awarded to) experienced counsel in similar litigation.

## II.    ARGUMENT IN SUPPORT OF ATTORNEYS' FEE AWARD AND REIMBURSEMENT OF EXPENSES

The First Circuit has left it to the discretion of the district courts to decide the appropriate method to ascertain attorneys' fees in common fund cases such as this, although the percentage method is the clear preference of district courts within this Circuit.[2] Here, application of both the percentage of the fund method and a lodestar analysis demonstrate that Lead Counsel's request is fair and reasonable.

### A.    The Factors Affecting Approval of Attorneys' Fees in the First Circuit

---

[2] An application for a fee award based on a percentage of the Settlement Fund is consistent with well-established precedent that a person who maintains a suit that results in a benefit for the common interest of others, may obtain fees from that benefit. *See Boeing Co. v. Van Gemert*, 100 S. Ct. 745, 749 (1980) ("[A] litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *see also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d. 295, 305 n. 6 (1st Cir. 1995) ("The common fund doctrine is founded on the equitable principle that those who have profited from litigation should share its costs."). The "common fund doctrine" is designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for it. *Boeing*, 100 S. Ct. at 749.

Courts within the First Circuit have traditionally refrained from strictly applying a definitive set of factors to determine a reasonable percentage to be awarded as attorneys' fees.[3] Instead, courts within this Circuit liberally consider various of the following factors to determine whether a fee award is appropriate:

> (1) the size of the fund created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 84-85 (D. Mass. 2005) (internal citations omitted). An analysis of these factors favors approval of the fee request.

### 1.   The Risk of Nonpayment

The risk of nonpayment is of paramount importance in this Action and strongly counsels in favor of Lead Counsel's fee request. As this Court recently stated:

> [W]hen Class Counsel undertook representation . . . there were no assurances that any fees would be received. Class Counsel were aware that they would likely have to expend thousands of hours, and hundreds of thousands of dollars, in prosecuting this case over an extended period of time before having even a possibility of recovering a fee. Class Counsel alone bore the risk of the case being dismissed at the pretrial stage, of not prevailing at trial, or even losing on appeal.

*In re Relafen*, 231 F.R.D. at 87 (citing plaintiffs' counsel's brief).

Lead Counsel undertook the litigation and advanced the costs on a contingent basis, bearing the full risk of no recovery at all. Lead Counsel undertook this Action knowing that it

---

[3] The First Circuit and several district courts in this circuit have applied the percentage of the fund method in common fund cases. *In re Thirteen Appeals*, 56 F.3d at 307 (the "use of the [percentage of fund] method in common fund cases is the prevailing praxis [with] . . . distinct advantages"); *Relafen*, 231 F.R.D. at 81; *Bussie v. Allmerica Fin. Corp*, 50 F. Supp. 2d 59, 76 (D. Mass. 1999); *see In re Centennial Techs. Litig.*, 20 F. Supp. 2d 119 (D. Mass. 1998).

could easily expend thousands of attorney hours, and hundreds of thousands of dollars for expenses, and then lose at summary judgment or at trial.[4] This contingent risk was particularly acute in this Action due to the financial condition of Wave, and the presence of both additional civil litigation and an SEC investigation, in addition to the limited availability of insurance proceeds to fund a settlement or satisfy a judgment. Therefore, this Court should conclude that an analysis of this factor supports Lead Counsel's request for attorneys' fees. Sickles Decl. ¶ 51.

### 2. The Size of the Settlement Fund and Number of Persons who Will Benefit Favors Court Approval of the Requested Fee

This Court has stated, "[I]n evaluating the class action settlement, the court cannot, and should not use as a benchmark the highest award that could be made to the plaintiff after full and

---

[4] In fact, there have been numerous class actions in which plaintiff's counsel expended thousands of hours and advanced significant litigation expenses and yet received no remuneration whatsoever, despite their diligence and expertise. *See, e.g.*, *Broderick v. PricewaterhouseCoopers LLP*, No. 04-56057, 2006 U.S. App. LEXIS 4680 (9th Cir. Feb. 23, 2006) (affirming dismissal); *AUSA Life Ins. Co. v. Ernst & Young*, No. 00-9472, 2002 U.S. App. LEXIS 13845 (2d Cir. July 8, 2002) (affirming district court's dismissal after a full bench trial and earlier appeal and remand); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (appellate court overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988, on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won substantial jury verdict and motion for judgment n.o.v. was denied, but on appeal judgment was reversed and case dismissed after 11 years of litigation); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *In re Walt Disney Co. Derivative Litig.*, C.A. No. 15452, 2005 Del. Ch. LEXIS 113 (Del. Ch. Aug. 9, 2005) (defense verdict on all counts after nine years of litigation and three month bench trial); *Miller v. Thane, Int'l, Inc.*, 372 F. Supp. 2d 1198 (C.D. Cal. 2005) (defense verdict after bench trial); *In re Clarent Corp. Sec. Litig.*, No. C 01-03361 CRB (N.D. Cal. 2005) (defense verdict for Ernst & Young after four week trial); *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG (W.D. Mo. March 23, 2005) (granting summary judgment to defendants); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. Mar. 31, 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs), *aff'd* 2000 U.S. App. LEXIS 31332 (2d Cir. Dec. 6, 2000); *In re Biogen Sec. Litig.*, No. 94-12177-PBS (D. Mass 1999) (jury verdict for defendants in securities class action); *In re Health Mgmt., Inc. Sec. Litig.*, No. 96-CV-889 (ADS) (E.D.N.Y. 1999) (jury verdict for auditor in securities class action case).

