UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------- X
ANNE BRUMBAUGH, GARY L. HARMON :
and RANDY K. GRIFFIN, :
:
    Plaintiffs, :
  v. :
:   CIVIL ACTION NO. 04-30022-MAP
WAVE SYSTEMS CORPORATION, :
STEVEN K. SPRAGUE and GERALD T. :
FEENEY, :
:
    Defendants. :
---------------------------------------- X

### AFFIDAVIT OF ELLEN E. RILEY IN SUPPORT OF MOTION
### FOR DISTRIBUTION OF CLASS SETTLEMENT FUND

STATE OF NEW YORK  )
                         )   ss.:
COUNTY OF SUFFOLK  )

Ellen E. Riley being duly sworn, deposes and says:

1.    I am a Senior Director of Operations for The Garden City Group, Inc. ("GCG"), which was retained as the Claims Administrator in connection with the settlement of the above-captioned litigation (the "Litigation"). I have personal knowledge of the facts stated herein.

### DISSEMINATION OF NOTICE AND PROOF OF CLAIM AND RELEASE

2.    A settlement of the Litigation involving Wave Systems Corporation ("Wave") with a value of $1,750,000 was proposed pursuant to the Stipulation and Agreement of Settlement dated October 2, 2006 (the "Stipulation"). This Court entered its Preliminary Order in Connection with Settlement Proceedings (the "Preliminary Approval Order") on October 24,

2006, preliminarily approving the Stipulation and directing that notice of the proposed settlement be given to potential members of the Class. As more fully described in the Affidavit of Jose C. Fraga dated December 28, 2006, previously filed herein, GCG distributed the Court-approved Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") and Proof of Claim and Release ("Proof of Claim" and together with the Notice, the "Claim Packet") to potential members of the Class commencing on November 8, 2006. Further, GCG Communications, the media division of GCG, published the Summary Notice of Pendency and Proposed Settlement of Class Action in *Investor's Business Daily* on November 15, 2006. By Order and Final Judgment dated January 9, 2007, this Court approved the Settlement as fair, reasonable and adequate.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

3. Under the terms of the Stipulation, Class Members were required to submit a Proof of Claim in order to obtain their share of the Net Settlement Fund (the $1,750,000 less all attorneys' fees and expenses of the Litigation approved by this Court, including administration fees and expenses, plus interest earned on the Settlement Fund, less taxes payable on such interest).

4. GCG undertook the following tasks in order to prepare to process the Proofs of Claim: conferred with Lead Counsel to define the project and guidelines for claims processing; trained staff in the specifics of the project; and developed programs for entry of the claimants' personal and transactional information.

5. Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Proofs of Claim to a post office box specifically designated for this

settlement. GCG sorted incoming mail into Proofs of Claim, responses to deficiency letters, and administrative mail. Administrative mail includes responses to deficiency letters, written requests for claim forms, requests for change of address, questions regarding the administration process and inquiries about the status of the administration. Administrative mail was reviewed and appropriate responses given. Claim Packets that were returned by the Post Office as undeliverable were reviewed for better addresses and, where available, new addresses were entered into the database and new Claim Packets were mailed to the updated addresses.

6. The Proofs of Claim were opened and scanned into a database along with all submitted documentation, and were then assigned individual claim numbers. The information from each claim form, including the name, address, Taxpayer I.D. or Social Security Number of the claimant, and the purchase, acquisition and sale transactions listed on the claim were then entered into a computerized database. The documentation provided in support of each claim was reviewed to ascertain whether the claimant had in fact purchased or otherwise acquired Wave common stock during the period from July 31, 2003 through December 18, 2003, inclusive (the "Class Period"). Claims were then reviewed to be sure they were not from the Defendants, the officers or directors of Wave, members of their immediate families or their legal representatives, heirs, successors or assigns, or any entity in which Defendants have or had a controlling interest, to the extent that the identities of such persons and entities were known to us through the list of Defendants and through the claimant's certification on the Proof of Claim. Claims were also reviewed against the list of persons requesting exclusion.