successful litigation of the claim[s]." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 68 (D. Mass. 1997); *see also In re Relafen*, 231 F.R.D. at 64 (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) ("a fine-tuned equation by which to determine the reasonableness of the size of a settlement fund does not exist")). Rather, courts should, "Consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t [is] proper to take the bird in the hand instead of the prospective flock in the bush.'" *In re Employee Benefit Plans Sec. Litig.*, No. 3-93-708, 1993 U.S. Dist. LEXIS 21226, at 15 (D. Minn. June 2, 1993).

There is no question that in this Action the Class Members will benefit greatly from the Settlement that Lead Counsel has negotiated and that "the bird in the hand" is better than "the prospective flock in the bush." The Settlement Fund represents a significant recovery for the Class both in absolute terms and when viewed in light of the risks of litigation. The greatest possible recovery for the Class falls in the range of $7 to $23 million. A significant proportion of the $23 million damage estimate, possibly $16 million, may be attributable to losses suffered by in and out purchasers, *i.e.* purchasers who sold their shares of Wave common stock before the disclosure at the end of the Class Period. *See* Lead Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of the Settlement and Plan of Allocation ("Settlement Memorandum"). Viewing any possible recovery in the context of the risk that Defendants could prevail in foreclosing the in-and-out purchasers from pursuing a recovery, this Settlement may be viewed as a recovery of 25% of estimated damages of $7 million. Sickles Decl. ¶ 30.

Furthermore, when the Settlement is viewed in light of the risks created by Wave's financial circumstances and the availability of only limited insurance proceeds, as well as the

other risks of litigation, detailed in the Settlement Memorandum at §II(B)(4), this Settlement provides an excellent recovery that will benefit thousands of Class Members. Sickles Decl. ¶ 31. Therefore, the Court should find that an analysis of this factor firmly supports approval of Lead Counsel's fee request.

### 3. The Absence of Objections Supports the Fee Request

This Court should consider the Class' overwhelmingly positive reaction to the fee request. The Notice of this proposed Settlement, in the form approved by the Court, was mailed to 20,684 potential Class Members and published in the *Investor's Business Daily*. *See* Affidavit of Jose C. Fraga of The Garden City Group, Inc. ("GCG"), the Claims Administrator in this Action (the "GCG Affidavit" or "GCG Aff.") attached as Exhibit 1 to the Sickles Decl., at ¶¶ 6, 9. In addition to describing how to either exclude oneself from the Class or object to any aspect of the Settlement, the Notice further advised Class Members that Lead Counsel intended to apply for an award of attorneys' fees of twenty-five percent (25%) of the Settlement Fund. Class Members had until December 28, 2006 to file any objections. As of this deadline, not a single recipient of the Notice has filed an objection to the attorneys' fees requested. Sickles Decl. ¶ 5. *See In re Rite Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("[t]he District did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request"); *In re Relafen*, 231 F.R.D. at 86 (approving fee request despite four objections). Thus, this Court should find that the absence of any objections to the fee request supports the inference that the fee request is fair and reasonable.

### 4. The Complexity of the Litigation Supports the Fee Request

Courts have explicitly found that securities class actions are inherently complex. *See In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d. 484, 496 (E.D. Pa. 2003) (noting that securities

litigation is a complex field); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 364 (S.D.N.Y. 2002) ("[s]tockholder litigation is notably difficult and unpredictable").

The complexities of a securities class action, viewed in conjunction with the difficulties particular to this Action, more than justify the requested fee sought. Lead Counsel has effectively and efficiently litigated this Action from its inception, undertaking an extensive investigation, including interviews with numerous confidential witnesses. Lead Counsel also filed a detailed Complaint, briefed and prevailed on the motion to dismiss, briefed class certification and completed class-related discovery, and engaged in protracted settlement discussions. Lead Counsel litigated this Action to a juncture where it fully understood the strengths and weaknesses of the Action, and believed that an early settlement would provide the best opportunity for a substantial recovery for the Class. Therefore, this Court should find that this factor militates in favor of the fee request. Sickles Decl. ¶ 54_.