## THE DEFICIENCY NOTICE AND CURE PROCESS

7.     GCG established internal claim codes to identify and classify types of claims and conditions that existed within the claims. Where a submitted claim lacked the required filing information or documentation to substantiate the Class Member's transactions during the Class Period, or was otherwise deficient, in whole or in part, a Final Notice of Disposition was sent to the claimant advising him, her or it of the deficiency and requesting the submission of the appropriate documentary evidence to correct the defect.

8.     Where a Final Notice of Disposition was sent, each claimant was notified that unless the deficiency was corrected within 20 days, his, her or its claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if he, she or it had not supplied the required documentation or filing information for any transactions. Documentation received in response to these letters was carefully reviewed and evaluated. If the response cured the deficiency, the database was updated to reflect the changes in the claim.

9.     Claimants who submitted claims which showed that they were ineligible to participate in the Net Settlement Fund in whole or in part (for example, where their claims showed that they had suffered No Recognized Loss from their purchases of Wave common stock during the Class Period, or where their purchases were not made within the Class Period) were sent a Final Notice of Ineligibility. Claimants who submitted duplicate claims were also sent a Final Notice of Ineligibility rejecting the duplicate claims.

10.    Attached hereto as Exhibit "A" are copies of the forms of letters used to notify claimants of the deficiency or rejection of their claims. These letters advised the claimant of his, her or its right to request this Court's review of our administrative determination rejecting the

claim. The letters stated that the claimant could request this Court's review of the rejection of the claim by filing a statement in writing setting forth the reasons why he, she, or it believes that the claim was adequately submitted. No claimant has requested this Court's review of the rejection of his, her or its claim.

11. After all responses to the letters referenced above were received and evaluated and claims updated, GCG staff called each claimant with a deficient claim with a potential loss of $150.00 or more to provide the claimant a final opportunity to fix his, her or its claim. If in response to the telephone call the claimant cured the deficiency, the database was updated to reflect the change. These calls were completed on June 15, 2007.

## CLAIMS DETERMINATION

12. GCG has received Proof of Claim forms for 1,730 claimants.

13. Submitted herewith as Exhibit "B" is a computer printout listing all the claims filed herein. The first portion of the printout alphabetically lists all the timely filed Authorized Claimants and shows their Recognized Loss amounts. The second portion of the printout is an alphabetical list of provisionally accepted claimants submitted after March 8, 2007 showing their Recognized Loss amounts. The third portion of the printout alphabetically lists all the rejected or ineligible claimants and shows the reasons why their claims were rejected.

14. Recognized Loss amounts were calculated for claims, which were properly filed and supported with adequate documentary evidence. The court approved Plan of Allocation is found on Page 4, Section 9 of the Notice.

15. A total of 1,730 persons or entities have filed claims herein, 1,690 timely and 40 after the March 8, 2007 deadline, of which a total of 1,158 (1,132 timely and 26 untimely) have

been provisionally accepted. All eligible claims, whether timely filed or late, are included in the list of Authorized Claimants for this Court's review.

16. GCG has provisionally accepted 1,158 claims representing a total Recognized Loss of $1,101,271.86 (including $965,991.31 from timely claims and $135,280.55 from claims submitted after the March 8, 2007 deadline.) See Exhibit B.

17. A total of 572 claims were provisionally rejected for the following reasons:

| NO. OF CLAIMS | REASON FOR REJECTION |
|---|---|
| 132 | Claimant Did Not Purchase/Acquire Wave Systems Corp. Common Stock, Claimant Did Not Purchase/Acquire Wave Systems Corp. Common Stock during the Class Period, or Claimant Was Excluded From the Class |
| 9 | Duplicate Claim |
| 197 | Deficient Claim Never Cured |
| 234 | Claim Did Not Result in a Recognized Loss |

18. Unless directed otherwise, GCG will continue to receive, review and process any correspondence or information submitted by claimants with respect to their already-filed Proofs of Claim. If we receive adjustments to Proofs of Claim prior to distribution of the Net Settlement Fund, we will update our claims database with the new information. GCG will then report the updated totals to Lead Counsel immediately prior to distribution.