### 5. The Skill and Efficiency of Counsel also Supports the Requested Fees

This Settlement could not have been achieved without the experience, skill, and dedication of Lead Counsel, a firm that has national and worldwide standing and is among the most experienced plaintiffs' securities law firms in the country. *See* the Affidavit of David Kessler and exhibit 3 thereto ("Kessler Aff."), attached to the Sickles Declaration as Exhibit 2. The Settlement is a direct result of Lead Counsel's experience, reputation and ability in these types of cases. Sickles Decl. ¶ 55. *See Edmonds v. United States,* 658 F. Supp. 1126, 1137 (D.S.C. 1987) (the "prosecution and management of a complex national class action requires unique legal skills and abilities"). It is particularly important to reward skilful attorneys because "the stated goal in percentage fee-award cases is ensuring that competent counsel continue to be willing to undertake risky, complex and novel litigation." *Gunter v. Ridgewood Energy Corp.*,

223 F.3d 190, 198 (3d Cir. 2000). Bearing in mind Wave's tenuous financial condition, Lead Counsel engaged in a thorough analysis of the best possible recovery for the Class and successfully negotiated for a substantial percentage of the estimated damages for the Class.

Courts also recognize the quality of opposing counsel in evaluating a plaintiff's counsel's performance. *See Lazy Oil, Co. v. Witco Corp.*, 95 F.Supp.2d 290, 322 (W.D. Pa. 1997). Defendants have been vigorously represented by counsel from Bingham McCutchen, LLP, who is nationally recognized and able defense counsel. The ability of Lead Counsel to negotiate a favorable Settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of its work. Lead Counsel therefore submits that without its experience, this Settlement could not have been achieved. Sickles Decl. ¶ 55.

### 6. The Time Spent by Lead Counsel Favors Approval of the Fee Request

If this Court examines the requested fee as determined by a percentage of the Gross Settlement Fund against the lodestar, it will find that the lodestar also fully supports Lead Counsel's requested fee award.[5] The cumulative lodestar for the services performed by Lead Counsel and Liaison Counsel, based on the devotion of 1,587 hours to furtherance of the Action, is $650,859.25. *See* Kessler Affidavit and Affidavit of David Pastor, of Gilman and Pastor, attached to the Sickles Declaration as Exhibits 2 and 3, respectively.[6] Sickles Decl. ¶ 56.

---

[5] The lodestar is calculated by multiplying the reasonable number of hours worked on the Action by the current, reasonable hourly billing rate for counsel. *In re Thirteen Appeals*, 56 F.3d at 307.

[6] These exhibits reflect the names of the attorneys and paralegals who worked on the litigation, the hourly rates currently chargeable by each such attorney and paralegal, the lodestar value of the time expended by such attorneys and paralegals, the unreimbursed disbursements of Schiffrin Barroway Topaz & Kessler, LLP and Gilman & Pastor, LLP, and the background and experience of both firms. This time does not include any time by other firms which filed the remaining complaints at the outset of the Action.

Lead Counsel's request of twenty-five percent (25%) of the Gross Settlement Fund equates with $437,500. As a result, the requested fee of twenty-five percent (25%) represents a negative multiplier of 0.67. Sickles Decl. ¶¶ 49, 56. Such a multiplier falls well below those awarded in complex securities cases, especially those cases in which Lead Counsel has achieved the level of success when confronted with the significant financial hurdles faced in this Action. *See, e.g., In re Vaso Active Pharma. Sec. Litig.*, Master Docket No. 04-10708 (RCL), slip op. at 7, 9 (D. Mass. Dec. 21, 2005) (awarding 25% of settlement fund, equating with 1.53 multiplier); *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1249 (7th Cir. 1995) (multiplier of 1.53 equaling 34% of settlement fund); *Fasano v. Caminus Corp, et al.*, No. 03-1743 (S.D.N.Y. Oct. 7, 2005) (approving 25% settlement fee amounting to multiplier of 1.39); *In re Safety Components Int'l*, 166 F. Supp. 2d 72, 103 (D.N.J. 2001) (lodestar multiplier of 2.81 is reasonable); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2572, 2000 U.S. Dist. LEXIS 21140, at *7 (D. Col. 2000) (awarding 30% fee equaling lodestar multiplier of 1.53); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) (lodestar multiplier of 2.04). Therefore, Lead Counsel submits that the attorneys' fee requested as a percentage of the Gross Settlement Fund is fair and reasonable even when cross-checked against the lodestar in the Action.