19. An integral part of the claims administration process is the Quality Assurance ("QA") review. Once all of the claims have been processed, Final Notice of Disposition and Final Notice of Ineligibility letters have been mailed, and deficiency responses reviewed and processed, GCG's QA department performs a final project wrap-up in order to ensure correctness

and completeness of all processed claims prior to preparing our final reports to counsel. Here, in connection with this project, GCG: (i) checked that all otherwise valid claims that do not have proper Social Security/Tax Identification Numbers were given a message flagging the computer system to denote that condition; (ii) determined that valid claims have no messages denoting ineligibility; (iii) determined that claims that are ineligible have messages denoting ineligibility; (iv) determined that claims that contained purchases and/or acquistions that occurred outside of the Class Period contain appropriate ineligible messages; (v) determined that claim detail (transaction) message(s) appear(s) only on claim detail records; (vi) determined that all claims requiring Final Notice of Disposition and Final Notice of Ineligibility letters were sent such letters; (vii) performed a sample review of deficient claims; (viii) reviewed claims with large dollar losses of $15,000 or more; (ix) sampled claims that were determined to be ineligible, including those with No Recognized Loss calculated in accordance with the Plan of Allocation, in order to verify that all transactions had been captured correctly; and (x) tested the accuracy of the calculation program.

20. In support of the work described above, GCG's computer staff designed, implemented and tested the following programs for this administration: data entry screens which store claim information including all transactional data included on each Proof of Claim, as well as message codes and, where necessary, text to denote conditions existing within the claim; programs to load and analyze transactional data submitted electronically for all electronically filed claims (the load program converts the data submitted into the format required by the calculation program; the analysis program determines if the data is consistent and complete and triggers a response to the electronic filer where appropriate); a calculation program to analyze the transactional data for all claims, and calculate the Recognized Loss based on the Plan of

Allocation; programs to generate various reports throughout, and at the conclusion of the administration, including lists of all eligible and ineligible claims; check writing programs which calculate each eligible claimant's award amount by determining the proration factor for the Class and applying it against the Recognized Loss as calculated above.

21. GCG has spent the time necessary to do a thorough job of processing the claims and to protect the interests of the Class as a whole. No claims were rejected out-of-hand and adequate time was spent communicating with Class Members and suggesting appropriate ways that they could document their claims and participate in the settlement. Telephone calls and written letters from claimants to GCG were courteously handled. Class Members were assisted to the fullest extent possible.

22. If the Court grants the distribution, GCG staff will undertake the following tasks: calculate the pro rata distribution amounts from the Net Settlement Fund by comparing the Authorized Claimants' total Recognized Loss with the total dollar value of the Net Settlement Fund at the time of distribution; prepare checks and check registers, and mail checks by prepaid first class mail; issue replacement checks upon request by payee; and, answer inquiries about claim calculation and checks.

### FEES AND DISBURSEMENTS

23. GCG agreed with Lead Counsel to give notice to the Class, process the claims herein, administer and distribute the Net Settlement Funds to the Authorized Claimants, and prepare the tax returns for the Settlement Fund in consideration of payment of our standard hourly fees, subject to this Court's approval. Our fees incurred to date, $125,794.80, and the fees expected to be incurred through the distribution, $16,659.82, will in total amount to $142,454.62,

as shown on the invoices attached hereto as Exhibit "C." Our out-of-pocket expenses incurred to date, $24,452.56, and expected to be incurred through the distribution, $3,112.22, total $27,564.78, as also shown on the invoices attached hereto as Exhibit "C." Accordingly, the total of all reasonable costs and expenses of class notice and settlement administration in this Litigation is $170,019.40.

24.     To date, GCG has received payment on account from the Settlement Fund in the aggregate amount of $75,000 in connection with its invoices dated January 24, 2007 and June 19, 2007, attached hereto as Exhibit "C." Accordingly, there is a balance due of $95,019.40 payable to GCG.

## RECORDS RETENTION AND DESTRUCTION

25.     Unless otherwise ordered by the Court, one year after distribution of the Net Settlement Fund, GCG will destroy the paper copies of the Proofs of Claim and all supporting documentation, and three years after distribution of the Net Settlement Fund, it will destroy electronic copies of the same.

*[signature]*
Ellen E. Riley

Sworn to before me this
2nd day of January, 2008

*[signature]*
Notary Public

VANESSA M. VIGILANTE
Notary Public, State of New York
No. 01VI6143817
Qualified in Queens County
My Commission Expires 9-17-2010