### 7. The Fee Request Is Consistent with Fee Awards in Similar Cases

The twenty-five percent (25%) of the Gross Settlement Fund is clearly within the range of fees awarded in similar cases by courts within the First Circuit as well as by courts outside the jurisdiction. *See, e.g., In re Vaso Active Pharma. Sec. Litig.*, Master Docket No. 04-10708 (RCL), slip op. at 7, 9 (awarding 25% of settlement fund); *In re NX Networks Securities Litigation,* C.A. No. 00-11850-JLT, slip op. at 6, 7 (D. Mass. Nov. 22, 2004) (awarding 33⅓% of settlement fund); *In re Segue Software Sec. Litig.*, C.A. No. 99-10891-RGS, slip op. at 6 (D.

Mass. July 31, 2001) (awarding 33⅓% of Settlement Fund); *In re Summit Tech. Sec. Litig.*, C.A. No. 96-11589-JLT, slip op. at 1, 2 (D. Mass. Apr. 25, 2001) (awarding 33⅓% of settlement fund).[7] Therefore, Lead Counsel respectfully submits that the Court should find the twenty-five percent (25%) fee request fair and reasonable.

      **B.    Lead Counsel and Liaison Counsel Should Be Reimbursed for Their Litigation Expenses**

Lead Counsel also requests reimbursement of out-of-pocket expenses incurred to date in connection with the prosecution of the Action. These expenses include expenses for an investigator, a damages expert, photocopying of documents, on-line research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this Action. Sickles Decl. ¶ 58. *See In re Thirteen Appeals*, 982 F.2d at 606 (common fund doctrine permits person recovering fund for the benefit of others to recover costs from the fund). The aggregate expense for which Lead Counsel and Liaison Counsel seek reimbursement is $55,357.65. Sickles Decl. ¶ 58. This amount is well below the amount set forth in the Notice of $80,000, against which there were no objections, and should be reimbursed in full. *See* Exh. 1(A). Lead Counsel submits that the expenses incurred were necessary for the effective prosecution of this Action and are thus fair and reasonable.

**III.    REIMBURSEMENT AWARD TO LEAD PLAINTIFFS**

The PSLRA provides for reimbursement to representative plaintiffs in securities fraud class actions.

> The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to

---

[7] Unpublished opinions are submitted herewith as Exhibit 5 to the Sickles Declaration.

> all other members of the class. **Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.**

15 U.S.C. § 78u-4(a)(4) (emphasis added).

Lead Counsel respectfully requests $5,000 be awarded to each Lead Plaintiff as reimbursement for time and expense (including lost wages) directly relating to their representation of the Class. All three Lead Plaintiffs were continuously involved in the prosecution of this Action and were in constant contact with Lead Counsel during all stages of this Action. As set forth in each of their declarations, attached to the Declaration as Exhibit 6, Lead Plaintiffs reviewed and provided comments for all pleadings filed, including a complex amended complaint, the briefing in support of and in opposition to the motion to dismiss and the briefing in support of and in opposition to class certification, gathered documents in response to Defendants' discovery demands, prepared and sat for depositions, kept themselves informed of all developments in the litigation through the review of correspondence and regular telephone conferences with Lead Counsel, and were consulted by Lead Counsel with respect to all strategic decisions made in this Action. The Notice stated that Lead Plaintiffs would be moving the Court for an award of up to a total of $60,000 to the Lead Plaintiffs for their reasonable costs and expenses (including lost wages) directly relating to their representation of the Class. The actual request is far smaller than the figure set forth in the Notice. These individuals were devoted and attentive to the furtherance of this Action, and took time away from their respective professions to fulfill their duties as Lead Plaintiffs. *See In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (granting awards to lead plaintiffs where they reviewed pleadings, communicated with counsel, indicated willingness to appear at trial, kept informed of settlement negotiations, and effectuated policies of federal securities

laws); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 U.S. Dist. LEXIS 24890, at *30 (S.D.N.Y. Oct. 24, 2005) (stating "[c]ourts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."). Not a single objection to this request was filed, and the application is in fact but a fraction of the $60,000 set forth in the Notice. Therefore, Lead Counsel submits that this request should be approved.

## IV. CONCLUSION

For the reasons set forth herein, Lead Counsel respectfully requests that the Court approve and enter an order for: (i) an award of attorneys' fees in the amount of twenty-five percent (25%) of the Gross Settlement Fund, plus interest; (ii) reimbursement of expenses in the amount of $55,357.65, plus interest; and (iii) reimbursement awards in the amount of $5,000 for each Lead Plaintiff.

Respectfully submitted,

DATED:   January 3, 2007

**GILMAN AND PASTOR, LLP**

/s/  David Pastor
David Pastor (BBO: #391000)
225 Franklin Street, 16th Floor
Boston, MA  02110
Telephone:  (617) 742-9700
Facsimile:   (617) 742-9701

*Liaison Counsel for Lead Plaintiffs*

**SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP**
Gregory M. Castaldo
Kay E. Sickles
Karen Reilly
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:   (610) 667-7056

*Lead Counsel for Lead Plaintiffs*